UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE) HARVARD,
J.H., a minor, by and through his parent
And natural guardian, VALENTINE ROBINSON;
ANGEL MEDDLER; JUAN ESPINOSA;
JERMORE BURGESS (a/k/a SHAM'LA
GOD ALLAH); and JAMES W. KENDRICK,
JR. on behalf of themselves and all others
Similarly situated,

    Plaintiffs        CASE NO.:  19-CV-212

vs.

MARK INCH, in his official capacity as
Secretary of the FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the State
Of Florida.

    Defendants.
_____/

**DEFENDANTS' MOTION TO TRANSFER
VENUE TO THE MIDDLE DISTRICT, JACKSONVILLE
OR OCALA DIVISION PURSUANT TO 28 U.S.C. § 1404(a)
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

**I. INTRODUCTION**

The individual acts about which the Plaintiffs complain occurred in prisons located within the Middle District of Florida by an overwhelming margin. Because the prisons are located in the Middle District of Florida, the vast majority of witnesses, including incarcerated witnesses, are located in the Middle District. The

criteria this court must apply to determine this motion weigh heavily in favor of transferring this matter to the Middle District, in either the Jacksonville or Ocala Division. Therefore, the Defendants apply to this Court for an Order transferring this case to the Middle District of Florida.

**II.** **STANDARD OF REVIEW**

The Plaintiff's venue preference is entitled to little or no deference when the Plaintiff's preferred venue is not where the causes of action occurred. The proper test under 28 U.S.C. §1404(a) focuses on practical consideration to minimize the burden on the parties, witnesses, and the broad concept of interest of justice. In *Trans Am Worldwide, LLC v. J.P. Superior Solutions, LLC*, No. 4:17CV560-MW/CAS, 2018 WL 3090394 (N.D. Fla. Apr. 30, 2018), this Court listed the Eleventh Circuit's factors to be considered by the trial court in determining whether venue should be transferred under §1404. The factors are: (1) the convenience of the witnesses; (2) the location of the relevant documents, and the relative ease to access sources of proof; (3) convenience of the parties; (4) the focus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a Plaintiff's choice of forum, and (9) trial efficiency and the interests of justice. *Id.* at *8 (citing *Manuel v. Convergys Corp*, 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005)).

### III. THE PLAINTIFFS' CLAIMS AND THE WITNESSES NEEDED TO RESOLVE THOSE CLAIMS

Evidentiary support for the facts set forth in this section, other than those pled in the Amended Complaint, is contained in the Overall Inmate Records attached to the Declaration of Rusty McLaughlin filed contemporaneously herein.

Plaintiff Harvard complains about her initial placement in restrictive housing and Defendants refusal to meaningfully modify her restrictions. *Id.* at ¶¶ 14-16. Plaintiff Harvard's Overall Inmate Record reflects that she has been incarcerated at Wakulla Annex, Santa Rosa Correctional Institute, Reception Medical Center, Suwannee Correctional Institute, Union Correctional Institute, and Florida State Prison until the initial Amended Complaint was filed. During the period of limitations for this action, Ms. Harvard was incarcerated only at Florida State Prison, Union and Suwannee. Florida State Prison, Union and Suwannee are all in the Middle District of Florida. Therefore, the overwhelming majority of witnesses to the disciplinary infractions and deprivations alleged in paragraphs 15 – 16 of the Amended Complaint are located in the Middle District of Florida at or near institutions near either Jacksonville or Ocala.

Plaintiff J.H. complains of events before and after being "transferred . . . to indefinite isolation at Florida State Prison, an adult prison, where he remains and is one of the only teenagers there." *Id.* at ¶ 18. The majority of J.H.'s incarceration has been at Sumter Correctional Institution, Suwannee Correctional Institution and

3

Florida State Prison, all of which are in the Middle District of Florida.  For J.H., all relevant incident and incarceration witnesses are located in the Middle District.

Plaintiff Meddler alleges that she is incarcerated at the Lowell Correctional Institution.  *Id.* at ¶ 23.  Ms. Meddler's confinement has been limited to Lowell. Lowell is in the Middle District of Florida.

