UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
through his parent and natural
guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
themselves and all others similarly
situated,

     Plaintiffs,

vs.

                             CASE NO. 4:19-cv-00212-MW-CAS

MARK INCH, in his official
capacity as Secretary of the Florida
Department of Corrections; and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

     Defendants.

_____/

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR DISPOSITIVE MOTION
TO DISMISS CLAIMS ASSERTED BY PLAINTIFFS J.H., ANGEL
MEDDLER, JEROME BURGESS, AND JAMES KENDRICK, JR.,
AND
PARTIALLY DISPOSITIVE MOTION TO DISMISS
CLAIMS BY PLAINTIFFS ADMIRE HARVARD,
<u>JUAN ESPINOSA, AND JOHNNY HILL</u>**

Defendants, Mark Inch, in his official capacity as Secretary of the Florida Department of Corrections, and the Florida Department of Corrections ("FDC"), seek dismissal of the Plaintiffs' Amended Complaint, because it does not comply with Fed.R.Civ.P. 8(a)(2), it fails to address each Plaintiff's limited standing, it improperly joins all Plaintiffs in this lawsuit in violation of Fed.R.Civ.P. 20(a)(1), and it otherwise fails to state the causes of actions that have been asserted. The following claims should be dismissed with prejudice, due to the Plaintiffs' failure to administratively exhaust those claims: (i) all of the claims asserted by J.H., Angel Meddler, Jerome Burgess, and James Kendrick Jr., (ii) the claims asserted by Admire Harvard under the Americans with Disabilities Act (Second Cause of Action) and Section 504 of the Rehabilitation Act (Third Cause of Action), (iii) the claims asserted by Admire Harvard under 42 U.S.C. §1983 (First Cause of Action), excepting only any such claims that are based on visitation and phone privileges, (iv) the claims asserted by Juan Espinosa, excepting only any such claims that are based on his alleged need for more programs to help with his recovery and communication, and (v) the claims asserted by Johnny Hill under 42 U.S.C. §1983 (First Cause of Action). In support thereof, Defendants state as follows:

## I.   INTRODUCTION

In this purported class action lawsuit, seven different Plaintiffs, who are inmates at six different Florida prisons, and who have various different alleged

mental and physical infirmities, complain about four different types of restrictive housing used by the FDC. In their Amended Complaint, Plaintiffs assert for various different reasons that their confinement violates (i) the Eighth Amendment of the United States Constitution, (ii) the Americans with Disabilities Act, and (iii) Section 504 of the Rehabilitation Act.

Plaintiffs include general allegations pertaining to the FDC's "isolation policies and practices" (*see* Doc. 13, ¶¶59 and 84-123), but Plaintiffs do not identify which are policies and which are practices, which policies and/or practices pertain to each type of confinement, which policies and/or practices were allegedly implemented by each prison, or how each Plaintiff has been affected, if at all, by each policy and/or practice at issue. For example, Paragraph 69 of the Complaint references the heightened risk of falls by pregnant women, when there are no allegations that any of the Plaintiffs are pregnant or were pregnant during their incarceration.

The bulk of the Amended Complaint is organized in three general sections: (i) a broadside attack on the use of what the Plaintiffs sometimes refer to as "isolation" without consistent definition (Doc. 13, pp. 26-37), (ii) a description of the seven plaintiffs and their alleged mental and physical infirmities (Doc. 13, pp. 5-23), and (iii) a general listing of the alleged policies and practices that apply to the four types of restrictive housing, which may or may not be in place at each of

the prisons in which the plaintiffs are housed (Doc. 13, pp. 37-78). But there are insufficient allegations connecting these three sections together, or stating whether and how a specific policy or practice has caused a specific mental or physical injury to a specific plaintiff.

This memorandum of law addresses the Plaintiffs' pleading deficiencies in Section III.  Section IV discusses the Plaintiffs' lack of standing to pursue relief for the alleged wrongful acts.  Section V addresses the issue of improper joinder of these Plaintiffs together in one lawsuit.  Section VI sets out the reasons why some of the Plaintiffs' allegations should be dismissed for failure to exhaust administrative remedies.  Finally, Section VII states that some of the Plaintiffs' claims should be brought as habeas corpus claims, not civil rights claims, and that some of the individual complaints made do not state a claim under existing precedent.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2). Further, the plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A complaint must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.

*See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff is unable to state a cause of action and further leave to amend the complaint is futile, claims should be dismissed with prejudice. *See Muhammad v. JPMorgan Chase Bank, NA*, 567 Fed. App'x 851, 853-54 (11th Cir. 2014); *Locke v. SunTrust Bank*, 484 F.3d 1343 (11th Cir. 2007).

## III.   THE AMENDED COMPLAINT VIOLATES RULE 8(a)(2)

The Amended Complaint does not comply with Federal Rule of Civil Procedure 8(a)(2) and should be dismissed on that basis alone. At 94 pages and 205 separate paragraphs, the Amended Complaint should state a claim for relief directly. It does not. It contains unnecessary and inflammatory allegations and unsupported conclusions, and it does not adequately allege <u>facts</u> to plausibly support the claims asserted by <u>each</u> Plaintiff. All of the general allegations (Paragraphs 1 through 175) are incorporated into each of the three causes of action, with no attempt to distinguish which ones pertain to Plaintiffs' claim under 42 U.S.C. §1983 (First Cause of Action) and which ones pertain to Plaintiffs' claim of disability discrimination under the Americans With Disabilities Act and Section 504 of the Rehabilitation Act (Second and Third Causes of Action).

When faced with the burden of responding to such a pleading, it is the trial court's obligation to strike the pleading and force the plaintiff to replead to the extent possible under Rule 11, Federal Rules of Civil Procedure. *United States ex*

*rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) ("When faced with a shotgun pleading, the trial court, whether or not requested to do so by a party's adversary, ought to require the party to file a repleader.") (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001)).

### A.   Unnecessary and Inflammatory Allegations

Section V.A. of the Amended Complaint (pages 26-36) contains allegations that are not specific to any of the claims raised by the Plaintiffs, nor even specific to the alleged policies and practices at issue in this case. Rather, the section is a collection of writings by others over the last 200 years regarding alleged so-called "harms of isolation."  There are quotes from Alexis de Tocqueville and Charles Dickens, as well as references to law review articles, studies found online, and policies implemented in other states. But there is no attempt to connect those writings to the specific confinement policies and practices pertaining to the Plaintiffs.

More importantly, the allegations in Section V.A. are not alleged <u>facts</u> as required by Rule 8(a)(2). They are alleged opinions written by others over various time periods and regarding restrictive housing events and policies that are not at issue in this case, and people and entities that are not parties to this case.

6

### B.     Non-Specific Allegations

Sections V.C. through V.G. (pages 41 through 60) purport to set out the FDC's alleged "policies and practices" which may be at issue in this case. However, there are no allegations clarifying which are alleged to be policies of the FDC and which are practices. Further, there are no allegations identifying which prisons have implemented the practices identified, and which types of restrictive housing to which they pertain (per Paragraph 75 of the Amended Complaint, there are four different types of "confinement" – Maximum Management, Disciplinary Confinement, Close Management, and Administrative Confinement). Finally, and perhaps most importantly, there are no allegations identifying which Plaintiffs have been affected by the policies and/or practices and in what way(s).

