# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD, ET AL.,

      *Plaintiffs,*

v.                         **CASE NO.:  4:19cv212-MW/CAS**

MARK INCH, SECRETARY OF
FLORIDA DEPARTMENT OF
CORRECTIONS, ET AL.,

      *Defendants.*
_____/

## <u>ORDER DENYING DEFENDANTS' MOTION TO DISMISS</u>

This Court has considered, without hearing, Defendant Florida Department of Corrections ("FDC") and Defendant Mark Inch's (collectively, "Defendants") motion to dismiss. ECF No. 28. Defendants request this Court to 1) dismiss *with* prejudice for failure to exhaust administrative remedies a) all claims asserted by Plaintiffs J.H., Angel Meddler, Jerome Burgess, and James Kendrick, Jr., b) all of Plaintiff Admire Harvard's claims under the Americans With Disabilities Act and Section 504 of the Rehabilitation Act, c) Plaintiff Admire Harvard's claims under 42 U.S.C. § 1983, excepting only any such claims that are based on visitations and phone privileges, d) all of Plaintiff Juan Espinosa's claims, excepting only any such claims that are based on his alleged need for more programs to help with his recovery

and communication, and e) all of Plaintiff Johnny Hill's claims under 42 U.S.C. § 1983; and 2) dismiss Plaintiffs' remaining claims *without prejudice* and require any second amended complaint to a) eliminate unnecessary and inflammatory allegations, b) include claims of only one Plaintiff, c) include only those claims that the named Plaintiff has standing to pursue, d) clearly identify which factual allegations support each of the named Plaintiff's claims, and e) clearly allege facts to support the claims, including the specific policies and practices at issue (and identifying which are policies and which are practices), how those policies and practices have affected the Plaintiff, and what the Plaintiff's claimed disability is, and what accommodation the Plaintiff is requesting. *See* ECF No. 28, at 2–4.

Defendants argue for dismissal of Plaintiffs' amended complaint because 1) it does not comply with Federal Rule of Civil Procedure 8(a)(2), 2) it fails to address each Plaintiff's limited standing, 3) it improperly joins all Plaintiffs in this lawsuit in violation of Federal Rule of Civil Procedure 20(a)(1), 4) it fails to state claims upon which relief can be granted, and 5) some Plaintiffs have failed to exhaust certain claims. *See* ECF No. 28, at 1–2. For the reasons provided below, Defendants' motion is **DENIED**.

# I

This is a civil rights case about statewide policies and practices related to isolation promulgated and enforced by Defendants in Tallahassee. Plaintiffs allege

that Defendants promulgated a statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in tiny, cramped cells. *See* ECF No. 13, ¶¶ 2, 59, 75. Plaintiffs further allege that this statewide policy and practice exposes all persons in isolation to a substantial risk of serious harm to their mental and physical health in violation of the Eighth Amendment and that policymakers in Tallahassee have exhibited deliberate indifference towards these risks. *See* ECF No. 13, ¶¶ 5, 7, 54, 59, 75, 83. Finally, Plaintiffs allege that Defendants discriminate against people with disabilities through this same policy and practice. ECF No. 13, ¶¶ 8, 151–60.

## II

This Court accepts the allegations in the amended complaint as true and construes them in the light most favorable to Plaintiff. *See Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III

First, Defendants argue that the amended complaint violates Federal Rule of Civil Procedure 8(a)(2) because it 1) is a shotgun pleading, 2) contains unnecessary and inflammatory allegations, 3) pleads non-specific allegations, and 4) contains unsupported conclusory statements. *See* ECF No. 28-1, at 5–8. This Court tackles each of these issues in turn.

#### A. Shotgun Pleading

Plaintiffs, in their amended complaint, incorporate all the general allegations into each of the three causes of action. *See* ECF No. 13, ¶¶ 176, 182, 192. Defendants take issue with this format and, therefore, ask this Court to dismiss the amended complaint or force Plaintiffs to replead. *See* ECF No. 28-1, at 5.

A pleading must comply with Federal Rules of Civil Procedure 8(a)(2) and 10(b) "so that, [the pleader's] adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (citation omitted). The Eleventh Circuit has repeatedly condemned shotgun pleadings because they fail to accomplish these goals. *Id.* at 1321.

"Shotgun pleadings are characterized by: (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act." *McDonough v. City of Homestead*, 771 F. App'x. 952, 955 (11th Cir. 2019) (citing *Weiland*, 792 F.3d at 1321–23). The key feature of shotgun pleadings is that they fail to give defendants "adequate notice" of the claims being bought against them and the supporting factual allegations for each claim. *Weiland*, 792 F.3d at 1323.

Here, Plaintiffs' amended complaint is not a shotgun pleading within the meaning of *McDonough*. The amended complaint does not adopt each allegation of all the preceding counts. Plaintiffs' amended complaint is the type of complaint the Eleventh Circuit in *Weiland* did not find to be a shotgun pleading. *Id.* at 1324 (noting that re-alleging paragraphs 1 through 49 at the beginning of each count is not the most common type shotgun pleading). And while the Eleventh Circuit has held that incorporating all the factual allegations into each claim constitutes shotgun pleading, it has done so when it is nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief. *See Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018); *see also*

*Weiland*, 792 F.3d at 1325 (holding that dismissal is appropriate only "where it is *virtually impossible* to know which allegations of facts are intended to support which claim(s) for relief."). This is not the case here.

Plaintiffs' amended complaint is separated into distinct sections corresponding with each element of Plaintiffs' claims. *See* Sections V.B–G (alleging various forms of deprivation that prisoners are subjected to which results in substantial psychological and physical harm); H (alleging Defendants' deliberate indifference to the conditions of confinement); I (alleging that no legitimate penological purpose); J (alleging discrimination based on disability due to failure to accommodate); and IV.A. (alleging the disability suffered by each named Plaintiff). These divisions provide this Court and Defendants with sufficient roadmap to determine which factual allegations give rise to which claims for relief. For example, Sections IV.A. and V.J. provide factual allegations that are relevant to Plaintiffs' claim under the Americans with Disability Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"). *See infra* Section VI.B. Similarly, Sections V.B–I. provide factual allegations that are relevant to Plaintiffs' claim under the Eighth Amendment. *See infra* Section VI.A. Therefore, while the practice of including all factual allegations in each count is frowned upon, it does not require dismissal, especially when it is possible to discern which factual allegations give rise to each claim for relief.

B. Unnecessary and Inflammatory Allegations

Defendants argue that Section V.A. of the amended complaint contains allegations that are "unnecessary and inflammatory" and, therefore, violate Rule 8(a)(2). ECF No. 28-1, at 6. It appears that Defendants are requesting this Court to strike these paragraphs from the amended complaint. "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[A] motion to strike will usually be denied, unless, the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Bartram, LLC v. Landmark Am. Ins. Co.*, Case No. 1:10-cv-28-SPM/AK, 2010 WL 4736830, at *1 (N.D. Fla. Nov. 16, 2010) (citation omitted).

