## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | | |
|---|---|---|
| HARVARD, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:19-cv-00212-MW-CAS |
| | ) | |
| | ) | |
| MARK S. INCH, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

_____

## PLAINTIFFS' MOTION TO COMPEL
## FIRST REQUESTS FOR PRODUCTION FROM DEFENDANTS MARK INCH AND FLORIDA DEPARTMENT OF CORRECTIONS AND RESPONSES FROM DEFENDANT FLORIDA DEPARTMENT OF CORRECTIONS TO INTERROGATORIES BY PLAINTIFF HARVARD <u>WITH INCORPORATED MEMORANDUM OF LAW</u>

Plaintiffs, by and through undersigned counsel, and under Federal Rule of

Civil Procedure 37 and Local Rule 26.1 of the Northern District of Florida, hereby

move for an order: compelling Defendant Inch and Defendant FDC (collectively,

Defendants) to produce requested documents to Plaintiff's First Requests for

Production; compelling Defendant Florida Department of Corrections (FDC) to

respond to Plaintiff Harvard's First set of Interrogatories; overruling Defendants'

objections; setting deadlines for production; and awarding reasonable fees and

1

costs because Defendants' objections are not substantially justified.  In support of this Motion,[1] Plaintiffs state as follows:

## **Factual Background**

1.      Plaintiffs challenge Defendants' statewide policy and practice of isolating people, alone or with a cellmate, for an average of 22 hours or more per day in cells smaller than the average parking space.  ECF 13 ¶¶ 57-59.  They allege that through the use of isolation, Defendants deprive Plaintiffs and the class members of basic human needs—normal human contact, environmental stimulation, and exercise—and subject them to oppressive security measures.  ECF 13 ¶¶ 59, 83, 84.  Plaintiffs contend that the cumulative effect of these conditions exposes them and class members to a substantial risk of harm in violation of the Eighth and Fourteenth Amendments.  ECF 13 ¶¶ 59, 177.  Plaintiffs also allege that Defendants discriminate against people with disabilities in their use of isolation.  ECF 13 ¶¶ 151-159.

2.      Plaintiffs served their First Request for Production of Documents (RFPs) on Defendants Inch and FDC on August 13, 2019.  After Plaintiffs granted

---

[1] This motion is divided into two sections.  In the first, Plaintiffs address the overarching legal issues that form the bases of Defendants' objections.  In the second, Plaintiffs delineate each of the disputed requests and set out the reasons discovery should be compelled, in accordance with Rule 26.1 of the Local Rules.

them an extension, Defendants responded with objections on October 11, 2019. Defendants requested, and Plaintiffs agreed to, an extension until October 23, 2019, to produce documents not objected to.  Defendants produced a very limited number of the requested documents to Plaintiffs on October 24 and 25, 2019.

3.      On August 28, 2019, Plaintiff Harvard served her First Set of Interrogatories on Defendant FDC.  Defendant FDC responded to the interrogatories on October 14, 2019, objecting in part.

4.      On October 31, 2019, Plaintiffs sent Defendants a meet-and-confer letter, in which they addressed each of Defendants' objections to producing discovery and provided legal support for their positions regarding the requested discovery.  On November 12, 2019, Plaintiffs and Defendants met and conferred regarding Defendants' discovery responses.

5.      Based on the meet and confer and several subsequent communications, it is clear that Defendants continue to misunderstand this case. ECF 54 at 15 (Order Denying Motion to Dismiss) ("Defendants' argument is premised on a fundamental misunderstanding of Plaintiffs' claims.").  They believe the case is solely a facial challenge to written policies that originate from Defendants' headquarters in Tallahassee.  That is not the case that Plaintiffs have pleaded.

6.     Defendants' refusal to provide relevant documents is primarily based on three objections: 1) Information from specific facilities, including about isolation policies and practices at those facilities, and about individual people is not relevant; 2) Plaintiffs are entitled to only two years or less of information, not the five years they have requested for certain information, because they are solely seeking injunctive relief; and 3) Defendants cannot produce "sensitive safety and security information" because the Confidentiality Order entered by this Court (ECF 58) is insufficient.  An order by this Court regarding these three objections will facilitate discovery for nearly all the contested discovery requests.

7.     In addition, in response to two requests (RFPs 62 and 63), Defendants assert the "self-critical analysis privilege" to shield documents that may prove their knowledge of a substantial risk of serious harm—an essential element of Plaintiffs' deliberate indifference claim.  Also, although it is unclear to what extent Defendants are withholding documents based on these objections, Defendants assert that nearly all of Plaintiffs' requests are "vague, ambiguous, overly broad and burdensome."

## I.   MEMORANDUM

Under Rule 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  Plaintiffs' "broad right of discovery is based on the general

principle that "litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth."  *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (citation omitted).  As detailed below, Defendants' overarching objections lack merit and impermissibly impede Plaintiffs' access to information that is highly relevant to their quest for the truth in this case.

### A. Discovery about specific institutions and individuals is relevant to the claims and defenses at issue in this case.

Essentially, Defendants' position is that Plaintiffs are not entitled to any information or documents concerning any person, or anything that has happened, at Defendants' various prisons.  Specifically, they refuse to provide any discovery about the creation or "implementation of policy at the institution level and on an inmate-by-inmate basis" because they regard that information as irrelevant.[2]  This includes refusing to produce discovery regarding written policies that apply only at specific prisons.[3]  These objections appear to be based, at least in part, on Defendants' belief that this case is only a facial challenge to official written

---

[2] Defendants make this objection or a closely related objection in response to the following contested RFPs to Inch: 27, 29, 31, 33, 35, 37, 46, 48, 49, 51, 84-89, 92, 93, 95, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117.  Defendants make a closely related objection to the following contested Interrogatories to FDC: 15 and 16.

[3] Although Defendants do not make a relevance objection to each request seeking "policies," they make a general relevance objection to "policies" that are only in effect at certain institutions in their "Objections to Instructions and Definitions."  For that reason, Plaintiffs explain the relevance of each request for "policies" in Section II.

policies promulgated by FDC's top leadership.  It is not.  Contrary to Defendants' assertions, this discovery goes to the heart of this case.

Plaintiffs bring a claim under 42 U.S.C. § 1983, alleging that Defendants, through various written and unwritten policies that are pervasive in prisons throughout the state, implement an overarching policy and practice of isolating people in such a way that deprives them of their rights.  *See, e.g.*, ECF 13 ¶¶ 57, 59, 82, 116, 120, 176-181.  Section 1983 applies to deprivations of rights caused by "statute, ordinance, regulation, *custom*, or usage, of any State."  § 1983 (emphasis added).  Section 1983 claims may challenge practices, and not just formal policies, because "[a] custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy."  *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003).  For that reason, Plaintiffs are entitled to discover more than just formal written policies from Tallahassee to support their Section 1983 claim.  *See, e.g.*, *Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1158 (M.D. Ala. 2016) (finding that § 1983 liability could properly rest on policies and practices of the Alabama Department of Corrections, *and* the policies and practices of individual prisons).

Plaintiffs allege that Defendants subject people in isolation to a substantial risk of serious harm and disability discrimination through their isolation policies and practices.  They do not make these allegations in a vacuum.  Defendants

implement their isolation policies and practices through individual staff at specific prisons in such a way that affects individual people.  Plaintiffs are entitled to evidence of *how* staff implement the policy and practice at specific prisons and *how* such implementation subjects individual people to a risk of harm or discrimination.  As recognized by the Eleventh Circuit, "[r]elevant discovery in this case would necessarily include facts related to other [incarcerated people] because [t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice."  *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1064 n. 7 (11th Cir. 2013); *see also Parsons v. Ryan*, 289 F.R.D. 513, 521 (D. Ariz. 2013) ("A policy, practice, or custom may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant officials are not reprimanded.")

For example, Plaintiffs allege that Defendants implement a statewide policy of depriving people of exercise by allowing them only a few hours a week, at most, of exercise in a cage.  ECF 13 ¶¶ 108-112.  But they also allege that Defendants do not have enough exercise cages for everyone in isolation and fail to rotate people to ensure everyone receives the meager exercise time allotted under the Florida Administrative Code.  ECF 13 ¶ 111.  To support their claims, Plaintiffs need discovery regarding any policy at, for example, Florida State Prison, that directs staff how to manage exercise time given the shortage of cages, and correctional

records that show whether individual people at Florida State Prison did in fact receive exercise time.  Plaintiffs sought this information in RFPs 34 and 35 to Inch, but Defendants refuse to provide it under their narrow definition of what is relevant in this case.[4]

As a defense to Plaintiffs' claims, Defendants assert, "Liability cannot be predicated upon an isolated act or incident."  ECF 62 § VIII, ¶ 8.  Indeed, the Court has already made clear that Plaintiffs' claims are not about "separate and distinct incidences."  ECF 54 at 34.  In short, Plaintiffs should have access to discovery at the institutional and individual level, including policies from specific prisons, to demonstrate a pattern of conduct that is pervasive and widespread.

**B. The timeframe Plaintiffs requested for discovery responses is reasonable given the claims and defenses in this case.**

Though Plaintiffs asked for discovery dating back to January 1, 2015, for some requests and interrogatories,[5]  Defendants unilaterally limited many of their responses to one year and, in some cases, two years, before the filing of the

---

[4] Defendants also refuse to provide highly relevant information, based on this narrow definition, regarding treatment units that could serve as an alternative to isolation for people with psychiatric and intellectual disabilities in response to RFP 77 to Inch and Harvard's Interrogatories 7 and 8 to FDC.

[5] Plaintiffs request documents from January 1, 2015, until the present for the following contested requests: RFPs to Inch 12-26, 28, 30, 32, 34, 36, 38, 42, 43, 45, 47-49, 52-63, 68-76, 78, 84-89, 94-97, 99, 104, 107-117; RFPs to FDC 1-5, 7; Harvard's Interrogatories to FDC 7, 8, 16.

Complaint.[6]  They attempt to shield past information from discovery on the theory

that because Plaintiffs seek injunctive relief, only current information is relevant.

The opposite is true.

In their Eighth Amendment claim, Plaintiffs allege that Defendants were

deliberately indifferent to a substantial risk of serious harm.  ECF 13 ¶¶ 124-143,

180.  To prove deliberate indifference, Plaintiffs must show "(1) subjective

knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that

is more than gross negligence."  *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir.

2010).  The subjective knowledge prong may turn on circumstances that suggest a

defendant-official's knowledge of a "longstanding" substantial risk.  *Farmer v.*

*Brennan*, 511 U.S. 825, 842-43 (1994).  In cases seeking injunctive relief "to

prevent a substantial risk of serious injury from ripening into actual harm, . . . the

irreparable-injury requirement may be satisfied by demonstrating a history of past

misconduct, which gives rise to an inference that future injury is imminent."

*Thomas*, 614 F.3d at 1318 (citing *Farmer*, 511 U.S. at 842–43).

---

[6] Unless otherwise specified in the requests, Plaintiffs initially requested discovery from January 1, 2014, through the present.  Defendants responded that they would only provide discovery dating back to one year before the Complaint.  Plaintiffs then offered to modify the request to January 1, 2015. Defendants offered to provide certain policies for this time period.  But for other requests, Defendants offered to go back two years instead of one, which, for reasons described below, is still patently insufficient.  Despite Plaintiffs' attempt to negotiate this issue in good faith, the parties have reached an impasse.

Consistent with these principles, this Court has allowed Eighth Amendment plaintiffs to discover facts developed years before they filed their complaints.  For example, in *Hoffer v. Jones*, a case filed in 2017, the Court granted the plaintiffs' motion to compel materials from 2013 to 2016 that they alleged were relevant to their deliberate indifference claims.  *See* Plaintiffs' Motion to Compel at 7-8, *Hoffer v. Jones*, No. 4:17-cv-00214-MW-CAS, ECF 150 (N.D. Fla. Nov. 13, 2017); *Hoffer v. Jones*, No. 4:17-cv-00214-MW-CAS, ECF 174, slip op. at 2 (N.D. Fla. Dec. 6, 2017).  *See also McPherson v. Fla. Dep't of Corr.*, No. 4:19-cv-156-MW-CA, ECF 73, slip op. at 2-3 (N.D. Fla. Oct. 9, 2019) (granting a motion to produce discovery for documents created between 2013 and 2016 for an Eighth Amendment, ADA, and Section 504 case filed in 2019).

Plaintiffs' decision to request information dating back to January 1, 2015, is not arbitrary.  Rather, it is crafted to lead to the discovery of admissible evidence based on information Plaintiffs gathered through public records requests.  For example, in 2015, Defendants participated in a national survey of state prison systems regarding their use of isolation, including the number of people in isolation, the number of people in isolation with a serious mental health issue, and the number of people who had been in isolation for at least three months.  Ex. A.[7]

---

[7] Defendants have not produced this document although it is responsive to, for example, RFPs 107, 111, 112, 113, 114, 115 to Inch.

