**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT FLORIDA**
**TALLAHASSEE DIVISION**

JAC'QUANN (ADMIRE) HARVARD, *et al.*,

Plaintiffs,

v.

MARK S. INCH, *et al.*,

Defendants.

Case No.: 4:19-cv-00212-MW-CAS

**PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING DEPOSITION CONDITIONS**

Plaintiffs Jac'Quann (Admire) Harvard, Jeremiah Hill,[1] Angel Meddler, Juan Espinosa, Jerome Burgess, James Kendrick, Jr., and Johnny Hill, under Rule 26(c) of the Federal Rules of Civil Procedure, hereby respectfully move this Court for an Order protecting them from harsh, unreasonable, and unnecessary conditions that Defendants Florida Department of Corrections ("FDC") and Secretary Mark Inch seek to impose during their upcoming depositions. Good cause exists for such an Order. Plaintiffs' interests in testifying free of intimidation and extreme physical restriction outweigh FDC's alleged security concerns when the conditions

[1] Jeremiah Hill was previously listed in case filings as "J.H." because he was under 18 years old. Jeremiah Hill has since turned 18 years old.

Defendants seek to impose are an exaggerated and unnecessary response and reasonable alternatives exist.

## Procedural History

1. Plaintiffs filed this action on May 8, 2019, alleging that Defendants' isolation policies and practices subject them, and those in the putative class they seek to represent, to a substantial risk of serious harm and disability discrimination.

2. On November 4, 2019, Plaintiffs wrote Defendants a detailed meet-and-confer letter regarding the conditions of Plaintiffs' depositions, including a request that FDC allow Plaintiffs to testify unrestrained and without FDC staff present inside the deposition room.

3. On November 5, 2019, Defendants served Plaintiffs with notices of depositions for Jerome Burgess on December 3, 2019; Jeremiah Hill on December 11, 2019; James Kendrick on December 12, 2019; and Angel Meddler on December 13, 2019. The parties later agreed to delay depositions until the Court resolves the issues raised in this Motion and Defendants comply with outstanding discovery requests.

4. On November 12, 2019, the parties met by phone and conferred about the issues raised in Plaintiffs' November 4, 2019 letter. The parties were unable to reach an agreement because Defendants' counsel had not yet conferred with their

clients about the specific "safety and security" measures FDC believed necessary at each deposition.

5. On November 18, 2019, Defendants informed Plaintiffs that they intend to have a correctional officer present inside the room during the depositions of Plaintiffs, even those who are in the general population on the day of their deposition,[2] and that Plaintiffs may be in full restraints, to include leg irons, waist chains, handcuffs, and the exceedingly restrictive "black box"[3] for the entirety of their depositions. Plaintiffs expressed that such conditions would chill Plaintiffs' ability to testify freely and limit Plaintiffs' ability to fully participate in the depositions.

6. The parties attempted to work together to resolve these issues and reach an agreement on the conditions of depositions. No resolution was reached.

7. On November 20, 2019, Defendants moved, under Federal Rule of Civil Procedure 30(a)(2)(B), for an Order granting leave to depose the seven

---

[2] Currently, Angel Meddler is in the general prison population and has been since June 2019. Jerome Burgess is in the general prison population and has been since August 2019. Juan Espinosa is in the general prison population and has been since October 2019. Jeremiah Hill is in Close Management III. Admire Harvard, James Kendrick, and Johnny Hill are in Close Management II.

[3] The "black box" is a rectangular device measuring approximately four inches by three inches that is locked over a pair of handcuffs to hold the wrists of an individual even closer together and is used with a belly chain. The "black box" rigidly fixes the handcuffs at waist level, creating a more severe restraint that prevents people from freely moving their hands and arms beyond their waist.

named Plaintiffs in this case. ECF 60. The Court granted Defendants' Motion for Leave to Depose Prisoner Plaintiffs. ECF 61.

8. On December 10, 2019 and December 17, 2019, Defendants informed Plaintiffs that their intention was to impose the following specific conditions at the depositions of each Plaintiff:

a. A correctional officer will be present in the deposition room for all Plaintiffs, except for Juan Espinosa.

b. Plaintiffs Admire Harvard, James Kendrick, and Johnny Hill will be restrained, which could include leg irons, waist chains, handcuffs, and the exceedingly restrictive "black box," for the entirety of their depositions.

c. Plaintiffs Jeremiah Hill, Jerome Burgess, Angel Meddler, and Juan Espinosa *may* be restrained, which could include leg irons, waist chains, handcuffs, and the exceedingly restrictive "black box," for the entirety of their deposition.

