# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| JAC'QUANN (ADMIRE) HARVARD, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.: 4:19-cv-00212-MW-CAS ) ) |
| MARK S. INCH, *et al.*, | ) ) |
| Defendants. | ) ) |

## PLAINTIFF JOHNNY HILL'S MOTION FOR PROTECTIVE ORDER TO PREVENT RETALIATION AND INCORPORATED MEMORANDUM OF LAW

People who are incarcerated have a constitutional right to challenge, through legal action, the conditions of their confinement. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986). Plaintiff Johnny Hill chose to exercise this right when he filed this lawsuit. In response, staff members employed by Defendant Florida Department of Corrections (FDC) have branded Mr. Hill a snitch and physically assaulted, threatened, and harassed him. Because Mr. Hill is dependent on prison staff to meet his every need, this sort of misconduct "parlay[s] even a low objective probability of misconduct into a substantial subjective fear" of further retaliation. *Ben David v. Travisono*, 495 F.2d 562, 564 (1st Cir. 1974).

1

This Court has the authority to prevent parties and their agents from interfering with the judicial process through intimidation, including physical brutality. Mr. Hill moves the Court to exercise its power under the All Writs Act, 28 U.S.C. § 1651, and issue a Protective Order prohibiting FDC from retaliating against Mr. Hill for prosecuting this lawsuit and for communicating with counsel; directing that Correctional Officer Kyle Masters have no further contact with Mr. Hill; ordering Mr. Hill's transfer away from Santa Rosa Correctional Institution (Santa Rosa); together with any other relief the Court deems appropriate.

## I.  FACTUAL BACKGROUND

1. On September 13, 2019, FDC transferred Plaintiff Johnny Hill from Santa Rosa to Northwest Florida Reception Center Annex (NWFRC) for an eye doctor appointment. Officer Masters and another transport officer accompanied Mr. Hill and several other incarcerated people there. Declaration of Johnny Hill (Hill Decl.), ¶¶ 4, 7, 12.

2. Before they boarded the transport van, Officer Masters asked Mr. Hill to identify himself. When Mr. Hill gave Officer Masters his name and DC number, Officer Masters responded with something like, "Oh, yeah, you're that little fuck boy" suing the prison. He called Mr. Hill the N-word and a snitch and said something about how "snitches get stitches." Mr. Hill took this to be a threat based

on rumors that Santa Rosa has a history of officer violence against people who snitch. Hill Decl., ¶ 6.

3. Once at NWFRC, Officer Masters viciously attacked Johnny Hill, who was fully restrained at the hands and feet. He punched Mr. Hill twice in the head, causing him to fall to the ground. Officer Masters then hit and kicked Mr. Hill in both sides of his body. Hill Decl., ¶ 10.

4. Officer Masters beat Mr. Hill with so much force that Mr. Hill began to urinate blood and experienced severe pain in his lower back and flank for more than a week after the attack. Hill Decl., ¶ 17, Ex. B; Declaration of Laura Ferro (Ferro Decl.), ¶ 11, Ex. C.

5. After the beating, on the way back to Santa Rosa, Officer Masters pulled a gun out of his holster and threatened Mr. Hill. He also said something like, "If you do say anything back at Santa Rosa, I can make sure that you have a sudden 'K2 overdose.'"[1] Mr. Hill believed that Officer Masters was threatening to have him killed and to cover up his death. Hill Decl., ¶ 14.

6. Mr. Hill submitted a formal grievance of staff abuse regarding the events of September 13, 2019. Hill Decl., ¶ 16, Ex. A. Santa Rosa approved his

---

[1] K2 is the colloquial term for synthetic marijuana. According to an internal FDC audit, K2 usage resulting in drug overdoses has been the leading cause of in-custody death in recent years. *See* Sarah Blaskey, *This drug is turning Florida inmates into 'zombies.' It's fueling a record death toll*, MIAMI HERALD, Aug 21, 2018, https://www.miamiherald.com/news/special-reports/florida-prisons/article215642855.html.

grievance to the extent it referred his complaint to the investigative section of the Office of the Inspector General (OIG).[2] *Id.* The only word Mr. Hill has received from the OIG since then is a letter stating that an unspecified "matter was investigated and the findings of this case are dispositioned as Suspended." Hill Decl., ¶ 21, Ex. C.

