UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

      Plaintiffs,

vs.

CASE NO.: 4:19-cv-00212-MW-CAS

MARK INCH, in his official
Capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

      Defendants.
_____/

## DECLARATION OF MICHAEL MASHBURN

**STATE OF FLORIDA**
**COUNTY OF WASHINGTON**

      I, Michael Mashburn, pursuant to 28 U.S.C. s. 1746, declare under penalty of perjury that the statements made below are true and correct:

1. I am over the age of twenty-one years, and I am competent to testify as to the facts stated in this declaration.

2. I am the Warden of Northwest Florida Reception Center (hereafter "NWFRC") located in Chipley, Florida.

3. I give this declaration in connection with Plaintiff Johnny Hill's Motion for Protective Order to Prevent Retaliation submitted in the lawsuit filed by Plaintiffs referenced above.

4. A staff member at my direction preserved security camera footage taken on September 19, 2019 at the NWFRC annex medical building, showing the movements of who I understand to be Officer Kyle Masters and Mr. Hill.

5. Following are my observations from watching the preserved video clips.

6. At approximately 8:09:36 AM, Officer Masters, Mr. Hill and three other individuals (one inmate and two officers) entered through the sally port and walked toward the medical building.

7. At approximately 8:09:42 AM, Officer Masters, Mr. Hill and the other individuals entered through an exterior door of the medical building leading into the waiting room.

8. They continued to walk through the waiting room where other inmates were seated on benches. Contrary to Mr. Hill's declaration, he was not left in the waiting room.

9. Instead, at approximately 8:09:57 AM, Officer Masters, Mr. Hill and the others exited the waiting room through a door leading into a hallway.

10. In the hallway, a security station and two holding cells are located within a few feet.

11. Officer Masters, Mr. Hill and two of the individuals (one inmate and one officer) waited in the hallway area.

12. At approximately 8:13:20 AM, Officer Masters and the other officer placed Mr. Hill into holding cell "1," and stood outside the closed door of the holding cell.

13. At approximately 8:13:47 AM, an officer, who I recognize to be Leslie Sawyer, locked the door to holding cell 1.

14. I have confirmed that, during that shift, Officer Sawyer was the security officer assigned to the security desk located next to the holding cells.

15. Pursuant to facility protocols, transport officers such as Officer Masters are not permitted to access the keys to the holding cells. Instead, the security officer posted to the security desk located next to the holding cells maintains control of the keys.

16. There are no security cameras located inside the holding cells.

17. The hallway area outside the holding cells is a highly trafficked area, where officers, medical staff and inmates routinely walk.

18. At approximately 11:47:23 AM, Officer Sawyer unlocked holding cell 1, and Officer Masters escorted Mr. Hill out of the cell into the hallway.

19. At approximately 11:47:40 AM, Officer Masters escorted Mr. Hill down another hallway, where Mr. Hill is then led into a medical exam room.

20. At approximately 11:53:21 AM, Mr. Hill exited the medical exam room and stood in the hallway next to where Officer Masters was seated with other officers.

21. At approximately 11:57:46 AM, Mr. Hill walked into an adjacent medical exam room.

22. Officer Masters did not enter either of the medical exam rooms, and waited in the hallway with other officers until approximately 12:06:44 PM, at which time Mr. Hill exited the second exam room, and Officer Masters escorted him back down the hallway.

23. There are no security cameras located inside the medical exam rooms.

24. At approximately 12:14:21 PM, Officer Masters, Mr. Hill and two individuals (one inmate and one officer) exited the medical building through the exterior waiting room door.

25. I inspected the medical building for an office, as Mr. Hill described in his declaration, with a table, filing cabinets, and a microwave; however, no such office exists.

26. At all times during the above-described movements in the facility, Mr. Hill and Officer Master appeared to be calm. Mr. Hill did not appear to be experiencing any apparent distress; and he walked without any sign of visible physical injuries.

27. The foregoing facts are known by me to be true from my personal knowledge. I am competent to testify to such facts and would so testify if I appeared in court at trial of this matter.

I have read the foregoing and declare under penalty of perjury that the foregoing is true and correct.

_1/3/20_
Date

_/s/ Michael Mashburn_
MICHAEL MASHBURN