UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

       Plaintiffs,

vs.                           CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
Capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

       Defendants.

_____/

## DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 26(c), Defendants, Mark Inch, in his official capacity as Secretary of the Florida Department of Corrections, and the Florida Department of Corrections ("FDC"), hereby request entry of a protective order limiting the disclosure to only Plaintiffs' counsel of (1) post orders; (2) technical manuals; (3)

video surveillance of correctional facilities; and (4) information related to the correctional institution's physical security, including, but not limited to, cell locations, prison layout, and positioning of officers and cameras.  In support of this Motion, Defendants state:

Rule 26(c) permits that upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005).

**A. Defendants' security and safety concerns establish good cause.**

Defendants seek a protective order limiting the following highly sensitive materials to only be viewed by Plaintiffs' counsel: (1) post orders; (2) technical manuals; (3) video surveillance of correctional facilities; and (4) information regarding cell locations, prison layout, and positioning of officers and cameras. Defendants have legitimate security and safety concerns regarding these highly sensitive materials. The United States Supreme Court has repeatedly recognized the importance of these interests and allowed prison officials great deference in the

administration of prison affairs. In the leading case of *Turner v. Safley*, 482 U.S. 78, 84-85(1987), the Supreme Court stated:

> [C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the Legislative and Executive branches of Government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.

*See, e.g.*, *Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989) ("Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world.") (citations omitted). *Turner's* recognition of separation of powers in "'prison officials' management decisions" was reiterated by the Eleventh Circuit in *Prison Legal News v. Secretary, Florida Dept. of Corrections,* 890 F.3d 954, 965 (11th Cir. 2018), in which the circuit court recognized that it does not sit "as a super-warden to second-guess the decisions of the real wardens."  Likewise in *Hoffer v. Inch*, 382 F. Supp. 3d 1288 (N.D. Fla. 2019) *appeal filed*, No.19-11921 (11th Cir. May 16, 2019), this Court recognized that its role was "not to supervise

prisons but to enforce the constitutional rights of . . . prisoners." *Id.* at 1299 (quoting *Cruz v. Beto*, 405 U.S. 319, 321(1972)).

Given the great deference allowed to prison officials in prison management, "[f]ederal courts have repeatedly found good cause to limit discovery or disclosure of information implicating the safety and security of prisons and jails." *Shadburne v. Bullitt Cty., Kentucky*, No. 3:17CV-00130-DJH, 2017 WL 6391483, at *3 (W.D. Ky. Dec. 14, 2017) (citations omitted).

The improper disclosure of the materials at issue pose a great threat to safety and security of the correctional institutions involved in this case. *See* Affidavit of Carl Wesley Kirkland Jr., attached as **Exhibit A**. Post orders provide delicate information such as where correctional officers stand and their tasks. Technical manuals describe how to input and change information in correctional facilities' computer systems. Video surveillance shows the layout of a prison, where correctional officers stand, and potential escape routes. Providing inmates access to recordings of surveillance videos would allow them to determine the surveillance and recording capabilities and weaknesses of cameras at locations depicted in the video at issue. Inmates could also determine from the video staff response times, locations from which staff are responding, the length of time it takes to open doors into an area, staffing patterns, and other important security information. Information regarding cell locations gives the location of protected

inmates and places their lives at jeopardy. Improper disclosure of these materials will leave a correctional facility vulnerable to security breaches. Given the sensitive nature of these materials, Defendants require additional protection to ensure that the materials and the information contained in them are not disseminated to current and former inmates, relatives of those incarcerated, and the public. These circumstances establish good cause.

Courts have recognized the risks involved in the types of materials at issue falling into the wrong hands and found good cause to enter a protective order in some cases. In *Perasso v. Washington State Dep't of Corr.*, No. 3:18-CV-05934-BHS-DWC, 2019 WL 2172857, *2 (W.D. Wash. May 20, 2019), the court granted the department of corrections' motion for protective order precluding the inmate from viewing the departments' video surveillance at the time but allowed his counsel to view the surveillance based on security concerns. The court echoed the Defendants' concerns in this case by stating:

> [I]t is "critical that offenders, their cohorts, and visitors not know the capabilities and the limitations of the DOC's surveillance systems" to maintain the secure and orderly operation of a prison. "Providing access to recordings of DOC surveillance videos would allow others to accurately determine which areas are weak or devoid in DOC's ability to capture identities in the aftermath of an incident or crime" and could enable others to study staff movements to identify weaknesses in security. Further, the surveillance videos can be used by: sexual predators to prey on weaker offenders, inmates to assault other offenders, and visitors to uncover new methods to pass contraband. "Surveillance video could also reveal the internal layout and design of a facility ... or of specific security features."

