### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

HARVARD, *et al.*,                  )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )    Case No.: 4:19-cv-00212-MW-CAS
                                    )
                                    )
MARK S. INCH, *et al.*,             )
                                    )
        Defendants.                 )
_____    )

## PLAINTIFFS' THIRD MOTION TO COMPEL DISCOVERY RESPONSES WITH INCORPORATED MEMORANDUM OF LAW

Plaintiffs, by and through their undersigned counsel, and under Federal Rule of Civil Procedure 37 and N.D. Local Rule 26.1, hereby respectfully move the Court for an Order compelling Defendant Mark Inch (Inch) and Defendant Florida Department of Corrections (FDC) (hereafter collectively, Defendants) to produce responsive information to: (1) Requests for Production (RFPs) 1 and 2 to Inch; (2) RFPs 48-51, 54, 59, and 62 to FDC; (3) RFPs 346, 353, and 355 to Inch; and (4) certain subparts of Interrogatories 4, 5, and 7 in Plaintiff Espinosa's First Set of Interrogatories to FDC.[1]   Plaintiffs also seek an Order overruling Defendants' objections to these RFPs and Interrogatories, setting a deadline for production within

---

[1] Plaintiffs' discovery requests and Defendants' responses are attached.

30 days, and awarding reasonable attorney's fees and costs because Defendants' objections and delays are not substantially justified.

Defendants continue to unjustifiably refuse to provide relevant information in discovery, or to do so timely. *See* ECF 98 and ECF 121. Defendants' discovery delays make it impossible for Plaintiffs to meet their deadline of November 6, 2020, for class certification, or any other deadline in this case. While these delays occur, Plaintiffs and the putative class continue to suffer from a substantial risk of serious harm in isolation. Defendants require Court-ordered deadlines to move this case forward in a timely manner.

In support of this motion, Plaintiffs state as follows:

## **FACTUAL BACKGROUND**

1.      Plaintiffs challenge Defendants' statewide policy and practice of isolating people, alone or with a cellmate, for an average of 22 hours or more per day in cells smaller than the average parking space. ECF 13 ¶¶ 57-59. They allege that through the use of isolation, Defendants deprive Plaintiffs and the putative class of basic human needs—normal human contact, environmental stimulation, and exercise—and subject them to oppressive security measures. ECF 13 ¶¶ 59, 83, 84. Plaintiffs contend that the cumulative effect of these conditions exposes them and the putative class to a substantial risk of serious harm in violation of the Eighth and Fourteenth Amendments. ECF 13 ¶¶ 59, 179. Plaintiffs also allege that Defendants

discriminate against people with disabilities in their use of isolation in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.  ECF 13 ¶¶ 151-159.

**Requests for Production to Inch**

2.      Plaintiffs served their First Set of RFPs to Inch on August 13, 2019. RFPs 1 and 2 are at issue in this motion.

3.      Virtually the first discovery requests propounded in this case, RFPs 1 and 2 seek the comprehensive healthcare and classification records of the named Plaintiffs.   Plaintiffs have twice identified serious deficiencies in Defendants' production of records, including entire years and categories of records missing. Declaration of Jennifer Painter (Painter Decl.) ¶¶ 4-6.

4.      Plaintiffs have proactively tried to ensure Defendants' production of the named Plaintiffs' records is complete.  *Id.* ¶ 6.  They have attempted to understand the process by which the relevant custodian retrieved and produced the records. They have even explained to Defendants their understanding of how records are maintained and where they are stored, based on their previous experiences with FDC.  ¶¶ 4, 7.  Still, as recently as July 17, 2020, Defendants were unable to confirm that production of the named Plaintiffs' records is complete.  *Id.* ¶ 10.

5.      Plaintiffs served their Fourth Set of RFPs to Inch on March 20, 2020. RFPs 346, 353, and 355 are at issue in this motion.

6.     RFP 346 seeks all lists that exist or can be generated of prisoners in isolation who are defined as "exceptional students," as referenced in Procedure 501.201, from March 1, 2019, through the present.

7.     Defendant Inch objected on the grounds that FERPA protected disclosure of educational records and, because of COVID-19, Defendant was unable to post notices about the disclosure within the facilities sufficient to satisfy the FERPA notice requirement. Defendant also objected that the request was not proportional to the needs of the case as it would require FDC to mail out almost 1,000 individualized notices to each current or former student prisoner.

8.     Plaintiffs sent Defendant five emails between May 8, 2020, and July 15, 2020, attempting to negotiate and reach a compromise on this request. *Id.* ¶¶ 14–21. Plaintiffs first asked if Defendant would produce the list of people FDC identified during initial reception as needing to be transferred to certain institutions so they could receive special education services in the future. *Id.* ¶ 14. When Defendant refused, Plaintiffs asked on June 12, 2020, if Defendant would agree to provide notice to a certain number of "exceptional students." *Id.* ¶ 18. On that same date, Plaintiffs also alerted Defendant to discovery provided in response to another RFP which contained a transfer list of "exceptional students." *Id.* ¶ 18. When Defendant failed to substantively respond, Plaintiffs asked if Defendant would produce a list of people in isolation who healthcare staff identified as "special

education potential" during the initial mental health screening.[2] *Id.* ¶ 21. Defendant agreed to provide notice to only 20 people. *Id.* ¶ 22.

