UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HARVARD, et al.,

      Plaintiffs,

vs.                              CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

      Defendants.

_____/

**DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO
PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND MOTION TO
<u>STRIKE FOR FAILURE TO COMPLY WITH LOCAL RULES</u>**

Defendants, Mark Inch, in his official capacity as Secretary of the Florida

Department of Corrections, and the Florida Department of Corrections ("FDC" or

"the Department") (collectively "Defendants"), by and through undersigned

counsel, and pursuant to N.D. Fla. Loc. R. 7.1, hereby file this opposed Motion for

Extension of Time to Respond to Plaintiffs' Motion for Protective Order

("Motion," D.E. 183), and this Court's Order requiring an expedited response from

Defendants (D.E. 184). Defendants also file a Motion to Strike Plaintiffs' Motion

for Plaintiffs' failure to comply with this Court's Local Rules. In support of their Request and Motion, Defendants state:

## I.     This Court Should Grant Defendants an Extension

The Court should grant Defendants' Motion for, inter alia, three reasons. First, Plaintiffs sat on their rights and did not raise these claims for months following the alleged retaliatory conduct. As such, any claim that Plaintiffs may have that their Motion requires expedited consideration is belied by their conduct. Second, the voluminous nature of Plaintiffs' Motion will require multiple days' worth of work by Defendants in terms of preservation and review in order to adequately respond. Respectfully, Defendants cannot reasonably meet the Court's imposed deadline—an expedited deadline Plaintiffs admittedly did not request—and still provide an adequate response that will serve the ends of justice. Third, Plaintiffs did not comply with the Local Rules of this Court. Specifically, after weeks of back and forth communication regarding vague and generalized claims of retaliation, Plaintiffs still refused to provide Defendants with any specific factual bases to support their claims. Then, in a shortened holiday week when Defendants are understaffed and their resources stretched thin, Plaintiffs sprung an omnibus, overly broad Motion on Defendants containing claims Defendants were heretofore unaware of. As such, Defendants argue Plaintiffs failed to comply with the meaning and spirit of this Court's Local Rules, viz, Rule 7.1(B), and the Court

2

should strike Plaintiffs' Motion. Accordingly, Defendants move the Court for an extension to respond to Plaintiffs' Motion until Monday, December 14, 2020, and, in the alternative, that the Court strike Plaintiffs' Motion for failure to comply with the Local Rules. Defendants elaborate on the above points in greater detail below.

## II.   Plaintiffs Were Aware of the Alleged Retaliatory Conduct and Did Nothing for Months; Plaintiffs Have Forfeited Any Right for an Expedited Response

Plaintiffs' Motion claims that they "cannot afford to wait months, or even weeks, for Defendants to investigate every allegation of retaliation." (D.E. 183 at 14–15). However, a closer look at Plaintiffs' Motion reveals that they sat on their rights for months, before springing this Motion on Defendants and the Court during a shortened, holiday week wherein the Department's already limited resources will be strained even further. Plaintiffs' Motion makes allegations regarding inspections that occurred at:

(1) Florida State Prison ("FSP") largely on **September 15 through 19**;

(2) Santa Rosa Correctional Institution and Annex ("Santa Rosa") mostly on **October 13 through 17**; and,

 (3) Lowell Correctional Institution Annex ("Lowell"), for actions occurring largely on **November 17 through 18**.

Importantly, Plaintiffs did not raise any of their FSP concerns before the Santa Rosa inspection and participated in it without asking for relief from the

Court. Assuming Plaintiffs were aware of this alleged conduct prior to the Santa Rosa inspection, Plaintiffs had a duty to raise these concerns to Defendants. Plaintiffs admit that they waited until November 12 to describe to Defendants in "broad" terms their concerns.  (D.E. 183 at 9:¶ 24). This was more than two months after the FSP visit and nearly a month after the Santa Rosa visit.[1]