Plaintiff Espinosa alleges that he is currently incarcerated at the Reception and Medical Center.  *Id.* at ¶ 30.  The Reception and Medical Center is in the Middle District of Florida.  Plaintiff Espinosa complains of a variety of issues -- some of which allegedly occurred "before he was placed in isolation."  *Id*. His "isolation" allegedly occurred in 2018.  *Id.* at ¶ 31.  Within the last four years, Mr. Espinosa has been incarcerated at Dade Correctional Institution, Everglades Correctional Institution, Martin Correctional Institution, and South Florida Reception Center which are located in the Southern District of Florida.  During that time, Mr. Espinosa has also been incarcerated at Florida State Prison and the Reception Medical Center which are in the Middle District of Florida.  Since the focal point of the claims are 2018 and later when Mr. Espinosa became "isolated", the relevant witnesses will be in Martin County (Southern District), Florida State (Middle District) and Reception and Medical Center (Middle District).

Plaintiff Burgess alleges he is currently incarcerated at Suwannee Correctional Institution, *id.* at ¶ 36, which is in the Middle District. Mr. Burgess

4

alleges that he has been subjected to isolation since September 2017. *Id.* Mr. Burgess has been incarcerated at Suwanee since June 2017.

Plaintiff Kendrick alleges that he is currently incarcerated at Florida State Prison, *Id.* at ¶ 42, which is in the Middle District. Plaintiff Kendrick alleges that he was isolated in administrative confinement on June 20, 2018 and then Maximum Management. *Id.* There are no acts complained of before that date. From June 20, 2018 until the Amended Complaint was filed, Mr. Kendrick was incarcerated at Florida State Prison for 369 days (Middle District) and at Jackson Correctional Institute (Northern District) for eight days. After eight days at Jackson, Mr. Kendrick returned to Florida State Prison for three months. Before Florida State Prison, Mr. Kendrick was incarcerated at Graceville Correctional Facility for approximately 3 years, which is a private state prison located in Jackson County (Northern District).

Plaintiff Hill alleges that he is currently isolated at Santa Rosa Correctional Institution. *Id.* at ¶ 47. He claims that he has been isolated for almost eight years. *Id.* However, FDC records show that his current incarceration began in 2014. Since entering prison in 2014, Plaintiff Hill has been incarcerated at many institutions in both the Middle and Northern Districts of Florida. In the past three years, Plaintiff Hill has been housed at Santa Rosa (Northern District) for approximately 1 year and 3 months, with the remainder of his time spent at Florida

State Prison (Middle District), Reception and Medical Center (Middle District), Union Correctional (Middle District), and Suwannee Correctional (Middle District).

The center of gravity for these claims is the Middle District of Florida. Five of the seven plaintiffs (Harvard, J.H., Meddler, Espinosa, and Burgess) have almost all, if not all, of their incarceration in the Middle District and Southern District. And, as for Kendrick and Hill, a large portion of the time spent in prison related to the claims asserted was in the Middle District. The focal point of the claims made for these plaintiffs is overwhelmingly in the Middle District of Florida. Any analysis of any other claims will substantially involve institutions and witnesses located in the Middle District.

This chart represents the mileage between the most relevant institutions and the courthouses:[1]

| Institution | Miles to Jacksonville | Miles to Ocala | Miles to Tallahassee |
|---|---|---|---|
| Florida State Prison (M.D. Fla.) | 48 | 65 | 147 |
| Suwannee (M.D. Fla.) | 77 | 89 | 92 |
| Lowell (M.D. Fla.) | 96 | 10 | 175 |

---

[1] To the extent necessary, the Defendants request judicial notice of the mileage listed, which were obtained from Google Maps.

| Reception Medical (M.D. Fla.) | 56 | 72 | 132 |
| Sumter (M.D. Fla.) | 148 | 47 | 226 |
| Santa Rosa (N.D. Fla.) | 334 | 353 | 173 |

Analyzed below, the case law favors proximity in cases involving prisoner rights.  This motion should be granted because:  1.  The center of gravity of the plaintiffs' allegations occurred in the jurisdiction of the Middle District of Florida; and 2.  The proximity of the institutions and the witnesses who are attached to or associated with those institutions are closer to the courthouses in the Middle District's Jacksonville or Ocala Divisions.

III.   ARGUMENT

   A.   **This Court has authority under § 1404(a) to transfer this matter to the Middle District of Florida**

A district court may transfer any case to any other district where the case originally may have been brought. 28 U.S.C. § 1404(a). The decision to transfer an action pursuant to § 1404(a) is left to the "sound discretion of the district court." *Roofing & Sheeting Metal Serv. v. La Quinta Motor Inns*, 689 F.2d 982, 985 (11th Cir. 1982).