### C.     Unsupported Conclusory Statements

The Amended Complaint is also deficient because, despite its length, it contains conclusory statements that are not supported by alleged facts. For example, in Paragraph 15 Plaintiffs allege that "Defendants refuse to modify their isolation policies and practices to accommodate Ms. Harvard's disability and protect her from harm caused by isolation."  However, Plaintiffs do not identify what policies and practices are referred to in that allegation, how Plaintiffs contend they should be modified, what modifications have been requested by Ms. Harvard,

what Ms. Harvard's disability is, and what harm has been caused to her by her confinement in close management.[1]

## IV.   STANDING ISSUES

Standing is a jurisdictional prerequisite and the question of whether a plaintiff has standing to sue is properly addressed in a Rule 12(b)(1) motion. *See, e.g., Steel Co. v. Citizens For A Better Env't,* 523 U.S. 83, 102 (1998). Standing is evaluated at the time a plaintiff's complaint is filed, and as the party invoking federal jurisdiction, it is a plaintiff's burden to establish that (1) the plaintiff has suffered an "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In addition, when

---

[1] Additional conclusory statements can be found in paragraphs 110 (alleging without factual support that "some people" cannot sit or stand in an exercise cage "due to their disabilities, which FDC refuses to accommodate"), 126 ("On information and belief, FDC staff attended a similar program…"), 151 (lacks factual support for allegations regarding disability discrimination), 160 (regarding unexplained policies and practices of "other prison systems"), 177 (insufficient facts to support that "Defendant Inch has caused the wanton infliction of pain upon Plaintiffs"), 183 (concluding that some of the Plaintiffs are qualified individuals with disabilities as defined by the ADA), 190 (alleging without factual support that some of the Plaintiffs were "unnecessarily placed and retained in isolation due to their disabilities"), 193 (concluding that some of the Plaintiffs are individuals with disabilities as defined in Section 504 of the Rehabilitation Act), and 200 (failure to identify what accommodations would be reasonable).

injunctive relief is requested, a plaintiff must show "a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury." *Wooden v. Board of Regents of Univ. System of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001).

### A.   Plaintiffs Do Not have Standing to Challenge Policies and Practices Pertaining to Maximum Management, Disciplinary Confinement, and Administrative Confinement

As Plaintiffs recognize in the Amended Complaint, there are four separate types of restrictive housing: Maximum Management (MM), Close Management (CM), Disciplinary Confinement (DC), and Administrative Confinement (AC). Doc. 13, ¶ 75; *see also* F.A.C. Rules 33-601.820, 33-601.800, 33-602.222, 33-602.220. Further, as noted by Plaintiffs, CM includes three separate categories (CM I, CM II, and CM III). Doc. 13, ¶80; *see also* F.A.C. Rule 33-601.800(2). Each type and level of confinement has varying levels of restrictions and privileges. For example, an inmate on CM III is eligible to receive one two-hour *contact* personal visit, while an inmate on CM I, MM, or DC is not. See F.A.C. Rules 33-601.800 (11)(b) and (d); 33-601.820(5); 33-602.222(4). In addition, inmates on CM II and III are allowed access to the dayroom for social purposes which allows contact with other inmates and watching television, while inmates on CM I, MM, and DC are not. *Id.* CM II and III inmates are eligible for work assignments, while CM I, MM, and DC inmates are not. *Id.* 33-601.800(13). The

restraint and escort requirements are also different depending on the CM level. *Id.* F.A.C. Rule 33-601.800(14).

What this demonstrates is that the "conditions of confinement" will vary depending on the category of housing. Challenges to the lack of visitation, education, social interaction, reading materials, etc., will depend on the inmates' specific category of housing because the privileges and restrictions vary depending on the category. As a result, a Plaintiff only has Article III standing to challenge the "conditions of confinement" applicable to that Plaintiff's category of restrictive housing.

As standing is a threshold issue, addressing the issue of standing at the motion to dismiss phase of the litigation, rather than waiting for the class certification phase, is not premature. *See Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir. 1987); *Wooden v. Board of Regents,* 247 F.3d 1262, 1283, n. 20 (11th Cir. 2001) ("[T]he fact that the suit was brought as a class action does not alter [the plaintiff's] obligation to show that he individually satisfies the constitutional requirements of standing."); *Bohlke v. Shearer's Foods, LLC,* 2015 WL 249418, *3 (S.D. Fla. Jan. 20, 2015) (holding that the "[p]laintiff's first argument, that such issues are more properly resolved upon a motion for class certification, directly contradicts Eleventh Circuit precedent" (citing *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000)).

10

This is consistent with the general principles set forth in the Eleventh Circuit's opinion in *Prado–Steiman* that "[w]ithout individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class" and that, "prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman*, 221 F.3d at 1279.

A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class. *O'Shea v. Littleton,* 414 U.S. 488, 494, (1974). Moreover, it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim. This relationship between standing and the class action has been discussed in some detail by the Supreme Court:

> It is not enough that the conduct of which the plaintiff complains will injure *someone.* The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind

possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.

*Blum v. Yaretsky,* 457 U.S. 991, 999 (1982) (citing *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166–67, (1972)); *see also Griffin,* 823 F.2d at 1483.

Here, Plaintiffs seek to pursue claims on behalf of Florida inmates who are subject to different forms of privileges and restrictions. But Plaintiffs only have standing to challenge policies that will affect them, not policies that affect other unnamed inmates. As a result, Plaintiffs Kendrick and Hill only have standing to challenge the "conditions of confinement" related to CM I status (Doc. 13, ¶¶42, 47); Plaintiffs Espinosa and Burgess only have standing to challenge the "conditions of confinement" related to CM II status (Doc. 13, ¶¶31, 36); and Plaintiff J.H. only has standing to challenge the "conditions of confinement" related to CM III status. (Doc. 13, ¶19).

Further, as alleged in the Amended Complaint,[2] Plaintiffs Harvard and Meddler are not currently confined. Doc. 13, ¶¶13,26.  For this reason, they do not have Article III standing to raise challenge to <u>any</u> condition of confinement. *See O'Shea,* 414 U.S. at 496 ("Past exposure to illegal conduct does not in itself show

---

[2] A plaintiff must demonstrate Article III standing as of the date of the operative complaint. *See Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1275 (11th Cir. 2003) (citing *County of Riverside v. McLaughlin,* 500 U.S. 44, 51 (1991)).

a present case or controversy regarding injunctive relief"); *Lyons*, 461 U.S. at 101 (same); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S 167 (2000) ("[i]f a plaintiff lacks [Article III] standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum.").

No named Plaintiff alleges that he or she is in Maximum Management, Disciplinary Confinement, or Administrative Confinement. As such, Plaintiffs lack Article III standing to assert claims on behalf of unnamed putative class members that may be subject to different and varying restrictions and privileges based on their category of confinement.

## B. Plaintiffs Lack Article III Standing to Challenge the Policies and Practices of Other Institutions

The seven named Plaintiffs are at six different institutions. Doc. 13, ¶¶13, 18, 23, 30, 36, 42, 47. Based on a fair reading of the Amended Complaint, the conditions of confinement vary not only by the category of confinement, but also by the institution where the inmate is housed. The following are non-exhaustive examples:

1. Plaintiff J.H. claims that in the months before the lawsuit was filed, he was only taken to the exercise cages once and dayroom twice. Doc. 13, ¶19. Yet no other Plaintiff makes a similar allegation.