The authorities cited in Section V.A. relate to Plaintiffs' Eighth Amendment claim. "[T]he Eighth Amendment 'draws its meaning from the evolving standards of decency that marks the progress of maturing society. . . .' " *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (citation omitted). As such, Plaintiffs, to properly state a claim for relief under the Eighth Amendment, must show that the conditions of confinement violate contemporary standards of decency. The authorities cited in Section V.A. do just that. For example, the authorities show the substantial psychological and physiological harm caused by isolation. ECF No. 13, ¶¶ 61–72. Other authorities cited in Section V.A. show that various state correctional systems have recognized this harm and implemented reform. ECF No. 13, ¶¶ 73–74.

Taken together, these authorities help this Court to determine whether Defendants' use of isolation and their policies and practices relating isolation violate contemporary standards of decency. As such, striking Section V.A. would be inappropriate. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1382 ("The Rule 12(f) motion to strike allegedly offensive matter also will be denied if the allegations might serve to achieve a better understanding of the plaintiff's claim for relief . . . .").

## C. Non-Specific Allegations

Defendants argue that Sections V.C–G. contain non-specific allegations. Specifically, Defendants contend that the amended complaint fails to distinguish between policies and practices, fails to identify which prisons implemented the practices and policies identified and which restrictive housing they pertain to, and fails to allege which Plaintiffs have been affected by the policies and practices and in what ways. ECF No. 28-1, at 7.

Defendants arguments rest on a fundamental misunderstanding of Plaintiffs' claims. Plaintiffs are alleging a statewide policy and practice of isolation that applies to all prisons and all types of confinement. ECF No 13, ¶¶ 75, 82, 177. Defendants' argument that the amended complaint fails to identify the specific prisons and types of restrictive housing is, therefore, irrelevant.

Further, Rule 8 merely requires "a short and plaint statement of the claim" that is "plausible on its face"—one that "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of alleged violations. *Twombly*, 550 U.S. at 555–56. Plaintiffs satisfy this requirement. Plaintiffs make general allegations about conditions, restrictions, and security measures in all types of isolation due to the statewide policies and practices. Additionally, Plaintiffs provide specific examples of policies and practices. For example, in the context of deprivation of exercise, Plaintiffs allege policies and practices that 1) fail to provide out-of-cell exercise to some inmates for 30 days or longer, 2) provide out-of-cell exercise in small cages that do not have adequate exercise equipment, 3) leave some prisoners in restraints during out-of-cell exercise, 4) search inmates cells during exercise time, 5) frequently cancel exercise due to staffing shortage, and 6) deny exercise time for trivial and pretextual offenses. ECF No. 13, ¶¶ 108–12. The specific policies and practices underlying the specific examples provided by Plaintiffs will likely be revealed during discovery. Further, distinction between policies and practices is not significant.[1] The distinction will become clear during discovery.

---

[1] Regardless, Plaintiffs do distinguish between practices and policies. *Compare* ECF No. 13, ¶ 103 *with id.* ¶ 120.

Finally, Defendants' argument that Plaintiffs have not alleged how they have been affected by policies and practices fails. Plaintiffs have sufficiently alleged how isolation has impacted each of them. ECF No. 13, ¶¶ 13–53. Therefore, dismissal of Plaintiffs' claims for lack of specificity is not required.

### D. Conclusory Statements

Defendants next contend that Plaintiffs' amended complaint contains conclusory statements that are not supported by alleged facts. Defendants point to paragraphs 15, 110, 126, 151, 160, 177, 183, 190, 193, and 200. However, each of these paragraphs are supported by factual allegations in the amended complaint.

Paragraph 15 alleges that Defendants have refused to modify their isolations and practices to accommodate Plaintiff Harvard's disability and protect her from harm caused by isolation. ECF No. 13, ¶ 15. Plaintiffs specifically describe Plaintiff Harvard's disability, ECF No. 13, ¶ 13, the harm she suffers, ECF No. 13, ¶¶ 15–16, and her need for individualized mental health treatment as a reasonable accommodation for her disability. ECF No. 13, ¶ 152. Paragraph 110 alleges that "some people" cannot sit or stand in an exercise cage "due to their disabilities, which FDC refuses to accommodate." ECF No. 13, ¶ 110. This assertion is supported by Plaintiff Burgess's allegation that he is losing mobility, is bound to a wheelchair and, therefore, cannot meaningfully participate in recreation in the exercise cage without reasonable accommodation. ECF No. 13, ¶¶ 36–37.

10

Similarly, other paragraphs that Defendants allege to be conclusory are supported by factual allegations in the amended complaint. Paragraphs 152–59, describing failure to accommodate Plaintiffs' disabilities, support paragraph 151, which alleges policies and practices discriminating against people with disability. Paragraph 73, describing reform efforts by correctional facilities in other states, supports paragraph 160, which alleges that other prison systems have properly integrated people with disabilities. Paragraph 177, alleging wanton infliction of pain upon Plaintiffs by Defendants, is supported by facts alleged in Section V.B–I. that show various forms of deprivation, deliberate indifference of Defendants to these deprivations, and the lack of penological purpose for these deprivations. Paragraphs 183 and 193, which allege that some named Plaintiffs are qualified individuals with disabilities, is supported by paragraphs 13–15, 23, 27, 30, 32–33, 47, and 51, which show specific disabilities each named Plaintiff suffers. Paragraphs 16, 25, 133, and 152, which allege that Plaintiffs Harvard and Meddler were retained in isolation for behavior related to their disability, support paragraph 190, alleging that some Plaintiffs were "unnecessarily placed and retained in isolation due to their disabilities." Finally, Paragraph 200, alleging that FDC violates RA by failing to accommodate people with disabilities, is supported by paragraphs 152–59. *See* ECF No. 13.

Additionally, paragraph 126 is not a conclusory statement, but is a factual allegation. It alleges that FDC staff attended a panel discussion from renowned healthcare experts describing the physical and psychological harms of isolation. ECF No. 13, ¶ 126. Plaintiffs use of "on information and belief" as a preface to the factual assertion is proper. *See Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1574 (S.D. Fla. 1993) ("Rule 9(b) [does not] bar[] Plaintiffs from pleading allegations based on 'information and belief,' where the subject matter is 'peculiarly within the adverse party's knowledge,' the allegations are accompanied by a statement of facts upon which the belief is grounded, and the charges otherwise comport with Fed. R. Civ. P. 11.") (citations omitted).

For these reasons, this Court will not dismiss Plaintiffs' amended complaint under Rule 8.