The survey results, which Defendants reviewed, described the risk of harm from isolation and indicated that Defendants isolate people at twice the national average. ECF 13 ¶ 127.

Shortly afterward, Defendants began an "Analysis of Segregation Processes" to "look at the Department's close management, administrative and disciplinary segregation statuses and the processes used to place, monitor and release inmates from these statuses." Ex. B[8] at 3. As part of this analysis, Defendants extensively reviewed the necessity of isolating people for lengthy periods of time and the stark conditions under which they are held, and made recommendations for changes to their isolation practices—in other words, the *exact* issues at the core of this case. Documents related to this process contain admissions that are highly relevant to Plaintiffs' claims of deliberate indifference, including Defendants' admission that "long-term segregation can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people, have negative outcomes for institutional safety, and increase the risk of recidivism after release." Ex. C. at 1. Discovery before, during, and after this analysis will demonstrate not only whether Defendants knew of a substantial risk of serious harm, but also whether they implemented adequate measures to address the risk.

---

[8] Defendants have refused to produce this document although it is responsive to, for example, RFPs 62, 107, and 111 to Inch.

Evidence of Defendants' past conduct is especially important given the defenses raised in their Answer, ECF 62.  They claim that the violations Plaintiffs allege, if they exist, are moot because they "have been or will have been remedied before the time that this action is finally adjudicated."  ECF 62 § VIII, ¶¶ 17, 27.  But under the doctrine of voluntary cessation, "longstanding practice" cuts against a finding of mootness.  *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1185 (11th Cir. 2007).  If the illegal practices cease, evidence from years before Plaintiffs filed suit will be necessary to challenge Defendants' mootness defense.

### C. Defendants are improperly withholding discovery based on unspecified "confidentiality, safety, and security" concerns.

Defendants improperly refuse to produce discovery due to "confidentiality, safety, and security issues."[9]  Specifically, in response to a number of requests, they object to Plaintiffs' definition of "policies" because "the definition includes safety and security-sensitive materials, including but not limited to technical manuals, post orders, and other security security-related materials that are highly-confidential [sic] in nature."  In response to other requests, Defendants object to producing certain documents that they allege are exempt from disclosure under

---

[9] Defendants object to RFPs 12-15, 22-24, 35-37, 46-49, 53-55, and 136 to Inch based upon the confidentiality, safety and security issues raised in the general objections to "policies."  In response to RFPs 107-17 and 124-34 to Inch, and RFPs 1-7 to FDC, Defendants object to producing documents they allege are exempt from disclosure under Florida's public records laws.

Sections 945.10 and 119.071 of the Florida Statutes "without an order/agreement governing confidentiality."

There is no apparent justification for Defendants' refusal to produce such discovery on this basis. As an initial matter, the Court entered a Confidentiality Order, ECF 58, after Defendants raised these objections. Defendants have refused to withdraw this objection, or specifically identify all the requests for which they continue to withhold documents based on this objection, after the Court entered this Order. They maintain this position even though the Order is designed to guard against the improper dissemination of sensitive safety and security information. Defendants' refusal to abide by the terms of this Order appears to be an attempt to relitigate their request for an extraordinarily limited "Attorneys' Eyes Only" designation, which the Court expressly declined to enter. *See* ECF 58 at 1-2.

Additionally, Defendants have not asserted any legal privilege that may exempt such documents from disclosure. Indeed, there is no such thing as a blanket "safety and security privilege" in the federal common law, the United States Constitution, a federal statute, or the federal rules. *See* Fed. R. Evid. 501. Plaintiffs also note that public records exemptions have no bearing on Plaintiffs' discovery requests, as the existence of a statutory exemption is not "a basis for failing to provide documents requested through discovery in a federal lawsuit." *Yili Tseng v. Fla. A&M Univ.*, No. 4:08CV91-SPM/WCS, 2008 WL 11337646, at

*3 (N.D. Fla. Dec. 3, 2008). *See also Delaurentos v. Peguero*, 47 So. 3d 879, 881 (Fla. 3d. DCA 2010) (public record act "provision does not create a privilege which would insulate such records from discovery in litigation.")

### D. Defendants improperly assert the self-critical analysis privilege.

Defendants improperly object to RFPs 62 and 63 to Inch based on the "self-critical analysis privilege." Defendants have not provided a privilege log describing the nature of these documents as required by Rule 26(b)(5), so it is unclear to what extent that they are withholding documents on this basis. Even so, the Eleventh Circuit has yet to recognize this privilege, also known as the "peer review privilege," and expressly rejected it in federal civil rights cases. *Adkins v. Christie*, 488 F.3d 1324, 1329 (11th Cir. 2007). In fact, the "overwhelming majority of decisions" both in and outside of the Eleventh Circuit have rejected the self-critical analysis privilege in any context. *Burrow v. Forhas Taurus S.A.*, 334 F. Supp. 3d 1222, 1232-33 (S.D. Fla. 2018); *Jenkins v. DeKalb County*, 242 F.R.D. 652, 659 (N.D. Ga. 2007) ("It appears that every United States Court of Appeals that addressed the issue of whether there is a federal medical peer review privilege has rejected the claim.").

Defendants' documents related to the harms, effects, or impact of isolation are critical to Plaintiffs' claims that Defendants knew of a substantial risk of serious harm and failed to take reasonable measures to address it. Defendants

cannot use this privilege as a shield to prevent Plaintiffs from obtaining this crucial evidence. *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 193 (1990) (denying a peer review privilege because "if there is a 'smoking gun' to be found that demonstrates discrimination … it is likely to be tucked away in peer review files"); *Adkins*, 488 F. 3d at 1329 (finding that the peer review privilege did not apply because the documents were "critical" to the plaintiff's discrimination claims); *see also Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005) (rejecting peer review privilege in the prison context because "it is peculiarly important that the public have access to the assessment by peers of the care provided").

Plaintiffs acknowledge that some courts within the Eleventh Circuit, including the Northern District of Florida, have applied the self-critical analysis privilege. *See, e.g.*, *Reichhold Chemicals, Inc. v. Textron*, Inc., 157 F.R.D. 522, 527 (N.D. Fla. 1994); *Reid v. Lockheed Martin Aeronautics Co.*, 199 F.R.D. 379, 385 (N.D. Ga. 2001). But *Reichhold*, for example, is not a federal civil rights case and did not involve an Eighth Amendment claim that required the plaintiff to prove deliberate indifference. And both *Reichhold* and *Reid* were decided before the Eleventh Circuit, in *Adkins*, rejected the self-critical analysis privilege in civil rights cases. As such, the rule in *Adkins* must take precedence. Moreover, the *Reichhold* court required "that no document should be privileged unless it was prepared with the expectation that it would be keep [sic] confidential, and it has in

fact been kept confidential." *Id.* at 527.  Plaintiffs have received countless

documents through public records requests from Defendants that they believe

would be responsive to these requests.  *See, e.g.*, Ex B.  In other words, Defendants

have not kept such documents confidential and cannot assert the self-critical

analysis privilege to shield them from production.

**E. Defendants' boilerplate objections are meritless and should be rejected.**

Defendants object to nearly every request as "vague, ambiguous, overly

broad and burdensome."  These boilerplate objections are "strongly disfavored."

N.D. Fla. Loc. R. 26.1(c); *see also Siddiq v. Saudi Arabian Airlines Corp.*, No.

6:11-CV-69-ORL-19GJK, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011)

(finding that boilerplate objections "are, by themselves, meaningless, and are

deemed without merit") (citing *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691,

695 (S.D. Fla. 2007)).

Defendants' objections about vagueness and ambiguity are baseless because

Plaintiffs have clearly defined the terms in each request, including, for example,

"policies."[10]  Also, Defendants have previously produced documents in response to

---

[10] "POLICY" or "POLICIES" refers to written or formal policies, interim policy documents, procedures, rules, regulations, protocols, technical manuals, post orders, guidelines, directives, orders, instructions, bulletins, training materials, memoranda, practices, customs, and usages, including those that may not have been officially approved, reduced to writing, or otherwise formalized.  It includes policies that are in effect throughout FDC or at one or more FACILITIES.

public records requests that used the same or similar terms.  Defendants identified, for example, a list of "Procedures Related to Close Management," Ex. D., in response to a public records request seeking policies and procedures regarding "placement, retention, management, and/or release of prisoners in close management," which is nearly identical to RFP 15.  And yet, Defendants have not produced many of these procedures.

Defendants have also not explained, with the required specificity, why Plaintiffs' requests are overly broad or burdensome.  At most, they have identified a certain number of responsive documents to a limited number of requests.  *See, e.g.*, RFPs 98 and 99.  Even for these requests, however, they have not alleged that compliance will cause great labor and expense.  And even if it did, this fact would not of itself excuse compliance with a discovery request.  *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005); § 2214 Motion for Order Compelling Inspection, 8B Fed. Prac. & Proc. Civ. § 2214 (3d ed.).  It is Defendants' burden to specifically explain how each request is burdensome or overbroad, which they have failed to do.  *Lane*, 242 F.R.D. at 670 ("[T]he objecting party must do more than simply intone the familiar litany that the interrogatories are burdensome, oppressive or overly broad.") (internal punctuation and citations omitted).

17

In toto, Defendants' objections are not substantially justified.  And so, under

Fed. R. Civ. P. 37(a), Plaintiffs request reasonable attorneys' fees and costs

incurred in relation to this Motion to Compel.  *Devaney v. Continental American

Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir. 1993) (finding that Rule 37 was

"toughened … to mandate that expenses be awarded unless the conduct of the

losing party or person is found to have been substantially justified").

In the section below, Plaintiffs explain why the Court should compel

discovery as to each request.

## II.   <u>CONTESTED REQUESTS</u>

<u>**Plaintiffs' First Request for Production to Inch:**</u>

> **<u>RFP 12</u>**: ALL POLICIES RELATED TO placement, retention,
> management, transfer, AND release of PRISONERS in Disciplinary
> Confinement.
>
> **<u>DEFENDANT'S RESPONSE</u>**: See F.A.C. 33-601.800. …[11] Defendants
> also object based upon the confidentiality, safety and security issues raised
> in the general objections to "policies." Defendants further object that "ALL
> POLICIES RELATED TO" and "retention" and "management" are vague,
> ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that the

conditions in Disciplinary Confinement subject people to a substantial risk of

serious harm (*see, e.g.*, ECF 13 ¶¶ 75, 78, 79, 102-103, 106), and that Defendants

---

[11] Plaintiffs have replaced Defendants' withdrawn objections with ellipses (…).

fail to modify their policies and procedures to ensure that people with disabilities are not placed in Disciplinary Confinement because of their disabilities (ECF 13 ¶¶ 152). Defendants' policies and practices related to Disciplinary Confinement are specifically at issue in this case. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 13**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Administrative Confinement
>
> **DEFENDANT'S RESPONSE**: … Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "Policies." Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that the conditions in Administrative Confinement subject people to a substantial risk of serious harm (ECF 13 ¶¶ 75, 77, 102-103, 108), and that Defendants fail to modify their policies and procedures to ensure that people with disabilities are not placed in Administrative Confinement because of their disabilities (ECF 13 ¶¶ 152). Defendants' policies and practices related to Administrative Confinement are specifically at issue in this case. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 14**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Maximum Management.

**DEFENDANT'S RESPONSE**: … Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "Policies." Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that the conditions in Maximum Management subject people to a substantial risk of serious harm (*see, e.g.*, ECF 13 ¶¶ 75, 81, 102-103, 106) and that Defendants fail to modify their policies and procedures to ensure that people with disabilities are not placed in Maximum Management because of their disabilities (ECF 13 ¶¶ 152). Defendants' policies and practices related to Maximum Management are specifically at issue in this case.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 15**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Close Management.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800.  FDC will produce blanks of the following forms referenced in the Rule:  DC6-233C, DC6-265, DC6-128, DC6-229, DC6-229B, DC6-221, DC4-643A, DC4-729, DC6-220, DC6-228, DC6-209, NI1-046.   FDC will also produce Procedures 601.211, 601.219, 601.220, 601.223, 602.013,602.018, 602.028, 602.036, 602.043, 602.047, 602.051 and 602.053.  Otherwise, Defendants object based upon the confidentiality, safety and security issues raised in the general objections to "Policies" and Defendants' Response to Plaintiffs' Motion for Entry of Confidentiality Order. Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that the conditions in Close Management subject people to a substantial risk of serious

harm (*see, e.g.*, ECF 13 ¶¶ 75, 80, 102-103), and that Defendants fail to modify

their policies and procedures to ensure that people with disabilities are not placed

in Close Management because of their disabilities (ECF 13 ¶¶ 152).  Defendants'

policies and practices related to Close Management are specifically at issue in this

case.  Although Defendants have agreed to produce certain procedures

promulgated in Tallahassee, they are refusing to produce "policies," as defined by

Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is

clear and Defendants have failed to explain why this request is overly broad and

burdensome.