9. Plaintiffs seek an Order prohibiting any FDC staff from being present in the room during Plaintiffs' depositions and prohibiting the use of full restraints, including the "black box," on Plaintiffs during depositions—which may last up to seven hours. These restrictions are punitive and obstructive to the litigation

process, and they are an exaggerated response to FDC's safety and security concerns.

## MEMORANDUM

### I. The Court may grant a Protective Order when good cause exists, as it does here, to protect Plaintiffs from the harsh, unreasonable, and unnecessary conditions Defendants seek to impose upon Plaintiffs at their depositions.

Good cause exists to protect Plaintiffs from the harsh, unreasonable, and unnecessary conditions that Defendants seek to impose during Plaintiffs' depositions. The Court may enter a Protective Order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). If the moving party shows "good cause," the Court may impose specified terms and conditions on how discovery is conducted. *See id*. In determining whether good cause exists, a Court should balance the interests of the parties. *Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304, 1313 (11th Cir. 2001). The Court enjoys broad discretion in entering a Protective Order. *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 357 (11th Cir. 1987).

Here, a balancing of the parties' interests supports the entry of a Protective Order. As will be explained below, Defendants' requirement that a correctional officer be present in the deposition room and contemporaneously hear Plaintiffs' testimony creates an atmosphere of intimidation, chilling Plaintiffs' ability to testify freely and without fear of retaliation. Moreover, keeping Plaintiffs in full

restraints including the "black box" will prevent Plaintiffs from writing and likely cause them severe discomfort during their depositions. In addition, these conditions are an exaggerated and unnecessary response when reasonable alternatives exist to address FDC's safety and security concerns.

## II. A Protective Order is necessary to facilitate Plaintiffs' ability to testify freely and without fear of retaliation.

### A. A correctional officer inside the deposition room will create an atmosphere of intimidation, chilling Plaintiffs' ability to testify freely and without fear of retaliation.

There is good cause to exclude correctional officers from the deposition because they will intimidate Plaintiffs. The Court may issue an order "designating the persons who may be present while the discovery is conducted," such as excluding a specified individual from a deposition. Fed. R. Civ. P. 26(c)(1)(E); *See Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973); *Doe v. Lynn Univ., Inc.*, No. 9:16-CV-80850, 2017 WL 275448, at *3 (S.D. Fla. Jan. 19, 2017). Good cause for such an exclusion includes preventing the intimidation of a witness. *See Wesselmann v. Tyson Foods, Inc.*, No. 15-CV-4247-LTS, 2016 WL 6986683, at *2-3 (N.D. Iowa Nov. 28, 2016) (granting Protective Order barring plaintiff, a former employee, from attending the deposition of a current employee who he allegedly harassed); *Monroe v. Sisters of St. Francis Health Serv., Inc.*, No. 2:09 cv 411, 2010 WL 4876743, at *3 (N.D. Ind. Nov. 23, 2010) (granting Protective Order barring supervisors from attending deposition of employee who claimed he

was wrongfully terminated and would feel intimidated by the supervisors' presence); *Adams v. Shell Oil Co*., 136 F.R.D. 615, 617 (E.D. La. 1991) (issuing Protective Order to prevent intimidation of a witness at a deposition).

The test for such exclusion is not whether the fear of intimidation is rational, but whether that fear would inhibit the deponent's ability to testify. *Wesselmann*, 2016 WL 6986683, at *3 (excluding an alleged assailant from victim's deposition where the victim's "fear of an attack, rational or irrational, would inhibit her ability to testify"); *Tolbert-Smith v. Bodman*, 253 F.R.D. 2, 4 (D.D.C. 2008) (holding exclusion of corporate representative from deposition justified, "however irrational" the deponent's fear of the company's representative may be). In other words, it matters not whether Plaintiffs will actually suffer retaliation at the hands of correctional staff. Instead, the Court must consider Plaintiffs' *fear* of retaliation at the hands of FDC line staff because of their testimony and whether this fear will inhibit their ability to testify freely and openly about Defendants' practices and possible wrongdoing by correctional officers.