7. On or about October 24, 2019, FDC transferred Mr. Hill from Santa Rosa to the Reception and Medical Center (RMC) for a medical appointment. Officer Masters was one of the officers involved in the transportation process. He threatened Mr. Hill repeatedly, including that he would injure Mr. Hill when he returned to Santa Rosa. Hill Decl., ¶ 18.

8. Staff at RMC told Mr. Hill that he would be held at RMC through January 2020 for medical reasons, temporarily alleviating his concerns of further contact with or retaliation by Officer Masters. Hill Decl., ¶ 19.

9. Despite this, on November 26, 2019, FDC transferred Mr. Hill back to Santa Rosa. Upon his arrival, he saw Officer Masters, who made more disparaging remarks toward Mr. Hill. Hill Decl., ¶ 20.

---

[2] Mr. Hill has exhausted his administrative remedies on this issue. *See Harvard v. Inch*, No. 4:19cv212-MW/CAS, 2019 WL 5587314, at *15 (N.D. Fla. Oct. 24, 2019). Still, the plain language of the Prison Litigation Reform Act does not require exhaustion for the purpose of this motion, because Mr. Hill has not brought a new claim or action regarding retaliation. *See* 42 U.S.C. § 1997e(a) ("No *action* shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." (emphasis added)).

4

10. Since Mr. Hill's return to Santa Rosa, officers have called him a snitch and retaliated against him by, for example, depriving him of meals, damaging his property, and threatening to pepper spray him. Hill Decl., ¶¶ 22-23, 25.

11. Mr. Hill expects to go back to RMC for more medical treatment. And since Officer Masters is a transport officer at Santa Rosa, Mr. Hill believes that he will likely be involved in the transport process. Hill Decl., ¶ 24.

12. Over the last several weeks, Plaintiffs' attorneys have attempted to resolve this issue with Defendants' attorneys without success. Defendants have not agreed to take any steps to ensure Mr. Hill's safety. On December 20, 2019, they produced a document that describes a cursory investigation into Mr. Hill's allegations, including a medical exam conducted six days after the incident. The examination was not conducted by a physician or even a registered nurse. Ferro Decl., ¶¶ 6-10, Ex. A-B.

13. Based on the brute force Officer Masters used against Mr. Hill on September 13, 2019, and his ongoing threats since that time, Mr. Hill fears that Officer Masters will again retaliate against him for his involvement in this case. Even absent another encounter with Officer Masters, Mr. Hill fears further retaliation based on the conduct of other officers at Santa Rosa in recent weeks. Hill Decl., ¶ 25-26.

14. Defendants intend to depose Mr. Hill in this case, potentially as soon as January 2020. Ferro Decl., ¶ 12. They also intend to have a correctional officer in the room during the deposition.[3] Since officers at Santa Rosa have labeled Mr. Hill a snitch and retaliated against him because of his involvement in this case, Mr. Hill has a substantial subjective fear of further retaliation. Hill Decl., ¶ 27.

## II.  MEMORANDUM OF LAW

### A.  The All Writs Act Empowers the Court to Prevent Retaliation Against Incarcerated Litigants

This Court has the authority under the All Writs Act to protect incarcerated plaintiffs against retaliation. The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. It "is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have," allowing them to safeguard ongoing proceedings. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004). Orders must be directed at conduct "which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." *Id.* at 1102 (quoting *IIT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)). This power

---

[3] Plaintiffs' object to having an officer in the room during their depositions; this is the subject of a separate Motion for Protective Order, ECF 67.

is not limited to the parties before the Court in the underlying litigation. Instead, it extends to all persons who "though not parties to the original action . . . are in a position to frustrate . . . the proper administration of justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977).

Left unchecked, retaliation against Mr. Hill will frustrate the implementation of the fair administration of justice. People who are incarcerated, more so than any other class of litigants, are uniquely vulnerable because they rely on prison staff for every need, including personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[H]aving stripped them of virtually every means of self-protection and foreclosed their access to outside aid," incarcerated people must rely on prison staff to meet their basic human needs.). Mr. Hill is at the mercy of FDC staff, who have responded to his involvement in this lawsuit with harassment and physical violence. Their conduct gives rise to a reasonable fear that Mr. Hill's continued involvement in this case, including testifying at his impending deposition, will result in additional retaliation. The All Writs Act provides the mechanism for the Court to rein in this behavior so that it can adjudicate the case.