*Id.* (citations omitted). *See, e.g.*, *McCoy v. Heimgartner*, No. 17-3139-JWB, 2018 WL 4334298, at *3 (D. Kan. Sept. 11, 2018) (recognizing security concerns in providing plaintiff with a correctional facility's cell house post orders and security staff post orders); *Butler v. Bessinger*, No. CV 4:16-3662-RMG-TER, 2018 WL 387999, at *2 (D.S.C. Jan. 11, 2018) (granting motion for protective order to preclude plaintiff from obtaining the South Carolina Department of Corrections (SCDC) Use of Force Policy and stating "the public interest weighs in favor of policies which encourage security in prisons"); *Sarnowski v. Peters*, No. 2:16-CV-00176-SU, 2017 WL 4467542, at *6 (D. Or. Oct. 6, 2017) ("[T]he Court has serious confidentiality and safety concerns about requiring defendants to disclose confidential or sensitive information—specifically, the TRCI floor plans and CCTV information. . . ."); *Williams v. Williams*, No. C 07-04464 CW (LB), 2011 WL 863500 (N.D. Cal. Mar. 10, 2011) (granting defendant correctional officer's motion for protective order regarding production of sensitive prison documents, including use of force policy, to plaintiff inmate because of security concerns); *Ulibarri v. City & Cty. of Denver*, No. CIV.A. 07-CV-01814WD, 2009 WL 260945, at *4 (D. Colo. Feb. 4, 2009) (holding that the redacted pages of a jail's policies implicated safety and security concerns and that these pages not be released to the plaintiffs); *Morales v. Woodford*, No. C 06 219 JF RS, 2006 WL 8434981, at *3 (N.D. Cal. May 2, 2006) (entering protective order that allowed the

disclosure of the identities of members of the execution team to inmate's attorneys but not to inmate).

## B. The Confidentiality Order is insufficient.

The current Confidentiality Order does not adequately protect these materials. *See Sarnowski*, 2017 WL 4467542, at *5 (rejecting argument that all security concerns had been cured because the court had previously entered a protective order). Under paragraph 9.c. of the Confidentiality Order, Plaintiffs' counsel "may discuss the contents of Confidential documents with the named Plaintiffs if reasonably necessary to prosecute this case . . . ." (Doc. 58). There is no reason for counsel to discuss the contents of security measures with current inmates under any circumstances. Counsel cannot have free rein to disclose security information with inmates if counsel believes it is necessary.

Under paragraph 9.b.iv. of the Confidentiality Order, Plaintiffs include "consultants" as qualified persons who could receive access to the most highly restricted documents FDC possesses. There is no restriction on who may act as a consultant. Similarly, "witnesses" and "declarants", again without restriction, are included in the definition of "qualified persons." These overly broad categories of qualified persons place all stakeholders in Florida's penal system at risk for security breaches.

Moreover, merely because Plaintiffs tag someone with the label of "expert" should not automatically allow that person access to the highly sensitive materials at issue. Currently, Defendants are unaware of the identities of Plaintiffs' expert witnesses and whether they can have access to these most sensitive materials. Defendants cannot "unring the bell" once the information falls into the wrong hands or is disseminated. Courts have imposed restrictions on the disclosure of documents to experts. *See Sony Computer Entm't Am., Inc. v. NASA Elecs. Corp.*, 249 F.R.D. 378, 384 (S.D. Fla. 2008) ("[T]o provide a measure of extra protection, prior to disclosure of 'attorneys' eyes only' information to an expert, Plaintiff will be required to identify that expert to Defendant, and Defendant will have the opportunity to lodge an objection to the disclosure to a particular expert if there is a specific reason to do so. The primary purpose of this provision is to ensure that such information is disclosed only to experts who need the information in connection with their expert evaluation."); *see also Montanez v. Wolters*, No. 3:16-CV-1147-NJR-DGW, 2018 WL 5437442, at *3 (S.D. Ill. Oct. 29, 2018) (not including experts or court personnel in list of individuals who were allowed to view "Attorneys' Eyes Only" documents).

Furthermore, "[t]he Florida Constitution and the Public Records Act grant to the people the right to inspect and copy public records . . . ." *Exec. Office of the Governor v. AHF MCO of Fla., Inc.*, 257 So. 3d 612, 615 (Fla. 1st DCA 2018).