9.     RFPs 353 and 355 seek a variety of documents related to a Florida State University (FSU) project entitled "The Impacts of Restrictive Housing on Inmate Behavior, Mental Health, and Recidivism, and Prison Systems and Personnel," the National Institute of Justice funding opportunity, NIJ-2016-9086, or the National Institute of Justice award, 2016-IJ-CX-0014. *Id.* ¶ 23. Defendant claimed that he had no documents responsive to this request. To challenge this claim, Plaintiffs provided several examples of emails Defendants had produced that indicated that there were in fact documents responsive to RFPs 353 and 355. *Id.* ¶ 24. During a meet-and-confer on June 30, 2020, the parties clarified that these requests pertained to what Defendants colloquially referred to as the "FSU study." *Id.* ¶ 25. Defendant agreed to renew the search based on this clarification.

10.     Defendant subsequently alerted Plaintiffs that he would produce responsive documents by July 24, 2040—a deadline he set for himself. *Id.* ¶ 26. As of the date of this filing, Defendant has yet to produce the requested discovery.

---

[2] Plaintiffs proposed the following Modified RFP 346:  Any list of all PRISONERS in ISOLATION who healthcare staff identified as "special education potential" during the initial mental health screening as referenced in Procedure 401.014 and HSB 15.01.06, from March 1, 2019, through the present.

**Requests for Production to FDC**

11.     Plaintiffs served their Third Set of RFPs to FDC on February 6, 2020.
RFPs 48-51, 54, and 62 to FDC are at issue in this motion.

12.     On April 6, 2020, Defendant FDC served responses and objections to
these RFPs. In response to RFPs 48-50, Defendant stated that there were no
documents responsive to the requests.  For RFP 51, Defendant objected that it did
not understand the request.   For RFPs 54 and 62, Defendant objected that the
requests were cumulative and not proportional to the needs of the case.  For RFP 59,
Defendant objected that the request was not relevant, overly broad, not proportional
to the needs of the case, and involved sensitive security information.

13.     Plaintiffs wrote to Defendant on May 8, 2020, explaining why Plaintiffs
believed that documents existed in response to RFPs 48-50, clarified RFP 51, and
described the relevancy and proportionality of RFP 59. *Id.* ¶ 30.  After a meet-and-
confer and after Plaintiffs showed Defendant surveys they had already produced,
Defendant agreed to search for and provide all documents responsive to RFPs 48-51
and 59 by May 29, 2020. *Id.* ¶ 32, 33.  When Defendant failed to produce documents
on the agreed upon date, Plaintiffs sent three emails in June 2020 asking for an
update on the overdue responses. *Id.* ¶¶ 34-36.  Defendant finally replied that it
would produce documents responsive to RFPs 48-51 by July 10, 2020, but as of the

time of this filing it has not. *Id.* ¶¶ 36-37.  It also has not confirmed that it completed production for RFP 59.  *Id.* ¶ 37.

14.     In RFP 54, Plaintiffs seek current population lists of people in isolation with basic demographic information.   Before this litigation, Plaintiffs repeatedly obtained the same information through public records requests, for no cost, based on information that FDC regularly maintains – sometimes within 48 hours of the request.  *Id.* ¶ 38, n. 4.  They also requested the same information in their first set of RFPs to FDC on August 13, 2019, and Defendant subsequently provided a population list dated November 8, 2019.  *Id.* ¶ 38.

15.     Defendant does not dispute the relevance of RFP 54, yet it still refuses to comply.  FDC objected on the basis that it has produced summary spreadsheets in response to other RFPs.  But these spreadsheets are not current—they span from March 2016 through December 2019.  *Id.* ¶ 39.  Plus, Defendant has failed to answer a series of questions Plaintiffs posed on June 2, 2020, to ensure that, dates aside, such spreadsheets accurately capture the substantive information sought in RFP 54. *Id.* ¶¶ 40-41.

16.     RFP 62 to FDC requests: "[a]ll 'security audit and operational review' results or findings, as referenced in EHA00001018, for ISOLATION by the Bureau of Security Operations."   Plaintiffs cited to EHA00001018, a previously produced email, to aid Defendant in its search.  *Id.* ¶ 42.  The author of that email wrote as

follows: "[T]he Bureau of Security Operations is finding the below standard non-compliant more often during our unannounced security audits and operational reviews...1.13.061-DC6-228 'Inspection of Special Housing' revealed the Chaplain was not documented as making his weekly rounds in confinement." *Id.* ¶ 42.