Similarly, Plaintiffs did not raise any of their concerns regarding Santa Rosa—aside from vague allegations and generalities that Plaintiffs refused to clarify or elaborate upon, despite Defendants' repeated requests—before the Lowell inspection and still participated in it without asking for relief from the Court. Once again, Plaintiffs were apparently aware of these improprieties for weeks and yet refused to provide Defendants with specifics and waited nearly a month to obtain declarations from inmates allegedly being retaliated against.[2] As

---

[1] The most the undersigned is aware of in terms of a contemporaneous issue Plaintiffs' counsel raised was the inmates' restraints at Santa Rosa. Specifically, on the evening following the first day of inmate interviews at Santa Rosa, counsel for Defendants received an email from Plaintiffs' team, expressing concern regarding the length of time that inmates had been restrained while waiting to be interviewed. Counsel for the parties discussed the issue the next morning, and the next day of inmate interviews proceeded without issue. Accordingly, Defendants understood the issue to have been resolved. Plaintiffs' Motion disabused Defendants of that notion for the first time, much like many of the claims in Plaintiffs' Motion that had never before been brought to Defendants' attention.

[2] (D.E. 183-6, 183-8–183-12, 183-15, 183-20, Williams, Lowery, Simmons, Lee, Gresham, Cruz, Gilday Decls.).

for the Lowell inspection, Plaintiffs apparently became aware of the alleged misconduct during the inspection itself and yet did not inform Defendants' counsel, despite the fact defense counsel was physically present during this inspection.[3]

The fact is, Plaintiffs knew about the conduct apparently happening at FSP for months and did nothing; they knew about the conduct apparently happening at Santa Rosa for weeks and did nothing; and given they obtained declarations from inmates at Lowell while the inspection was happening and while defense counsel was present, Plaintiffs could have shown Defendants what it was they were referring to. Once again, Plaintiffs did nothing. As such, Plaintiffs cannot reasonably argues this alleged retaliation constitutes an emergency that cannot wait weeks or months to be investigated when Plaintiffs themselves presumably knew of what was occurring at FSP for months, at Santa Rosa for weeks, and at Lowell while counsel for Defendants was physically present.

Plaintiffs, to their credit, have not labeled their Motion an emergency. However, the Court has apparently treated it as such given the expedited deadline set. Defendants respectfully argue that Plaintiffs, having refused to cooperate with Defendants in good faith and having remained silent regarding any specifics as to

---

[3] (D.E. 183-16–18, Lethco, McDaniel, Littles Decls.).

the alleged retaliation, should be found to have forfeited any right for an expedited resolution to their Motion.

Plaintiffs' counsel bears responsibility for an unreasonable delay in bringing these issues to the attention of defense counsel. For example, of the items complained of by Affiant Saleh, Affiant Grantley, Affiant Milo, and Affiant Broadnax about events on September 15 until about September 19, many are easily confirmed or denied by review of video evidence. Plaintiffs' counsel knows full well that Defendants' retention time on video surveillance is 30 days. Yet, Plaintiffs' counsel waited until after the video retention time passed to raise these specific issues. This prejudices Defendants' ability to respond in a timely fashion, let alone an expedited one.

Further, this unreasonable delay also bears on the nature of the relief requested and the timing imposed by the Court for response, i.e., if these serious violations occurred in mid-September, why were Plaintiffs' declarations and specific allegations made almost seventy days later? The undersigned avers there are only two possibilities. Either, first, Plaintiffs' counsel sat on these serious allegations from FSP for two months, denying Defendants the chance to conduct meaningful investigation and take corrective action before two more inspections occurred. Or, second, Plaintiffs' counsel waited and then circled back to these inmates some fifty days after the FSP inspection to raise the issues. Either way,

there is no emergent issue and Plaintiffs should not gain the advantage of two months of preparation and evidence-gathering compared to Defendants, who have been back-footed and now face responding to an omnibus Motion on an expedited timeline during a holiday week.

While the vast majority of Plaintiffs' Motion is information Defendants have patiently and repeatedly asked Plaintiffs for since Plaintiffs raised the spectre of retaliation, almost none of the content conveyed in Plaintiffs' Motion was brought to Defendants' notice until the filing of Plaintiffs' overly broad omnibus Motion. Similar to Plaintiffs' frustratingly vague emails that nullified any ability of the Department to adequately investigate these claims, Plaintiffs' Motion is long on claims and light on facts. Defendants contend that Plaintiffs' actions are patently unfair given the manner in which they prejudice any capacity Defendants have to reasonably investigate and respond to their lengthy accusations, let alone in such a shortened fashion.