> **B.    Prisoner Cases should be transferred to the prisoner's place of incarceration or where the claim arose.**

The leading case relating to transfers under 28 U.S.C. § 1404(a) in cases brought by prisoners is the D.C. Circuit Court of Appeals' *en banc* decision in *Starnes v. McGuire*, 512 F. 2d 918 (D.C. Cir. 1974). In *Starnes,* prisoners challenged the district courts' decisions to transfer their cases to the district courts where the prisoners were incarcerated. The prisoners' argument in favor of venue in the District of Columbia was based on "attacking the general policy" of executive branch decisions made in Washington, D.C. *Id.* at 926. But, the D.C. Circuit disagreed. The court explained:

> The essential element in this argument is the concept that the difficulties of transferring a prisoner to this district for hearing are an inconvenience only to the prisoner, and that he should be able to force the court to ignore such inconveniences. We believe, however, that the greater ease with which federal officials can travel to the prison to give evidence, as opposed to the difficulties of transporting the prisoner, is an appropriate factor to be considered, and one that the prisoner cannot eliminate by stating his preference for this forum.

*Id.* at 927-928. The court further explained, clarifying earlier decisions involving inmate venue decisions:

> [A]bsent extraordinary circumstances which we need not today delineate, such actions should ordinarily be transferred as a matter of course. We noted several reasons why we thought this course to be in the interest of justice. The first was that the transfer is responsive to the Congressional purpose underlying the 1962

8

>     amendment [to the venue statute].   Second, we
>     considered such transfer to be desirable as a practical
>     matter since, if an evidentiary hearing is necessary to
>     resolve disputed issues of material fact, the inmate will
>     be readily available.

*Id.* at 923 (internal quotations, footnote, and paragraph break omitted).

The *Starnes* court deepened its analysis, focusing on the true nature of the allegations in the pleadings. The plaintiff's allegations attacking the "national policy" were outweighed by the central role the inmate's "particular circumstances" would play in the case. The court found that the allegations "required evidence from [the inmate] and other persons better available in Kansas." *Id.* at 929.

In the present case, the Amended Complaint's factual allegations about the Plaintiffs relate to their purported assignment to restrictive housing that was controlled by and occurred at the institution level. The testimony of correctional officials, classification professionals, correctional officers, mental health professionals, medical professionals and inmates at the institution level which resulted in those restrictions will be critical. The particular circumstances of each Plaintiff's assignment to restrictive housing and the progress or lack of progress through various forms of restrictive housing seem to be at the center of the Plaintiffs' allegations.

Like many courts, the Northern District of Florida routinely transfers prisoner civil suits *sua sponte* to the district and division where the Plaintiff is incarcerated. *Martin v. Horn*, No. 4:18-cv-132-RH-/MJF, 2019 WL 1866313, *2 (N.D. Fla. Apr. 5, 2019) ("There is a long-approved practice of permitting a court to transfer a case *sua sponte* under the doctrine of forum non-conveniens, as codified at 28 U.S.C. § 1404(a) as courts have looked to various factors relating to the private interest of litigants and the public interest in the fair an efficient administration of justice.") (citing *Tazoe v. Airbus, S.A.S.,* 631 F. 3d 1321, 1336 (11th Cir. 2011); *Walker v. Grubb*, No. 3:18-cv-2182- MCR/EMT, 2019 WL 542113, *2 (N.D. Fla. Jan. 10, 2019) ("In the instant case, the acts or occurrences forming the basis of the complaint occurred in Pinellas County, Florida, which is located in the Middle District of Florida. Thus, attendance of witnesses and availability of sources of proof favor a transfer there. Moreover, the community in the Northern District of Florida appears to have no relation to the litigation at issue."); *Jemison v. Florida State Prison*, No.: 16-20034-cv-GAYLES, 2016 WL 8671826, *2 (S.D. Fla. Jan. 8, 2016) (finding majority of the material witnesses and evidence is in the Middle District); *see also Armington v. Atkinson*, No.: 4:18-cv-541-MW-CJK, 2018 WL 7019057, *1 (N.D. Fla. Dec. 11, 2018) *1 (same); *Kidrowski v. Rossamano,* No. 5: 2019-cv-65-MCR/MJF, 2019 WL 2455262, *2 (N.D. Fla. March 19, 2019) (same). In fact, judges of the Northern District have

precluded some inmates from improperly filing complaints improperly venued in the Northern District when they are incarcerated in the Middle District. *See, e.g., Haynes v. U.C.I. Secretary,* No. 1:08-CV-00011-MP-AK, 2008 WL 465482 (N.D. Fla., Feb. 19, 2008).