2. Plaintiff Meddler claims that she was provided only a couple hours a week of education services (Doc. 13, ¶28), but no similar allegation has been made by the other Plaintiffs. Indeed, Plaintiff Harvard claims

she was provided no education services whatsoever (Doc. 13, ¶16), and Plaintiff J.H. claims he was provided only infrequent instruction through his cell door (Doc. 13, ¶20).

3.    The Amended Complaint describes "escort chairs" that are used at Lowell Correctional Institution Annex. Doc. 13, ¶116. Yet Plaintiffs J.H., Kendrick, Burgess, Espinosa, and Hill have no reasonable possibility of being subject to the use of the "escort chair" at Lowell because they are not housed there.

4.    Plaintiffs complain that at Suwanee and Union Correctional Institutions, prisoners are restrained in cages or partitions during group therapy. Doc. 13, ¶96. But Plaintiffs Kendrick and J.H., who are at Florida State Prison, are not subject to that alleged practice.

The reason this becomes an issue is because the Amended Complaint does not challenge any state policy or code provision, rather it instead describes a series of alleged practices implemented at the institution-level. *See, e.g.,* Doc. 13, ¶82 ("despite FDC's written policies, in practice it determines restriction by staffing availability, housing location, . . ."), *id.* ("And even if FDC followed its own written policies, which it frequently does not, . . .); ¶ 109 ("At some prisons, staff remove a person's restraints once inside the cage, but at other prisons staff leave the person restrained"); ¶111 ("At Florida State Prison" there are not enough cages for everyone in isolation).

Because Plaintiffs are not challenging a uniform, state-wide policy, the purported unconstitutional implementation of any policy or practice will be institution- and often inmate-specific. As a result, each Plaintiff has standing to

pursue only those claims that are based on the policies and practices of the institution where he or she is currently housed.

## V.   THE JOINDER OF ALL PLAINTIFFS' CLAIMS IN ONE LAWSUIT VIOLATES FED.R.CIV.P. 20(a)(1)

Federal Rule of Civil Procedure 20(a)(1) permits more than one person to join in one action as plaintiffs if:   (1) they "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all plaintiffs will arise in the action."   Even where these requirements are met, the Court has discretion whether or not to permit such joinder. *See Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1322 (11th Cir. 2000).

Whether claims arise from the same transaction, occurrence, or series of transactions or occurrences, turns on whether a logical relationship exists among the claims. *See Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F. 2d 1453, 1455 (11th Cir. 1985). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claims."   *Id.* (citing *Plant v. Blazer Fin. Servs., Inc.*, 598 F. 3d 1356, 1361 (5th Cir. 1979)); *see also Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381, n.1 (11th Cir. 1991) ("[C]laims that do not arise from common operative facts are not logically related."

Here, the Amended Complaint as drafted asserts different facts supporting the claims asserted by each Plaintiff. Each Plaintiff has different and unique alleged mental and physical impairments, each is in a different prison (except for J.H. and Kendrick, who are both at Florida State Prison), each complains of different conditions of confinement, each complains of different specific examples of alleged misconduct and discrimination, and, although not clearly alleged, a reasonable inference is that each is seeking a different accommodation from the FDC.

Thus, even though the same causes of action are asserted by each Plaintiff (except for J.H., who is not included in the Second and Third Causes of Action), the individual claims held by each Plaintiff do not arise out of the same transaction, occurrence, or series of transactions or occurrences. As a result, Plaintiffs should be required to file separate lawsuits for their separate claims against Defendants.

## VI.   PLAINTIFFS' CLAIMS IN WHICH THEY HAVE FAILED TO FULLY EXHAUST THEIR ADMINISTRATIVE REMEDIES SHOULD BE DISMISSED WITH PREJUDICE

"Section 1997e(a), enacted as part of the Prison Litigation Reform Act ("PLRA"), provides that a prisoner must exhaust all available administrative remedies before bringing a federal action challenging prison conditions." *Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010). This is a mandatory requirement, *Woodford v. Ngo,* 548 U.S. 81, 85 (2006), and "applies to

all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005). A prisoner must exhaust each claim that he seeks to present in court and "[n]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. 199, 219-220 (2007).

An inmate has properly exhausted all available remedies when the inmate has used "all steps that the [prison] holds out, and doing so *properly* (so that the [prison] addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (quotation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit." *Johnson*, 418 F.3d at 1155.

The FDC has a grievance procedure, which is set forth in Chapter 33-103 of the Florida Administrative Code. Generally, inmates must begin the grievance process by submitting an informal grievance to the designated staff member, who forwards the informal grievance to the staff member responsible in the particular area of the problem. If the inmate is dissatisfied with the response to the informal

grievance, he can submit a formal grievance at the institution level within fifteen days of the response to the informal grievance. If the inmate is dissatisfied with the response to the formal grievance, to exhaust administrative remedies he must then file an appeal with the Office of the Secretary within fifteen days of the response to the formal grievance (hereinafter a "grievance appeal"). *See* F.A.C. Rules 33-103.005-008, 33-103.011(c). Grievance appeals may be returned without action if one of the conditions listed in Rule 33-103.014 are found to exist. *Id.*  F.A.C. Rule 33-103.014.

In a grievance appeal, an inmate must provide "all relevant information reasonably available to him." *Brown v. Sikes*, 212 F.3d 1205, 1208 (11th Cir. 2000). While this mandates no specific level of detail, there is a threshold level of information that an inmate must provide in the administrative process in order to meet the federal exhaustion requirement. *Goldsmith v. White*, 357 F. Supp. 2d 1336, 1339 (N.D. Fla. 2005). "This is so because, if an inmate was not required to provide enough information to allow prison officials to investigate the inmate's real complaint, the purposes for which Congress adopted the exhaustion require[ment] would not be met."  *Id.* Thus, "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Id.* (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)); *see also Curtis v. Johnson*, No. 5:04CV387-RH/WCS,

18

2006 WL 1653608, *2 (N.D. Fla. June 7, 2006); *Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002) ("The exhaustion requirement would be defeated if an inmate were permitted to raise additional issues and name additional defendants in a §1983 action that were never mentioned in the grievance.").

The "critical function of the grievance procedure is [to] provide the institution with notice of a problem such that they have an opportunity to address the problem internally." *Toenninges v. Georgia Dept. of Corrections,* 600 F. App'x 645, 649 (11th Cir. 2015) (affirming decision that general medical grievance that contained issues different than those in the deliberate indifference claim did not constitute exhaustion). For example, in *Martinez v. Minnis,* 257 F. App'x 261, 263 (11th Cir. 2007), the plaintiff brought a claim for purported harassment, retaliation and assault against various correctional officers. The plaintiff alleged that one officer took various actions against him in retaliation for his filing of numerous grievances or requests for administrative relief, including placing him in the special housing unit (SHU). *Id.* at 265. The Eleventh Circuit found that the plaintiff had exhausted his administrative remedies as to some of his retaliation claims, but he did not exhaust his remedies for the placement-in-SHU-retaliation claim. The court noted that although the plaintiff filed a request for administrative remedy based on his placement in the SHU, the request alleged only that he was placed in the SHU "without reasonable cause, but motivated for personal reasons by [officer

Minnis]." *Id.* at n.5. The court found the request made no allegation that the plaintiff had filed a grievance prior to the officer's actions or as to why Minnis took action against him. In fact, "the request for administrative remedies did not mention retaliation or use any words synonymous with indicating retaliation, nor did it provide the BOP with notice of alleged retaliatory action or the opportunity to correct it." *Id.* The Eleventh Circuit found that on that record, the plaintiff did not exhaust his administrative remedies with respect to the allegation the officer placed the plaintiff in the SHU as a retaliatory act. *Id.*

Another example is *Goldsmith v. White,* 357 F. Supp. 2d 1336, 1340, 1337 (N.D. Fla. 2005), in which the plaintiff brought a claim alleging a correctional officer took his contact lenses because he was a homosexual. Prior to filing the complaint, the plaintiff filed a series of grievances challenging the taking of his contact lenses, but he made no assertion that his sexual orientation had anything to do with the action. *Id.* The complaint was dismissed for failing to exhaust administrative remedies because not only did the plaintiff fail to include all known facts in his grievance appeal, but he failed to identify the problem (discrimination based on sexual orientation) or to mention the core facts on which his claim was based (that he is homosexual and that the officer used a bigoted reference when he took the action at issue). *Id.* at 1340-41.