## IV

Defendants argue that 1) Plaintiffs Kendrick and Hill only have standing to challenge the conditions of confinement related to Close Management ("CM") I status, 2) Plaintiffs Espinosa and Burgess only have standing to challenge conditions of confinement related to CM II status, 3) Plaintiff J.H. only has standing to challenge the conditions of confinement related to CM  III status, 4) Plaintiffs Harvard and Meddler do not have Article III standing to challenge any conditions of confinement because they are not currently confined. *See* ECF No. 28-1, at 12. In

short, Defendants argue that Plaintiffs do not have standing to challenge the types of isolation that they are not subjected to currently. Additionally, Defendants argue that Plaintiffs amended complaint is about conditions of confinement at individual institutions and, therefore, Plaintiffs lack standing to challenge policies and practices of institutions where they are not currently housed. *See* ECF No. 28-1, at 13–15. This Court disagrees.

The standing doctrine is based on a jurisdictional interpretation of the Federal Constitution's "case and controversies" limitation on federal-court jurisdiction and the implicit separation of government powers. *Spokeo, Inc v. Robins*, 136 S. Ct. 1540, 1546–48 (2016). The proper procedural route for challenging Article III standing is Federal Rule of Civil Procedure 12(b)(1). *See Sibley v. Florida Bar*, Case No. 4:09cv219-RH/WCS, 2008 WL 4525395, at *4 n.3 (N.D. Fla. Oct. 3, 2008). According to the Supreme Court, a potential plaintiff must show 1) she has "suffered an 'injury in fact' " that is "concrete and particularized" and "actual and imminent;" 2) there is a "causal connection between the injury and the conduct complained of;" and 3) the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In seeking injunctive relief—which is the case here—a plaintiff must also demonstrate "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Wooden v. Bd.*

*Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Further, "Article III standing must be determined as of the time at which the plaintiff's complaint is filed." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) (citations omitted). Defendants argue that *Focus* stands for the proposition that a plaintiff must demonstrate standing as of the date of the amended complaint. *See* ECF No. 28-1, at 12 n.2. Not so. In *Focus*, the Eleventh Circuit concluded that "when an amended complaint raises new allegations which do not relate back to a transaction or occurrence in the original complaint, standing must be assessed as of the date of the amendment." *Dunn v. Dunn*, 148 F. Supp. 3d 1329, 1334 (M.D. Ala. 2015) (citing *Focus*, 344 F.3d at 1275). That is to say, so long as the allegations in the amended complaint involve the same transaction or occurrence challenged in the original complaint, standing remains intact. At the time Plaintiffs filed their original complaint, Plaintiffs Harvard and Meddler were still in isolation. *See* ECF No. 13, ¶¶ 13, 23. Additionally, the isolation policy and practice at issue remains unchanged. The mere fact that Plaintiffs Harvard and Meddler were removed from isolation after the original complaint was filed, and the amended complaint reflected that change, does not strip them of standing they would otherwise have at the time of filing suit. *See Dunn*, 148 F. Supp. 3d at 1334–35 (holding plaintiffs still had standing, even though the

14

amended complaint reflected they had been released from prison since the original complaint was filed, because the challenged prison conditions had not changed). Therefore, Plaintiffs Harvard's and Meddler's standing remains undisturbed.

Returning to Defendants request that this Court limit Plaintiffs' standing to challenge only those types confinement to which they were subjected and to only those institutions where they were isolated. Defendants' argument is premised on a fundamental misunderstanding of Plaintiffs' claims. This case is not about the type of restrictive housing or the specific prison where the Plaintiffs' were housed. Instead, Plaintiffs allege a systematic, statewide policy of isolation. ECF No. 13, at ¶¶ 57–59. And regardless of the type of isolation, the deprivation caused by the policy and practice of isolation are the same. ECF No. 13, at ¶¶ 2, 59, 75–84. Additionally, while Plaintiffs allege specific instances of isolation in certain prisons in which they are housed, their claims do not arise from the specific instances of isolation. Instead, Plaintiffs' claims of violation of their statutory and constitutional rights stem from the statewide policies and practices related to isolation. ECF No. 13, ¶¶ 5, 7, 8, 54, 75, 83, 151–160. In short, Plaintiffs' claims do not rest on specific types of isolation at specific prisons but, instead, rest on the cumulative effects of the statewide policies and practices of isolation that subject all persons to the same substantial risk of serious harm, to which Defendants have been deliberately indifferent.

For these reasons, this Court will not limit Plaintiffs standing to specific types of isolation and certain prisons in which Plaintiffs were housed.

## V

Defendants next challenge the joinder of all Plaintiffs in one lawsuit. *See* ECF No. 28-1, at 15–16. Federal Rule of Civil Procedure 20(a)(1) provides the standard for permissive joinder of multiple plaintiffs. "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences; and (B) any questions of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). In this circuit, "[a] claim arises out of the same transaction or occurrence if there is a 'logical relationship' between the claims" *Constr. Aggregates, Ltd v. Forest Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir. 1998). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claims." *Brent v. En Vogue art on Tiles*, Case No. 5:13-cv-229-RS-CJK, 2014 WL 12465430, at *2 (N.D. Fla. Feb. 7, 2014) (citation omitted). "In terms of judicial economy and case management, 'joinder of claims, parties and remedies is strongly encouraged.' " *Gibson v. MHHS-Sinsations, LLC*, Case No. 3:17-cv-1168-J-20JBT, 2018 WL 3625783, at *1 (M.D. Fla. June 21, 2018) (citation omitted).

Defendants challenge only whether Plaintiffs' claims "arise from the same transaction, occurrence, or series of transactions or occurrence." ECF No. 28-1, at 16. The crux of Defendants argument is that each Plaintiff's claims are separate because each Plaintiff has unique circumstances surrounding their isolation. Once again, Defendants argument is premised on a fundamental misunderstanding of Plaintiffs' claims. Plaintiffs' claims arise out of the policies and practices related to isolation promulgated in Tallahassee. While each Plaintiff might suffer harm based on their unique circumstances, the underlying cause of each Plaintiff's harm is the policies and practices related to isolation. That is to say, there is a logical relationship between the claims of each Plaintiff because the underlying facts giving rise to each Plaintiff's claims is the same—policies and practices promulgated by high-level officials in Tallahassee. Therefore, joinder of Plaintiffs' claims serves the interest of judicial economy by eliminating multiple suits challenging the same statewide policies and practices. For these reasons, joinder is proper.

## VI

Defendants contend that Plaintiffs have failed to a state claim under 1) 42 U.S.C. § 1983 for a violation of Eighth Amendment, 2) the ADA, and 3) Section 504 of the RA. *See* ECF No. 28-1, at 40–46. That is, Defendants contend that Plaintiffs have failed to state a claim for relief for each cause of action they assert. This Court disagrees.

Before diving into the analysis of Plaintiffs' causes of action, this Court tackles Defendants' argument that Plaintiff should have brought a writ of habeas corpus relief instead of a claim under 42 U.S.C. § 1983. ECF No. 28-1, at 40. Petition for habeas corpus and a complaint under 42 U.S.C. § 1983 are "mutually exclusive: if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate § 1983 civil rights action." *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006). "When an inmate challenges the 'circumstances of his confinement' but not the validity of his conviction and/or sentence, then the claim is properly raised in a civil rights action under § 1983." *Id.* (citation omitted).