> **RFP 16**: ALL POLICIES RELATED TO HYGIENE ITEMS for
> PRISONERS in ISOLATION.

> **DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800. … Defendants
> further object that "ALL POLICIES RELATED TO" is vague, ambiguous,
> overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that

Defendants deprive people of hygiene items in isolation.  ECF 13 ¶¶ 82, 120, 148.

Plaintiffs further allege that this policy and practice, combined with other

deprivations, subjects people to a substantial risk of serious harm.  ECF 13 ¶ 75,

82.  Plaintiffs' request is clear and Defendants have failed to explain why this

request is overly broad and burdensome.

> **RFP 17**: ALL POLICIES RELATED TO tablet computers for PRISONERS
> in ISOLATION.

**DEFENDAN'T RESPONSE**: See F.A.C. 33-601.800. FDC will produce documents regarding the Interim Tablet and Kiosk Procedure and JPay Inc. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including tablets, forcing them into idleness.  ECF 13 ¶¶ 100, 102.  Plaintiffs further allege that this policy and practice, combined with other deprivations, subjects people to a substantial risk of serious harm in isolation.  ECF 13 ¶¶ 75, 82.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 18:** ALL POLICIES RELATED TO radios AND batteries for PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800. FDC will produce Procedure 602.047. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including access to radios and batteries for the radios, forcing them into idleness.  ECF 13 ¶¶ 100, 102. Plaintiffs further allege that this policy and practice, combined with other deprivations, subjects people to a substantial risk of serious harm in isolation.  ECF 13 ¶¶ 75, 82.  Although Defendants have agreed to produce one procedure promulgated in Tallahassee, they are refusing to produce "policies," as defined by

Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is

clear and Defendants have failed to explain why this request is overly broad and

burdensome.

> **RFP 19:** ALL POLICIES RELATED TO PROPERTY RESTRICTION in
> all FACILITIES.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. FDC will produce
> Procedures 602.018 and 602.047. … Defendants also object on the basis of
> proportionality and relevance because not "all FACILITIES" are at issue in
> this case. Defendants further object that "ALL POLICIES RELATED TO"
> is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that

Defendants have a policy and practice known as "property restriction," where they

remove all property in people's cells, including their clothes and bedding, for a

period of 72 hours or longer.  ECF 13 ¶ ¶ 82, 120-121.  Plaintiffs further allege that

this policy and practice, combined with other deprivations, subjects people to a

substantial risk of serious harm.  ECF 13 ¶¶ 75, 82, 122.  Although Defendants

have agreed to produce certain procedures promulgated in Tallahassee, they are

refusing to produce "policies," as defined by Plaintiffs, responsive to this request

from specific prisons.  Plaintiffs' request is clear and Defendants have failed to

explain why this request is overly broad and burdensome.

> **RFP 21**: ALL POLICIES RELATED TO the operation and functioning of
> plumbing in ISOLATION, including but not limited to the flushing of
> toilets.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of the ability to control plumbing, such as flushing their toilets in their cells, in isolation.  ECF 13 ¶ 89.  Plaintiffs further allege that this policy and practice, combined with other conditions in isolation, subjects people to a substantial risk of serious harm.  ECF ¶¶ 75, 82.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 22**: ALL POLICIES RELATED TO the operation of lighting in ISOLATION, including schedules for turning lights off AND on inside cells.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of the ability to control lighting in their cells in isolation.  ECF 13 ¶ 88.  Plaintiffs further allege that this policy and practice, combined with other conditions in isolation, subjects people to a substantial risk of serious harm.  ECF ¶¶ 75, 82.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 23**: ALL POLICIES RELATED TO canteen services for
PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. FDC will produce
Procedures 204.005, 602.018 and 602.047. … Defendants further object that
"ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and
burdensome. Defendants also object to this request to the extent it seeks
safety and security- sensitive materials, including but not limited to, post
orders.

This request seeks relevant information because Plaintiffs allege that

Defendants deprive people of canteen items in isolation.  ECF 13 ¶ 82.  Plaintiffs

further allege that this policy and practice, combined with other deprivations,

subjects people to a substantial risk of serious harm.  ECF 13 ¶¶ 75, 82.  Although

Defendants have agreed to produce certain procedures promulgated in Tallahassee,

they are refusing to produce "policies," as defined by Plaintiffs, responsive to this

request from specific prisons.  Plaintiffs' request is clear and Defendants have

failed to explain why this request is overly broad and burdensome.

**RFP 24**: ALL POLICIES RELATED TO meal delivery for PRISONERS
in ISOLATION.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. FDC will produce
Procedures 204.002, 401.009 and 503.006.  … Defendants further object that
"ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and
burdensome.

This request seeks relevant information because Plaintiffs allege that

Defendants fail to modify their meal delivery services to accommodate people with

diabetes in isolation who require Defendants to appropriately time their meal

deliveries with their insulin injections.  ECF 13 ¶¶ 44, 156.  Plaintiffs further allege

that people in isolation must eat their meals on their beds or the floors of their

cells, which, combined with other conditions in isolation, subject people to a

substantial risk of serious harm.  ECF 13 ¶ 89.  Although Defendants have agreed

to produce certain procedures promulgated in Tallahassee, they are refusing to

produce "policies," as defined by Plaintiffs, responsive to this request from specific

prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this

request is overly broad and burdensome.

> **RFP 25:** ALL POLICIES RELATED TO programming for PRISONERS in
> ISOLATION, including but not limited to "Anger Management" and
> "Thinking for a Change."
>
> **DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800. FDC will produce
> Procedure 504.001 and documents for programs regarding anger
> management and "Thinking for a Change." … Defendants further object that
> "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and
> burdensome.

This request seeks relevant information because Plaintiffs allege that

Defendants deprive people of environmental stimulation, including meaningful

rehabilitative programs, in isolation.  ECF 13 ¶¶ 100, 147.  Plaintiffs further allege

that this policy and practice, combined with other deprivations, subjects people to a

substantial risk of serious harm.  ECF 13 ¶ 75.  Although Defendants have agreed

to produce one procedure promulgated in Tallahassee, they are refusing to produce

"policies," as defined by Plaintiffs, responsive to this request from specific prisons.

Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 26:** ALL POLICIES RELATED TO any academic education and adult education for PRISONERS in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800.   FDC will produce Procedures 501.106, 501.201, 502.001 and 504.001 and other documents regarding academic and adult education.  … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including education services, in isolation (ECF 13 ¶ 105, 106), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). Plaintiffs further allege that there is no legitimate penological purpose for depriving people of education services while in isolation.  ECF 13 ¶ 148.  In response to Plaintiff Harvard's Interrogatory 5 to FDC, Defendants allege that they do in fact provide education services to people in isolation. This request will gather specific facts to support or refute the parties' allegations.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 27:** ALL DOCUMENTS that report or describe the dates, days of the week, OR times that academic education AND adult education were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANTS' RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." D.E. 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that adult education was scheduled or provided to individual inmates is not relevant to the claims being asserted.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including education services, in isolation (ECF 13 ¶ 105, 106), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). In response to Plaintiff Harvard's Interrogatory 5 to FDC, Defendants allege that they do in fact provide education services to people in isolation. This request will gather specific facts to support or refute the parties' allegations.

**RFP 28**: ALL POLICIES RELATED TO vocational education for PRISONERS in ISOLATION.

**DEFENDANTS' RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedure 501.106. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including vocational programming, in isolation (ECF 13 ¶ 106), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 29**: ALL DOCUMENTS that report or describe the dates, days of the week, OR times that vocational education was scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANTS' RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that vocational education was scheduled or provided to individual inmates is not relevant to the claims being asserted.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including vocational programming, in isolation (ECF 13 ¶ 106), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).

**RFP 30**: ALL POLICIES RELATED TO chaplain services for PRISONERS in ISOLATION.

**DEFENDANTS' RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedure 503.002. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including religious services, in isolation (ECF 13 ¶ 104), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 31**: ALL DOCUMENTS that report or describe the dates, days of the week, OR times that chaplain services were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANTS' RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that chaplain services were scheduled or provided to individual inmates is not relevant to the claims being asserted.

This request seeks relevant information because Plaintiffs allege that

Defendants deprive people of environmental stimulation, including religious

services, in isolation (ECF 13 ¶ 104), which, combined with other deprivations,

subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).  This request is

also reasonably calculated to lead to admissible evidence regarding whether

Defendants follow their written policies that require, for example, a chaplain to

make weekly visits to people in Close Management.  F.A.C. Rule 33-

601.800(15)(f).

**RFP 32**:  ALL POLICIES RELATED TO library services for PRISONERS in ISOLATION.

**DEFENDANTS' RESPONSE:** See F.A.C. 33-601.800. FDC will produce Procedures 501.301, 501.303, 501.304, 501.305 and 501.310. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that

Defendants deprive people of environmental stimulation, including reading

materials, in isolation (ECF 13 ¶ 103), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).   Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce policies responsive to this request from specific prisons.   Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 33**: ALL DOCUMENTS that report or describe the dates, days of the week, OR times that library services were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.
>
> **DEFENDANTS' RESPONSE**: Defendants objects to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that library services were scheduled or provided to individual inmates is not relevant to the claims being asserted.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including reading materials, in isolation (ECF 13 ¶ 103), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).  This request is also reasonably calculated to lead to admissible evidence regarding whether

Defendants follow their written policies that, for example, allow people in Administrative Confinement to check out no more than one book each week. F.A.C. Rule 33-602.220(5)(o).

> **RFP 34**: ALL POLICIES RELATED TO recreation for PRISONERS in ISOLATION.
>
> **DEFENDANTS' RESPONSE:** See F.A.C. 33-601.800. FDC will produce Procedure 602.051. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of exercise in isolation (ECF 13 ¶¶ 108–112), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).  Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.   Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 35:** ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that recreation was scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANTS' RESPONSE:** Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that recreation was scheduled or provided to individual inmates is not relevant to the claims being asserted. … Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of exercise in isolation (ECF 13 ¶¶ 108–112), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).  This request is also reasonably calculated to lead to admissible evidence regarding whether Defendants follow their written policies that require them to, for example, provide outdoor recreation for two hours once every 30 days for the first 60 days someone is in Maximum Management.  F.A.C. 33-601.820(5)(c).

**RFP 36**:  ALL POLICIES RELATED TO job assignments for PRISONERS in ISOLATION.

**DEFENDANTS' RESPONSE**:  See F.A.C. 33-601.800. FDC will produce Procedure 601.805. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including prison jobs, in isolation (ECF 13 ¶ 102), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 37:** ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that PRISONERS in ISOLATION were scheduled for job assignments from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANTS' RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that work assignments were scheduled or provided to individual inmates is not relevant to the claims being asserted. … Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including prison jobs, in isolation (ECF 13 ¶ 102), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). This request is also reasonably calculated to lead to admissible evidence regarding whether and to what extent Defendants follow their written policies that, for example, allow certain people assigned to Close Management to have work assignments. F.A.C. 33-601.800(13).

> **RFP 38 TO INCH**: ALL POLICIES RELATED TO orderly services for PRISONERS in ISOLATION.
>
> **DEFENDANTS' RESPONSE**: Defendants cannot determine if "orderly services" is intended to cover something other than "job assignments;" however, there is no separate policy regarding orderly services. Therefore, *see* Response to Request for Production No. 36.
>
> **REVISED[12] RFP 38 TO INCH**: All POLICIES RELATED TO "inmate assistants," as referenced in Defendants' response to Interrogatory 6 to FDC.

This request seeks relevant information because Plaintiffs allege that Defendants fail to accommodate people with disabilities in isolation by failing to provide assistance to complete their daily activities. ECF 13 ¶ 157. Defendants indicated in their response to Plaintiff Harvard's Interrogatory 6 to FDC that part of their training to staff about providing services to people with disabilities in

---

[12] During the parties' negotiations regarding Plaintiffs' discovery requests, Plaintiffs modified a number of RFPs in an effort to address some of Defendants' objections. For all such requests, Plaintiffs have included the original request and the revised request.

isolation includes the "process for training, utilizing, and evaluating inmate assistants." Plaintiffs need the requested policies to determine whether Defendants attempt to provide assistance with daily activities for people in isolation through the use of "inmate assistants."

**RFP 39 TO INCH**: ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that orderly services were scheduled or provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: Defendants cannot determine if "orderly services" is intended to cover something other than "job assignments;" however, there is no separate policy regarding orderly services. Therefore, *see* Response to Request for Production No. 37.

**REVISED RFP 39 TO INCH**: ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that inmate assistants were scheduled to provide or provided to services to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

This request, in tandem with RFP 38, is reasonably calculated to lead to admissible evidence regarding whether "inmate assistants" have in fact provided services to people with disabilities in isolation such as assistance with their daily activities.