Here, Plaintiffs are afraid to testify freely about highly relevant matters if there is an officer present in the deposition room. They anticipate testifying about harms they have suffered at the hands of FDC staff, including harms inflicted by specific officers. Given the nature of Plaintiffs' legal claims against FDC, Plaintiffs will very likely testify about how specific correctional officers failed to

provide Plaintiffs with the meager out-of-cell time and services that they are entitled to under Defendants' isolation policies. Plaintiffs may also testify about specific correctional officers who have engaged in serious misconduct, including during use-of-force incidents where Plaintiffs sustained serious injuries. Plaintiffs will likely testify about staff at the facilities where Plaintiffs are currently or were previously isolated, and it is entirely possible that Plaintiffs may testify about the specific correctional officer in the room. Plaintiffs also anticipate that they will testify about intimate and extremely personal health conditions, including their psychiatric and physical disabilities, and about how these disabilities impact their daily lives.

Plaintiffs are afraid of testifying openly about these subjects in the presence of a correctional officer based upon their past experiences with FDC line staff. For example, correctional officers have told Ms. Harvard to stop filing grievances about problems in prison; these same officers have done things like spray her with chemical agents, placed her on property restriction, and denied her the chance to go to recreation and group counseling. Ex. 1, Harvard Decl., ¶¶ 3-4. Mr. Johnny Hill was physically assaulted by an officer on September 13, 2019, called a snitch by officers who also made negative comments about this case, has not received food trays after making allegations under the Prison Rape Elimination Act and speaking with his attorneys in this case, and has been placed him on property restriction

when he asked for mental health treatment. Ex. 2, Johnny Hill Decl., ¶¶ 3-9. Correctional officers have made comments to Mr. Burgess about this lawsuit and stated that if he continues to file complaints, bad things will happen to him. Ex. 3, Burgess Decl., ¶¶ 3-5. A correctional officer called Mr. Kendrick a "p***y" and refused him mental health treatment after Mr. Kendrick declared a psychological emergency. Ex. 4, Kendrick Decl., ¶ 3. Finally, correctional officers have taunted and intimidated Mr. Jeremiah Hill around the times he has had meetings with his attorneys in this case. Ex. 5, Jeremiah Hill Decl., ¶ 3. In Plaintiff Burgess's experience, word of his testimony will quickly spread to other parts of the prison to the officers with whom he has contact every day. Ex. 3, Burgess Decl., ¶ 4. Thus, the presence of a correctional officer in the deposition room leaves Plaintiffs vulnerable to immediate and future retaliation and harassment at the conclusion of the deposition.[4]

The existence of such a chilling atmosphere at the depositions will frustrate the administration of justice and threatens the Court's fact-finding ability. In such an atmosphere, Plaintiffs may not be candid, or feel forced to provide truncated responses, rather than describing the full spectrum of harms that they have experienced in isolation.

[4] People who are incarcerated are uniquely vulnerable to intimidation, retaliation, and harassment because they rely on prison staff for every basic human need: food, clothing, shelter, medicine and medical care, and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[H]aving stripped them of virtually every means of self-protection and foreclosed their access to outside aid," incarcerated people must rely on prison staff to meet their basic human needs.).

B. A correctional officer inside the deposition room is an exaggerated and unnecessary response to FDC's safety and security concerns.

There is also good cause because a correctional officer in the deposition room is an exaggerated and unnecessary response by FDC to any safety and security concerns. Defendants cannot establish that Plaintiffs pose an imminent safety and security threat. Over the last year, if not longer, Defendants have not accused Plaintiffs of harming, or threatening to harm, anyone, whether it be other incarcerated people or correctional staff.[5] Any Disciplinary Reports that Plaintiffs have received over the past year have been for minor infractions. Furthermore, Defendants seek to employ an almost identical, one-size-fits-all approach, to Plaintiffs' depositions no matter what their confinement status, illustrating that their position is an exaggerated response. For example, Jerome Burgess and Angel Meddler are now in the general prison population based on Defendants' own assessments of their behavior.[6]

[5] Mr. Burgess's most recent Disciplinary Report ("DR") is from November 9, 2017. ECF 27-1, at 5. Mr. Kendrick's most recent DR is from June 22, 2018. ECF 27-6, at 6. Mr. Espinosa's most recent DR is from June 27, 2018. ECF 27-2, at 6. In 2019, Ms. Harvard, Mr. Johnny Hill and Ms. Meddler only received DRs for Disobeying Orders and Disrespect to Officials; Ms. Harvard only for Disorderly Conduct and Disobeying Orders. ECF 27-5, at 6; ECF 27-7, at 5; ECF 27-3, at 8. Since the beginning of his current incarceration in 2014, Mr. Johnny Hill has never been accused of attacking, or threatening to attack, FDC staff. ECF 27-5, at 6. In 2019, Mr. Jeremiah Hill has only received one DR for Disobeying Regulations. ECF 27-4, at 4. Defendants have not notified Plaintiffs of any more recent DRs received by Plaintiffs as justification for the conditions they seek to impose.