*Travisono*, a case in which a group of incarcerated people brought a class action lawsuit challenging their conditions of confinement, is instructive. 495 F.2d at 563. The plaintiffs invoked the court's All Writs jurisdiction for "orders for the protection of plaintiffs and their class . . . to insure a complete and thorough

7

investigation" of the case." *Id.* Based on testimony that prison staff had retaliated against plaintiffs and class members through "beatings, gasings [sic] and 'strip' lockups," the court entered a protective order restraining prison officials and their agents "from taking any actions in retaliation against plaintiffs and members of plaintiffs' class" or depriving them of their rights and privileges due to their participation in the lawsuit. *Id.*

The First Circuit found that the plaintiffs' fear of retaliation "if they co-operate in the preparation of the substantive action" justified the imposition of a protective order under the All Writs Act.[4] In so doing, it tacitly concluded that the plaintiffs did not need to meet the criteria for ordinary protective orders under Federal Rule of Civil Procedure 26(c), or for preliminary injunctions. *See id. See also Klay*, 376 F.3d at 1101 ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."); *cf. Weimar, et al., v. Fla. Dep't of Corr., et al.*, 4:19-cv-00427-MW-MJF, ECF 13 (N.D.

---

[4] The *Travisono* court upheld one paragraph of the order prohibiting retaliation but struck another that was vague and "crosse[d] the line from a limited protective order . . . to a more expansive preliminary injunction appropriate only upon express findings that the prohibited conduct is likely." *Id.* at 564-65. *See also Adams v. NaphCare, Inc.*, No. 2:16-cv-229, 2016 WL 10492102 (E.D. Va. July 25, 2016) (denying motion for protective order that requested that incarcerated witnesses be transferred to a "neutral facility"; that they be guarded by correctional officers unrelated to the litigation; and that the court appoint a special monitor because such relief "appeared consistent with relief obtained in a preliminary injunction").

Fla. Sep. 16, 2019) (denying plaintiff's motion to prohibit certain FDC employees from accessing plaintiff because plaintiff failed to provide a legal basis for a request that, in essence, amounted to a temporary restraining order).[5]

Mr. Hill seeks a similarly contoured protective order designed to prohibit FDC staff from retaliating against him based on any actions he takes or has taken in furtherance of this litigation. Certainly, the Court's jurisdiction under the All Writs Act must not be deployed lightly. *See Penn. Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 43 (1985) (holding that the All Writs Act does not authorize use of "ad hoc writs" whenever convenient, but it "empowers federal courts to fashion extraordinary remedies when the need arises"). But the Court's intervention here is necessary to prevent direct retaliation against Mr. Hill for invoking the Court's jurisdiction. Otherwise, FDC staff will be left with every incentive and no deterrent to thwart litigation that is critical of FDC's practices. This is precisely the type of "exceptional circumstance" that the All Writs Act was designed for. *See Travisono*, 495 F.2d at 563.

---

[5] Unlike in *Weimar*, this motion does not amount to a motion for a temporary restraining order. Mr. Hill's primary request is an Order prohibiting retaliation, which, under *Travisono*, is a proper exercise of All Writs jurisdiction. And as delineated below, Mr. Hill has satisfied the legal standard for such an Order.

9

### B. The Issuance of a Protective Order is Necessary Based on Mr. Hill's Reasonable Fear of Retaliation

The issuance of a Protective Order is both necessary to protect Mr. Hill and justified under the law. The "findings necessary to support a protective order [against retaliation] are simply that the plaintiff[] reasonably fear[s] retaliation and that the court's fact-finding may be materially impaired unless there is provided the tangible protection of a suitable court order[.]" *Travisono*, 495 F.2d at 564. Mr. Hill meets that test.