However, certain information is exempt from public disclosure. Many of the materials at issue fall within this group, indicating their high level of sensitivity. For example, the information contained in post orders, which includes surveillance techniques and personnel, is a security system plan as defined in Florida Statute Section 119.071(3) and thus is confidential and exempt from public records requests. *See* Fla. Stat. § 281.301.

If the highly sensitive materials at issue fell into the wrong hands, people could use this information to assault Department employees, increase the risk of escape of a convicted felon, introduce dangerous contraband and/or otherwise disrupt the orderly and secure operations of a correctional facility, all of which would jeopardize the safety of the public, employees, and inmates/offenders.

**C. The Documents and Materials At Issue**

So far, Plaintiffs have served 385 requests for production, 199 requests for admission, and 43 interrogatories on Defendants.  Defendants have been working with Plaintiffs to narrow the scope of discovery sought and to resolve various objections.  Defendants have also been working diligently to produce responsive documents to Plaintiffs on a rolling basis, as the documents requested are expansive and require extensive time and resources to review before production.

To date, Defendants have identified the following responsive documents which contain highly sensitive security materials:

1. Portions of audits prepared by the American Correctional Association, which discuss the location/ staffing of correctional officers, prison layout, and other security measures;

2. Video surveillance of certain restrictive housing wings preserved by agreement and communications discussing the same;

3. Technical Manual for Alternative Housing; and

4. Policies regarding the Automated Discipline and Integrated Offender System.

In addition, on December 12, 2019, Plaintiffs filed a Motion to Compel regarding several discovery requests.  (Doc. 165-1).  There are several requests, which if this Court agrees with Plaintiffs, will call for the production of documents that contain highly sensitive security information.  For example, Plaintiffs seek discovery of Defendants' "policies," with "policies" being defined in an overly broad and vague manner.  Also, Plaintiffs' definition of "policies" includes post-orders and technical manuals.  Defendants have agreed to provide the policies of the FDC, but have objected to Plaintiffs' overly broad and vague definition of policy.  *See* Defendants' Response to Plaintiffs' Motion to Compel.  (Doc. 83).  In addition, Plaintiffs request several documents such as the work schedules for correctional officers that also have a pending objection.  *Id.* However, should this Court agree with Plaintiffs and require the production of post-orders, technical

10

manuals, the work schedules of correctional officers, or other documents containing information regarding cell locations, prison layout, and positioning of officers and cameras, then Defendants request that this Protective Order apply to those documents as well.

Finally, as stated above, Defendants continue to review the hundreds of thousands if not millions of documents requested in this case. Defendants anticipate that they will find additional responsive documents, including e-mail communications, which contain highly sensitive security information. Defendants request that this Protective Order apply to additional documents found during the review process that contain highly sensitive security information, namely information regarding cell locations, prison layout, and positioning of officers and cameras.

WHEREFORE, Defendants respectfully request that this Court grant Defendant's Motion for Entry of a Protective Order to limit the materials at issue to only be viewed by Plaintiffs' counsel and award such other relief as this Court deems appropriate.

## CERTIFICATE OF WORD COUNT

I certify that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 2,373 words, excluding the parts exempted by said Local Rule.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

I CERTIFY that I personally communicated with opposing counsel regarding the relief sought herein. Plaintiffs' counsel opposed the motion.

Dated: January 13, 2020                    Respectfully submitted,

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
             sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

**Attorneys for Defendants, Mark Inch and Florida Department of Corrections**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 13, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to the following:  Jennifer Morrissey Painter at jennifer.painter@floridalegal.org;         Shalini         Goel         Agarwal         at shalini.agarwal@splcenter.org;  Sumayya  Saleh  at  sumayya.saleh@splcenter.org; Kelly   Jean   Knapp   at   Kelly.knapp@splcenter.org;   Lisa   S.   Graybill   at lisa.graybill@splcenter.org;        Dante        Pasquale        Trevisani        at dtrevisani@floridajusticeinstitute.org;        Laura        Anne        Ferro        at lferro@floridajusticeinstitute.org;   Sam   Thypin-Bermeo   at   sthypin-bermeo@floridajusticeinstitute.org;  Andrea  Costello  at  andrea@floridalegal.org; Christopher  M.  Jones  at  Christopher@floridalegal.org;  and  Aimee  Lim  at aimee.lim@floridalegal.org.

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
             sduke@rumberger.com
and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550

13

Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

**Attorneys for Defendants, Mark Inch and Florida Department of Corrections**

14