17.     During a meet-and-confer on May 15, 2020, Defendant agreed to reconsider its cumulative and proportionality objections, and by May 29, 2020, produce all responsive records, if any. *Id.* ¶ 43. Defendant did not produce any responsive records by this date, and, for the first time, suggested on May 22, 2020, that it objected to RFP 62 on relevance grounds. *Id.* ¶ 44. Nonetheless, Defendant agreed to provide responsive documents by June 22, 2020. *Id.* But June 22 passed without a production of documents responsive to this RFP or an explanation for the delay. *Id.* Plaintiffs notified Defendant on July 13, 2020, that they would move to compel the production of documents responsive to RFP 62 to FDC if FDC did not produce them by July 27. *Id.* ¶ 46.

18.     On July 6, 2020, Defendants, as part of negotiations about a broader request for audits (RFP 352 to Inch), provided Plaintiffs with a document titled, "Operational Review Standards." *Id.* ¶ 45. During another meet-and-confer on July 17, 2020, Defendants explained that they regularly inspect every facility with isolation to determine whether the facility complies with the Operational Review Standards. *Id.* ¶ 48. The parties agreed that all operational review standards within

8

the Component entitled, "1.13, Confinement and Close Management Areas" were relevant. *Id.* Without conceding that Defendants appropriately raised an objection to RFP 62 based on relevance, Plaintiffs agreed to review the Operational Review Standards to determine whether results for other standards were relevant to the case. *Id.* Plaintiffs have since reviewed these standards and identified ten groups highlighted in Exhibit D as relevant.

19.   On July 24, more than four months after it first objected to the request, FDC told Plaintiffs that it would not produce documents by July 27 because the FDC staff involved in the production would be unavailable until August 3, 2020. *Id.* ¶ 49. It promised a production "that week or the week thereafter, depending on how quickly we can process them through our vendor." *Id.* This deadline is the third that Defendant has set for the production of these documents. *Id.* ¶¶ 43-44, 49.

**Plaintiff Juan Espinosa's First Set of Interrogatories to FDC**

20.   Plaintiff Juan Espinosa served his First Set of Interrogatories to Defendant FDC on April 22, 2020. The interrogatories at issue here are certain subparts of 4-5, and 7.

21.   On May 26, 2020, the parties met and conferred to discuss, among other things, FDC's deadline for responding to these interrogatories. *Id.* ¶ 51. Defendant raised general burden and proportionality objections, and indicated it would provide no substantive responses to certain interrogatories. *Id.* Plaintiffs agreed to a June

9

2, 2020 extension for Defendant to make objections to the interrogatories it would not respond to. *Id.* Plaintiffs agreed to an extension until June 25, 2020, for the objections and substantive responses to the remaining interrogatories. *Id.* Plaintiffs memorialized this agreement in an email to Defendant on May 27, 2020. *Id.* Defendant never disputed the email. *Id.*

22.    Defendant failed to provide any objections by June 2, 2020. *Id.* ¶ 52. So, Plaintiffs sent three emails between June 4 and June 25, 2020, requesting the overdue responses and reminding Defendant that the remainder of the responses were due on June 25, 2020. *Id.* ¶¶ 53-55. The remainder of the responses include the subparts of interrogatories 4-5 and 7 at issue here. Defendant ignored most of these emails. *Id.* ¶¶ 52-53. Despite the June 25, 2020 deadline, Defendant did not respond to these interrogatories until July 17 (unverified), and July 20, 2020 (verified). *Id.* ¶ 58.

## MEMORANDUM

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Under the Federal Rules of Civil Procedure, a party's right to discovery is broadly construed. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978). "Discovery is not limited to issues raised by the pleadings." *Pitts v. Francis*, Case No. 5:07cv169/RS/EMT, 2008 WL 2229524, at

*2 (N.D. Fla. May 28, 2008) (citation omitted).   A party must also produce

documents they have agreed to.  *See, e.g.*, *VIPRE Sys. LLC v. NITV LLC*, Case No.

6:06-cv-1631Orl28KRS, 2007 WL 1231825, at *2 (M.D. Fla. Apr. 26, 2007).  For

these reasons, and as further explained below, the Court should compel Defendants

to produce the discovery at issue here.

> ### A. Defendant FDC's Objections to Plaintiff Espinosa's Interrogatories Should be Overruled Because they are Untimely, Boilerplate, and Meritless.

Defendant FDC waived any objections to Plaintiff Espinosa's First

Interrogatories by failing to timely respond.  Unless stipulated or ordered, a party

has 30 days to respond to interrogatories by serving answers or objections.  Fed. R.

Civ. P. 33(b)(2).  The grounds for objecting to an interrogatory must be stated with

specificity and any ground not stated in a timely objection is waived unless the court,

for good cause, excuses the failure.  Fed. R. Civ. P. 33(b)(4).  "As a general rule,

when a party fails to timely object to interrogatories, production requests, or other

discovery efforts, the objections are deemed waived." *Pitts*, 2008 WL 2229524, at

*2 (citation omitted).  Defendant has no good cause for its delay.