As such, Defendants request a modest extension of time to respond to Plaintiffs' claims, as the resources and manpower necessary to investigate the breadth of Plaintiffs' Motion respectfully cannot possibly be accomplished within the expedited window imposed by the Court's Order. Defendants attempted to meet and confer on November 24, 2020, with Plaintiffs regarding Defendants' efforts in seeking a 20-day extension to respond, but were rebuffed and Plaintiffs

instead only offered an extension until December 2, 2020, two days beyond the Court's Order. This is, unfortunately, insufficient for Defendants to adequately respond to Plaintiffs' Motion. Accordingly, Defendants request the Court allow Defendants the time necessary to respond to each and every allegation in Plaintiffs' Motion and extend Defendants' deadline to respond 20 days until Monday, December 14, 2020. Doing so will not prejudice the parties' interests and will better serve the interests of justice.

### III.   Plaintiffs' Motion Does Not Necessitate Expedited Consideration by the Court and Plaintiffs Did Not Request Expedited Consideration

Plaintiffs know how to file an emergency motion and request expedited relief from this Court. Yet, Plaintiffs did not label their Motion as such despite ostensibly requesting as much in their Motion. Plaintiffs' seeming request is belied by their conduct leading up to their filing of the Motion, however. As argued above, having waited for months to bring these claims, Plaintiffs have forfeited any claim they have for an expedited resolution. As also noted above, Plaintiffs are well aware of the Department's preservation policies and capabilities. Plaintiffs are, moreover, well aware of the stipulations between the parties regarding preserving evidence. Nevertheless, Plaintiffs did not ask that Defendants preserve any evidence from FSP until over a month after the inspection. As such, Defendants face being potentially incapable of sufficiently rebutting Plaintiffs'

allegations because recovering and producing any evidence that may remain from the period contemplated in Plaintiffs' Motion will take time and resources that will extend beyond the Court's expedited response window.

Had Plaintiffs notified Defendants earlier of their concern, viz, in the aftermath of the inspections back in September and October, Defendants could have diligently been preserving evidence in anticipation of a motion such as the one sub judice. As it is, Defendants have fortunately preserved video evidence from Santa Rosa and are still within the retention period for Lowell. However, any evidence from FSP has not been preserved—based on the parties' stipulation and in the absence of any request for preservation by Plaintiffs—and recovering this evidence will take time and resources. This effort will take longer than the Court has given Defendants to respond to Plaintiffs' Motion. Moreover, the evidence that is preserved from Santa Rosa and Lowell still needs to be organized, reviewed, and appropriately analyzed in order to rebut Plaintiffs' allegations. For example, the video Defendants have preserved from Santa Rosa totals over seventy hours. Again, this will stretch Defendants' available time and resources, which are already limited due to the ongoing pandemic and even more limited during the holiday period in which the Court has demanded Defendants respond within.

**IV.    Plaintiffs' Motion Is Voluminous and Cannot Be Adequately Responded to in an Expedited Manner**

Put simply, Defendants do not have the resources or manpower to perform the voluminous task of preservation contemplated by Plaintiffs' Motion, review said evidence, compare it to the allegations in Plaintiffs' Motion, organize rebuttal declarations/affidavits and arguments refuting Plaintiffs' allegations, and then adequately fashion all this into a coherent Response in one week—during a holiday—in order to comply with the Court's Order. As noted above, Plaintiffs waited weeks—and in some cases months—to file any motion with this Court regarding some of the alleged retaliatory behavior being committed against putative class members. When Plaintiffs finally decided to file their Motion, they waited until late on a Monday of an already shortened week, aware that Thanksgiving is this week, that this is both a Florida and federal holiday, and well aware that the complications of this holiday mean Defendants will be left shorthanded and understaffed. Plaintiffs' action in this regards are tantamount to acting with unclean hands, i.e., Plaintiffs cannot complain that they cannot afford to wait weeks or months for Defendants to investigate every alleged act of retaliation while at the same time Plaintiffs themselves waited weeks and months to raise these extensive issues of alleged retaliation. It is unfair to expect

Defendants to be able to address them, in a manner suiting the interests of justice, in a shortened timetable.