    **C.    The § 1404(a) Factors Overwhelmingly Favor the Middle District of Florida, the Jacksonville or Ocala Division, rather than the Northern District**

        **1.    The Convenience of the Parties and Witnesses**

An important category of witnesses in this lawsuit will be employees and former employees of the Department of Corrections who have personal knowledge either as observers or victims of serious violence and other incidents which resulted in Plaintiffs' restrictive housing. Minimizing inconvenience for current and former Department employees is of significant concern for the Department. Some witnesses will be over 100 miles away from Tallahassee, which can be expected to result in almost four hours of round-trip drive time under most conditions. Such trips are likely to involve hotel and meal expenses, as well, because witnesses will have to arrive the day before their testimony. Some witnesses may take less time to testify than others, but there will be a substantial number of such witnesses, and they are likely to be of critical importance regarding justification for the restrictions imposed on Plaintiffs.

In *Clark v. Crews,* No. 8:13-civ-2642-T-MAA, 2014 WL 667825 (M.D. Fla. Feb. 20, 2014), the court considered a §1404(a) motion to transfer a wrongful death case against the Department of Corrections. Judge Moody transferred the case to the Jacksonville Division because "the convenience of the forum for the witnesses is generally considered the single most important factor" under a §1404(a) analysis. The court reasoned:

> Defendants point out that, with the exception of Dr. Bala's part-time secondary residence in Polk County, none of the parties reside in or near the Tampa Division of the Middle District of Florida. In addition, the allegations relate to the medically and deliberately indifferent care Clark received at LCI, which is located in Bradford County, within the Jacksonville Division. Defendants also point out that material witnesses, like nurse Roberta A. Esposito and nurse Reina M. Thomas (who were originally named in the complaint), are located in Bradford County. It is also axiomatic that FDOC's employees, guards, and medical staff with relevant information are also located in Bradford County. The prisoners on Clark's cell block are also located in Bradford County.

*Id.* at *2.

Additionally, the Amended Complaint raises issues about the mental and physical health of the Plaintiffs. Witnesses at to these issues are often providers who are not the Department's employees. These witnesses will have to be compensated by the parties for the travel time lost for work, as well as their travel expenses. *See* Rule 45(c)(3) and 45(c)(1)(B)(1), Fed. R. Civ. P.

Plaintiffs will argue that their choice of forum is entitled to considerable deference. But, the Plaintiffs' choice of forum is given less weight when there is

little or no connection with the forum selected. *See Frasca v. Florida Department of Corrections,* No. 8:16-CV-1967-T-33JSS, 2016 WL 6879244, *2 (M.D. Fla. Nov. 22, 2016). That is the case here. Further, that preference is insufficient when many, if not most of the relevant witnesses reside in the Middle District of Florida and are beyond this court's subpoena power. *Id.* at *4; *see also Martinez v. Shulkin,* Case No. 1:17-CV-128-MW/CAS, 2017 WL 10821303 (N.D. Fla. 2017) *Windermere Corp v. Remmington Products, Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985).

An individual plaintiff's choice of venue and assertion of his or her own convenience is an unconvincing factor when the plaintiff is asserting rights as a potential class representative. *Owner-Operator Independent Drivers Ass'n, Inc. v. North American Van Lines,* 382 F. Supp. 2d 821, 824 (W.D. Va. 2005). In cases in which class rights are asserted, the court should further scrutinize where the actions complained of occurred, or put a different way, where the case facts have their center of gravity. *Family Wireless #1, LLC v. Automotive Technologies, Inc.*, 2015 WL 514350, *6 (E.D. Mich. 2015). As discussed in Section III, the center of gravity and focal point of the Plaintiffs' allegations are in the Middle District of Florida. As prospective class representatives, the centerpiece of the Plaintiffs' class allegations are more likely to be focused on actions which occurred at prisons in the Middle District of Florida. Furthermore, the greater weight of class relief is

centered on institutions found in greater numbers within the Middle District of Florida.

### 2. Location Of Documents And Relative Ease Of Access To Evidence

Most relevant documents will be scanned into an electronic format if they are not already electronically stored. Even so, in prison cases, given the predominance of hard copy documents and ease of access to witnesses with knowledge of those documents, the location of documentation regarding the operative facts of the case "still weighs slightly in favor of transfer" to the district or division in which the alleged wrongful acts occurred. *Frasca,* 2016 WL 6879244 at *3.