This is in accord with other federal courts applying the PLRA's exhaustion requirement in other circuits. *See Ortiz v. McBride*, 380 F.3d 649, 653-54 (2d Cir. 2004) (finding the inmate plaintiff had exhausted his remedies as to his due process claim, but not as to his Eighth Amendment claim, since his administrative grievance did not allege Eighth Amendment violation); *Johnson v. Johnson,* 385 F.3d 503, 518 n.9 (5th Cir. 2004) (recognizing that Eighth Amendment and equal protection claims both arising out of alleged failure to protect inmate were "related," but concluding that they "reflect distinct problems with the prison staff" and that grieving one could not suffice to exhaust the other); *Pickett v. Hart,* 2008 WL 4446562, *2, n. 2 (M.D. Ga., Sept. 26, 2008) ("Plaintiff's general claims of deliberate indifference to a serious threat of harm do not provide prison officials with enough information to place them on notice of the claim or to provide them with an opportunity to resolve whether the denial was improper before being haled into court.") (internal quotations omitted); *Beltran v. O'Mara*, 405 F. Supp. 2d 140, 153 (D.N.H. 2005) (finding the fit between the various grievances and the conditions of confinement claims were too loose to support a determination that the inmate exhausted his remedies, except as to a single claim that arose out the deprivation of toilet paper); *Turner v. Goord*, 376 F. Supp. 2d 321, 325 (W.D.N.Y. 2005) (ruling that grievance over "nothing more than one discrete instance of maltreatment" did not exhaust inmate's claim alleging systemic problem);

*Degrafinreid v. Ricks*, 2004 WL 2793168, *13 (S.D.N.Y. Dec. 6, 2004) (ruling that inmate's grievance referring to missing hearing aids did not exhaust numerous other alleged violations of the Americans with Disabilities Act); *Cherry v. Slesky*, 2000 WL 943436, *1 & 7 (S.D.N.Y. July 7, 2000) (administrative grievance challenging disciplinary action did not exhaust the claim that the officer filed a false disciplinary report); *Bev v. Pa. Dept. of Corrections¸* 98 F. Supp. 2d 650, 660-661 (E.D. Pa. 2000) (appeal of disciplinary finding resulting from assault did not exhaust claim challenging resulting administrative custody status or medical treatment resulting from the altercation); *Payton v. Horn*, 49 F. Supp. 2d 791, 796 (E.D. Pa. 1999) (administrative exhaustion of disciplinary action did not exhaust resulting decision to keep the plaintiff in administrative custody or the improper withdrawal of funds from the plaintiff's inmate account).

Here, Plaintiffs' Amended Complaint fails to provide notice of the actual conditions of confinement that each individual Plaintiff is challenging. Plaintiffs include allegations about conditions of confinement with no statement that they themselves have experienced those claims.[3]   Likewise, Plaintiffs' Amended

---

[3] "That a suit may be a class action... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Complaint fails to provide notice of the actual ADA and Rehabilitation Act violations that are being claimed by each individual Plaintiff. Addressing the actual allegations specifically pled as to each named Plaintiff, it becomes clear that Plaintiffs have failed to exhaust their administrative remedies for each claim asserted.

### A.    Admire Harvard

Plaintiff Harvard alleges that Defendants have: (1) refused to modify their isolation policies and practices to accommodate her disability and protect her from harm; (2) sentenced her to disciplinary confinement despite the fact that she was 18, diagnosed with bipolar disorder, and prescribed anti-anxiety medication; (3) delayed in providing her with gender dysphoria treatment; (4) left her in a bare cell with nothing on but her underwear for days at time; (5) extended her time in disciplinary confinement for each disciplinary infraction; (6) never provided her with personal visits or telephone calls; (7) never provided her with reading materials (other than religious texts and case law); (8) never provided her with education; (9) never provided her with exercise outside of a cage; (10) punished her with a property restriction following a suicide attempt; and (11) placed her in a cycle of disciplinary infractions related to her mental health symptoms. Doc. 13, ¶¶13-17, 121, 133, 152.

Based on a review of the records of the office of the Secretary of the Department of Corrections, Plaintiff Harvard filed the following 52 grievance appeals from 2010 to the present:

| Appeal Number | Description | Disposition |
|---|---|---|
| 10-6-05480 | Challenge to disciplinary report | Denied |
| 10-6-05723 | Challenge to disciplinary report | Returned |
| 10-6-05792 | Challenge to disciplinary report | Denied |
| 10-6-05793 | Challenge to disciplinary report | Denied |
| 11-6-22913 | Retaliation, property damage, harassment | Returned |
| 11-6-25433 | Battery | Approved |
| 11-6-25026 | Wants to be removed from protective management | Returned |
| 11-6-28297 | Battery | Denied |
| 11-6-28630 | Retaliation, property damage | Denied |
| 11-6-29656 | Retaliation for grievances | Denied |
| 11-6-29655 | Food tray delivered with saliva and food was missing, officer wrote false disciplinary report | Denied |
| 11-6-29640 | Threats from officers, property damage | Denied |
| 11-6-33579 | Property damage | Denied |
| 11-6-37390 | Challenging heightened security classification | Denied |
| 12-6-01614 | Battery | Denied |
| 12-6-02883 | No timely response to grievances | Returned |
| 12-6-05287 | Property Damage | Denied |
| 12-6-05288 | Officers refused to give him lunch | Denied |
| 12-6-05903 | Threats from officers | Denied |
| 12-6-08632 | Officers said they were playing with his mail | Denied |
| 12-6-08633 | Threats from officers | Denied |
| 12-6-10717 | Several grievances about prior battery incidents, warden has done nothing | Denied |
| 12-6-17940 | Sexual harassment, sexual assault | Denied |
| 12-6-18629 | Challenge to disciplinary report | Denied |
| 12-6-18630 | Challenge to disciplinary report | Denied |