Plaintiffs have properly raised a civil rights action under 42 U.S.C. § 1983. Unlike Defendants assertion, Plaintiffs are neither challenging the disciplinary decisions that led to their restrictive housing nor simply challenging the length of the confinement imposed. A fair reading of Plaintiffs amended complaint leads this Court to conclude that Plaintiffs are challenging the conditions of their confinement. *See, e.g.*, ECF No. 13, ¶¶ 85 (describing the physical characteristics of the isolation cells, including lack of natural lights or view of the outdoors, lack of air condition, and minimum ventilation); 86 (describing conditions of the cell as "antiquated, dirty, and in disrepair"); 87–88 (alleging the loudness and limited lighting in the confinement units); 90–99 (alleging that people in isolation are deprived of normal human contact, such as communication or normal physical touch); 100–107

(alleging deprivation of environmental stimulation for people in isolation); 108–112 (alleging people in isolation are deprived of out-of-cell exercise). Plaintiffs have, therefore, chosen the proper avenue for relief.

A.  First Cause of Action (42 U.S.C. § 1983; Eighth and Fourteenth Amendment)

"The Eighth Amendment 'set[s] limits on the treatment and conditions that states may impose on prisoners.' " *Quintanilla v. Bryson*, 730 F. App'x. 738, 746 (11th Cir. 2018) (citation omitted). "[U]nder the Eighth Amendment, the State must respect the human attributes even of those who have committed serious crimes." *Id.* (citation omitted). The Eighth Amendment also prohibits 'inflictions of pain . . . that are totally without penological justification.' " *Id.* (citation omitted).

A two-part analysis governs Eighth Amendment challenges to conditions of confinement. *Id.* "First, the conditions of confinement must be objectively 'serious' or 'extreme,' " i.e., "the prisoner 'must show that a condition of his confinement pose[s] an unreasonable risk of serious damage to his future health or safety.' " *Id.* (citation omitted). "Second, the prisoner must show that the defendant prison officials subjectively acted with 'deliberate indifference' with regard to the conditions at issue." *Id.* (citation omitted). "Conditions are objectively serious or extreme if they amount to deprivation of 'minimal civilized measure of life's necessities' or 'the basic human needs.' " *Id.* (citation omitted). Further, "[w]hether conditions of confinement are cruel and unusual is judged under a 'contemporary

standard of decency'—that is, 'the evolving standards of decency that mark the progress of a maturing society.' " *Id.* (citation omitted). And while solitary confinement does not, in and of itself, constitute cruel and unusual punishment, "[c]onfinement . . . in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." *Id.* (citation omitted). Defendants do not question whether Plaintiffs have adequately pled deliberate indifference, only whether the conditions in isolation are "cruel and unusual." This Court finds that Plaintiffs have "nudged [their] claim across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. That is to say, Plaintiffs have sufficiently alleged that the isolation conditions they have been subjected to deprived them of basic human needs that has resulted in substantial risk of serious harm.

Plaintiffs allege that the cumulative effects of various forms of deprivation subject people to a substantial risk of serious psychological and physiological harm. *See* ECF No. 13, ¶¶ 5, 59, 75, 84. Specifically, Plaintiffs allege that deprivation of normal human contact, environmental stimulation, and exercise along with degrading and dehumanizing security measures subject Plaintiffs to a substantial risk of serious psychological and physiological harm. *See* ECF No. 13, ¶¶ 90–123. Courts have recognized exercise, social interaction, and environmental stimulation as basic human needs subject to deprivation. *See, e.g.*, *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (recognizing exercise as a human need); *Quintanilla*, 730 F. App'x. at 747

("We believe that further factual development is warranted before it can be concluded that [denial of food, exercise, and human contact], whether alone or in combination, are enough to show the deprivation of . . . basic human needs."); *Hall v. Palmer*, Case No. 3:15-cv-8240J-39JRK, 2017 WL 4764345 (M.D. Fla. Oct. 20, 2017) (denying defendants motion to dismiss a plaintiff's claim regarding denial of exercise and normal human contact in isolation); *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) ("[T]he failure to identify [social interaction and environmental stimulation as basic human needs] would be inconsistent with jurisprudence recognizing mental health as worthy of Eighth Amendment protection, and the requirement that Eighth Amendment protections change to reflect 'evolving standards of decency that mark the progress of a maturing society.' ") (citation omitted); *Maddox v. Berge*, 473 F. Supp. 2d 888, 896 (W.D. Wis. 2007) (noting that in a previous case the court had found social interaction and sensory stimulation were basic human needs).

For each of the broad allegations of deprivation of basic human needs, Plaintiffs list specific conditions of confinement. *See* ECF No. 13, ¶¶ 90–99 (deprivation of human contact); 100–07 (deprivation of environmental stimulation); 108–12 (deprivation of exercise). For example, Plaintiffs allege that Defendants deprive them of exercise by, among other things, 1) failing for provide out-of-cell exercise to some inmates for 30 days or longer, 2) providing out-of-cell exercise in

21

small cages that do not have adequate exercise equipment, 3) leaving some prisoners in restraints during out-of-cell exercise, 4) searching inmates cells during exercise time, 5) frequently canceling exercise due to staffing shortage, and 6) denying exercise time for trivial and pretextual offenses. ECF No. 13, ¶¶ 108–12. While some of these allegations in isolation may not result in a violation of the Eighth Amendment, Plaintiffs have alleged sufficient facts to show that the conditions of confinement, in combination, have a "mutually enforcing effect that produces the deprivation of a single identifiable human need" such as human contact, environmental stimulation, and exercise. *See Wilson*, 501 U.S. at 304.

For these reasons, Plaintiffs have alleged sufficient facts to render their Eighth Amendment claim plausible.

B. Second and Third Cause of Action (Americans with Disability Act; Section 504 of the Rehabilitation Act)

To state a claim under the ADA and RA, a plaintiff must allege: "(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) (unpublished) (quoting *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)). "With the exception of its federal funding requirement, the RA

22

uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005) (unpublished).  Defendants' challenge only the first and the third factor of this test.

The term "disability" under the ADA is a "physical or mental impairment that substantially limits one or more" of an individual's "major life activities." 42 U.S.C. § 12102(1). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentration, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also "includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B). Additionally, "the term 'substantially limits' shall be construed broadly in favor of expansive coverage." 28 C.F.R. § 35.108(d)(1)(i). "[T]he threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis." 28 C.F.R. 35.108(d)(1)(ii).