**RFP 42**: ALL DOCUMENTS provided to the Association of State Correctional Administrators RELATED TO ISOLATION.

**DEFENDANTS' RESPONSE**: FDC will produce reports prepared by the Association of State Correctional Administrators, which reference documents relied upon by ASCA. Otherwise, Defendants object that each and every document provided by FDC to ASCA is not relevant to the claims in this lawsuit, and it is disproportionate to the needs of this case to require FDC to search for and provide such documents. … Defendants further object that "ALL DOCUMENTS" is vague, ambiguous, overly broad and burdensome.

The requested documents are relevant because Plaintiffs allege that Defendants chose to participate in a 2015 survey, and then refused to participate in a 2017 survey, performed by the Association of State Correctional Administrators regarding isolation.  ECF 13 ¶ 127.  The 2015 survey report revealed that FDC uses isolation at twice the national rate and both the 2015 and 2017 survey reports "specifically describe the harms of isolation."  ECF 13 ¶ 127.  This request is reasonably calculated to lead to admissible evidence regarding Defendants' isolation policies and practices and their knowledge of the substantial risk of serious harm from isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 43:** ALL DOCUMENTS provided to the American Correctional Association RELATED TO ISOLATION.

**DEFENDANTS' RESPONSE:** FDC will produce audit reports prepared by the American Correctional Association, which reference documents relied upon by ACA.  Otherwise, Defendants object that each and every document provided by FDC to ACA is not relevant to the claims in this lawsuit, and it is disproportionate to the needs of this case to require FDC to search for and provide such documents. … Defendants further object that "ALL DOCUMENTS" is vague, ambiguous, overly broad and burdensome.

The requested documents are relevant because Plaintiffs allege that the American Correctional Association (ACA) has notified Defendants that the size of their isolation cells and their recreation policies violate ACA standards. ECF 13 ¶ 108-109. Plaintiffs further allege that Defendants have made admissions to ACA regarding the inadequacies of their recreation policies but have failed to take actions they repeatedly told the ACA they would take to address these inadequacies. ECF 13 ¶ 141. These documents are directly relevant to Plaintiffs' deliberate indifference claim. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 45 TO INCH**: All audits, reports, evaluations, OR studies authored by the American Correctional Association RELATED TO FDC.
>
> **DEFENDANTS' RESPONSE**: FDC will produce audit reports prepared by the American Correctional Association. Otherwise, Defendants object that each and every audit, report, evaluation and study prepared by ACA is not relevant to the claims in this lawsuit, and the request is therefore disproportionate to the needs of this case. … Defendants further objects that "All audits, reports, evaluations, OR studies" "RELATED TO FDC" is vague, ambiguous, overly broad and burdensome.
>
> **REVISED RFP 45 TO INCH**: All audits, reports, evaluations, OR studies authored by the American Correctional Association RELATED TO FDC and that comment on, describe, or refer to ISOLATION, "restrictive housing," OR "segregation."

This request seeks relevant information for the same reasons described for RFP 43. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 46 TO INCH**: All Incident Reports RELATED TO PRISONERS in ISOLATION from February 2, 2019, through the present.

**DEFENDANTS' RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "[a]ll Incident Reports RELATED TO PRISONERS in ISOLATION" is not relevant to the claims being asserted. … Defendant also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object on the basis that this request will require a manual review of each facility's incident reports to determine the nature and relevance of the particular incident, which is unduly burdensome and not proportional to the needs of this case.

**REVISED RFP 46 TO INCH**: All Incident Reports about incidents that occurred in ISOLATION from February 1, 2019, through the present.

FDC Procedure 602.008 requires staff to complete incident reports for "unusual occurrences" that could include "an accident involving possible injury to a person …, a suspicious action or occurrence, or other circumstance which could impact agency operations."  This request is therefore reasonably calculated to lead to admissible evidence regarding the substantial risk of serious harm for people in isolation, including self-injurious behaviors and medical emergencies.

**RFP 47:** ALL POLICIES RELATED TO correctional STAFFING levels, assignments, and schedules in ISOLATION.

**DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "correctional STAFFING levels, assignments, and schedules" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own post charts, daily rosters and other documents that are institution-specific. Defendants also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Plaintiffs allege that "correctional staffing is insufficient to safely provide critical safety and security operations," and as a result FDC does not consistently provide essential services such as "showers, security checks, out-of-cell exercise, dayroom time, and healthcare to people in isolation." ECF 13 ¶ 140. This request is reasonably calculated to lead to the discovery of admissible evidence of, for example, whether correctional staff are sufficiently available to provide critical safety and security operations that may prevent harm from isolation. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 48:** ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of correctional STAFF.

**DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800. FDC will produce Procedures 208.017, 208.018, 208.019, 208.020, 208.022, 208.063, 208.064

and 209.001.  … Defendants further object that "ALL POLICIES
RELATED TO hiring, supervision, job performance evaluation, AND
discipline of correctional STAFF" is vague, ambiguous, overly broad and
burdensome. Defendants also object to this request to the extent it seeks
safety and security-sensitive materials. Defendants further object to this
request as overly broad, not proportional to the needs of this case, and not
reasonably calculated to lead to the discovery of admissible evidence.
Plaintiffs' case as alleged is a challenge to overarching state-wide policies,
and not a "challenge to a series of distinct incidents." DE 42, p. 4. The
hiring, supervision, job performance evaluation, and discipline of
correctional staff at the institution level do not address whether the
"overarching policy" is constitutional and/or discriminatory. Thus,
Plaintiffs' request is not relevant to the claims being asserted.

The requested policies are relevant because Plaintiffs allege that Defendants

do not hire enough correctional staff "to safely provide critical safety and security

operations" in isolation.  ECF 13 ¶ 140.  Plaintiffs further allege that Defendants

fail to follow their own written policies, in part because of staff misconduct, which

intensifies the deprivations people experience in isolation.  ECF 13 ¶¶ 82, 103,

113, 123.  This request is reasonably calculated to lead to the discovery of

admissible evidence of whether Defendants appropriately try to prevent and

respond to such misconduct.  Although Defendants have agreed to produce certain

procedures promulgated from Tallahassee, they are refusing to produce "policies,"

as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs'

request is clear and Defendants have failed to explain why this request is overly

broad and burdensome.

**RFP 49:** ALL POLICIES RELATED TO training for correctional STAFF in
ISOLATION.

**DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800.  FDC will produce Procedures 208.064, 209.001, 209.002, 209.003, 209.004 and 209.101. … Defendants further object that "ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of correctional STAFF" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The training of correctional staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Policies related to training for correctional staff in isolation are relevant to show, for example, whether correctional staff are appropriately trained to accommodate people with disabilities in isolation, recognize and appropriately respond to the risk or suicide, and prevent the psychological and physical health consequences of isolation.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 51:** All work schedules for correctional STAFF who provided services in ISOLATION from January 1, 2018, through the present.

**DEFENDANT'S RESPONSE:** Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably

calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for work schedules is not relevant to the claims being asserted. …

**REVISED RFP 51:** All Daily Security Rosters from each day and each shift at FACILTIES whether there is ISOLATION during the time period of November 1, 2018, through the present.

Daily Security Rosters list the correctional staff, including their job titles, available during each shift to provide security operations.  Daily Security Rosters are relevant, in tandem with other staffing-related documents requested in RFPs 47-50, to determine which staff are available, trained, and expected to provide critical safety and security operations that may prevent a risk of harm to persons subject to isolation.

**RFP 52 TO INCH**: ALL POLICIES RELATED TO any FDC Alternative Housing Program OR Alternative Housing Pilot Program.

**DEFENDANTS' RESPONSE**: … Further, Defendants object that "ALL POLICIES RELATED TO any" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. …

Plaintiffs have reviewed public records indicating that Defendants implemented an alternative housing program to reduce the number of people, and the duration of time that people spend, in Disciplinary Confinement.  The requested policies are therefore reasonably calculated to lead to admissible

44

evidence regarding Defendants' knowledge of a substantial risk of serious harm

from isolation.  These policies may also demonstrate that it is not unduly

burdensome for them to modify their isolation policies and practices.  Plaintiffs'

request is clear and Defendants have failed to explain why this request is overly

broad and burdensome.

> **RFP 53**: ALL POLICIES RELATED to the "Automated Discipline and Integrated Offender System".
>
> **DEFENDANTS' RESPONSE**: Defendants object on the basis that the request seeks safety and security-sensitive materials that are highly-confidential in nature and not relevant to the claims in this case. Defendants further object that "ALL POLICIES" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. …

Based on public records, Plaintiffs believe the Automated Disciplinary and

Integrated Offender System (ADIOS) is a computer program or system that

contains information regarding the reasons people are placed in isolation and the

duration of time people spend in isolation.  Defendants produced, through a public

records request, a redacted version of the Technical Manual referenced in RFP 54

that recommends that FDC implement an automated system to reduce the number

of people in isolation, which may be the ADIOS system.  This request is

reasonably calculated to lead to the discovery of admissible evidence regarding

whether FDC followed this recommendation, i.e., took reasonable measures to

address a known risk of harm.  Plaintiffs' request is clear and Defendants have

failed to explain why this request is overly broad and burdensome.

> **RFP 54**: ALL DOCUMENTS entitled, "Technical Manual, Florida
> Department of Corrections, Bureau of Classification Management,
> Alternative Housing", including all drafts, version, and editions.

> **RESPONSE**:  Defendants object on the basis that the request seeks safety
> and security-sensitive materials that are highly-confidential in nature and not
> relevant to the claims in this case.  Defendants further object that "ALL
> DOCUMENTS" "including all drafts, versions, and editions" is vague,
> ambiguous, overly broad and burdensome, and not proportionate to the
> needs of this case. …

Defendants have already produced various redacted drafts and versions of

this Technical Manual in response to a public records request.  The unredacted

portions include admissions such as, "Evidence-based research shows that holding

people in isolation with minimal contact for extended periods of time is

exceptionally expensive and in many cases counterproductive as long-term

segregation can create or exacerbate serious mental health problems and antisocial

behavior among incarcerated people, have negative outcomes for institutional

safety, and increase the risk of recidivism after release."  This document is

therefore highly relevant, at a minimum, to show Defendants' knowledge of a

substantial risk of harm and whether there is an undue burden to implementing

alternatives to isolation.  Plaintiffs' request is clear and Defendants have failed to

explain why this request is overly broad and burdensome.

**RFP 55**: ALL DOCUMENTS attached to OR referenced in the DOCUMENTS requested in No. 54, including a Microsoft Word DOCUMENT with the file name "Alternative Confinement Rules".

**RESPONSE**: See Response to Request for Production No. 54.

This request seeks relevant information for the same reasons described for RFP 54.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 56**: ALL POLICIES RELATED TO any pilot projects or programs that attempt to reduce OR have the effect of reducing the population of PRISONERS in isolation.

**DEFENDANTS' RESPONSE**: FDC will produce those documents previously produced by FDC in response to Plaintiffs' public record request asking for these same documents. Otherwise, Defendants object that "ALL POLICIES RELATED TO any" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants further object to producing documents regarding any program that is not in effect as this is an action for injunctive relief, and FDC's programs that are no longer in effect are not relevant to any issue asserted in this case.

Plaintiffs have reviewed public records indicating that Defendants may have implemented one or more programs to reduce the number of people, and the duration of time that people spend, in isolation.  These documents are relevant to show any reasonable measures Defendants have taken to address a known risk of harm.  In their Answer, Defendants assert that "they are not obligated to make any changes sought by Plaintiffs that would result in a fundamental alteration in the nature of Defendants' services, programs, or activities" and that "Defendant is not obligated to make any changes sought by Plaintiffs that would result in undue

burden or hardship upon FDC." ECF 62 § VIII, ¶ 19. The requested policies may lead to admissible evidence regarding any such fundamental alteration or undue burden related to changes to Defendants' isolation policies and practices. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 57**: ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on pilot projects or programs that attempt to reduce OR have the effect of reducing the population of PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

> **DEFENDANTS' RESPONSE**: See Response to No. 56. Additionally, Defendants object on the grounds that "report, describe, summarize, analyze, discuss, OR comment on pilot projects or programs" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case.

The requested documents are relevant for the same reasons described for RFP 56. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 60**: ALL POLICIES RELATED TO any programs created for OR designed to transition OR step-down PRISONERS from ISOLATION to the general population. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

> **DEFENDANTS' RESPONSE**: FDC will produce documents regarding such program(s). … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

Defendants assert in response to Plaintiff Harvard's Interrogatory 5 to FDC that they have implemented "step-down measures … to assist inmates with transitioning back into the general population."  This request is reasonably calculated to lead to admissible evidence regarding Defendants' knowledge of a known risk of harm, any actions they have taken to address that risk, and whether changes to Defendants' isolation policies and practices impose an undue burden or would be fundamental alterations.

> **RFP 61:** ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on programs created for OR designed to transition OR step-down PRISONERS from ISOLATION to the general population. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

> **DEFENDANT'S RESPONSE:** See Response to No. 60. … Additionally, Defendants object on the grounds that "report, describe, summarize, analyze, discuss, OR comment on programs" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case.