[6] Ms. Meddler has been in the general prison population since June 2019 and Mr. Burgess has been in the general prison population since August 2019.

Defendants have alternative means to accomplish the same security objectives without chilling Plaintiffs' testimony. FDC may station a correctional officer immediately outside of the deposition room and conduct the deposition in a room that has a window, allowing the correctional officer an unobstructed view into the room during the deposition.[7] Significantly, FDC has followed this protocol for incarcerated individuals with similar custody levels, confinement statuses, and disciplinary histories as Plaintiffs - including in past depositions of Plaintiffs themselves. *See* Ex. 1, ¶¶ 5-8; Ex. 6, Decl. of James Cook, ¶¶ 3-4.

Attorney James Cook, for example, has been present for dozens of depositions of incarcerated people with "close custody"[8] status and assigned to Close Management on the dates of their depositions without a correctional officer in the room. *Id.*, ¶ 3. Some of these individuals have had DRs for battery or attempted battery against FDC staff and spoken threats. *Id.*, ¶ 4.

FDC has deposed both Ms. Harvard and Mr. Burgess in the past without an officer in the room. On February 13, 2018, FDC deposed Ms. Harvard in *Harvard v. Landrum* at Florida State Prison. Ex. 1, ¶ 6. She was in both Close Management I and Disciplinary Confinement, compared to her current, less

[7] In fact, from conversations between the parties, Plaintiffs understand that the depositions will be conducted in a room with a glass window in the door.

[8] Every prisoner within the FDC is assigned one of five custody grades (community, minimum, medium, close, or maximum) based upon an inmate's sentence, criminal history, time remaining to serve, and other classification factors reflected in an automated custody questionnaire. Fla. Admin. Code R. 33-601.210. As of December 4, 2019, Plaintiffs were all classified as "close custody."

restrictive status of Close Management II. *Id*. She testified without a correctional officer in the room or even one observing from outside of the room. *Id.*, ¶ 8. On January 9, 2019, FDC took Mr. Burgess's deposition in *Burgess v. Whitehead* at Suwannee Correctional Institution. Ex. 3, ¶ 6. He was in Close Management I at the time, compared to his current status of being in the general prison population. *Id*. There was no correctional officer present. *Id*. FDC's inconsistent position on whether officers need to be in the room leads Plaintiffs to believe that they are retaliating against them for prosecuting this particular lawsuit.

FDC follows the protocol of having an officer observe through a window in other contexts as well. At some prisons, this is standard FDC procedure during confidential legal visits for individuals in isolation in the same custody status as Plaintiffs and for Plaintiffs themselves. At other prisons, there is not even an officer outside the door. It is also FDC's practice for correctional officers to stand outside the door and observe through a window when incarcerated people, including Plaintiffs, meet with medical and mental health staff, such as during group therapy when one counselor is alone in a room with several incarcerated people.[9] *See* Ex. 1 – 5. This practice illustrates the real concern that having

[9] Defendants may argue that Plaintiffs' meetings with counsel and mental health staff are less adversarial than depositions. But these meetings can be just as upsetting for people. Lawyers routinely convey extremely bad news to their clients, like that they have lost the client's case or can no longer represent the client. Likewise, mental health providers regularly discuss traumatic and difficult experiences and may need to convey they cannot provide treatment to individuals in the way they wish.

correctional officers present in a room may inhibit incarcerated people from speaking freely about their medical and mental health conditions. Defendants have failed to explain why the alternative Plaintiffs have proposed—having an officer standing outside the room looking in—which would remove the chilling effect on their testimony, does not adequately address FDC's safety and security concerns.[10]

In sum, a balance of the interests of the parties weighs in favor of granting a Protective Order barring FDC staff from Plaintiffs' deposition room, given the chilling effect that staff would have on Plaintiffs' testimony and the reasonable alternatives exist to address FDC's safety and security concerns.

C. The use of full restraints, including a "black box," will unreasonably and unnecessarily restrict Plaintiffs' movement, including their ability to write, during their depositions, and there are alternative means to accomplish the same safety and security objectives.