Mr. Hill's ongoing fear of retaliation is reasonable given the misconduct of correctional staff at Santa Rosa from September 13, 2019, through the present. Officer Masters beat Mr. Hill so severely that Mr. Hill urinated blood and was in extreme pain for more than a week after the incident. In addition to the vicious attack, Officer Masters and other officers have continued to call Mr. Hill a snitch and engage in harassment. Mr. Hill has attempted to address his concerns, first through the grievance process, and then through the advocacy of Plaintiffs' counsel, to no avail.[6]

Though Mr. Hill obtained temporary refuge at RMC, he is back in harm's way. FDC chose to return him to Santa Rosa—notwithstanding the requests of his

---

[6] Significantly, Defendants have refused to turn over or even provide a summary description of video evidence that could either corroborate or refute Mr. Hill's claim of retaliation, despite Plaintiffs' counsel's repeated requests for it. Ferro Decl., ¶¶ 6-10. Defendants' failure to meaningfully engage in conversation with Plaintiffs' counsel regarding Mr. Hill's fear of retaliation has left Mr. Hill no recourse other than to seek court intervention.

10

attorneys, and FDC's ability to transfer him to any of the other Close Management facilities. He has no control over how long he will be at Santa Rosa, or what officers he will encounter while he is there or during his transport to another institution. Mr. Hill's impending deposition adds to his fears. At best, he will have to testify at the same prison where officers are retaliating against him for being a snitch. At worst, the same officers who have been harassing him may be in the deposition room with him and hear his testimony contemporaneously. The totality of these circumstances renders his subjective fear of further retaliation not only substantial, but also objectively likely to occur. *See Travisono*, 495 F.2d at 564 (indicating that substantial subjective fear of retaliation is enough to justify a protective order).

This fear, fueled by Mr. Hill's complete reliance on correctional officers who blatantly disregard the rule of law, threatens to undermine the Court's fact-finding ability. Mr. Hill depends on this Court to adjudicate Plaintiffs' claims that Defendants' isolation policies and practices subject them, and the putative class they seek to represent, to disability discrimination and a substantial risk of serious harm. His upcoming deposition is a critical stage in the progression of this case. If the threat of retaliation looming over Mr. Hill's head is unabated, the outcome of this case may hinge on Mr. Hill's courage to continue to prosecute this case, rather than its merits. *See id.*

11

## III. CONCLUSION

Mr. Hill reasonably fears retaliation based on the conduct of Officer Masters and other FDC staff. To assist the exercise of the Court's jurisdiction in this cause, the Court should issue an order protecting Mr. Hill against further retaliation. Such an order should include not only a directive against retaliation, but also, if the Court deems it appropriate, the same relief that Defendants have refused to provide: no contact with Officer Masters and transfer away from Santa Rosa.

WHEREFORE Plaintiff Johnny Hill respectfully requests that this Court enter an Order: 1) prohibiting Defendant FDC and its officers, agents, and all persons acting in concert with it, from retaliating against Mr. Hill for bringing this lawsuit and for communicating with counsel and the Court; 2) directing that Officer Masters have no contact with Mr. Hill; 3) ordering Mr. Hill's transfer away from Santa Rosa; together with any other relief the Court deems appropriate.

Respectfully Submitted,

Dated: December 20, 2019

_____
Sumayya Saleh
Fla. Bar No. 119372
Shalini Goel Agarwal
Fla. Bar No. 90843
Southern Poverty Law Center
106 East College Ave., #1010
Tallahassee, FL 32302
Telephone: (850) 521-3024
sumayya.saleh@splcenter.org
shalini.agarwal@splcenter.org

Kelly Knapp
Fla. Bar No. 1011018
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org

Lisa Graybill*
Texas Bar No. 24054454
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (334) 549-0498
lisa.graybill@splcenter.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla. Bar No. 116209
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777

>Florida Justice Institute, Inc.
>100 SE 2nd St., Ste 3750
>Miami, FL 33131
>Telephone: (305) 358-2081
>dtrevisani@floridajusticeinstitute.org
>lferro@floridajusticeinstitute.org
>sthypin-bermeo@floridajusticeinstitute.org
>
>*Admitted *pro hac vice*
>
>**Attorneys for Plaintiffs**

### Local Rule 7.1(B) Certificate

Under Rules 7.1(B) and (C) of the Local Rules of the Northern District of Florida, undersigned counsel certifies that Plaintiffs' counsel has conferred with counsel for the Defendants about the relief sought in this motion. Defendants oppose the motion and object to the relief requested.

>_____
>Sumayya Saleh

### Local Rule 7.1(F) Certificate

Under Rule 7.1(F) of the Local Rules of the Northern District of Florida, undersigned counsel certifies that this motion contains 3131 words.

>_____
>Sumayya Saleh

14