After serving them on April 22, 2020, Plaintiffs granted Defendant an

extension until June 25, 2020, to provide responses to certain interrogatories,

including 4, 5, and 7 at issue here.  Painter Decl. ¶ 51.  Plaintiffs repeatedly emailed

Defendants requesting production by June 25, 2020, and warned they would agree

to no further extensions. *Id.* ¶¶ 53-55. Defendant did not provide responses to 4, 5, and 7 until July 17 (unverified) and July 20, 2020 (verified). *Id.* ¶ 58.

Even assuming *arguendo* there is good cause excusing Defendant's untimely responses, Defendant's objections to certain subparts of 4, 5, and 7 as "overly broad, unduly burdensome, not relevant to any claim or defense in this case and not proportional to the needs of this case" are boilerplate. They should be overruled on this basis alone. *Harvard v. Inch*, Case No. 4:19cv212-MW/CAS, 2020 WL 701990, at *2 (N.D. Fla. Feb. 7, 2020).

What's more is that these subparts seek highly relevant information. In subparts 4g – k and 5g – k, Plaintiffs seek information about people in isolation who could not complete programming specifically tailored to transition people out of isolation. This information is relevant because Plaintiffs allege that Defendants can reduce the number of people in isolation through appropriate treatment and programming (ECF 13 ¶ 150), and people with psychiatric disabilities languish in isolation because Defendants fail to modify their isolation policies and practices to accommodate them (ECF 13 ¶¶ 153, 154). Also, in response to Plaintiff Harvard's Interrogatory No. 5 to Defendant FDC, Defendant responded that it removed certain people from these programs because their "security, mental health, medical needs, or needs related to the Americans with Disabilities Act (ADA) could not be

supported." Defendant has failed to explain why these subparts are overly broad, burdensome, and not proportional.

In subparts 7f – m, Plaintiffs seek information related to correctional staff trainings about suicide. Plaintiffs allege that the rate of suicide and risk of harm to mental health is much higher for people who are in or have been in isolation. ECF 13 ¶ 128. The information sought in subparts f – h is related to any suicide prevention training differences for staff and could show Defendant's knowledge of such risk. Responsive information to subparts i – m could show whether FDC appropriately trains staff to accommodate people with disabilities in isolation, recognize and appropriately respond to the risk of suicide, and prevent the psychological and physical health consequences of isolation. Defendant has also failed to explain why these subparts are overly broad, burdensome, and not proportional.

**B.**     **Defendants have Failed to Conduct a Sufficient Search for RFPs 1 and 2 to Inch and RFPS 48-50 to FDC and Describe Their Search Efforts if No Responsive Documents Exist.**

In response to RFPs 1-2 to Inch and RFPs 48-50 to FDC, Defendants have failed to produce responsive information or explain their attempts to search for this information. This is inadequate.

In response to an RFP, Defendants must either produce responsive records, or, if no responsive records exist, describe their efforts to locate responsive records.

*Potts v. Ford Motor Co.*, Case No. 4:04CV74-SPM/AK, 2005 WL 8163080, at *3 (N.D. Fla. May 26, 2005) (ordering the producing party either to produce the responsive documents or provide an affidavit of the person(s) who conducted the search and provide details of the search). Defendants have not followed this procedure.

For RFPs 1 and 2 to Inch, Plaintiffs have identified vast deficiencies in Defendant's production. Painter Decl. ¶¶ 4-6. Plaintiffs have pinpointed gaps in the years from which records were produced, entire categories of documents that were missing, and incomplete sets of other types of records. *Id.* Now, nearly a year after Plaintiffs propounded these requests, Defendant Inch cannot guarantee that production is complete—despite recent assurances that all records would be produced by June 25, 2020. *Id.* ¶¶ 8.

For RFPs 48-50, Defendant FDC represented that no responsive records exist, but it failed to describe its search. During a meet-and-confer, Plaintiffs pointed to questionnaires and surveys that would have been responsive to RFP 48 except they were dated one year before the timeframe specified in the requests. *Id.* ¶ 32. Defendant agreed to conduct another search for responsive documents and provide any such documents by May 29, 2020, and then July 10, 2020. *Id.* ¶ 33, 36. To date, however, Defendant has not provided any responsive documents or described its search efforts.

14

For RFPs 1 and 2 to Inch and RFPs 48-50 to Defendant FDC, Defendants must produce responsive records or provide a sufficiently detailed affidavit describing their search.

### C. Defendants are Improperly Withholding, or Unjustifiably Delaying, Responses to RFPs 51, 54, 59, and 62 to FDC and RFPs 353 and 355 to Inch.

Defendants must produce information that they agreed to, but failed to produce, in response to RFPs 51, 54, and 62 to FDC and RFPs 353 and 355 to Inch.