Plaintiffs' actions patently prejudice and thus put Defendants in an impossible position. Defendants must either comply with the Court's expedited timetable, turn in a sloppy Response that fails to adequately address and/or rebut Plaintiffs' allegations and concerns, risk waiving potential arguments and objections, risk overlooking potential key witnesses and individuals Defendants would like to testify at the evidentiary hearing, and eventually likely face further sanctions by the Court for not fully addressing Plaintiffs' Motion when some of the above almost certainly occurs and comes to light. On the other hand, should Defendants take the time necessary to fully and adequately investigate and respond to Plaintiffs' Motion, they risk violating this Court's Order by not responding in time, waiving all objections and arguments for failing to file a Response, and would still likely face further sanctions by the Court for not addressing Plaintiffs' Motion and complying with the Court's Order. Defendants thus find themselves between the proverbial rock and a hard place, *see Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1307 & n.7 (11th Cir. 2009), and ask for mercy from the Court.

While Defendants recognize that the allegations in Plaintiffs' Motion are serious, Defendants must ask why—if they are so serious—did Plaintiffs wait so

11

long to seek relief from the Court? The answer is, as stated above, that Plaintiffs' Motion does not constitute a true emergency and, thus, should not be treated as one. Plaintiffs know the breadth of their accusations and the large swath of evidence Defendants will have to preserve, organize, and review in order to sufficiently respond to their Motion. Plaintiffs are aware Defendant will require more time than the expedited window the Court has ordered. Yet Plaintiffs refuse to cooperate in good faith and agree to an extension. Defendants argue that when these competing interests, i.e., sufficiency of response versus an expedited response, are weighed against each other, the interests of justice tip towards allowing Defendants time to adequately respond to Plaintiffs' allegations in order to enable the Court adjudicate matters more satisfactorily. *See Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*, 727 F.3d 1349, 1356 (11th Cir. 2013) ("Put another way, [h]aste makes waste, and the premature adjudication of legal questions compels courts to resolve matters . . . *that may with time be satisfactorily resolved* . . . ." (alteration in original) (emphasis added) (internal quotations and citation omitted)).

The fact is, investigating Plaintiffs' allegations across three institutions will take time. Further, given the vagaries in Plaintiffs' Motion, Defendants have to determine which specific officers and FDC employees were present for the alleged

conduct.[4] Defendants also have to determine which FDC inmates are allegedly being retaliated against, aside from those named in Plaintiffs' Motion. Defendants further note that because Plaintiffs' Motion seeks a class-wide protective order, this requires Defendants to investigate every single institution within its purview in an attempt to ferret out acts of retaliation that may have been committed against potential putative class members. Plaintiffs also fail to identify whether the individuals who have alleged suffered retaliation have engaged in the grievance process FDC has in place to protect inmates who are being retaliated against. This adds an additional item to Defendants' already stacked plate.

Moreover, preserving and organizing all the video and audio evidence encompassed within Plaintiffs' Motion from these institutions will take multiple days; reviewing this evidence in order to address and/or rebut Plaintiffs' allegations will also take multiple days. Performing these acts of preservation and review in one week—a shortened week with a holiday where Defendants will be short staffed—exceeds the scope of Defendants' ability and resources. Defendants, in complying with the Court's Order, thus risk having to respond to Plaintiffs'

---

[4] Defendants also contend that, given the generalized breadth and vagueness of Plaintiffs' Motion, this Court could either deny the Motion or require Plaintiffs to file a more definite statement. *See In re Enron Corp.*, No. MDL 1446, 2002 WL 32116900, at *1 (S.D. Tex. Mar. 28, 2002) (denying motion for protective order "because the categories asserted . . . [were] so broad and the definitions . . . so vague or undefined that they would [have] result[ed] in a blanket protective order").