### 3. The Locus of The Operative Facts

Florida courts have consistently recognized the importance of this factor. *See, e.g. Frasca,* 2016 WL 6879244 at *4 (location of prison and witnesses at prison at which complained of incident occurred "weighs heavily in favor of transfer" compared to current inmate location). In the instant case, the greater weight of the alleged disputed facts pertaining to the Plaintiffs occurred at institutions in the Middle District of Florida. The potential witness list is overwhelmed by witnesses located in the Middle District of Florida. While there are potential witnesses which are high-level officials of the Department of Corrections, those witnesses have authorized counsel to state that they agree to

appear in Jacksonville or Ocala for trial. This factor is heavily weighted in favor of transfer.

### 4. The Availability of Process To Compel Witnesses To Attend Trial

Few of the witnesses, in this case, are located within subpoena range to Tallahassee. As far as current FDC employees, FDC must consider the time to testify expended by correctional officers and those personnel assigned to institutions. FDC needs correctional officers at its facilities, not on the road or in court. Further, the court may need testimony from independent medical providers and contractors who may demand to be paid their normal hourly rate to appear beyond 100 miles for a trial subpoena.

FDC has recognized that several witnesses who used to be employed by FDC are no longer with the Department. These non-party witnesses should not be burdened with long distance travel. It is likely that some current employee witnesses may not be employed at the time of trial simply based upon normal attrition and retirement. FDC will not be able to compel such former employees (and some current, non-managerial employees) to trial, unless they live within 100 miles of the courthouse where the trial is set. FDC has compiled a preliminary witness list for the purposes of evaluating this factor, which is attached hereto as Exhibit 1.

This factor weighs heavily in favor of transfer because it would benefit both parties and third party witnesses who should not be asked to incur unnecessary inconvenience and cost to testify and nor should either party lose the testimony of witnesses who are outside of subpoena range.

### 5. The Relative Means Of The Parties

FDC recognizes that Plaintiffs themselves are unable to fund this litigation; however, Plaintiffs' counsel must be prepared to commit the necessary resources in representing the class in order to be appointed class counsel.  *See* Fed. R. Civ. P. 23(g)(1)(A)(iv) ("Appointing Class Counsel: (A) Must Consider: the resources that counsel will commit to represent the class.")  The Plaintiffs are represented by four lawyers from the Southern Poverty Law Center, three attorneys from Florida Legal Services, and one attorney from the Florida Justice Institute.  An online version of SPLC, Inc.'s Consolidated Statement of Financial Position of October 31, 2018 indicates Endowment Fund net assets of $471,046,606.00 and total assets exceeding half a billion dollars.[2]  Even considering that FDC is a state agency, this factor is neutral.

---

[2] https://www.splcenter.org/sites/default/files/1018_final_financial_statement_short.pdf last viewed on July 19, 2019.

### 6. Familiarity with Governing Law

This factor is immaterial since the governing laws are federal law and state law. The transferor jurisdiction and the proposed transferee jurisdiction are both in the State of Florida. This factor is neutral.

### 7. Trial Efficiency and Interests Of Justice

In this case, the acts complained of by the individual Plaintiffs and the vast majority of the witnesses to those acts, center on five correctional institutions in the Middle District of Florida. Another factor that courts often consider is the relationship between the forum and the case. In this case, the effects of the case relate primarily to the specific institutions in the Middle District of Florida.

Prisoner cases and especially cases involving prisoner conditions of confinement are traditionally centered in the district in which the institution or institutions in question are located. As described in section III., B., the "interest of justice" and "convenience of witnesses" balance has favored the institutional district rather than the policy making district for almost 50 years.

## V. CONCLUSION

The issues before the court are clear. The Eleventh Circuit factors for transfer of venue and special considerations for prisoner cases weigh heavily in favor of transfer to the Middle District of Florida. There is no reasonable basis not to transfer this case to the Middle District.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(b), undersigned counsel hereby certifies that they have conferred with Plaintiffs' counsel regarding this motion and Plaintiffs' counsel advised that they oppose the motion.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I certify that this motion and memorandum complies with the type-volume limitation set forth in Local Rule 7.1(F) because it contains 3,661 words, excluding the parts exempted by the Rule.

August 6, 2019                              Respectfully submitted,

*s/ Daniel J. Gerber*
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
E-mail: dgerber@rumberger.com (primary)
            docketingorlando@rumberger.com and
            dgerbersecy@rumberger.com (secondary)
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

**Attorneys for Defendants**