| 12-6-18419 | Not allowed to wear split that was prescribed by doctor | Denied |
|---|---|---|
| 12-6-20097 | Challenge to disciplinary report | Denied |
| 12-6-22121 | No response to grievance appeal | Denied |
| 12-6-29474 | Threats from officers | Returned |
| 12-6-31683 | Receiving empty food trays | Denied |
| 12-6-31555 | Mistreatment, empty food trays, mental health/ medical covering up misconduct, officers threatened to poison food | Returned |
| 12-6-31830 | Refusing to eat and take psychotropic medications because people are trying to kill him | Returned |
| 12-6-31831 | Hunger strike | Returned |
| 13-6-24446 | Mental health staff has plot to kill him | Returned |
| 13-6-25387 | Mental health staff has plot to brutalize him | Returned |
| 14-6-06122 | Sexual harassment | Denied |
| 14-6-07630 | Immortals are going to snatch her soul, wants blood on walls and floors | Returned |
| 14-6-26492 | Challenging special review | Denied |
| 14-6-30263 | Psychologist is a bona fide witch, inadequate mental health treatment | Denied |
| 14-6-31201 | Waiting for response to grievance appeal | Returned |
| 14-6-30631 | Mental health is teaming up to assassinate him | Denied |
| 14-6-35781 | Wants more mental health counseling, believes it is being withheld in retaliation | Returned |
| 15-6-08591 | Threats from warden | Denied |
| 15-6-22499 | Sexual harassment | Denied |
| 16-6-19146 | Placed on self-harm observation status without valid reason | Denied |
| 17-6-19946 | Challenging disciplinary report | Denied |
| 17-6-19947 | Challenging disciplinary report | Returned |
| 18-6-30340 | Challenging disciplinary report | Denied |
| 18-6-04237 | Challenging disciplinary report | Denied |
| 18-6-32709 | Challenging DC status | Denied |
| 18-6-32696 | Complaint about close management review | Denied |
| 19-6-00205 | Hunger strike, battery | Denied |

Declaration of Alan McManus, Exs. 1-2.

Only two grievance appeals, both of which were submitted in 2018, have any bearing on the issues in this case. The first, Appeal No. 18-6-32709, states:

> The appellant was placed on Disciplinary Confinement ("DC") status on September 6th, 2009. The appellant was then placed on Close Management ("CM") on 1/10/10 still with "DC" status. The appellant has been on "DC" status for over 8 consecutive Years! This [illegible] haven't allowed the appellant to receive visitation from family and friends. Furthermore, this status haven't allowed the appellant to use the [illegible] numbers to speak with his family and friends via telephone. This "DC" status doesn't allow the appellant to have privileges that being on Administrative Confinement ("AC") status allows. As a result, the appellant has and is suffering from psychological [illegible] this prolonged isolation and sensory deprivation imposed [illegible] this "DC" status.

Harvard went on to discuss her recent disciplinary reports and why they should not have been considered. She claimed being on CM and DC for 8 years constituted a significant and atypical hardship. She also claimed that she had not been reviewed by mental health in 8 years. She also stated, directed to no specific conduct, that this also "constitutes a violation of the American with Disabilities Act." Finally, in the grievance appeal, she requested to be taken off DC status.

The second potentially applicable grievance appeal, Appeal No. 18-6-32696, was submitted the same day. In that grievance appeal, Harvard claimed her close management review was not in compliance with Rule 33-103.005(1) and claimed she was not allowed to speak during her review. In addition, she brought up many of the same concerns about her disciplinary records and her isolation. She sought

to be released from CM and/or to be released to a less restrictive housing level of CM. She also asked that her DC status be revoked.

Neither of these two grievance appeals mention Harvard's claims regarding gender dysphoria treatment, lack of reading materials, lack of education, or lack of exercise. They further do not address the imposition of any property restriction. And even though the phrase "American with Disabilities Act" is mentioned in Appeal No. 18-6-32709, Harvard did not provide any level of detail informing the basis for that claim much less detail which would allow the institution to respond to her grievance. As a result, these asserted claims have not been exhausted and should be dismissed.

Harvard's challenge to the fact of her confinement based on her disciplinary record does not constitute proper exhaustion of her Eighth Amendment "conditions of confinement" claim. *See Ortiz*, 380 F.3d at 653-54; *Johnson,* 385 F.3d at 518 n.9. Harvard's complaint that her underlying disciplinary reports did not justify her confinement is not the same as challenging the actual conditions of her confinement.

Moreover, apart from a mention of lack of visitation, there is no detail concerning the conditions of confinement that purportedly caused Harvard's psychological harm. The FDC, therefore, could not have been on notice that such a

vague complaint encompassed challenges to the conditions of confinement now asserted in the Amended Complaint.

In both grievance appeals, Harvard seeks release from disciplinary confinement and close management. As alleged in the Amended Complaint, Harvard is not currently confined, but instead resides at an in-patient facility. Doc. 13, ¶13. Harvard admits that she "does not know if she will return to isolation upon discharge." *Id.* Therefore, Harvard's request for relief in both grievance appeals appears satisfied.

To the extent the mention in Appeal No. 18-6-32709 regarding visitation and phone privileges can be characterized as request for relief, those are the only asserted claims in the Amended Complaint that have been exhausted. The remainder of Harvard's claims, including her ADA and Rehabilitation Act claims, should be dismissed with prejudice.

### B.   J.H.

Plaintiff J.H. alleges that Defendants have (1) cycled him in and out of isolation in response to behaviors related to his immaturity; (2) taken him to the exercise cages only once in the five months before the lawsuit was filed; (3) taken him to the dayroom only twice in the five months before the lawsuit was filed; (4) provided him with minimal anger management counseling; (5) failed to provide him with mental health services; (6) imposed the same restrictions on him despite

28

his being downgraded to CM III; and (7) failed to provide him individual educational instruction. Doc. 13, ¶¶18-22.

Based on a review of the records of the office of the Secretary of the Department of Corrections, Plaintiff J.H. filed only one grievance appeal. Declaration of McManus, Exs. 3-4.  In that appeal, No. 19-6-12440, J.H. claimed that "[b]eing in close management is having negative impacts on my mental health." However, that appeal was made while J.H. was in CM II status. J.H. is now in CM III status, Doc. 13 ¶ 19, and no grievance or appeal has been made regarding his CM III status. This is important because the privileges and restrictions are different for inmates on CM II and CM III status. *See* F.A.C. Rule 33-601.800.

Further, there is no level of detail provided in this grievance appeal explaining what "conditions of confinement" are purportedly causing harm to J.H.'s mental health sufficient to put the FDC on notice of his claims. There is no mention or request for more exercise time, more dayroom time, more anger management counseling, more mental health services, or more education.

The only requested relief in J.H.'s grievance appeal is to be released from close management, a remedy that J.H. is not seeking in this lawsuit.

Plaintiff J.H.'s claims have not been properly exhausted and should be dismissed with prejudice.

## C.    Angel Meddler

Plaintiff Meddler alleges that Defendants have: (1) isolated her for a variety of disciplinary infractions that were mostly non-violent and related to immaturity and disability; (2) failed to provide her with any services to help her transition from isolation to the general population; (3) sent her back to isolation without any enhanced mental health treatment following suicide watch; and (4) failed to provide her with individualized education instruction. Doc. 13, ¶¶23-29.

Based on a review of the records of the office of the Secretary of the Department of Corrections, Plaintiff Meddler filed the following 15 grievance appeals from 2016 to the present:

| Appeal Number | Description | Disposition |
|---|---|---|
| 16-6-41716 | Correctional officer/ sexual assault | Approved for further review |
| 16-6-43582 | Property claim | Approved |
| 16-6-49741 | Property claim | Denied |
| 17-6-12585 | Challenge to disciplinary report | Returned |
| 17-6-12595 | Challenge to disciplinary report | Returned |
| 17-6-31551 | Other inmate threatening her | Returned |
| 17-6-51517 | HIPPA violation, other inmate discussing her health | Denied |
| 18-6-15598 | Challenge to disciplinary report | Returned |
| 18-6-42038 | Gain time request | Denied |
| 18-6-43521 | Wants nurse to be investigated | Returned |
| 18-6-43544 | Complaint about close management | Denied |
| 18-6-44301 | Property claim | Denied |
| 18-6-44358 | Complaint about nurse | Denied |
| 18-6-45128 | Went 18 days without a blanket | Denied |
| 18-6-46555 | Request to change diet/menu | Denied |

Declaration of McManus, Exs. 5-6.