Each Plaintiff alleging a violation of their rights protected by the ADA and RA have sufficiently pled impairments that substantially interfere with major life activities. Plaintiff Harvard has schizoaffective disorder, gender dysphoria, and

bipolar disorder which substantially limits her brain function. ECF No. 13, ¶¶ 13–15; *see* 28 C.F.R. § 35.108(d)(2)(iii)(K) ("Major depressive disorder, bipolar disorder . . . substantially limits brain function). Additionally, Plaintiff Harvard was placed on suicide watch more than fifty times and she has cut or injured herself at least forty times. ECF No. 13, ¶ 15. This shows that her mental illnesses substantially limit her ability to care of herself. *See Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 168 (2d Cir. 2003) ("A mental illness that impels one to suicide can be viewed as a paradigmatic instance of inability to care for oneself."). Plaintiff Meddler has been diagnosed with asthma, anxiety, and mood disorders. ECF No. 13, ¶ 23. She has experienced suicidal ideation and has, on multiple occasions, tied a sheet around her neck. ECF No. 13, ¶ 27. As such, Plaintiff Meddler has shown that her mental illnesses —anxiety and mood disorders—substantially limit her ability to take care of herself. *See Peters*, 320 F.3d at 168. Plaintiff Espinosa suffers from paranoid schizophrenia, major depressive disorder, bipolar disorder, throat tumors, muteness, and cancer which substantially limits his speaking, brain function, and normal cell growth. ECF No. 13, ¶ 30, 32–33; *see* 28 C.F.R. §§ 35.108(d)(2)(iii)(F) & 35.108(d)(2)(iii)(K). Plaintiff Burgess suffers from paralysis which has required him to use a wheelchair and urinary catheters, thus substantially limiting his bladder and musculoskeletal function. *See* 28 C.F.R. §§ 35.108(c)(1) & 35.108(d)(2)(iii)(D). Plaintiff Burgess also suffers from seizure disorder and major depressive disorder

which substantially limits his brain function. ECF No. 13, ¶ 30; 28 C.F.R. §
35.108(d)(2)(iii)(K). Plaintiff Kendrick has insulin-dependent diabetes which
substantially limits his endocrine function. 28 C.F.R. § 35.108(d)(2)(iii)(H); *see also*
*Jones v. McDonald*, Case No. 17-cv-20153, 2018 WL 3629592, at *10–11 (S.D. Fla.
June 12, 2018) (finding that insulin-dependent diabetes is a disability under the
ADA). Finally, Plaintiff Hill has depression, mood disorders, bipolar disorder,
schizophrenia, and blindness which substantially limits his sight and brain function.
ECF No. 13, ¶ 47; 28 C.F.R. § 35.108(d)(2)(iii)(B) & 35.108(d)(2)(iii)(K). Further,
Plaintiff Hill has attempted to harm himself multiple times and has been placed in a
suicide watch cell on numerous occasions. ECF No. 13, ¶ 51. Plaintiff Hill's mental
illnesses, therefore, substantially limit his ability to care for himself. *See Peters*, 320
F.3d at 168.

Next, Defendants argue that Plaintiffs were not discriminated against because
of their disability. ECF No. 28-1, at 45. Specifically, Defendants claim that none of
the Plaintiffs were placed in isolation or have remained in isolation because of a
disability. This is not the case. At least two of the named Plaintiffs allege that they
remained in isolation because of their disability. *See* ECF No. 13, ¶¶ 16, 133 152
(Plaintiff Harvard placed and retained in isolation for behaviors related to her
disability); 25, 133, 152 (Plaintiff Meddler placed and retained in isolation for
behaviors related to her disability). Further, "[a]n ADA claim may proceed on the

theory that the Defendant failed to reasonably accommodate the Plaintiffs' disability." *See Lonergan v. Fla. Dept. of Corr.*, 623 F. App'x 990, 992 (11th Cir. 2015) (citation omitted).

Here, Plaintiffs have sufficiently alleged that they were discriminated against because of their disabilities due to Defedants' failure to provide reasonable accommodation. *See, e.g.*, ECF No. 13, ¶¶ 152 (alleging FDC's failure to 1) modify FDC's policies and practices to accommodate transgender people by failing to provide safe housing, and 2) modify disciplinary rules to accommodate for erratic behaviors of psychiatric and intellectually disabled prisoners); 153 (alleging failure to modify FDC's isolations policies and practices to provide for adequate out-of-cell time, social interaction, environmental stimulation, and mental health treatment to prevent worsening mental health symptoms, which results in self-harm behavior); 154 (alleging failure to modify policies for individuals in isolation for behaviors related to worsening mental health, which results in prolonging of isolation); 156 (alleging FDC's failure to 1) modify its restraint policies and practices for individuals with mobility disabilities, which subjects them to injuries and heightened risk of falls, 2) provide people with mobility and medical disabilities access to exercise, such as physical therapy and exercise equipment, that they need to maintain or increase their ambulation and avoid exacerbation of medical symptoms or chronic pain, 3) change its strip search policies for people with mobility impairments or

catheters to reduce risk of injury or humiliation, 4) modify cell search policies to accommodate people with vision impairments, which results in difficulty finding their belongings after staff moves them during the searches, 5) accommodate prisoners with vision, speech, or hearing disabilities who are more isolated than others because of their disabilities, and 6) remove prisoners with diabetes from their cells as often as needed for insulin injections).  Each of these failures to modify FDC's policies and practices to accommodate persons with disabilities affects one or more named Plaintiffs. *See, e.g.*, ECF No. 13, ¶¶ 152 (Plaintiffs Harvard and Meddler); 153 (Plaintiff Harvard); 156 (Plaintiffs Burgess, Kendrick, Espinosa, and Hill); 157 (Plaintiffs Espinosa and Hill).[2]

For these reasons, Plaintiffs have sufficiently pled their claims for relief under ADA and RA.

## VII

Finally, Defendants contend that some Plaintiffs have failed to exhaust their administrative remedies with respect to certain claims. Defendants, therefore,

---

[2] Defendants also contend that Plaintiffs have not identified an available reasonable accommodation. But Defendants provide no legal support for imposing such a pleading requirement. As such, this Court does not entertain Defendants' argument that this failure is "fatal to [Plaintiffs'] claims." ECF No. 28-1, at 45.

request this Court to dismiss *with* prejudice for failure to exhaust administrative remedies a) all claims asserted by Plaintiffs J.H., Angel Meddler, Jerome Burgess, and James Kendrick, Jr., b) all of Plaintiff Admire Harvard's claims under the ADA and RA, c) Plaintiff Admire Harvard's claims under 42 U.S.C. § 1983, excepting only any such claims that are based on visitations and phone privileges, d) all of Plaintiff Juan Espinosa's claims, excepting only any such claims that are based on his alleged need for more programs to help with his recovery and communication, and e) all of Plaintiff Johnny Hill's claims under 42 U.S.C. § 1983. ECF No. 28, at 2–3. This Court disagrees.