The requested documents are relevant for the same reasons described for RFP 60.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 62:** ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on the harms, effects, OR impact of ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper  records.

**DEFENDANT'S RESPONSE:** FDC has produced documents in response to more specific requests. … Additionally, Defendants object on the grounds that "report, describe, summarize, analyze, discuss, OR comment on" and "harms, effects, OR impact" are vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants also object on the grounds that certain discovery may be protected by the self-critical analysis privilege.

Defendants' documents related to the harms, effects, or impact of isolation are critical to Plaintiffs' claims that Defendants' knew of a substantial risk of serious harm and failed to take reasonable measures to address it. ECF 13 ¶¶ 124-43. As discussed in Section I.D., *supra*, Defendants' assertion of the self-critical analysis privilege is invalid. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 63:** ALL DOCUMENTS RELATED TO any investigations conducted by FDC or any FDC contractors REGARDING the harms, effects, or impact of ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE:** FDC has produced documents in response to more specific requests. … Additionally, Defendants object on the grounds that "ALL DOCUMENTS RELATED TO" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants also object on the ground that certain discovery may be protected by the self-critical analysis privilege.

The requested documents are relevant for the same reasons described for RFP 62. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 64**: ALL POLICIES RELATED TO mental health care for
PRISONERS in effect from January 1, 2019, through the present.

**DEFENDANTS RESPONSE**: See F.A.C. 33-601.800.  FDC will produce
Health Services Bulletins 15.05.03, 15.05.08, 15.05.10, 15.05.11, 15.05.13,
15.05.14, 15.05.17, 15.05.18, 15.05.19, 15.05.20, 15.05.21, and Procedures
403.003, 404.001, 404.002, 404.003, 404.004 and 404.005. … Defendants
further object that "ALL POLICIES RELATED TO" is vague, ambiguous,
overly broad and burdensome. Defendants object to producing documents
that are exempt from public record and/or confidential under 945.10(1)(e)
and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement
and/or order governing confidentiality.

The requested documents are relevant for the same reasons described below

for RFP 69.   All policies related to mental health care are relevant because

Plaintiffs' allegations implicate, for example, in-patient hospitalizations and

suicide observation.  ECF 13 ¶ 134.  This request is also reasonably calculated to

lead to admissible evidence regarding whether people in isolation are denied equal

access to mental health care available to those in the general population.  ECF 13

¶ 157.  Although Defendants have agreed to produce certain procedures

promulgated from Tallahassee, they are refusing to produce "policies," as defined

by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is

clear and Defendants have failed to explain why this request is overly broad and

burdensome.

**RFP 65**: ALL POLICIES RELATED TO medical care for PRISONERS in
effect from January 1, 2019, through the present.

**DEFENDANTS RESPONSE**: See F.A.C. 33-601.800.  FDC will produce
Procedures 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007,

403.008, 403.011 and 406.001. ... Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

The requested policies are relevant for the same reasons described below for RFP 68. All policies related to medical care, in addition to those specific to isolation, are relevant to determine whether people in isolation are denied equal access to medical services, including dialysis treatment, diabetes care, and physical therapy, that are available to those in the general population. ECF 13 ¶¶ 156, 157. Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 68**: ALL POLICIES RELATED TO medical care for PRISONERS in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 401.011, 401.014, 401.016, 403.003, 403.006, 403.007, 403.008, 403.011 and 406.001. ... Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

The requested policies are relevant because Plaintiffs allege that Defendants: fail to adequately monitor people for health risks prior to and during their time in isolation; fail to consistently complete healthcare rounds and evaluations of people in isolation; and fail to provide people in isolation their medical supplies.  ECF 13 ¶¶ 138, 157.  Plaintiffs further allege that the conditions in isolation are inadequate to address the needs of people with chronic health care issues or physical disabilities, leading Defendants to deny them equal access to medical care and mobility devices.  ECF 13 ¶¶ 34, 37, 40, 44, 52, 157.  Plaintiffs also allege that Defendants lack policies to exclude people from isolation who are at substantial risk of harm because of medical conditions.  ECF 13 ¶ 136.  This request is reasonably calculated to lead to discovery of admissible evidence regarding Plaintiffs' disability discrimination claims and whether Defendants have a medical care system that prevents harm from isolation.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 69**: ALL POLICIES RELATED TO mental health care for PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800.  FDC will produce Procedures 404.001, 404.002, 404.003 and 404.005 (unpublished) and Health Services Bulletins 15.05.03, 15.05.10, 15.05.11, 15.05.08, 15.05.14,

15.05.17, 15.05.18, 15.05.19 and 15.05.21. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

These policies are relevant because Plaintiffs make a number of allegations related to Defendants' mental health care policies in isolation such as: Defendants cycle people between suicide observation cells, in-patient psychiatric units, and isolation (ECF 13 ¶ 134); they do not exclude people with mental illness from isolation (ECF 13 ¶ 136); they fail to adequately monitor people for health risks prior to and during their time in isolation for signs of worsening mental illness, self-harm, and suicidality in isolation (ECF 13 ¶ 138); they fail to consistently complete healthcare rounds and evaluations of people in isolation (ECF 13 ¶ 138); and they fail to provide "individualized mental health treatment" in response to people who have difficulty following prison rules because of their disabilities (ECF 13 ¶ 152).  This request is reasonably calculated to lead to discovery of admissible evidence regarding Plaintiffs' disability discrimination claims and whether Defendants have a mental health care system that prevents harm from isolation. Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and

Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 70**: ALL POLICIES RELATED TO medical care for pregnant women in ISOLATION.

> **DEFENDANT'S RESPONSE:** Defendants will produce Procedures 401.011, 401.014, 401.016, 403.003, 403.006, 403.007, 403.008, 403.011 and 406.001. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

These policies are relevant because Plaintiffs allege that Defendants: fail to adequately monitor people for health risks prior to and during their time; fail to consistently complete healthcare rounds and evaluations of people in isolation; and fail to implement policies to exclude known vulnerable people, such as pregnant women, from isolation.  ECF 13 ¶¶ 136, 138, 157.  This request is also reasonably calculated to lead to discovery of admissible evidence of whether the care available in isolation is sufficiently available to meet the heightened healthcare needs for pregnant women in isolation.  ECF 13 ¶ 69.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 71**: ALL POLICIES RELATED TO transgender PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE**: FDC will produce Procedure 403.012. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

These policies are relevant because Plaintiffs allege that Defendants fail to accommodate people diagnosed with gender dysphoria by providing safe housing and by forcing some to "check into" isolation to escape victimization in general population.  ECF 13 ¶ 152.  Plaintiffs further allege that Defendants deny people diagnosed with gender dysphoria in isolation access to transition-related healthcare, psychotherapy, and women's canteen items they need to accommodate their disability.  ECF 13 ¶ 157.  These policies are directly relevant to Plaintiffs' disability discrimination claims.  Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 72**: ALL POLICIES RELATED TO treatment for gender dysphoria for PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE**: See Response to No. 71.

The requested documents are relevant for the same reasons described for

RFP 71.  Plaintiffs' request is clear and Defendants have failed to explain why this

request is overly broad and burdensome.

> **RFP 73**: ALL POLICIES RELATED TO the Residential Continuum of
> Care.
>
> **DEFENDANT'S RESPONSE**: FDC will produce draft Procedure 404.005,
> which has not yet been put into effect. … Defendants further object that
> "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and
> burdensome. Defendants object to producing documents that are exempt
> from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat.,
> and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing
> confidentiality.

According to FDC Procedure 404.005, the Residential Continuum of Care

"refers to specialized mental health units that work together, in conjunction with

the inpatient system, to provide augmented outpatient mental health treatment and

rehabilitation services in a protective environment for inmates with serious

psychological impairment associated with a history of inability to successfully

adjust to daily living."  Plaintiffs allege that Defendants isolate people with

psychiatric and intellectual disabilities because of their disability-related behaviors

and because they have difficulty conforming their behaviors to prison rules.  ECF

13 ¶ 152.  This request is reasonably calculated to lead to admissible evidence

regarding whether modification of Defendants' policies and procedures would

impose an undue burden or fundamental alteration to accommodate people with

disabilities.  The documents may also show whether Defendants have policies to

ensure people with disabilities are housed in the most integrated setting appropriate

to meet their needs.   ECF 13 ¶ 158.  Although Defendants have agreed to produce

one procedure promulgated from Tallahassee, they are refusing to produce

"policies," as defined by Plaintiffs, responsive to this request from specific prisons.

Plaintiffs' request is clear and Defendants have failed to explain why this request is

overly broad and burdensome.

> **RFP 74**: ALL POLICIES RELATED TO group therapy for PRISONERS in ISOLATION.

> **DEFENDANT'S RESPONSE**: FDC will produce Procedures 403.003, 404.005 (not yet in effect) and 403.012 and Health Services Bulletins 15.05.14, 15.05.18 and 15.05.08. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

The requested policies are relevant because Plaintiffs allege that group

therapy provided by Defendants does not prevent harm from isolation.  ECF 13 ¶¶

95, 96, 139.  Although Defendants have agreed to produce certain procedures

promulgated from Tallahassee, they are refusing to produce "policies," as defined

by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is

clear and Defendants have failed to explain why this request is overly broad and

burdensome.

> **RFP 75**: ALL POLICIES RELATED TO outpatient mental health care for PRISONERS in ISOLATION.

**DEFENDANT"S RESPONSE**: FDC will produce Procedure 403.003 and Health Services Bulletin 15.05.08. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

The requested policies are relevant for the same reasons described for RFP 69.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 76**: ALL POLICIES RELATED TO transfers of PRISONERS to OR from ISOLATION to isolation management rooms, hospitals, mental health treatment facilities, infirmaries, crisis stabilization units, transitional care units, secure treatment units, diversion treatment units, cognitive treatment units, OR other higher levels of care.

**DEFENDANT'S RESPONSE**: FDC will produce Procedure 404.003. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

The requested policies are relevant because Plaintiffs allege that Defendants refuse to change their isolation policies and practices despite the obvious risk of harm demonstrated by the constant cycling of people between suicide observation cells, in-patient psychiatric units, and isolation.  ECF 13 ¶ 134.  Plaintiffs further

allege that people in isolation are more likely to require in-patient psychiatric

treatment than those in the general prison population.  ECF 13 ¶ 129.  Although

Defendants have agreed to produce one procedure promulgated from Tallahassee,

they are refusing to produce "policies," as defined by Plaintiffs, responsive to this

request from specific prisons.  Plaintiffs' request is clear and Defendants have

failed to explain why this request is overly broad and burdensome.

> **RFP 77**: All minutes, recordings, summaries, OR reports of meetings,
> whether informal or informal, REGARDING any meeting where the
> development, inception, creation, AND need for a Secure Treatment Unit,
> Diversion Treatment Unit, OR Cognitive Treatment Unit were discussed
> from January 1, 2016 through the present.

> **DEFENDANT'S RESPONSE**: FDC will produce meeting minutes from
> any meeting discussing the development of the STU. Otherwise, Defendants
> objects to this request to the extent it asks for information about the
> Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU).
> These two units are not relevant to the issues set forth in the Complaint,
> namely the "isolation" of inmates for 22 hours a day on average. Further,
> these two units do not house inmates who are classified as Close
> Management inmates. Those two units are for inmates diagnosed with a
> neurocognitive disorder that substantially interferes with the ability to meet
> the ordinary demands of daily living and inmates with a mental illness that is
> associated with serious impairment in psychological or behavioral function
> that substantially interferes with the ability to meet the ordinary demands of
> daily living in general population. Thus the production of documents
> regarding these two units would not be proportional to the needs of this case,
> as well as overly broad and burdensome.

Documents regarding the DTU and CTU are relevant because Plaintiffs

allege that Defendants lack policies and procedures to ensure that individuals with

disabilities are housed in the most integrated setting appropriate to meet their

needs.  ECF 13 ¶¶ 152, 158.  Plaintiffs further allege that Defendants isolate people

with psychiatric and intellectual disabilities because of their disability-related

behaviors and because they have difficulty conforming their behaviors to prison

rules.  ECF 13 ¶ 152.  Defendants' assertion that the DTU and CTU are for people

who cannot live in the general population because of their mental illness or

neurocognitive disorder, respectively, demonstrates the relevance of the requested

documents.  Specifically, these documents may determine whether Defendants do

in fact have adequate policies and procedures to ensure that people with disabilities

are housed in the most integrated setting appropriate to meet their needs.   These

documents may also demonstrate Defendants' knowledge of a substantial risk of

harm to people with certain disabilities who are placed in isolation because they

cannot live in the general population.  In addition, this request may lead to

admissible evidence regarding whether modification of Defendants' policies and

procedures to accommodate people with disabilities would impose an undue

burden or fundamental alteration—a defense claimed by Defendants.  ECF 62 §

VIII, ¶ 19.