Defendants' position that certain Plaintiffs must be in full restraints, including leg irons, waist chains, handcuffs, and a "black box," is also unreasonable and unnecessary. The "black box" holds Plaintiffs' arms in front of them at the same fixed position a few inches from their waist. Combined with a waist chain, the "black box" strains Plaintiffs' shoulders, wrists, and back, at least in part because they must remain in nearly the exact seated same position the entire

[10] Yet another alternative exists as well. Defendants may depose Plaintiffs telephonically or through video conference. Plaintiffs and their attorneys can meet at the prison just like they do for normal legal visits without an officer present. All other parties can appear by telephone or video. This removes the chilling effect on Plaintiffs' testimony while addressing FDC's safety and security concerns.

time they are in these restraints. The use of such restraints for up to seven hours of testimony, and likely many more hours during that day, would cause Plaintiffs extreme discomfort, pain, and a limited range of motion, prohibiting Plaintiffs from engaging in normal movement during the depositions. *See* Ex. 1 – 5. Significantly, it will prohibit Plaintiffs from writing during their depositions, to take notes or communicate confidentially with counsel, and thus fully participating in their depositions.

Here, too, the use of full restraints is an excessive response to FDC's safety and security concerns, especially given Plaintiffs' current statuses and recent disciplinary history. For Plaintiffs in isolation who FDC feels it necessary to restrain, other less-restrictive means exist. One option is "side cuffs," in which each wrist is separately handcuffed to short chains that are attached to a waist chain at the side of the body. Like with a "black box," in "side cuffs" Plaintiffs' wrists and arms would be restrained, but they would still be able to write and have more normal movement. In recent months, Defendants have used "side cuffs" on James Kendrick, for example, when he has left his isolation unit and gone to the visiting room for continuing education classes. Ex. 4, ¶ 8. Another option is a "four-point chain," where an individual wears handcuffs and shackles, which are connected by a chain down the middle of their body. This would restrain Plaintiffs while still allowing them to write and maintain some degree of physical comfort.

Defendants regularly use a "four-point chain" to restrain Plaintiff Harvard at Wakulla Correctional Institution. Ex. 1, ¶ 14.

The use of restraints is particularly unnecessary for Plaintiffs who are currently in general population. These individuals move about the prison—attending meals, having close-door meetings with classification officers, performing jobs around the prison, visiting medical and mental health providers, and attending legal and personal visits—all without any restraints whatsoever. It defies logic for FDC to claim that their depositions pose a particular security risk when the rest of their interactions do not.

Defendants have failed to explain why full restraints, including the "black box," are necessary within the confines of a secure facility and when Defendants have and use other types of restraints. They have failed to explain why people in general population need to be restrained at all. Thus, in balancing the interests of the parties, good cause exists to enter a Protective Order prohibiting Defendants from using full restraints on Plaintiffs when other, less restrictive, options exist to address FDC's safety and security concerns.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant this Motion and enter a Protective Order prohibiting FDC staff from being present in the room during Plaintiffs' depositions, prohibiting the use of the "black box" on

Plaintiffs during their depositions, and prohibiting the use of restraints for deponents in general population, or any other relief the Court deems just and proper.

**Certificate of Conference**

In accordance with N.D. Fla. Loc. R. 7.1(B), as described above, Plaintiffs' counsel has conferred with counsel for the Defendants about the matters listed above. Defendants oppose the requested relief.

**Certificate of Word Limit**

Under N.D. Fla Local Rule 7.1(F), I hereby certify that this motion contains 3,695 words.

Respectfully Submitted,

Dated: December 20, 2019

*Laura A. Ferro*

Laura A. Ferro
Fla. Bar No. 1015841
Dante P. Trevisani
Fla. Bar No. 72912
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Florida Justice Institute, Inc.
100 SE 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
lferro@floridajusticeinstitute.org
dtrevisani@floridajusticeinstitute.org
sthypin-bermeo@floridajusticeinstitute.org

Sumayya Saleh
Fla. Bar No. 119372
Shalini Goel Agarwal

Fla. Bar No. 90843
Southern Poverty Law Center
106 East College Ave., #1010
Tallahassee, FL 32302
Telephone: (850) 521-3024
sumayya.saleh@splcenter.org
shalini.agarwal@splcenter.org

Kelly Knapp
Fla. Bar No. 1011018
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org

Lisa Graybill*
Texas Bar No. 24054454
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (334) 549-0498
lisa.graybill@splcenter.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla Bar No. 116209
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org

*Admitted *pro hac vice*

**Attorneys for Plaintiffs**