#### 1. Defendant FDC Must Produce Information That it Agreed to Produce in Response to RFPs 51 and 59.

On May 15, 2020, the parties met and conferred about RFP 51 and 59 to FDC. *Id.* ¶¶ 33. Following this conference, Defendant FDC stated it would provide responsive information by May 29, 2020. *Id.* ¶ 33. At the time of this filing, Defendant has produced no documents responsive to RFP 51 and has not confirmed that it has completed production for RFP 59.

#### 2. Defendant FDC Must Produce all Records Responsive to RFP 54.

Defendant FDC refuses to provide basic and relevant information responsive to RFP 54 regarding the current demographics of the putative class. Plaintiffs first requested the same information nearly one year ago, on August 13, 2019, and Defendants produced spreadsheets dated November 8, 2019. *Id.* ¶ 38. RFP 54

merely asks for updated data that is readily available, kept in the ordinary course of FDC's business, and easily produced.

Defendant FDC does not dispute the relevance of this request. Instead, it claims this request is cumulative and not proportional because it has already produced the requested information in spreadsheets dated March 2016 through December 2019. Defendant has failed to identify with the required specificity what information sought in the RFP is duplicative and therefore cumulative. *See Lesti v. Wells Fargo Bank NA*, Case No. 211cv695FTM29DNF, 2013 WL 12358008, at *5 (M.D. Fla. July 30, 2013). The mere fact that discovery requests may partially overlap or cover some of the same ground is not a basis for denying them. *See Capodanno v. Premier Transportation & Warehousing, Inc.,* Case No. 09-80534-CIV, 2010 WL 11505985, at *3 (S.D. Fla. Nov. 9, 2010). In fact, these spreadsheets are outdated. Plaintiffs' request seeks *current* demographic information, in part because it will help them choose inspection sites.

Also, Plaintiffs cannot discern whether these spreadsheets include all the information they requested and why there are significant discrepancies with the information produced through public records requests for the same time period. Painter Decl. ¶ 39. Defendant has failed to answer the questions Plaintiffs asked on June 2, 2020, to clarify this information. *Id.* ¶ 40.

This request is not unduly burdensome.  Plaintiffs repeatedly obtained the same information through public records requests, for no cost, based on information that FDC regularly maintains – sometimes within 48 hours of the request.  *Id.* ¶ 38, n. 4.  The Court should compel Defendants to respond to this request on this basis. *See Leidal v. Coinbase, Inc.*, No. 16-81992-CIV-Marra/Mathewman, 2019 WL 1585137, at *2 (S.D. Fla. April 12, 2019) (ordering production of reports that are "easily and readily available to Defendant"); *In re Blue Cross Blue Shield Antitrust Litig.*, Case No. 2:13-cv-20000-RDP, 2017 WL 10023749, at *1 (N.D. Ala. June 20, 2017) (compelling defendants to collate existing data in a particular manner to satisfy plaintiffs' discovery request).

### 3.   Defendant FDC Must Produce All Records Responsive to RFP 62.

Defendant FDC has unjustifiably delayed production for RFP 62, a request served on February 6, 2020.  This request seeks "[a]ll 'security audit and operational review' results or findings, as referenced in EHA00001018, for ISOLATION by the Bureau of Security Operations."   In its April 6, 2020 response, Defendant only objected that the request was cumulative and not proportional to the needs of the case.

Plaintiffs believe that Defendant no longer maintains its proportionality objection.  In any event, the objection is meritless.  Defendant has not identified the specific burden of producing these audits and "such boilerplate objections are

disfavored." *Harvard,* 2020 WL 701990, at *3.  And according to FDC's Deputy Secretary of Institutions, "This is all tracked and accounted for in our 'Report Writer' system." Exhibit (Ex.) E.

Defendant also waived any relevancy objections by failing to raise it in its April 6, 2020, response. *Harvard,* 2020 WL 701990, at *3 (finding untimely objections waived).

Nor could Defendant reasonably object based on relevancy. Defendant explained to Plaintiffs that it regularly inspects every facility with isolation to determine whether the facility complies with the Operational Review Standards. Painter Decl. ¶ 48.  There is no dispute that operational review standards within the Component entitled, "1.13, Confinement and Close Management Areas" are relevant, but Defendant has not produced any results for this standard. *Id.*  At a meet-and-confer on July 17, Plaintiffs, without conceding any relevancy objection, agreed to identify additional standards that are relevant to the case. *Id.*

Plaintiffs have since determined that the standards highlighted in Ex. D are so clearly relevant that Defendant should have produced all audits concerning those standards no later than June 22, 2020, their second self-imposed deadline, if not by their first deadline of May 29, 2020.  The standards fall into ten groups:

1.      Standards[3] about the restraints used in transporting people in isolation: these relate to Plaintiffs' claims about oppressive and dehumanizing security measures.  ECF 13 ¶¶ 113-114.