13

Motion in an incomplete fashion, waiving potential objections and arguments against Plaintiffs' allegations, and potentially failing to identify pertinent individuals Defendants may wish to testify during the Court's evidentiary hearing on Plaintiffs' Motion. All of the above is known by Plaintiffs, and yet—as noted above—Plaintiffs waited months to bring these alleged improprieties before the Court.

Further, Plaintiffs reference several named FDC employees that Defendants will need time to question and review their conduct. Plaintiffs also refer to numerous unnamed FDC officers and employees. Defendants will respectfully need more time than given by the Court to identify these unnamed FDC employees, review their conduct, match the allegations of these employees to any preserved evidence and, if necessary, prepare affidavits and declarations of these employees in order to address and/or rebut Plaintiffs' Motion. The same holds true for members of Defendants' legal team who were present during the aforementioned inspections, who will also need to prepare declarations addressing and/or rebutting Plaintiffs' allegations.

## V.   Defendants Ask the Court for a Reasonable Deadline in Order to Adequately Respond

The Court has, during the course of this case, advised Defendants that in circumstances where they feel unable to appropriately comply with certain

14

deadlines, "[i]f Defendants had sought a reasonable deadline from this Court, this Court likely would have granted such a request." (D.E. 158 at 4 n.3). Defendants have, regrettably, not asked the Court for assistance in the past when they have been unable to meet certain deadlines; Defendants do not intend to repeat this mistake and thus respectfully ask the Court for an extension to respond to Plaintiffs' Motion. Granting this brief extension will not prejudice the parties nor delay the interests of justice. Rather, granting this extension will allow Defendants to more adequately respond to Plaintiffs' Motion, provide a clearer picture regarding Defendants' position towards the allegations in Plaintiffs' Motion, and not "waste[] the parties' [and Court's] time and judicial resources." (D.E. 158 at 3 n.3). Accordingly, Defendants ask that the Court grant an extension for Defendants' Response to Plaintiff's Motion for Protective Order and set a new response deadline for Monday, December 14, 2020.

## VI.    Plaintiffs Failed to Comply with This Court's Local Rules

Additionally, and in the alternative, Defendants argue Plaintiffs failed to comply with the Local Rules of this Court and, as such, their entire Motion should be struck. Rule 7.1(B) of this Court requires that before filing a motion, the moving attorney "must attempt in good faith to resolve the issue through a meaningful conference with an attorney for the adverse party. The adverse party's attorney must participate in the conference in good faith." The Local Rules of this Court

further state that the good faith conference "may be conducted in person, by telephone, in writing, or electronically, but an oral conference is encouraged. An email or other writing sent at or near the time of filing the motion is not a meaningful conference." N.D. Fla. L.R. 7.1(B). Defendants argue Plaintiffs failed to comply with this requirement, despite their certificate of compliance.

As Plaintiffs' Motion concedes, their requests for preservation prior to the filing of their Motion were by way of email. Specifically, Plaintiffs and Defendants were engaged in electronic conversation—beginning on October 30, 2020— regarding preserving potential evidence and responding to Plaintiffs' vague allegations of retaliation. (D.E. 183 at 9–11). It was not until November 12, 2020—the day before the parties had a scheduled telephone conference on an entirely unrelated discovery matter—that Plaintiffs' counsel requested to meet and confer regarding issues of alleged retaliation. (D.E. 183, Knapp Decl., at ¶ 6). What Plaintiffs' Motion fails to mention is that the reason defense counsel's team was unavailable on November 13, 2020, is that the day before, the Court had ordered Defendants to file their response to Plaintiffs' Emergency Motion regarding Rule 34 inspections by close of business on November 13, 2020. (D.E. 176, 177). Accordingly, only one attorney from Defendants' team participated in the meet and confer to discuss the discrete discovery matter that was previously agreed would be the topic discussed during the call.