Only one grievance appeal, No. 18-6-43544, arguably relates to issues raised by Meddler in this lawsuit. In that grievance appeal, Meddler claimed that "being in close management is harmful to my mental health." There was no mention of the "conditions of confinement" that purportedly led to the claimed harmful effects, no mention of any ADA or Rehabilitation Act violation, no request for enhanced mental health treatment and no request for additional education services. Instead, Plaintiff Meddler simply requested: "let me out."

Grievance appeal no. 18-6-43544 did not provide sufficient notice to the FDC of the claims asserted in this lawsuit. It made no request for transitional services, enhanced mental health treatment, or more education. It provided no detail and sought no relief other than to be let out (which is not relief sought by Meddler in this lawsuit). As a result, Plaintiff Meddler's claims have not been exhausted and should be dismissed with prejudice.

### D. Juan Espinosa

Plaintiff Espinosa alleges that the Defendants have: (1) taken him to exercise cages only once a week, (2) denied him access to visits and dayroom time; (3) refused to allow him to use the phone except for one time in the past six months when he was able to speak; (4) refused to provide him with a Text Telephone or other similar device after he lost his voice; (5) failed to escort or transport him to

several medical appointments; (6) refused to provide services to help him learn to communicate without his voice; (7) isolated him in a cell without a call button to alert staff to an emergency; (8) refused to provide him crutches after a fall in December 2018; (9) chained him to a wheelchair to transport him when he left his cell for medical care following the December 2018 fall; (10) refused to provide him a cane and continued to restrain his hands at his waist when he leaves his cell; (11) refused to provide him with physical therapy to rehabilitate his foot. Doc. 13, ¶¶30-35.

Based on a review of the records of the office of the Secretary of the Department of Corrections, Plaintiff Espinosa filed the following 22 grievance appeals from June 2018 (the day Defendants began isolating him) until the present:

| Appeal Number | Description | Disposition |
|---|---|---|
| 18-6-31717 | Requesting to see throat specialist and have biopsy | Denied |
| 18-6-32806 | Challenge to disciplinary report | Returned |
| 18-6-34865 | Challenge to disciplinary report | Denied |
| 18-6-37249 | Challenge to disciplinary report | Denied |
| 18-6-37250 | Amendment to appeal challenging CM status decision | Denied |
| 18-6-40931 | Request for operation | Returned |
| 18-6-40945 | Request to be transferred to Miami-Dade for surgery | Returned |
| 18-6-42194 | Request for response to appeal | Returned |
| 18-6-45883 | Claims of falsification of documents | Returned |
| 18-6-44993 | Requesting response to appeal | Approved |
| 18-6-45844 | Wants investigation into false document | Returned |
| 18-6-47438 | Requesting response to appeal | Returned |
| 18-6-47437 | Requesting response to appeal | Returned |

| 18-6-50546 | Challenge to CM determination | Returned |
| 18-6-53290 | Not received receipt for appeal | Returned |
| 19-6-00627 | Requesting response to appeal | Denied |
| 19-6-02866 | Property claim | Approved |
| 19-6-02504 | Response to appeal requested | Returned |
| 19-6-0668 | Response to appeal requested | Returned |
| 19-6-07330 | Request for removal from CM status | Denied |
| 19-6-11385 | Response to appeal requested | Returned |
| 19-6-24441 | Response to appeal requested | Returned |

Declaration of McManus, Exs. 7-8.

The only grievance appeal arguably related to the claims raised by Espinosa in the Amended Complaint is 19-6-07330, requesting to be removed from CM status due to his medical condition. In this grievance, Espinosa claimed that he was not able to present his case before the close management review team because of his inability to speak. He complained that the on-site interview was not sufficient and was in violation of Rule 33-601-800. He then offered that "the condition of my c-m status is not helping with my recovery [sic]. It has case [sic] me to be more stress [sic] and depressed seeing that I'm having a hard dealing dealing [sic] with the lost [sic] of my voice. I need to learn communicate [sic] skills they do not have them on c-m status." He requested a full review of his CM confinement to determine if he should be released to open population or have his CM status reduced from CM II to CM III. Espinosa stated that CM III would allow him to have the correct programs to help with his communication. There is also a statement that because he is mute "telephone visits do me no good."

This grievance appeal, while arguably requesting more programs to help with his recovery and his communication, did not address the other claims raised by Espinosa in the Amended Complaint. There is no request for more exercise, more visits, or more dayroom time. There is no mention of any failure to transport to medical appointments. There is no request for a call button in his cell. There is no mention of the December 2018 incident, much less a discussion of the events following that incident or the purported lack of medical treatment. As a result, these unexhausted claims should be dismissed with prejudice.

### E.    Jerome Burgess

Plaintiff Burgess alleges that the Defendants have: (1) refused to modify its isolation policies and practices to accommodate his disability and prevent the harm caused by isolation; (2) housed him in a cell that is not large enough to allow him to use his wheelchair and ambulate; (3) failed to provide accommodations needed to meaningfully participate in recreation in the exercise cages; (4) failed to implement a system to ensure staff are notified when he had a seizure; (5) failed to give him a call button in his cell to alert staff of oncoming seizure; (6) failed to modify their practices after he had a seizure, including placing him fully restrained in a wheelchair in October 2018 after he suffered a seizure; (7) made him dependent on medical staff to deliver catheters to his cell front; (8) failed to consistently deliver the right type or quantity of catheter. Doc. 13 ¶¶ 36-41.

Based on a review of the records of the office of the Secretary of the Department of Corrections, Plaintiff Burgess filed the following 11 grievance appeals from September 2017 (the day Defendants began isolating him) until the present:

| Appeal Number | Description | Disposition |
|---|---|---|
| 17-6-43966 | Challenge to disciplinary report | Denied |
| 17-6-43969 | Challenge to disciplinary report | Denied |
| 17-6-43069 | Retaliation claim; catheters | Returned |
| 18-6-03144 | Property claim | Denied |
| 18-6-33452 | Last grievance was not reviewed by warden | Returned |
| 18-6-33816 | Challenging CM designation | Returned |
| 18-6-33454 | Not interviewed by ICT member | Returned |
| 18-6-39420 | Changing CM designation | Denied |
| 18-6-40864 | ICT not in compliance; requesting reduced CM level | Denied |
| 18-6-42800 | Property claim | Returned |
| 18-6-44652 | Request for tablet | Denied |

Declaration of McManus, Exs. 9-10.

In addition, in 2019, Plaintiff Burgess submitted a grievance appeal challenging the cumulative effect of CM and claiming several ADA violations. No. 19-6-10242. However, that appeal was returned as addressing more than one issue in one grievance in violation of Chapter 33-104.014(1). Plaintiff Burgess never re-submitted his grievance appeal. As a result, this grievance appeal did not properly exhaust his claims. *See Woodford*, 548 U.S. at 91 (a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal).

Plaintiff Burgess's claims have not been exhausted and therefore they must be dismissed with prejudice.