"Exhaustion of administrative remedies is a 'matter[] in abatement, and ordinarily [does] not deal with the merits.' " *Bryant v. Rich*, 530 F.3d 1368, 1374 (2008) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1360 n.15 (2004)). And "[b]ecause exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, 'it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" *Bryant*, 540 F.3d at 1374-75 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)).

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citation omitted) "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citation omitted).

Performing the *Turner* two-step process, this Court finds that, under step-one, Defendants are not entitled to have the amended complaint dismissed for a failure to exhaust administrative remedies. Under step-two, this Court must make specific findings in order to determine whether Plaintiffs exhausted their administrative remedies. *See Turner*, 541 F.3d at 1082. This Court may consider facts outside of the pleadings to resolve factual disputes so long as the factual disputes do not decide the merits and the parties are given sufficient opportunity to develop a record. *See Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 423-24 (11th Cir. 2010) (per curiam) (citing *Bryant*, 530 F.3d at 1376).

In regard to the first requirement, whether Plaintiffs failed to exhaust their administrative remedies does not go to the merits. *Bryant*, 540 F.3d at 1374–75 ("[E]xhaustion of administrative remedies is . . . not generally an adjudication on the merits . . . ."). Regarding the second requirement, the parties have been given sufficient opportunity to develop a record. Defendants, in their motion to dismiss, submitted an affidavit and exhibits that provide details regarding each Plaintiff's grievance appeal. ECF No. 29. Plaintiffs, on the other hand, submitted an exhibit that relates to an informal grievance that was filed by Plaintiff Kendrick. ECF No. 42-1. Both parties have submitted sufficient evidence for this Court to resolve factual disputes. This Court will, therefore, make specific findings to determine whether Plaintiffs exhausted their administrative remedies.

A. Prison Litigation Reform Act and Florida Administrative Code

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory, *Alexander v. Hawk*, 159 F.3d 1321, 1324–26 (11th Cir. 1998), but not jurisdictional. *Bryant*, 530 F.3d at 1374 n.10. The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

At the core of parties' disagreement is the level of factual specificity that must be included in an administrative petition. That is, how much detail does a plaintiff need to include in her petition to satisfy the exhaustion requirement under the PLRA?

"[I]t is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion." *Jones*, 549 U.S. at 219. By extension then, the level of factual specificity that must be included in an administrative petition must interpreted "in light of the grievance rules of the particular prison system." *See Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004); *Goldsmith v. White*, 347 F. Supp. 2d 1336, 1338–39 (N.D. Fla. 2005).

Defendants cite to *Brown v. Sikes*, 212 F.3d 1205, 1208 (11th Cir. 2000) for the proposition that an inmate must provide "all relevant information available to him." *See* ECF No. 28-1, at 18. As Judge Hinkle has aptly pointed out, "*Brown* dealt with the effect of omitting *unknown* information—not how much of the *known* information must be provided." *Goldsmith*, 357 F. Supp. 2d at 1339. "A system that made dismissal of a lawsuit proper unless every known fact was included in a

31

grievance might be completely unworkable" because "[i]t would be a rare case in which defendants could not find some facts that allegedly was not included in a grievance, thus potentially leading to a fact-intensive litigation over exhaustion at the outset of nearly every prisoner case." *Id.* at 1340. That would be antithetical to the purpose of exhaustion requirement, which is to avoid substantial burden on the district courts. *See id.* Additionally, *Jones*, decided after *Brown*, requires this Court to look at FDC's exhaustion requirements to determine the level of factual specificity that must be included in an administrative petition. *Jones*, 549 U.S. at 219. As explained below, FDC's grievance procedure does not require that an inmate provide all relevant information available to him. And if FDC "wanted this level detail, it could so provide in its regulation." *Goldsmith*, 357 F. Supp. 2d at 1340.

The FDC has a grievance procedure, which is set forth in Chapter 33-103 of the Florida Administrative Code. It is a three-tier system. Generally, inmates must begin the grievance process by submitting an informal grievance to the designated staff member, who forwards the informal grievance to the staff member responsible in the particular are of the problem. If dissatisfied with the response, the inmate can submit a formal grievance at the institutional level within fifteen days of the response to the informal grievance. If the inmate is again dissatisfied with the response, he may file an appeal with the Office of Secretary within fifteen days of the response to the formal grievance ("grievance appeal"). *See* Fla. Admin. Code R. 33-103.005–

008, 33-103.011(c). Grievance appeals may be returned without action if one of the conditions listed in Rule 33-103.014 are found to exist. *Id.* As to the level of factual specificity, the only requirement established by FDC's rules is that the "inmate shall ensure that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed." Fla. Admin. Code R. 33-103.005(2)(b)2. "By its terms, this mandates no level of detail at all, requiring only that whatever facts are stated must be true." *Goldsmith*, 357 F. Supp. 3d at 1339.

But allowing claims to proceed without any level of detail would thwart the purpose of PLRA's exhaustion requirement, which "is to put [administrative authority] on notice of all of the issues in contention and allow the [authority] an opportunity to investigate those issues. *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (citations omitted). In circumstances when the prison's grievance procedure is silent about the level of factual specificity required, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). "As in a pleading system, the grievant need not lay out facts, articulable legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id.*; *see also Johnson v. Testman*, 380 F.3d 691, 697 (2d. Cir. 2004) ("We believe that [the] formulation [by the court in *Strong*] is a sound one. Uncounseled inmates navigating prison administrative procedures without assistance cannot be expected

33

to satisfy a standard more stringent than that of notice pleading.). In sum, absent a stringent requirement in FDC's rules, a standard akin to notice pleading is appropriate when determining whether Plaintiffs' grievances contained sufficient details to exhaust their administrative remedies.

Plaintiffs allege a violation of their Eighth Amendment rights and their rights protected by ADA and RA because of the policies and practices of isolation. At the core of Plaintiffs' claims is that Defendants' policy and practice of isolation cause them substantial harm and discriminate against them based on their disabilities. While Plaintiffs allege, among other things, lack of exercise, visitation, education, or gender dysphoria treatment, Plaintiffs' claims are not about separate and distinct conditions of confinement or about separate and distinct incidences of disability discrimination, but rather about overarching conditions of confinement that cause them substantial harm and discriminate against them based on their disabilities.

In contending that Plaintiffs have not exhausted their administrative remedies, Defendants divide aspects of condition in the solitary confinement and argue that Plaintiffs need to separately grieve each of the alleged conditions present in the unit. This Court disagrees. If this Court were to follow Defendants requirement, which goes substantially beyond their own rules, "[D]efendants could obstruct legal remedies to unconstitutional actions by subdividing the grievances" because "[i]t would be a rare case in which defendants could not find some facts that allegedly

was not included in a grievance." *Lewis v. Washington*, 197 F.R.D. 611, 614 (N.D. Ill. 2000); *Goldsmith*, 357 F. Supp. 2d at 1340. Plaintiffs need only grieve that isolation is causing them substantial harm. This is because isolation necessarily involves the restrictions imposed by the isolation, such as lack of exercise, human contact, and environmental stimulation. For their ADA and RA claims, Plaintiffs need to grieve that they had disability-related problems and were discriminated against because of their disabilities.