> **RFP 78**: ALL DOCUMENTS RELATED TO the development, inception,
> creation AND need for a Secure Treatment Unit, Diversion Treatment Unit,
> OR Cognitive Treatment Unit.
>
> **DEFENDANT'S RESPONSE**: See Responses to Requests No. 77 and 132.

These documents are relevant for the same reasons described for RFP 77.

**RFP 84**: ALL POLICIES RELATED TO mental health STAFFING levels, assignments and schedules in ISOLATION.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "mental health STAFFING levels, assignments, and schedules" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

The request is relevant because Plaintiffs allege that Defendants fail to adequately monitor people for health risks prior to and during their time in isolation by looking for signs of worsening mental illness, self-harm, and suicidality in isolation, and that they fail to consistently complete health care rounds and evaluations of people in isolation.  ECF 13 ¶ 138.  This request is reasonably calculated to lead to admissible evidence regarding whether mental health staff are sufficiently available at the institutions to prevent harm from the psychological consequences of isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 85**: ALL POLICIES RELATED TO medical STAFFING levels, assignments, and schedules in ISOLATION.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800.  … Defendants further object that "ALL POLICIES RELATED TO" "medical STAFFING

levels, assignments, and schedules" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

The request is relevant because Plaintiffs allege that Defendants fail to adequately monitor people for health risks prior to and during their time in isolation by looking for signs of worsening mental illness, self-harm, and suicidality in isolation, and that they fail to consistently complete healthcare rounds and evaluations of people in isolation.  ECF 13 ¶ 138. Plaintiffs' requests for policies related to mental health staffing levels, assignments, and schedules is reasonably calculated to lead to the discovery of admissible evidence of whether medical staff are sufficiently available at the institutions to prevent harm from the psychological and physical consequences of isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 86**: ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of mental health STAFF.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. Defendants further object that "ALL POLICIES RELATED TO" "hiring, supervision, job performance evaluation, and discipline" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own

documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The hiring, supervision, job performance, and discipline of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Policies related to Defendants' hiring practices are relevant because Plaintiffs allege that Defendants do not have enough mental health staff to consistently complete healthcare rounds and evaluations of people in isolation. ECF 13 ¶ 138. Plaintiffs' request for policies related to supervision, job performance, evaluation and discipline is reasonably calculated to lead to the discovery of admissible evidence of whether Defendants make adequate efforts to ensure that the mental health staff working in the institutions are equipped to appropriately respond to people's disability-related behaviors and provide appropriate care to address mental health symptoms in isolation. These policies will also demonstrate whether Defendants appropriately hold mental health staff accountable when they fail to adequately respond to, for example, self-injurious behaviors and psychological emergencies in isolation. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 87**: ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of medical STAFF.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. Defendants further object that "ALL POLICIES RELATED TO" "hiring, supervision, job performance evaluation, and discipline" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The hiring, supervision, job performance, and discipline of staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Policies related to Defendants' hiring practices are relevant because Plaintiffs allege that Defendants do not have enough medical staff to consistently complete health care rounds and evaluations of people in isolation.  ECF 13 ¶ 138. Plaintiffs' request for policies related to hiring, supervision, job performance, evaluation and discipline is reasonably calculated to lead to the discovery of admissible evidence of whether Defendants make any effort to ensure that the medical staff working in the institutions are equipped to deal with people's disability-related behaviors and limitations, and provide them the care necessary to address their disabilities.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 88**: ALL POLICIES RELATED TO training for mental health STAFF in ISOLATION.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "training" is vague, ambiguous, overly broad and burdensome. Defendants further object as each

facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Policies related to training for mental health staff in isolation are relevant to show, for example, whether mental health staff are appropriately trained to accommodate people with disabilities regarding isolation, recognize and appropriately respond to the risk of suicide, and monitor and appropriately respond to the psychological consequences of isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 89**: ALL POLICIES RELATED TO training for medical STAFF in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: See F.A.C.  33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "training" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Policies related to training for medical staff in isolation are relevant to show, for example, whether medical staff are appropriately trained to accommodate people with disabilities regarding isolation and monitor and appropriately respond to the psychical health consequences of isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 92**: All work schedules for mental health STAFF who provided services in ISOLATION from January 1, 2018, through the present.
>
> **DEFENDANT'S RESPONSE**: … Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Work schedules for staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.
>
> **Revised RFP 92**: To the extent there exists a document, roster, or form with the equivalent information [included in a Daily Security Roster] for … mental health staff, please provide a sample so that Plaintiffs can determine whether [this RFP] can be modified in the same manner [as RFP 51].

These documents are relevant because Plaintiffs allege that Defendants fail to adequately monitor people for health risks prior to and during their time in isolation by looking for signs of worsening mental illness, self-harm, and suicidality in isolation.  EFC 13 ¶ 138.  Plaintiffs also allege that Defendants fail to consistently complete mental health rounds and evaluations of people in isolation. ECF 13 ¶ 138.  This request is reasonably calculated to lead to admissible evidence about whether these services are not provided because mental health staff are not

available, which may demonstrate Defendants' deliberate indifference.  Defendants

have not provided Plaintiffs with the sample documents requested in their revised

request.

> **RFP 93**: All work schedules for medical STAFF who provided services in ISOLATION from January 1, 2018, through the present.
>
> **DEFENDANT'S RESPONSE**: … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Work schedules for staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.
>
> **Revised RFP 93**: To the extent there exists a document, roster, or form with the equivalent information [included in a Daily Security Roster] for … medical … staff, please provide a sample so that Plaintiffs can determine whether [this RFP] can be modified in the same manner [as RFP 51].

These documents are relevant because Plaintiffs allege that Defendants fail

to consistently complete daily nursing rounds and "pre-confinement physicals" of

people in isolation. ECF 13 ¶ 138.  This request is reasonably calculated to lead to

admissible evidence regarding whether these services are not provided because

medical staff are not available, which may demonstrate Defendants' deliberate

indifference.  Defendants have not provided Plaintiffs with the sample documents

requested in their revised request.

> **RFP 94:** ALL DOCUMENTS RELATED TO mortality reviews, including psychological autopsies, in cases involving suspected suicide.

**DEFENDANT'S RESPONSE:** Defendants object to this request as irrelevant and an invasion of privacy. Defendants further object that this request is not limited to restrictive housing or close management. Autopsies and mortality reviews of inmates that are suspected to have committed suicide bear no relevance to the issues in this case and would amount to a gross invasion of privacy rights. Defendants further object that "ALL DOCUMENTS RELATED TO" is vague, ambiguous, overly broad and burdensome.

These documents are relevant because Plaintiffs make several allegations

regarding the risk of suicide for people in isolation, including that 88% of the

people who died by suicide had been in isolation at some point (ECF 13 ¶ 128) and

that Defendants send people directly back to isolation after serious suicide attempts

(ECF 13 ¶ 134).  The autopsies and mortality reviews of suspected suicide may

lead to the discovery of admissible evidence of whether the person was or had been

in isolation, whether Defendants knew of a risk of suicide or the risk was obviously

related to isolation, and whether Defendants took reasonable measures to address

that risk.  To the extent Defendants are worried about privacy rights, the Court's

HIPAA Qualified Protective Order addresses this issue.  Plaintiffs' request is clear

and Defendants have failed to explain why this request is overly broad and

burdensome.   After the meet and confer, Defendants offered to provide MINS

reports from September 2018 to September 2019 in response to this request.

MINS is FDC's automated system for the reporting of incidents and events,

including deaths by suicide and suicide attempts.  This offer is inadequate because

MINS reports typically consist of only a few paragraphs prepared by correctional staff within 24 hours of the incident and do not include, for example, any review of the patient's mental health care, symptoms, or isolation history.

**RFP 95:** ALL POLICIES RELATED TO training about suicide prevention.

**DEFENDANT'S RESPONSE:** FDC will produce Procedures 404.001 and 404.002. Defendants object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

These policies are relevant because Plaintiffs allege, "Defendants are aware that the rate of suicide is much higher for people who are in or have been in isolation," and policies related to training about suicide prevention are relevant to show, for example, whether Defendants have appropriately trained staff to recognize and appropriately respond to the risk of suicide in isolation. ECF 13 ¶ 128. Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plainitffs, responsive to this request from specific prisons. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 96:** ALL POLICIES RELATED TO suicide, suicide attempts, AND suicide prevention, including POLICIES RELATED TO self-harm observation status AND "isolation management rooms".

**DEFENDANT'S RESPONSE:** See Response to Request No. 95.

These policies are relevant because Plaintiffs allege that Defendants perpetually cycle people who are suicidal from suicide observation cells ("self-harm observation status"), to inpatient psychiatric units, and back to isolation. ECF 13 ¶ 134. Plaintiffs' request for policies related to suicide, suicide attempts, and suicide prevention is reasonably calculated to lead to admissible evidence of whether Defendants take reasonable measures to prevent or respond to the risk of suicide in isolation. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 97:** All DOCUMENTS that report, describe, summarize, discuss, OR comment on suicide OR suicide attempts. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE:** See Responses to Request Nos. 98 and 99. Otherwise, Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. All documents that "comment" on suicide, with no limit to restrictive housing or close management, is vastly over broad and burdensome.

These documents are relevant because Plaintiffs make several allegations regarding the heightened risk of suicide for people in isolation, and that people may suffer from the consequences of isolation after they are released. ECF 13 ¶¶ 61, 63, 128. They also allege that although 57% of the people who died by suicide

were in isolation at the time of the suicide, 88% of the people who died by suicide

"had been in isolation *at some point* during their incarceration in FDC."  ECF 13 ¶

128 (emphasis added).  The documents sought in this request may lead to the

discovery of admissible evidence of whether the rate of suicides and suicide

attempts are higher for people who are or were in isolation compared to people

who have never been in isolation.  As such, this request "with no limit to restrictive

housing or close management" is not overbroad.  Defendants have not explained

why the request is burdensome.

> **RFP 98:** All MINS Reports RELATED TO suicide attempts by
> PRISONERS in ISOLATION from January 1, 2016, through the present.
>
> **DEFENDANT'S RESPONSE:** FDC will produce MINS reports
> concerning inmates in CM subject to the protections of the HIPAA Qualified
> Protective Order and any other confidentiality order entered by the Court
> upon the parties' agreement to narrow the scope and/or time frame of the
> request and to cost-sharing. … Defendants also object on the grounds that
> the request is not proportional to the needs of the case and on the basis of
> overbreadth and undue burdensomeness, as Defendants have identified
> approximately 1990 MINS reports for inmates in Administrative
> Confinement, Close Management, Disciplinary Confinement and Maximum
> Management during the requested time period. Defendants further object
> that "RELATED TO suicide attempts" is vague ambiguous, unduly
> burdensome and overbroad.

MINS reports documenting suicide attempts by people in isolation may lead

to the discovery of admissible evidence of whether such attempts were related to

conditions in isolation and whether Defendants took reasonable measures to

address the risk of suicide in isolation.  After the meet and confer, Defendants

offered to provide MINS reports from September 2018 to September 2019. But Defendants have already identified 1,990 responsive documents for the requested time period, indicating only a negligible burden, and there is no justification to withhold these highly relevant documents.

**RFP 99:** All MINS Reports RELATED TO any deaths by suicides.

**DEFENDANT'S RESPONSE:** FDC will produce MINS reports concerning inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. … Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendants have identified approximately 81 MINS reports for inmates during the requested time period. Defendants further objects that "RELATED TO any deaths by suicide" is vague ambiguous, unduly burdensome and overbroad.

MINS reports documenting deaths by suicide may lead to the discovery of admissible evidence of whether there is a higher risk of suicide for people who have been in isolation than for people who have not, whether the deaths were related to conditions in isolation, and whether Defendants took reasonable measures to address the risk of suicide in isolation. After the meet and confer, Defendants offered to provide MINS reports from September 2018 to September 2019. But Defendants have already identified just 81 responsive documents for the requested time period, indicating only a negligible burden, the request is clear, and there is no justification to withhold these highly relevant documents.

**RFP 104**: The Overall Inmate Summary (DC 14) for each PRISONER who died by suicide.

**DEFENDANT'S RESPONSE**: Defendants object to this request as irrelevant, not proportional to the needs of this case, overly broad, and burdensome. The Overall Inmate Summary for any inmate who died by suicide, regardless of whether or not that inmate was in restrictive housing, bears no relevance to the issues asserted in this case.

These documents are relevant because the Overall Inmate Summaries of people who died by suicide in FDC custody will show, for example, if they were in isolation at the time of the suicide; whether they had ever been in isolation; how many times they had been in isolation; how long they had been in isolation; and how much time had passed between any releases from isolation and suicides or suicide attempts outside of isolation. These summaries are directly relevant to Plaintiffs' allegations regarding the risk of suicide for people in isolation. After the meet and confer, Defendants offered to provide the summaries from September 2018 through 2019. But there is no reason to narrow the timeframe for these documents. Defendants' response to RFP 103 indicates that there were at least 81 people who died by suicide in the requested time period. The burden to produce the Overall Inmate Summaries, which are electronically stored documents, for approximately 81 people is negligible.