2.      Standards[4] about the process of inspecting isolation cells and their intercom system: these relate to Plaintiffs' claims about inoperable isolation cells and intercom systems.  ECF 13 ¶ 84-86.

3.      Standards[5] about the required knowledge, training, and performance of cell extractions: these are relevant to Plaintiffs' claims about cell extractions.  ECF 13 ¶¶ 87, 91.

4.      Standards[6] about the proper condition for toilets, sinks, ventilation grills, windows, lights, mattresses, pillows, bedding, and hygiene and comfort items: these relate to Plaintiffs' claims about the conditions of isolation cells and the availability of air, light, and various items in isolation.  ECF 13 ¶¶ 84-86, 89, 92, 120.

---

[3] 1.11.030 and 1.11.040 in "Component 1.11 Transportation of Inmates."

[4] 1.12.200 and 1.12.300 1.12.200 and 1.12.300 in "Component 1.12 Security Inspection."

[5] 1.16.220, 1.16.230, 1.16.240, and 1.16.250 in "Component: 1.16 Audit of General Preparedness Plans and Special Operation Units."

[6] 5.10.010, 5.10.040, 5.10.165, 5.10.261, 5.10.271 in "Component: 5.10 Institutional and Personal Hygiene."

5.   Standards about the processes for placing, maintaining, and releasing people in close management,[7] maximum management,[8] administrative confinement,[9] disciplinary confinement[10] and isolation generally:[11] These relate to Plaintiffs' claims above those types of isolation.   ECF 13 ¶¶ 75, 77, 81, 82, 133, 140, 144, 149, 152, 153, 159.

6.   Standards[12] about the availability and process of Defendants' grievance system: these relate to Plaintiffs' claims about Defendants' knowledge of Plaintiffs' disabilities and Plaintiffs' ability to seek accommodations for those disabilities.   ECF 13 ¶ 131, 135.

7.   Standards[13] about the requirements to allow people in administrative confinement, close management, disciplinary confinement, maximum management, and mental health units to access the law- and non-law

---

[7] 7.02.400, 7.02.500, 7.02.570.

[8] 7.02.700, 7.02.710, 7.02.730, and 7.02.740.

[9] 7.08.820.

[10] 7.02.870, and 7.02.880.

[11] 7.02.380, 7.02.390, 7.02.510, 7.02.606, and 7.02.800.

[12] 11.01.030, 11.01.040, 11.01.050, and 11.01.190 in "Component: 11.01 Inmate Grievance Procedure."

[13] 12.12.351, 12.12.352, 12.12.355, 12.12.381, 12.12.382, 12.12.383, 12.12.384, and 12.12.387 in "Component: 12.12 Libraries."

library: these relate to Plaintiffs' claims about access to reading materials in isolation.  ECF 13 ¶ 103.

8.    Standards[14] about personal worship in isolation cells: these relate to Plaintiffs' claim that this is the only type of worship permitted in isolation.  ECF 13 ¶ 104.

9.    Standards[15] about the educational resources, programming, and testing available to people in isolation: these relate to Plaintiffs' claim that FDC prohibits people in isolation from meaningfully participating in their education.  ECF 13 ¶ 105.

10.    "Component: 13.01 Americans with Disabilities Act-ADA": On its face, this relates to Plaintiffs' claim that Defendants' treatment of people in isolation violates the Americans with Disabilities Act.  ECF 13 ¶ 186.

Because these standards are so clearly relevant and Defendant failed to raise a relevance objection in its April 6, 2020 response to RFP 62 to FDC, Defendant must produce the findings or results of all security audits and operational reviews performed to determine whether facilities with isolation complied with the standards

---

[14] 12.14.040 in "Component: 12.14 Chaplaincy Services."

[15] 12.22.020 in "Component: 12.22 Educational Assessment"; 12.25.030 in "Component: 12.25 Special Education"; 12.27.010, 12.27.020, 12.27.030, 12.27.040, 12.27.050, 12.27.060, and 12.27.070 in "Component: 12.27 Close Management Academic Education and Prosocial Programming."

summarized above. These results should also include the results of staff surveys conducted during operational reviews, as they also contain relevant information. *See, e.g.,* Ex. F (Wakulla Staff Opinion Survey Results, EHA00430008-EHA00430032, raising issues like understaffing, inadequate officer training, progressive discipline, and a treatment program for people in isolation called the "Residential Continuum of Care").

### 4. Defendant Inch Must Produce all Records Responsive to RFPs 353 and 355.

Defendant also failed to meet his deadline for RFPs 353 and 355 to Inch. Defendant Inch did not object to these requests based on relevance, burden, or otherwise. He merely stated that no responsive documents existed. Though Defendant's initial failure to identify and produce documents responsive to these requests *could* be chalked up to lack of clarity regarding terminology, there is no justification for the continued delay.