16

Defense counsel, during the above-call, declined to discuss the retaliatory issues because Plaintiffs had not—and, until the filing of their Motion, still had not—disclosed specifics regarding the alleged retaliatory conduct. Having been unsuccessful in scheduling a last-minute meet and confer on the retaliation issues, Plaintiffs instead, on November 13, 2020, emailed Defendants a draft stipulation, which purported to award vast relief to Plaintiffs, but yet again provided no specific information regarding their claims. (D.E. 183, Knapp Decl., at ¶ 7). As before, Defendants declined to acquiesce to such relief given the absolute lack of specifics to Plaintiffs' claims.

As Plaintiffs' Motion admits, Defendants continually asked Plaintiffs for more information about these alleged acts of retaliation and were rebuffed each time, (D.E. 183, Knapp Decl.); Plaintiffs instead only offered up "general examples of retaliatory conduct." (*Id.* at ¶ 12). During the one brief telephonic conference on November 16, 2020, the conversation centered around Plaintiffs' draft stipulation and production of the Santa Rosa video. (*Id.* at ¶ 8). Defendants were unable to reasonably or sufficiently discuss the retaliation issue given the lack of specificity in Plaintiffs' allegations—and similarly refused to acquiesce to any of Plaintiffs' proposed stipulations regarding claims that FDC staff were and are retaliating against inmates because of their participation in this lawsuit for much the same reasons, i.e., because Defendants cannot respond to vague accusations of

17

retaliation. Again, on November 20, 2020, Defendants requested that Plaintiffs provide specific details "which the Department can investigate and address on a case by case basis." (*Id.* at ¶ 9). No information was forthcoming.

Nonetheless, without providing these requested details and thus without allowing Defendants a chance to respond to these allegations, Plaintiffs filed their Motion this week. Thus, Plaintiffs purposefully withheld the factual bases of their retaliation allegations, and chose to unleash them upon Defendants at the same time they submitted their voluminous filing to the Court. Defendants contend this violates Rule 7.1(B) of this Court. *See Blue v. Equifax Info. Servs., LLC*, No. 3:14cv49/RS/EMT, 2014 WL 12324281, at *1 (N.D. Fla. Oct. 30, 2014) (finding email correspondence not "within the meaning and spirit of Rule 7.1(B)" when there was nothing indicating the parties spoke on the matter and thus denying a motion to compel filed before non-moving party could respond); *see also White v. Hall*, No. 3:07cv461/LAC/MD, 2009 WL 485475, at *1 (N.D. Fla. Feb. 25, 2009) ("[T]he court notes that plaintiff's ongoing discussions with the defendants about discovery matters does not meet the requirement of 'conferring' within the spirit of Local Rule 7.1(B)."). Plaintiffs cannot argue that they sufficiently conferred with Defendants in good faith within the meaning and spirit of the rules regarding any alleged retaliatory behavior while at the same time refusing to provide any specific factual bases for their claims. Defendants have multiple institutions within their

purview, employ and supervise thousands of employees, and house thousands more inmates. It is not feasible for the Department to investigate vague and generalized allegations of retaliation—even when narrowed to three institutions— without more details. FSP and Santa Rosa are two of the Department's largest institutions. Lowell is the primary institution for female inmates within the Department's purview. The act of preservation alone requested by Plaintiffs will require many hours of effort, encompassing hundreds of hours of video evidence. Just as Defendants cannot be expected to self-investigate non-specific and generalized claims of retaliation, Plaintiffs should not be allowed to claim they conferred with Defendants in good faith as to their Motion. Because Plaintiffs cannot certify they complied in good faith regarding their Motion's allegations when they failed to give Defendants a chance to investigate, let alone respond to Plaintiffs' demands, Defendants request this Court strike Plaintiffs' Motion due to their failure to comply with N.D. Fla. L.R. 7.1(B).

## VII.   Memorandum of Law

Federal Rule of Civil Procedure 6(b)(1)(A) grants a court discretion, for good cause, to extend the time for Defendants to comply with the Court's Order. "Good cause" is a non-rigorous standard that has been construed broadly across procedural and statutory contexts." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010). Requests for extensions of time that are determined

under the good cause standard should "normally be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." *Id.* (citing Wright & Miller, Federal Practice and Procedure, § 1165 (3d ed. 2004)).