### F.   James Kendrick Jr.

Plaintiff Kendrick alleges that Defendants have (1) isolated him in a wing with inmates on disciplinary confinement even though he was only on CM I, and during that time, restricted his out of cell exercise, visits, phone calls and reading materials; (2) caused him risk of physical harm because he is unable to do regular activity or exercise in his tiny cell; (3) routinely failed to provide him with the limited out of cell exercise required under the polices; (4) prevented him from getting the exercise he needs in the small cage for a few hours a week; (5) administered his insulin shots cell front, which leads to improper insertion of the needle or injecting him in an unsanitized area of his arm; and (6) failed to time his insulin delivery with meals. Doc. 13, ¶¶42-46.

Based on a review of the records of the office of the Secretary of the Department of Corrections, Plaintiff Kendrick filed the following 9 grievance appeals from June 2018 (the day Defendants began isolating him) until the present:

| Appeal Number | Description | Disposition |
|---|---|---|
| 18-6-29746 | Challenge to disciplinary report | Returned |
| 18-6-33238 | Challenge to disciplinary report and close management assignment | Denied |
| 18-6-35063 | Property claim | Denied |
| 18-6-35067 | Property claim | Denied |
| 18-6-45254 | Nurse dropped pre-loaded syringe | Denied |
| 18-6-50392 | Challenge to disciplinary report | Denied |

36

| 18-6-52194 | Nov. 11, 2018 incident regarding insulin injection | Denied |
|---|---|---|
| 18-6-53837 | Challenge to disciplinary report | Denied |
| 19-6-21654 | Property claim | Approved |

Declaration of McManus, Exs. 11-12.

Pertinent to this case is only No. 18-6-52194, in which Kendrick complained that on November 11, 2018, he was ordered to stick his arm through a "rusted out food flap" by the nurse before administering him insulin. As this grievance is for a specific incident, it is insufficient to exhaust his administrative remedy challenging a systemic practice. *See Turner*, 376 F. Supp. 2d at 325 (ruling that grievance over "nothing more than one discrete instance of maltreatment" did not exhaust inmate's claim alleging systemic problem).

There are no grievance appeals by Kendrick asserting a practice of administering insulin through the food slot. Thus, all of Kendrick's claims are unexhausted and should be dismissed with prejudice.

## G.    Johnny Hill

Plaintiff Johnny Hill alleges that the Defendants have (1) refused to modify isolation policies and practices to accommodate his disability and protect him from harm; (2) isolated him in close management immediately following his re-entry into prison; (3) refused to prove him with a medically necessary aide who can read FDC documents to him; (4) refused to provide him a cane to walk safely; and (5)

scattered his personal belongings in cell searches making it difficult for him to find things. Doc. 13, ¶¶47-53

Based on a review of the records of the office of the Secretary of the Department of Corrections, Plaintiff Hill filed the following 15 grievance appeals from July 2014 (when Hill re-entered prison) until the present:

| Appeal Number | Description | Disposition |
|---|---|---|
| 14-6-35146 | Missing money | Denied |
| 14-6-35644 | Medical grievance | Denied |
| 15-6-23346 | Medical staff falsifying documents | Denied |
| 15-6-25010 | Magazine issue | Denied |
| 15-6-29618 | Challenge to disciplinary report | Denied |
| 15-6-07128 | Canteen issue | Returned |
| 16-6-10080 | Property claim | Returned |
| 18-6-18552 | Battery by staff | Returned |
| 18-6-29395 | Battery by staff | Denied |
| 18-6-46655 | Requesting ADA pass | Denied |
| 18-6-52644 | Requesting response to appeal | Returned |
| 19-6-00595 | Requesting ADA pass | Returned |
| 19-6-10697 | Allegations of staff abuse | Returned |
| 19-6-14024 | Challenge to continued placement on CM status | Denied |
| 19-6-22775 | HIPPA violation | Denied |

Declaration of McManus, Exs. 13-14.

Two grievance appeals submitted by Hill, No. 18-6-46655 and No. 19-6-00595, requested an ADA pass because he is legally blind. In these grievance appeals, Hill stated that without the ADA pass he was being denied legal assistance, was not being given housing accommodations, and had not been

provided a cane. Thus, Defendants do not dispute that Hill has exhausted claims under the ADA and Rehabilitation Act for the modifications/accommodations he seeks in his lawsuit. However, Hill has not raised any grievance regarding cell searches, and therefore that particular claim should be dismissed with prejudice.

Pertinent to Hill's Section 1983 claim, he submitted a grievance appeal, No. 19-6-14024, challenging his continued placement on CM status and claiming it causes mental and emotional harm. Plaintiff Hill requested to be released from CM to the general population. This grievance, however, did not provide sufficient detail to put the FDC on notice of his complaint and, therefore, it did not administratively exhaust any claims based on this appeal.

Hill has not pled any "conditions of confinement" that constitute his Eighth Amendment claim. His specific allegations concern his ADA requests and the decision to confine him following his re-entry into prison. *See* Doc. 13, ¶¶47-53. Therefore, Hill has failed to plead a claim under Count I of the Amended Complaint. Nevertheless, Hill's Section 1983 claims should be dismissed because they have not been exhausted. As with the other named Plaintiffs, Plaintiff Hill does not provide any level of detail concerning the "conditions of confinement" that have led to his mental and emotional harm. As a result, Hill's Section 1983 claims should be dismissed with prejudice.

## VII.   PLAINTIFFS' UNEXHAUSTED CLAIMS SHOULD ALSO BE DISMISSED

### A.      Section 1983 / Eighth Amendment

Plaintiffs' First Cause of Action attempts to assert a claim against Defendant Inch under 42 U.S.C. §1983 for a violation of the Eighth Amendment. The Eighth Amendment only commands states to provide "reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977). Prisons are not required to be comfortable places to live. They can be severe, even harsh, without violating the Constitution. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).   The initial question is whether a plaintiff has been deprived of the minimum civilized measure of life's necessities. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). "The challenged condition must be 'extreme.'" *Chandler*, 379 F.3d at 1289.

Pleading the details of the alleged violations implicates whether some of the Plaintiffs' claims survive.  If Plaintiffs are challenging the disciplinary decisions that led to their restrictive housing confinement or the length of the confinement imposed – which appears to be a purpose of the claims -  then those Plaintiffs should have brought a writ for habeas corpus relief and their present action must be dismissed.  See *Banks v. Jones,* 232 So. 3d 963, 966 (Fla. 2017)("[W]e hold that a petition for habeas corpus remains the correct mechanism by which to challenge a

reassignment [to close management]";[4] *Hartley v. Ellis*, No. 8:09-CV-465-T-23TBM, 2012 WL 4378013, *1 (M.D. Fla. Sept. 25, 2012) ("habeas corpus is the proper means for challenging Hartley's disciplinary confinement") (citing *Krist v. Ricketts*, 504 F.2d 887, 887-88 (5th Cir. 1974)); *see also Medberry v. Crosby*, 351 F.3d 1049, 1061 (11th Cir. 2004). If certain Plaintiffs are challenging specific restrictive housing categories, without reference to any particular condition or duration as unconstitutional, then the Eleventh Circuit has already held that administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment and the action should be dismissed. *Sheley v. Dugger*, 833 F.2d 1420, 1428-29 (11th Cir. 1987).