## B. Plaintiff Admire Harvard

Plaintiff Harvard filed fifty-two grievance appeals from 2010 to present. ECF No. 29-1–3. Of these, only two grievance appeals are relevant—18-6-32696 and 18-6-32709. ECF No. 29-3, at 183–201.

In her grievance appeals, Plaintiff Harvard notified Defendants that "prolonged isolation and sensory deprivation" has caused her "mental torment, driving [her] to the addiction of cutting [herself] in order to elude the depression, stress and anxiety . . . ." ECF No. 29-3, at 185; *see also* ECF No. 29-3, at 185 ("This solitary confinement . . . is in fact prolonged isolation and this sensory deprivation has caused the appellant psychological damage"). Plaintiff Harvard also notified Defendants that she has been in isolation "for over 8 consecutive years!" and hasn't been allowed "receive visitation from family and friends" and "speak with family and friends via telephone" which has caused her to suffer "from psychological

damage." ECF No. 29-3, at 192. In short, Plaintiff Harvard notified Defendants that isolation was causing her substantial psychological harm. She has, therefore, exhausted her administrative remedies on her Eighth Amendment Claim.

Plaintiff Harvard further notified Defendants that she was being retained in isolation due to her mental health issues. *See* ECF No. 29-3, at 184–5, 192 (alleging that she had to serve time in isolation for "intentional self-injurious behavior and suicidal ideation"). Plaintiff Harvard alleged that she was put in isolation for her "suicidal attempt [which was] a result of prolonged isolation" and that this violated her "constitutional rights under the U.S. Constitution and [was] a direct violation of the 'ADA'!" *See* ECF No. 29-3, 185, 192. Plainly, Plaintiff Harvard notified Defendants that they were isolating her due to her disability—suicidal ideation—in violation of the ADA. She has, therefore, exhausted her administrative remedies on her disability discrimination claims.

## C. <u>Plaintiff J.H.</u>

Plaintiff J.H. filed one grievance appeal, 19-6-12440. ECF No. 29-5. In his grievance appeal, Plaintiff J.H. claimed that "being in close management is having negative impacts on [his] mental health" and "is messing with [his] mind." ECF No. 29-5, at 3. Additionally, Plaintiff J.H. asked to be released from isolation so that "[he] can be around other kids and attend a real school program." ECF No. 29-5, at 3. To put it in legal terms, Plaintiff J.H. claimed that isolation is depriving him of an

education and normal human contact and is causing him psychological harm. Plaintiff J.H. has, therefore, properly exhausted his remedies on his Eighth Amendment claim.

Defendants argue that Plaintiff J.H.'s claim is unexhausted because his grievance was based on isolation in CM II and he was in CM III at the time he filed this lawsuit. ECF No. 28-1, at 29. This Court is not persuaded by Defendants' argument. No matter the label, Plaintiff J.H. was still in isolation and has alleged that he has been imposed with same restriction in CM III. ECF No. 13, ¶ 19. He is not required initiate another round of grievance for the same issue. *See Johnson*, 305 F.3d at 521 ("It would make little sense to require a prisoner being subjected to a frigid cell to continue to file grievances stating that the cell remains frigid, and the same principle applies here.").

### D. Plaintiff Angel Meddler

Plaintiff Meddler filed fifteen grievance appeals from 2016 to present. ECF No. 29-6, 7. Only one grievance appeal, 18-6-43544, is relevant. ECF No. 29-7, at 49–54. In her grievance, Plaintiff Meddler claimed that she has been in isolation for almost "3 years" which has caused her "mental health . . . [to] worse[n]" and that she feels like she is "losing [her] sanity." ECF No. 29-7, 50. In short, Plaintiff Meddler notified Defendants that isolation is causing substantial harm to her

psychological well-being. Plaintiff Meddler, therefore, has exhausted her administrative remedies for her Eighth Amendment claim.

Plaintiff Meddler further notified Defendants that she "suffer[s] from real bad depression," is "having psychological emergencies" and that she has "attempted suicide twice." ECF No. 29-7, at 50. As a remedy, Plaintiff Meddler asked Defendants to "let [her] out" of isolation. ECF No. 29-7, at 50. Thus, Plaintiff Meddler established a link between her disability—suicidal ideation and depression—and isolation. By asking to let her out, Plaintiff Meddler alerted Defendants of a need for accommodation for her disability. Defendants argue that Plaintiff Meddler failed to exhaust her administrative remedies because she sought no relief other than to let her out. But, a "grievant need not lay out facts, articulable legal theories, or demand particular relief." *Strong*, 297 F.3d at 650. Because Plaintiff Meddler notified Defendants of her disability and requested an accommodation, she has exhausted her administrative remedies to bring a claim based on disability discrimination.

E.  Plaintiff Juan Espinosa

Plaintiff Espinosa filed twenty-two grievance appeals from June 2018 to present. ECF No. 29-8, 9. Of relevance is Plaintiff Espinosa's exhausted grievance appeal 19-6-07330. ECF No. 29-9, at 128–37.  In his grievance, Plaintiff Espinosa notified Defendants that "being in solitary confinement 24 hours a day" is causing

him to be "more stressed and depressed," and has made it difficult for him to manage his "health problems." ECF 29-9, at 130, 133–34. In legal terms, Plaintiff Espinosa notified Defendants that isolation is causing him substantial psychological harm. Plaintiff Espinosa has, therefore, exhausted his administrative remedies for his Eighth Amendment claim.

Plaintiff Espinosa also alerted Defendants that he has lost his voice and that "there [was] no program to help him . .  learn to deal this this loss, 'at all.' " ECF No. 29-9, at 133. He further stated that he "needed programs to help [him] learn and deal with the loss of [his] voice that [he] cannot get" in isolation. ECF No. 29-9, at 133. That is to say, Plaintiff Espinosa alerted Defendants of his disability (mutism) and requested an accommodation, in form of programs, that would help him manage his disability. Therefore, he has exhausted his administrative remedies for his disability discrimination claims.

### F.  Plaintiff Jerome Burgess

Plaintiff Burgess filed twelve grievance appeals from September 2017 until the present. ECF No. 29-10, 11. Through grievance appeal 19-6-10242, ECF No. 29-11, at 300–04, Plaintiff Burgess exhausted his administrative remedies with respect to his Eighth Amendment and disability discrimination claims.

For his Eighth Amendment claim, Plaintiff Burgess alleged that being in isolation "is making [his] disabilities worse," and that he was losing range of motion,

getting urinary tract infections, and having seizures in his cell. ECF No. 29-11, at 303. These allegations apprised Defendants that isolation was causing him physical harm. Plaintiff Burgess, therefore, exhausted his administrative remedies for his Eighth Amendment claim.