**RFP 105:** The Overall Inmate Summary (DC 14) for each PRISONER who attempted suicide from January 1, 2016, through the present.

**DEFENDANT'S RESPONSE:** Defendants object to this request as irrelevant, not proportional to the needs of this case, overly broad, and burdensome. The Overall Inmate Summary for any inmate who attempted suicide, regardless of whether or not that inmate was in restrictive housing, bears no relevance to the issues asserted in this case.

These documents are relevant because the Overall Inmate Summaries of people who attempted suicide will show, for example, if they were in isolation at the time of the suicide attempt; whether they had ever been in isolation, how many times they had been in isolation; how long they had been in isolation; and how much time had passed between any releases from isolation and suicide attempts outside of isolation.  These summaries are directly relevant to Plaintiffs' allegations regarding the risk of suicide for people in isolation.  After the meet and confer, Defendants offered to provide the summaries from September 2018 through 2019.  But there is no reason to narrow the timeframe for these documents. Defendants' response to RFP 98 indicates they can identify through MINS reports individuals who attempted to die by suicide during the requested time period.  It further indicates that this number of individuals could be 1,990, but it could also be less in the likely event that there are people who have attempted to die by suicide more than once.  The burden to produce the Overall Inmate Summaries, which are electronically stored documents, for this number of people is negligible.

**RFP 107**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the average duration of stay OR the length of time for PRISONERS in

ISOLATION.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMETNS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE**:  … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4.  The implementation of policy at the institutional level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(3) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant because Plaintiffs allege that "[d]espite their knowledge of the substantial risk of serious harm, Defendants impose no limit on the duration of isolation.  As a result, there are people in FDC who have been suffering in isolation for nearly 20 years with no end in sight."  ECF 13 ¶ 142. They further allege, "Defendants also know that people with mental illness, and with intellectual disabilities, are more likely to spend prolonged periods in isolation …"  ECF 13 ¶ 131.  Thus, in addition to relevant information about Defendants' deliberate indifference to a substantial risk of harm, this request is reasonably calculated to lead to admissible evidence regarding whether and how Defendants discriminate against people with disabilities.  Plaintiffs' request is clear

and Defendants have failed to explain why this request is overly broad and

burdensome.

> **RFP 108:** All DOCUMENTS, including the contents of any databases, that
> report, describe, summarize, analyze, discuss, calculate, OR comment on the
> reasons that PRISONERS are placed OR retained in ISOLATION. This
> request seeks DOCUMENTS in YOUR custody, control, OR possession
> except for DOCUMENTS that are solely kept in individual PRISONERS'
> electronic or paper records.

> **DEFENDANT'S RESPONSE:** … Defendants also object that "ALL
> DOCUMENTS, including the contents of any databases, that report,
> describe, summarize, analyze, discuss, calculate OR comment on" is vague,
> ambiguous, overly broad, unduly burdensome and not proportional to the
> needs of this case. Plaintiffs' case as alleged is a challenge to overarching
> state-wide policies, and not a "challenge to a series of distinct incidents." DE
> 42, p. 4. The implementation of policy at the institution level and on an
> inmate-by-inmate basis does not address whether the "overarching policy" is
> constitutional and/or discriminatory. Defendants also object to producing
> documents that are exempt from public record and/or confidential under
> 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an
> agreement and/or order governing confidentiality. Defendants object to this
> request on the basis that the requested documents contain safety and
> security-sensitive information and reveal among other things highly-
> confidential information regarding inmates, housing, post orders and other
> security issues.

These documents are relevant because Plaintiffs allege that Defendants place

and retain people in isolation for reasons including "minor disciplinary

infractions."  ECF 13 ¶ 149, 154.  This request is directly relevant to Plaintiffs'

claim that there is no legitimate penological purpose that supports subjecting

people to the substantial risk of harm from Defendants' isolation policies and

practices "as they are currently implemented and enforced." ECF 13 ¶ 144.

Plaintiffs further allege that Defendants isolate people for disability-related

behaviors, including acts of self-harm. ECF 13 ¶ 73. This request is therefore

directly relevant to Plaintiffs' disability discrimination claims. Plaintiffs' request

is clear and Defendants have failed to explain why this request is overly broad and

burdensome.

> **RFP 109:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS in ISOLATION who harmed themselves OR the frequency of self- harm behaviors by PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

> **DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "who harmed themselves" and "self-harm behaviors" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant to support Plaintiffs' specific allegations regarding the number of people who had been in isolation at some point and died by suicide, and that people in isolation are more likely to engage in self-harm than those in the general prison population.  ECF 13 ¶¶ 63, 128.  This request is also reasonably calculated to lead to the discovery of admissible evidence regarding Defendants' knowledge of the risk of suicide or self-harm caused by their isolation policies and practices.   Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 110**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of violent incidents, cell extractions, disciplinary infractions, use of force incidents, OR PROPERTY RESTRICTIONS involving PRISONERS in ISOLATION as compared to PRISONERS not in ISOLATION.

**DEFENDANT'S RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "violent incidents, cell extractions, disciplinary infractions, use of force incidents OR PROPERTY RESTRICTIONS" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.   The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security- sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant because Plaintiffs allege that Defendants respond to violations of their strict but unnecessary rules in isolation for minor behavioral problems with property restriction, the use of force, or violent cell extractions.  ECF 13 ¶¶ 119-121.  Plaintiffs also allege that Defendants frequently extend time in isolation for minor disciplinary infractions, many of which are caused by disability-related behaviors.  ECF 13 ¶¶ 133, 149, 152.  This request is directly relevant to Plaintiffs' allegations regarding Defendants' use of dehumanizing and degrading security measures in isolation, as well as their disability discrimination claims.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 111**:  All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the total number of PRISONERS in ISOLATION on a daily, weekly, monthly, OR yearly basis.

**RESPONSE**:  … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institutional level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(3) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-

confidential information regarding inmates, housing, post orders and other security issues.

Plaintiffs allege that "Defendants know that their isolation rate (nearly 10% of the FDC population) is double the national rate."  ECF 13 ¶ 127.  This request is therefore reasonably calculated to lead to admissible evidence regarding whether Defendants' isolation policies and practices violate contemporary standards of decency, Defendants' knowledge of a substantial risk of serious harm, and whether any remedial measures by Defendants to reduce the numbers of people in isolation have been effective.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 112:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the age of PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-

confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant because Plaintiffs allege that Defendants place young people in isolation, despite the fact that juveniles are at a heightened risk of harm from isolation.  ECF 13 ¶¶ 18, 23, 70-71, 136.  These documents may lead to the discovery of admissible evidence regarding Defendants' knowledge of the risk of harm to young people, the measures they have implemented to address this risk, and the frequency with which they place young people in isolation despite their knowledge of this risk.  They may also reveal that Defendants regularly isolate elderly people, who may also be at a heightened risk of harm from isolation, and for whom there may not be a legitimate security interest to isolate them in the way that Defendants do.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 113:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS with mental illness in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is

constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant because Plaintiffs allege that Defendants place people with mental illness in isolation, despite their knowledge that people with mental illness are at heightened risk of harm from isolation.  ECF 13 ¶¶ 5, 70, 130-32.  They also allege that Defendants are more likely to place people with mental illness in isolation than people without mental illness.  ECF 13 ¶ 130.  This request may lead to the discovery of admissible evidence regarding Defendants' knowledge of the risk of harm to people with mental illness, the measures they have implemented to address this risk, and the frequency with which they place people with mental illness in isolation despite this risk.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 114**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the gender of PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.
>
> **DEFENDANT'S RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague,

ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

Plaintiffs allege that Defendants unnecessarily use "degrading and dehumanizing security measures … that are not based on individualized assessments of safety and security threats."  ECF 13 ¶ 113.  They further allege that Defendants use a "one-size-fits-all approach" for isolation security measures, including by applying "the same security measures to the most diminutive people … as it does the most physically imposing people …."   ECF 13 ¶ 113. This request is reasonably calculated to lead to admissible evidence about the demographics of the putative class and whether there is a legitimate penological purpose for systematically applying the same isolation policies and practices to all incarcerated people even though women may have different carceral needs than men.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 115:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on

pregnant PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

Plaintiffs allege that despite Defendants' knowledge of the risk of harm to pregnant women, Defendants have no policies excluding them from isolation.  ECF 13 ¶¶ 70-71, 136.  This request may lead to the discovery of admissible evidence regarding Defendants' knowledge of the risk of harm to pregnant women, the measures they have taken to address this risk, and whether they have placed pregnant women in isolation despite their knowledge of the risk.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 116:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS in ISOLATION who leave their cells, OR the

frequency that PRISONERS in ISOLATION leave their cells, for access to the dayroom, visits, phone calls, showers, programs, medical care, recreation, mental health care, academic education, OR adult education. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "who leave their cells, OR the frequency that PRISONERS in ISOLATION leave their cells, for access to the dayroom, visits, phone calls, showers, programs, medical care, recreation, mental health care, academic education, OR adult education" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

This request is relevant because Plaintiffs allege that Defendants rarely afford people in isolation the opportunity to leave their cells, including when they cancel recreation due to staffing shortages, provide educational services cell-front, restrict access to personal visits, and deter people from leaving their cells by destroying property during cell searches, which, combined with other deprivations, results in a substantial risk of serious harm. ECF 13 ¶¶ 94-95, 97-98, 105-07, 111.

Plaintiffs' request is clear and Defendants have failed to explain why this request is

overly broad and burdensome.

> **RFP 117**: All DOCUMENTS, including the contents of any databases, that
> report, describe, summarize, analyze, discuss, calculate, OR comment on the
> number of PRISONERS in ISOLATION who receive, OR the frequency that
> PRISONERS in ISOLATION receive, academic education, adult education,
> mental health care, medical care, OR any programs inside their cells. This
> request seeks DOCUMENTS in YOUR custody, control, OR possession
> except for DOCUMENTS that are solely kept in individual PRISONERS'
> electronic or paper records.

> **DEFENDANT'S RESPONSE**: … Defendants also object that "ALL
> DOCUMENTS, including the contents of any databases, that report,
> describe, summarize, analyze, discuss, calculate OR comment on" and
> "receive, academic education, adult education, mental health care, medical
> care, OR any programs inside their cells" are vague, ambiguous, overly
> broad, unduly burdensome and not proportional to the needs of this case.
> Plaintiffs' case as alleged is a challenge to overarching state-wide policies,
> and not a "challenge to a series of distinct incidents." DE 42, p. 4. The
> implementation of policy at the institution level and on an inmate-by-inmate
> basis does not address whether the "overarching policy" is constitutional
> and/or discriminatory. Defendants also object to producing documents that
> are exempt from public record and/or confidential under 945.10(1)(e) and
> (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or
> order governing confidentiality. Defendants object to this request on the
> basis that the requested documents contain safety and security- sensitive
> information and reveal, among other things, highly-confidential information
> regarding inmates, housing, post orders and other security issues.

These documents are relevant because Plaintiffs allege that Defendants

deprive people in isolation of normal human contact, including by providing

medical care, mental health care, and education to them through their cells doors

instead of allowing them to come out of their cells.   ECF 13 ¶¶ 93-94, 105.

Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 135**: All video and audio preserved by agreement between the parties in this Litigation.
>
> **DEFENDANT'S RESPONSE**: Defendants object to this request on the basis that requested video and audio contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

The parties agreed that Defendants would preserve video and audio for one 24-hour period in 11 different isolation units throughout the state. This video and audio may lead to discovery of admissible evidence regarding, for example, the interactions people in isolation have with staff members through their cell doors, whether Defendants follow their written policies regarding out-of-cell activities, the frequency with which people leave their isolation cells, and the general conditions in isolation wings and dorms. ECF 13 ¶¶ 84-85, 87-88, 93-94, 104-06, 108, 111.

> **RFP 136**: All logs, maintenance work requests, memoranda, and COMMUNICATIONS related to the video and audio referenced in Request No. 135.
>
> **DEFENDANT'S RESPONSE**: Defendants object on the basis that Plaintiffs' requests for the "logs, maintenance work requests, memoranda and COMMUNICATIONS" related thereto are not proportional to the needs of the case and are not relevant to the claims and defenses in the case. Defendants further object on the basis that the request is vague and ambiguous and therefore Defendants do not understand what is sought by Plaintiffs. Defendants also object to the extent this request seeks attorney-client and work product privileged information. Defendants object to this

request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

This information related to the video and audio requested in RFP 135 is relevant to verify that the equipment was functioning properly and that the video and audio fairly and accurately depict the requested locations within isolation. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**Plaintiffs' First Request for Production to FDC:**

> **RFP 1**: ALL POLICIES RELATED TO reasonable modifications of POLICIES or reasonable accommodations for PRISONERS with DISABILITIES in ISOLATION.