In 2016, Florida State University received a $730,615 grant to study "The Impacts of Restrictive Housing on Inmate Behavior, Mental Health and Recidivism, and Prison Systems and Personnel." Painter Decl. ¶ 23. It selected FDC as the case study. *Id.* In response to other requests, Defendants produced a variety of information about this project and related FDC meetings.

To discover additional information about this project, Plaintiffs served RFPs 353 and 355, referring to the project by three different names. Despite Defendant's

possession of responsive records and Plaintiffs' precise description of the project, Defendant claimed to have no responsive information. Plaintiffs raised these issues and Defendant agreed to re-conduct his search with an eye toward documents related to the "FSU study." *Id.* ¶ 25. Defendant also agreed to produce responsive documents by July 24, 2020. *Id.* ¶ 26. After 4 p.m. on July 24, 2020, Defendant simply alerted Plaintiffs that he needed "a couple more weeks" to complete the search for responsive documents, with no indication of when Plaintiffs could expect production. *Id.* A court-ordered deadline for production of all documents responsive to RFPs 353 and 355 is necessary.

### C. Defendant Inch's Objections to RFP 346 are Meritless Because Plaintiffs Do Not Seek "Education Records" Under FERPA.

Defendant Inch is impermissibly obstructing Plaintiffs' access to relevant information about particularly vulnerable putative class members (teenagers and young adults with disabilities) in isolation. Defendant does not object based on relevancy. But he argues that the Federal Education Rights and Privacy Act (FERPA), 20 U.S.C. § 1232(g), applies, and the burden of providing the individualized notice required under this statute is too great. Defendant's objections fail because FERPA does not apply to these records.

FERPA protects the privacy interests of students and requires education agencies and institutions to provide certain types of notice before releasing "education records" or "directory information." It defines "education records" as:

(1) directly related to a student; and (2) maintained by an educational agency or institution or by a party acting for the agency or institution. 34 C.F.R. § 99.3. An education agency or institution may disclose "education records" to comply with a court order "if the agency or institution makes a reasonable effort to notify the parent or eligible student of the order ... in advance of compliance." 34 C.F.R. § 99.31(a)(9). District courts around the country have regularly held that agencies need not provide personal notice to make "a reasonable effort to notify the parent or eligible student." *See, e.g., Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, No. 2:11-CV-03471-KJM-AC, 2015 WL 10939711, at *4 (E.D. Cal. July 2, 2015) ("The court finds that the educational records at issue here may be disclosed without running afoul of FERPA as long as parents or students are notified of the disclosure by publication and a protective order restricts the use of the information to this litigation only."); *Doe v. Ohio*, No. 2:91-CV-0464, 2013 WL 2145594, at *9 (S.D. Ohio May 15, 2013) ("[T]he Court finds that it would not be reasonable to require direct personal notice."); *Rios v. Read*, 73 F.R.D. 589, 600 (E.D.N.Y. 1977) ("In this case, involving several hundred students, appropriate notice could be effected either by publication or by mail.").

"Directory information" includes, in relevant part, the student's name; address; photograph; date and place of birth; major field of study; grade level; enrollment status (e.g., undergraduate or graduate, full-time or part-time); and the

24

most recent educational agency or institution attended.  *See* 34 C.F.R. § 99.3.  An

educational agency or institution may disclose directory information if it provides

public notice to eligible students of: (1) the types of personally identifiable

information that the agency or institution has designated as directory information;

(2) an eligible student's right to refuse to let the agency or institution designate any

or all of those types of information about the student as directory information; and

(3) the period of time within which an eligible student has to notify the agency or

institution in writing that he or she does not want any or all of those types of

information about the student designated as directory information.  34 C.F.R. §

99.37.

Plaintiffs seek prison transfer lists of potential "exceptional students," not

"education records" or "directory information" under FERPA.  Painter Decl. ¶ 14.

FDC Procedure 501.201(9) defines "exceptional student" as a person under twenty-

two years of age who: (1) has a previous special education history; (2) has yet to

obtain his or her standard high school diploma; (3) needs special education and

related services to benefit from participation in an educational assignment; and (4)

consents to receive special education services.  An FDC Placement and Transition

Specialist (PTS) identifies people under the age of 22 during the reception and

orientation process who may qualify as "exceptional students" and need to be

transferred to a prison where they can receive special education services in the

future. *Id.* FERPA does not apply to a list of young people who need to be transferred to certain prisons because they are eligible for special education services but may not in fact end up receiving those services.

In the alternative, Plaintiffs seek lists of people who healthcare staff identified as "special education potential" during initial mental health screenings. Painter Decl. ¶ 21. Under FDC procedures, healthcare staff enter information into a correctional software system to refer people who appear to qualify for special education during the initial mental health screening to their classification officer. *Id.* The classification officer, who is not an education professional, then uses this information to make prison placement decisions. FERPA also does not apply to this list of people who are only "potential" students.