Even with the utmost diligence, Defendants cannot meet the Court's present deadline. Defendants' diligence in their efforts to comply with the Order is a key consideration for this Court in deciding on Defendants' request for an extension of time. *Watts v. Club Madonna, Inc.*, 784 Fed. Appx. 684, 687 (11th Cir. 2019). Here, Plaintiffs only provided Defendants with the factual bases for their Motion on November 23, 2020. Defendants are short-staffed given the Thanksgiving holiday. Despite Defendants immediately beginning work on their response, Defendants are unable to collect, review and organize the voluminous amount of information needed to properly rebut Plaintiffs' allegations. For the reasons outlined above, Defendants are unable to fully respond to the Motion by the Court's present deadline of November 30, 2020.

Defendants have acted in good faith in attempting to obtain the factual bases for their Motion from Plaintiffs over the past few weeks. Despite numerous requests, no specific details were ever forthcoming. Defendants have consistently engaged with Plaintiffs on numerous occasions; they have worked with Plaintiffs to resolve disputes where the parties could reach agreements. However, because Plaintiffs did not share the information they submitted to the Court, Defendants

were never afforded an opportunity to try to reach an agreement. As a corollary, bad faith is "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; … it contemplates a state of mind affirmatively operating with furtive design or ill will." *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (quoting Black's Law Dictionary 139 (6th ed. 1990)). Plaintiffs do not appear to suggest in their Motion that Defendant have operated in bad faith.

Plaintiffs will not be prejudiced by the extension requested by Defendants. Plaintiffs did not file the Motion as an emergency, nor did they request expedited consideration by the Court. Moreover, as explained above, Plaintiffs sat on these factual allegations for months; therefore, there is no sudden need for an expedited ruling. Here, Plaintiffs bear some responsibility for the number of factual issues raised in the Motion, that were heretofore unknown to Defendants, and the time it takes to respond to each. If anything, it is Defendants who will be prejudiced by being forced to operate in such a rushed timeframe. Accordingly, Defendants respectfully request an extension of time through December 14, 2020, in which to respond to the Motion.

## CERTIFICATE IN ACCORDANCE WITH LOCAL RULE 7.1(B)

Undersigned counsel certifies that he has conferred with counsel for Plaintiffs in an effort to resolve the discovery disputes referenced in the above

motion, and counsel have been unsuccessful in their efforts to resolve said disputes. Plaintiffs have only agreed to an extension through December 2, 2020, for Defendants to respond to Plaintiffs' Motion for Protective Order.

## **CERTIFICATE OF WORD COUNT**

I certify that this Motion complies with the word count limitation set forth in Local Rule 7.1(F) because this Motion contains 4,666 words, excluding the parts exempted by said Local Rule.

Respectfully submitted,

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
             sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
JEFFREY J. GROSHOLZ, ESQUIRE
Florida Bar No. 1018568
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507

Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

**Attorneys for Defendants,**
 **Mark Inch and Florida**
 **Department of Corrections**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 24, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Christopher Michael Jones at christopher@floridalegal.org; Andrea Costello at andrea@floridalegal.org; Jennifer Morrissey Painter at jennifer.painter@floridalegal.org; Aimee Cristen Lim at aimee.lim@floridalegal.org;        Marcel        Lilavois,        Jr.,        at mlilavois@floridajusticeinstitute.org;        Dante        Pasquale        Trevisani        at dtrevisani@floridajusticeinstitute.org;        Laura        Anne        Ferro        at lferro@floridajusticeinstitute.org;        Sam        Thypin-Bermeo        at        sthypin-bermeo@floridajusticeinstitute.org; Lisa S. Graybill at lisa.graybill@splcenter.org; Kelly    Jean    Knapp    at    Kelly.knapp@splcenter.org;    Sumayya    Saleh    at sumayya.saleh@splcenter.org;        and        Shalini        Goel        Agarwal        at shalini.agarwal@splcenter.org.

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957

SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
        sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

**Attorneys for Defendants,**
** Mark Inch and Florida**
** Department of Corrections**

14351050.1