As discussed above, Plaintiffs have not administratively exhausted the majority of their claims under Section 1983 and, therefore, those claims should be dismissed with prejudice. But even if Plaintiffs' claims had been properly exhausted, and even if they are considered to be true, they still would not state a claim under Section 1983. Each Plaintiff has alleged separate and unique complaints about their individual conditions of confinement, and they must recognize that some of the actions about which they complain do not constitute Eighth Amendment violations. For example, courts have found that a prisoner has

---

[4] FDC's position in *Banks* was – and remains -  that the proper vehicle for challenging CM assignment is through writ of mandamus.  However, FDC did not prevail on that argument at the Florida Supreme Court.

no constitutional right to rehabilitation, education, or jobs. *See, e.g., Bullock v. McGinnis,* 5 F. App'x 340, 342 (6th Cir. 2001) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)).  Further, an institution's failure to house an inmate in a handicap accessible cell with appropriate amenities has been found to not constitute a proper claim. S*ee Hunt v. Warden,* 748 F. App'x 894, (11th Cir. 2018).  Failure to provide access to a law library and materials has likewise been dismissed for failing to state a sufficient injury under the Eighth Amendment. *See Mahon v. Tate,* 2018 WL 4113374, *2-3 (N.D. Fla. 2018). Failure to provide counseling to assist avoid any mental, physical or emotional deterioration in confinement has likewise been found to satisfy the constitutional requirements. *See Newman v. Alabama,* 559 F.2d 283 (5th Cir. 1977)*; see also Harris v. Thigpen,* 941 F.2d 1495, 1511 (11th Cir. 1991).  Visitation restrictions have been found not to be cruel and unusual.  *See Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003); *see also Evans v. Johnson*, 808 F.2d 1427, 1428 (11th Cir. 1987).  Finally, negligence in providing medical care is not a constitutional violation.  *Johnson v. McNeil*, 278 F. App'x 866, 871 (11th Cir. 2008) (citing *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003)).

If Plaintiffs are claiming that it is the cumulative effect of the various and unrelated alleged conditions of confinement that constitutes the Eighth Amendment violation, such a claim has not been clearly alleged.  There are no

allegations in the Amended Complaint providing that the various conditions of confinement raised by each Plaintiff work in combination to produce the deprivation of a single, identifiable human need, which would be necessary to state a claim under Section 1983 for violation of the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.").

### B.   ADA/Rehabilitation Act

Title II of the ADA states that "…no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. To state a claim under Title II of the ADA, Plaintiffs must show that (1) they are qualified individuals with a disability; (2) they were either excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were otherwise discriminated against by such entity; and (3) the treatment was based on a disability. *Jones v. Rutherford*, 546 F. App'x 808, 811 (11th Cir. 2013) (quoting *Bircoll v. Miami-Dade Cnty*, 480 F.3d 1072, 1083 (11th Cir. 2007). The Rehabilitation Act contains the additional requirement that the plaintiff show the

program or activity from which he is excluded received federal financial assistance. *Badillo v. Court Adm'r Officer*, 158 Fed. Appx. 208 (11th Cir. 2005).

The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; [or] (B) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. §12102(2). A medical or mental health diagnosis alone is insufficient to demonstrate a disability under the ADA and the Rehabilitation Act. *See Pritchett v. Ellers*, 324 F. App'x 157, 159 (3d Cir. 2009) (citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002)); *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1229 (S.D. Fla. 2010). Rather, a plaintiff must also demonstrate that any mental health or medical impairment *substantially* limits a major life activity. 42 U.S.C. §12102(2).

Where "a plaintiff alleges [disability] discrimination based on a public entity's refusal to provide a reasonable accommodation, the plaintiff must also establish that the plaintiff requested an accommodation (or the need for one was obvious) and that the public entity failed to provide a reasonable accommodation." *Schwarz v. The Villages Charter School, Inc.*, 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016), *aff'd sub nom. Schwarz v. Bd. Of Supervisors on behalf of Villages Cmty. Dev. Districts*, 672 F. App'x 981 (11th Cir. 2017).

As discussed above, most of the Plaintiffs have not exhausted their administrative remedies with regard to their ADA and Rehabilitation Act claims. But even if the administrative remedies had been exhausted, Plaintiffs have failed to clearly allege the necessary factual support for such claims.

Though the Amended Complaint identifies specific diagnoses and symptoms for each Plaintiff, such allegations are not sufficient where there it does not appear that the Plaintiffs' alleged impairments substantially limit one or more major life activities.  For example, Angel Meddler alleges that she has been diagnosed with asthma and anxiety and mood disorders, and suffers from anxiety, mental agitation, poor impulse control, disturbed sleep, and paranoia.   Doc. 13, ¶¶ 23 and 27. However, it does not appear from the face of the Amended Complaint that any of those alleged impairments substantially limit one or more major life activities.

In addition, it does not appear that any of the Plaintiffs are claiming that they were placed in isolation or have remained in isolation *because of* a disability. Instead, based on the allegations in the Amended Complaint, it appears that each Plaintiff was initially admitted to one of the confinement categories for disciplinary reasons.   Moreover, many of the Plaintiffs have not identified an available reasonable accommodation or that they have been subject to disparate treatment, something that is fatal to their claim.

Finally, given that each Plaintiff has alleged different mental and physical impairments, and are presumably requesting different accommodations for those impairments, it is not permissible under Federal Rule of Civil Procedure 20(a)(1) for the ADA and Rehabilitation Act claims of all Plaintiffs to be heard in one lawsuit. *See* Section V, above.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons discussed above, Defendants respectfully request that this Court enter an Order:

A.    dismissing *with prejudice* the following claims for failure to exhaust administrative remedies:

    (i)    all of the claims asserted by J.H., Angel Meddler, Jerome Burgess, and James Kendrick, Jr.;

    (ii)    all of Admire Harvard's claims under the Americans With Disabilities Act (Second Cause of Action) and Section 504 of the Rehabilitation Act (Third Cause of Action);

    (iii)    Admire Harvard's claims under 42 U.S.C. §1983 (First Cause of Action), excepting only any such claims that are based on visitation and phone privileges;

(iv)   all of Juan Espinosa's claims, excepting only any such claims that are based on his alleged need for more programs to help with his recovery and communication;

(v)   all of Johnny Hill's claims under 42 U.S.C. §1983 (First Cause of Action);

and

B.   dismissing Plaintiffs' remaining claims without prejudice and requiring any Second Amended Complaint to:

(i)   eliminate unnecessary and inflammatory allegations,

(ii)   include claims of only one Plaintiff (with the other Plaintiffs free to file separate lawsuits),

(iii)   include only those claims that the named Plaintiff has standing to pursue,

(iv)   clearly identify which factual allegations support each of the named Plaintiff's claims, and

(v)   clearly allege facts to support the claims, including the specific policies and practices at issue (and identifying which are policies and which are practices), how those policies and practices have affected the Plaintiff, what the Plaintiff's

claimed disability is, and what accommodation the Plaintiff is requesting.

## Certificate of Compliance with Local Rule 7.1(F) Word Limit

In accordance with Local Rule 7.1(F), the undersigned counsel certifies compliance with the word limits in Local Rule 7.1(F).  There are 10,713 words in this Memorandum of Law in Support of Defendants' Dispositive Motion to Dismiss Plaintiffs' Amended Complaint with Prejudice.

Dated:  August 6, 2019                    Respectfully submitted,

*s/ Daniel J. Gerber*
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
E-mail: dgerber@rumberger.com (primary)
          docketingorlando@rumberger.com and
          dgerbersecy@rumberger.com (secondary)
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

*Attorneys for Defendants*

150013172.v1