Plaintiff Burgess also exhausted his administrative remedies for his disability discrimination claims. He notified Defendants about his disability. *See* ECF No. 29-11, at 303 (claiming that Plaintiff Burgess is wheelchair dependent with partial mobility, needs a catheter to urinate, and has seizure disorder). He also asked Defendants to accommodate his disability. *See* ECF No. 29-11, at 303 ("You can either release me back to General Population, where I can regularly exercise, get the proper catheters I need and not be in restraints while I'm seizing up. In alternative allow me 5 times a week of regular exercise to strengthen my body, make sure I get clear '[illegible]' catheters every day, and change the restraints used for me while I'm out my cell.").

But Defendants argue that grievance appeal 19-6-10242 was not properly exhausted. Plaintiff Burgess' grievance appeal 19-6-10242 was returned as addressing more than one issue in one grievance in violation of Chapter 33-104.014(1). *See* ECF 29-11, at 302, 304. Specifically, Defendants stated, "[y]our close management placement and medical conditions are separate issues" and, therefore, "your request for administrative appeal is being returned without action."

40

Defendants' justification for returning Plaintiff Burgess' grievance is misplaced. Plaintiff Burgess grieved one issue: the cumulative effect of isolation on his health. The issues of "close management placement" and Plaintiffs' "medical condition" are not separate and distinct, but are intertwined. In essence, Plaintiff Burgess grieved about the harms caused by one action—his placement in solitary confinement. It would make no sense to separate the effect of an action and the action itself.[3]

Plaintiff Burgess did everything required by the administrative rules. He filed a grievance, which was improperly rejected for failing to comply with the one issue rule. *See* ECF No. 29-11, at 304. He then appealed the rejection to the Office of the Secretary, explaining that he was grieving the cumulative effects of isolation on his health. *See* ECF No. 29-11, at 301. The Office of the Secretary also improperly rejected this appeal without addressing the underlying claim. *See* ECF No. 29-11, at 302. Because Plaintiff Burgess properly followed the administrative rules and Defendants improperly returned his grievance, he has exhausted his administrative remedies. *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (holding that § 1997e(a) requires an inmate to exhaust only those grievance procedures "that are capable of use to obtain some relief for the action complained of."); *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) (holding that "when prison officials improperly fail

---

[3] Under Defendants' interpretation of what constitutes a single issue, Plaintiff would have to first file "take me out of solitary confinement" and, then, later file "because it is harming my health." This would make no sense.

to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies" because "[i]n such circumstances, prison officials have 'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process unavailable."); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (holding that if inmate properly follows grievance procedure and prison officials mishandle grievance, then inmate must be considered to have exhausted administrative remedies); *Burnett v. Jones*, 437 F. App'x 736, 741 (10th Cir. 2011) ("[I]mproper rejection of grievance appeal excuses the prisoner's failure to properly exhaust."); *Johnson v. Meier*, 842 F. Supp. 3d 1116, 1119 (E.D. Wis. 2012) (finding that defendants wrongly concluded that the plaintiff violated the single-issue rule and because the plaintiff complied with the grievance rule, he "was left with no further remedies under the inmate grievance system and met the requirements of the PLRA").

### G. Plaintiff James Kendrick, Jr.

Plaintiff Kendrick filed nine grievance appeals from June 2018 to present. ECF No. 29-12,13. In addition, he filed an informal grievance, 205-1902-0471, which was approved by Defendants. ECF No. 42-1, at 2. As it pertains to his informal grievance, Plaintiff Kendrick did not need to appeal his grant in order to exhaust his administrative remedies. *See Williams v. Dep't of Corr.*, 678 F. App'x 877, 881 (11th

Cir. 2017) (holding that a plaintiff is not required to appeal from a grant of relief to exhaust his administrative remedies).

In his grievances, Plaintiff Kendrick claimed that "his depression, anxiety, and suicidal thoughts [have] gotten worse and [have] become more regular and intense since his placement" in solitary confinement and that "his mental and physical health has and is deteriorating." ECF No. 42-1, at 2. Through his grievance appeal 18-6-52194, Plaintiff Kendrick claimed that a nurse administered an insulin injection through a "rusted out food flap." ECF No. 33, at 130. He also claimed that "the practice of making close management inmates stick their arms through 'Rusted Out Food Flaps' is putting them at risk of further health problems" and that the practice of administering pre-loaded insulin syringes put him and other inmates at "risks of health problems when [nurses] don't bring enough, extra Insulin." ECF No. 133, at 131. These grievances notified Defendants that isolation placed Plaintiff Kendrick at risk of physical and mental harm and therefore satisfied the exhaustion requirement for his Eighth Amendment claim. Further, by notifying Defendants of the harmful practice of insulin administration, Plaintiff Kendrick apprised Defendants that he was being discriminated against due to his disability—diabetes. He even suggested an accommodation, when he claimed that "Florida State Prison is the only Institution that forces inmates to stick their arms through 'Rusted Out Food Flaps' to receive their [i]nsulin [s]hots, whereas at other Institutions they pull

the inmates out of their cells to receive their [i]nsulin shots." ECF No. 33, at 130. Therefore, Plaintiff Kendrick notified Defendants of his disability and suggested an accommodation. He has, therefore, exhausted administrative remedies for his disability discrimination claim.

### H. Plaintiff Johnny Hill

Plaintiff Hill filed 15 grievance appeals from July 2014 to present. ECF No. 29-14, 15. Defendants do not challenge that Plaintiff Hill exhausted his administrative remedies for his ADA and RA claims. *See* ECF No. 28, at 2–3 ("dismiss[] with prejudice . . . for failure to exhaust administrative remedies: all of Johnny Hill's claims under 42 U.S.C. § 1983 (First Cause of Action)").

Plaintiff Hill also exhausted his administrative remedies for his Eighth Amendment claim through grievance appeal 19-6-14024. In this grievance appeal, Plaintiff Hill claimed that he had been in isolation for "approximately [four and a half] years" and that being in isolation has caused him "major depression issues, . . . hallucination, suicidal [ideation], . . . [and] hypertension . . . ." ECF No. 29-15, at 143–44. He also informed Defendants that he needed mental health and medical services that would be available to him if he were in the general population, thereby notifying them that he was not receiving equal access to services, and that he needed accommodation. ECF No. 29-15, at 143–44. He requested to be removed from isolation and placed back into general population because isolation had "effected

[sic]—and is still effecting [sic]—[him] mentally and physically." In legalese, he informed Defendants that isolation was causing substantial harm to his psychological and physical health. This Court will, therefore, not dismiss Plaintiff Hill's Eighth Amendment claim.

## VIII

Defendants have not convinced this Court that dismissal is warranted. Therefore, Defendants' motion to dismiss, ECF No. 28, is **DENIED**.

**SO ORDERED on October 24, 2019.**

**s/Mark E. Walker**
**Chief United States District Judge**