> **DEFENDANT'S RESPONSE**: FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013. …

This request is directly relevant to Plaintiffs' allegations that Defendants' fail to provide reasonable modifications or accommodations to people with disabilities in isolation.  ECF 13 ¶¶ 131, 151-158.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.

> **RFP 2**: ALL POLICIES RELATED TO PRISONERS with DISABILITIES in ISOLATION.

**DEFENDANT'S RESPONSE**: FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013.  …

Plaintiffs allege that Defendants discriminate against people with disabilities in isolation by failing to reasonably modify their isolation policies and procedures when the modifications are necessary to avoid discrimination on the basis of disability; failing to ensure that people with disabilities in isolation have access to, are permitted to participate in, and are not denied the benefits of, programs, services, and activities because of their disabilities; and failing to ensure that people with disabilities in isolation are housed in the most integrated setting appropriate to meet their needs.  ECF 13 ¶ 151.  Policies related to people with disabilities in isolation are directly relevant to these claims.

**RFP 3**: ALL POLICIES RELATED TO AUXILIARY AIDS AND SERVICES for PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE**: FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.008, 403.011 and 403.013; Health Services Bulletins (HSB) 15.03.25, 15.03.25.01, 15.03.25.02 and 15.03.25.03.  …

Plaintiffs allege that Defendants fail to modify policies for people with vision, speech, or hearing disabilities in isolation.  ECF 13 ¶ 156.  Policies related to auxiliary aids and services for people in isolation may lead to the discovery of admissible evidence supporting or refuting Plaintiffs' disability discrimination claims.  Although Defendants have agreed to produce certain procedures

90

promulgated from Tallahassee, they are refusing to produce "policies," as defined

by Plaintiffs, responsive to this request from specific prisons.

> **RFP 4**: ALL POLICIES RELATED TO DURABLE MEDICAL
> EQUIPMENT for PRISONERS in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: FDC will produce Procedures 604.101,
> 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.008, 403.011
> and 403.013; Health Services Bulletins (HSB) 15.03.25, 15.03.25.01,
> 15.03.25.02 and 15.03.25.03. …

Plaintiffs allege that Defendants deny people with physical disabilities

access to assistive devices including, for example, canes in isolation.  ECF 13 ¶

157.  Policies related to durable medical equipment for people in isolation may

lead to the discovery of admissible supporting or refuting Plaintiffs' disability

discrimination claims.  Although Defendants have agreed to produce certain

procedures promulgated from Tallahassee, they are refusing to produce "policies,"

as defined by Plaintiffs, responsive to this request from specific prisons.

> **RFP 5:** ALL POLICIES RELATED TO disposable medical supplies for
> PRISONERS in ISOLATION, including but not limited to catheters AND
> related supplies, gauze, tape, AND incontinence pads.
>
> **DEFENDANT'S RESPONSE:** FDC will produce Procedures 401.011,
> 401.014, 401.016, 401.017, 403.003, 403.006 and 403.008.  …

Plaintiffs allege that Defendants deny people with physical disabilities

access to medical supplies including, for example, catheters in isolation.  ECF 13

¶¶ 40, 157.  Policies related to disposable medical supplies for people in isolation

may lead to the discovery of admissible evidence supporting or refuting Plaintiffs'

disability discrimination claims.  Although Defendants have agreed to produce

certain procedures promulgated from Tallahassee, they are refusing to produce

"policies," as defined by Plaintiffs, responsive to this request from specific prisons.

> **RFP 7**:  ALL POLICIES REATED TO the any staff review of AND
> response to the "Reasonable Modification or Accommodation Request for
> Inmates" (Form DC2-530A).

> **RESPONSE:**  FDC will produce Procedures 604.101, 401.011, 401.014,
> 401.116, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and
> 403.013.  …

This request is directly relevant to Plaintiffs' allegations that Defendants'

fail to provide reasonable modifications or accommodations to people with

disabilities in isolation.  ECF 13 ¶¶ 131, 151-158.  Although Defendants have

agreed to produce certain procedures promulgated from Tallahassee, they are

refusing to produce "policies," as defined by Plaintiffs, responsive to this request

from specific prisons.

## PLAINTIFF HARVARD'S FIRST SET OF INTERROGATORIES TO DEFENDANT FDC:

> **INTERROGATORY 7:** Describe in detail all criteria for any PRISONER
> to be admitted to a Secure Treatment Unit, the Diversion Treatment Unit,
> AND the Cognitive Treatment Unit at any FACILITY. The timeframe for
> these Interrogatories is from January 1, 2014, through the present, so if the
> criteria changed during that time period, provide all versions of the criteria.

> **DEFENDANT'S RESPONSE:** The FDC objects to this interrogatory to the
> extent it asks for information about the Diversion Treatment Unit (DTU) and

Cognitive Treatment Unit (CTU). These two units are not relevant to the issues set forth in the Complaint, namely the "isolation" of inmates for 22 hours a day on average. Further, these two units do not house inmates who are classified as Close Management inmates. Those two units are for inmates diagnosed with a neurocognitive disorder that substantially interferes with the ability to meet the ordinary demands of daily living and inmates with a mental illness that is associated with serious impairment in psychological or behavioral function that substantially interferes with the ability to meet the ordinary demands of daily living in general population.

Information regarding the Diversion Treatment Unit (DTU) and Cognitive

Treatment Unit (CTU) is relevant for the same reasons described for RFP 77.

**INTERROGATORY 8:** For the FDC's Secure Treatment Unit, the Diversion Treatment Unit, AND the Cognitive Treatment Unit, state how many beds are available in each unit at each FACILITY that has each unit, how many PRISONERS are currently on a waiting list for each unit, AND the names AND DC numbers of each PRISONER currently waiting for each program.

**DEFENDANT'S RESPONSE:** The FDC objects to this interrogatory to the extent it asks for information about the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU). These two units are not relevant to the issues set forth in the Amended Complaint, namely the "isolation" of inmates for 22 hours a day on average. Further, these two units do not house inmates who are classified as Close Management inmates. Those two units are for inmates diagnosed with a neurocognitive disorder that substantially interferes with the ability to meet the ordinary demands of daily living and inmates with a mental illness that is associated with serious impairment in psychological or behavior al function that substantially interferes with the ability to meet the ordinary demands of daily living in general population.

For the STU, as of September 10, 2019, there are 92 single-man beds at Wakulla. The waiting list for the STU as of September 10, 2019 is 45. FDC objects to providing the names of those inmates on the waiting list as an invasion of those inmates' privacy rights and not relevant to any issue in this case.

Information regarding the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU) is relevant for the reasons described for RFP 77. Defendants' refusal to provide the names of people in the STU, DTU, or CSU is without merit.  Plaintiffs propounded this interrogatory to identify individuals who have participated in FDC's programs that have diverted people from, or served as alternatives to, the general population or isolation.  Plaintiffs are entitled to obtain such information before class certification for the purpose of demonstrating the commonality and typicality of their claims.  With respect to the merits of the case, this information will help Plaintiffs locate witnesses to the measures Defendants have taken to ensure that some people with disabilities are housed in the most integrated setting appropriate to meet their needs.  The Court has entered a HIPAA Qualified Protective Order that is sufficient to protect the privacy interests of people who participated in these programs.

**INTERROGATORY 15:** Identify at each FACILITY in each type of ISOLATION (CM I, II, II; MM; DC; AND AC) the number of times during each month from June 1, 2019, through the present, that mental health staff provided each of the following services: 1) psychiatrist visits; 2) mental health counselor visits; 3); mental health rounds; AND 4) group therapy.

**DEFENDANT'S RESPONSE:** FDC objects that this interrogatory is overly broad, unduly burdensome, not proportional to the needs of the case and not reasonably calculated to lead to the discovery of admissible evidence. As Plaintiffs assert: "[t]he claims in Plaintiffs' First Amended Complaint (Complaint) stem from one overarching policy and practice: Defendants lock people in their cells for 22 hours or more a day and deprive them of normal human contact, environmental simulations, and exercise, a

practice that experts refer to as 'isolation' and that is increasingly recognized worldwide as torture. Defendants' emphasis on Plaintiffs' individual experiences as a result of this policy and practice is a futile attempt to reframe this case as a challenge to a series of distinct incidents. That is not the case Plaintiffs' have pleaded" D.E. 42, p. 1. Thus, Plaintiffs' request for the number of times during each month that various forms of mental health services were provided to individual inmates is not relevant to the claims being asserted.  As Plaintiffs' put it, they are challenging the "overarching policy and practice," which can be found in the Florida Administrative Code. *See* F.A.C. 33-601.800. … Apart from that overarching policy, the mental health treatment, services, and therapy that each individual inmate receives will be determined on a case-by-case basis based on that inmates' mental health evaluation and treatment plan.

Plaintiffs allege that despite Defendants' knowledge of the risk of harm, they fail to adequately monitor people for health risks prior to and during their time in isolation for signs of worsening mental illness, self-harm, and suicidality in isolation.  ECF 13 ¶ 138.  Plaintiffs also allege that Defendants fail to consistently complete health care rounds and evaluations of people in isolation.  ECF 13 ¶ 138.  Plaintiffs' requests for information regarding the frequency with which mental health staff provide services in isolation is directly relevant to Plaintiffs' deliberate indifference and disability discrimination claims.

**INTERROGATORY 16**: Identify at each FACILITY the location of every ISOLATION cell, including the dorm, wing, cell number AND type of ISOLATION (Close Management II, II and III; Maximum Management; Disciplinary Confinement; AND Administrative Confinement).

**DEFENDANT'S RESPONSE**: The FDC objects to this interrogatory as not relevant to any issue asserted in this case. This case concerns the constitutionality of the "conditions of confinement" based on the overarching policy of the FDC. The location of every cell, including the dorm, wing and cell number is not relevant to any issue in this case. A list of

all cell locations, such as Y1 and G3, bears no relationship to the issues asserted in this case. …

Plaintiffs make a series of allegations regarding the conditions of isolation cells, including the physical description of each individual cell and the overall environment in isolation dorms.  ECF 13 ¶¶ 85-89.  Plaintiffs will conduct inspections of the locations where there is isolation, as allowed under Fed. R. Civ. P. 34 and will examine cell conditions.  Plaintiffs need specific information about isolation wings, dorms, and cells to plan for where they will conduct their inspections.  This information is also relevant because documents produced in response to RFPs may list cell numbers, wings, or dorms without identifying whether the location is in isolation.  For example, MINS reports and incident reports regarding suicides and suicide attempts refer only to cell numbers and dorms, and Plaintiffs may need this information to determine whether the specific cells or dorms where the suicides or suicide attempts occurred were in isolation.

## CONCLUSION

As this Court has recognized, discovery is an appropriate device to unveil "[t]he specific policies, practices, or customs underlying the isolation and the conditions imposed during isolation."  *G.H., et al., v. Marstiller*, No. 4:19-cv-431-MW-CAS, ––– F.Supp.3d ––––, ––––, 2019 WL 6694738, at *3 (N.D. Fla. Dec. 6, 2019) (citing *Harvard v. Inch*, Case No. 4:19-cv-212-MW-CAS, ––– F.Supp.3d —

—, ——, 2019 WL 5587314, at *3 (N.D. Fla. Oct. 24, 2019)).  Based on the

reasons outlined in this motion, the Court should reject Defendants' attempt to

obstruct Plaintiffs' access to such information, and instead overrule Defendants'

objections, compel Defendants to produce the requested documents and respond to

interrogatories, set deadlines for production and responses, and award reasonable

attorneys' fees and costs.


Dated:  December 12, 2019

Respectfully Submitted,

_Kelly Knapp_
_____
Kelly Knapp
Fla. Bar No. 1011018
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org
Fla. Bar No. 119372

Shalini Goel Agarwal
Fla. Bar No. 90843
Sumayya Saleh
Fla. Bar No. 119372
Southern Poverty Law Center
106 East College Ave., #1010
Tallahassee, FL 32302
Telephone: (850) 521-3024
sumayya.saleh@splcenter.org
shalini.agarwal@splcenter.org

Lisa Graybill*
Texas Bar No. 24054454

Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (334) 549-0498
lisa.graybill@splcenter.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla. Bar. No. 116209
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Florida Justice Institute, Inc.
100 SE 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org

*Admitted *pro hac vice*

**Attorneys for Plaintiffs**

## <u>Local Rule 7.1(B) Certificate</u>

Under Rules 7.1(B) and (C) of the Local Rules of the Northern District of Florida, undersigned counsel certifies that Plaintiffs' counsel has conferred with counsel for the Defendants about the relief sought in this motion.  Defendants object to the relief requested.

*Kelly Knapp*
Kelly Knapp

## <u>Local Rule 7.1(F) Certificate</u>

Under Rule 7.1(F) of the Local Rules of the Northern District of Florida, undersigned counsel certifies that this motion contains 24,635 words.

*Kelly Knapp*
Kelly Knapp