Even if FERPA applies, these lists are only "directory information" because they include, at most, the names, dates of birth, grade levels, enrollment status and the most recent educational agency or institution attended.[16] *See* 34 C.F.R. § 99.3. Defendant argues that providing the public notice required for directory information—to less than 1,000 people—is overly burdensome and not proportional to the needs of the case. This explanation is inadequate because "[t]o show that the

---

[16] Defendant already produced some of the transfer lists in discovery, which Plaintiffs notified him of on June 12, 2020. Painter Decl. ¶ 18. As of the date of this filing, Defendant is still determining whether to claw back these documents. *Id.* ¶ 22.

requested discovery is objectionable, the burden is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable," and "[f]ailure to satisfy this burden will result in entry of an order compelling discovery under Rule 37." *Young v. Hancock*, Case No. 17-21473-CIV, 2017 WL 3113417, at *2 (S.D. Fla. Apr. 24, 2017).[17]   But Defendant has failed to articulate in detail the burden or costs associated with accomplishing public notice, even during a COVID-19 pandemic.   Defendant could easily place a form letter under cell doors or through institutional mail to people currently in FDC and through U.S. mail to the last known address of people who are no longer in FDC.

## CONCLUSION

For the reasons described above, the Court should reject Defendants' attempt to obstruct Plaintiffs' access to relevant and discoverable information, overrule Defendants' meritless objections, compel Defendants to produce the requested documents, and set a deadlines for production and responses within 30 days.   The Court should also award attorney's fees and costs in relation to this motion because

---

[17] Even if Defendants had articulated the burden with the required specificity, the objection would fail. *See Rios*, 73 F.R.D. at 602 (rejecting a claim that it would be unreasonably burdensome to produce educational records pursuant to a court order because (1) "[n]otice in this case can be effected by publication or other reasonable method chosen by the school district," (2) "there is a substantial public interest in enforcing these [civil] rights," and "the administrative burden on the defendants is not so great as to justify denying the plaintiffs relevant information").

Defendants' discovery objections and delay are not substantially justified. *See* Fed.

R. Civ. P. 37(a); *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir.

1993).

Date: August 3, 2020                        Respectfully Submitted,

                                            s/ Jennifer M. Painter
                                            Jennifer M. Painter
                                            Fla. Bar No. 110966
                                            Florida Legal Services
                                            122 E. Colonial Drive, Suite 100
                                            Orlando, FL 32801
                                            Telephone: (407) 801-0332 (direct)
                                            Jennifer.Painter@floridalegal.org

                                            Kelly Knapp
                                            Fla. Bar No. 1011018
                                            Shalini Goel Agarwal
                                            Fla. Bar No. 90843
                                            Sumayya Saleh
                                            Fla. Bar No. 119372
                                            Southern Poverty Law Center
                                            106 East College Ave., #1010
                                            Tallahassee, FL 32302
                                            Telephone: (850) 521-3024
                                            sumayya.saleh@splcenter.org
                                            shalini.agarwal@splcenter.org
                                            kelly.knapp@splcenter.org

                                            Andrea Costello
                                            Fla. Bar No. 532991
                                            Christopher M. Jones
                                            Fla. Bar No. 994642
                                            Aimee Lim
                                            Fla. Bar. No. 116209
                                            Florida Legal Services

122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
aimee@floridalegal.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Marcel A. Lilavois Jr.
Fla. Bar No. 1016175
Florida Justice Institute, Inc.
100 SE 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-
bermeo@floridajusticeinstitute.org
mlilavois@floridajusticeinstitute.org

**Attorneys for Plaintiffs**

## Local Rule 7.1(B) Certificate

Under N.D. Local Rules 7.1(B) and (C), the undersigned counsel hereby certifies that Plaintiffs' counsel has conferred with Defendants' counsel about the relief sought in this motion.  Defendants object to the relief requested.

s/ Jennifer M. Painter
Jennifer M. Painter


## Local Rule 7.1(F) Certificate

Under N.D. Local Rule 7.1(F), the undersigned counsel hereby certifies that this motion contains 6,068 words.

s/ Jennifer M. Painter
Jennifer M. Painter

To reduce, cover or mark through any previous shipping information.

ORIGIN ID:TLHA  (904) 415-6798
PAINTER JENNIFER MORRISSEY

2305 NOTLEY CT

TALLAHASSEE, FL 32309
UNITED STATES US

SHIP DATE: 03AUG20
ACTWGT: 1.45 LB
CAD: 6992689/SSF02110

BILL CREDIT CARD

TO **CLERK OF COURT**
**UNITED STATES COURTHOUSE**
**111 N ADAMS STE 322**

**TALLAHASSEE FL 32301**
(850) 521-3601               REF:
INV:
PO:                          DEPT:



**FedEx**
Express

**E**

TRK# **3954 4367 5463**
0201

**36 TLHA**

TUE – 04 AUG 3:00P
**STANDARD OVERNIGHT**
                         DSR
                      32301
      FL-US   **TLH**



usable