**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**Tallahassee Division**

HARVARD, *et al.*,  )
                    )
      Plaintiffs,   )
                    )
v.                  )   Case No.: 4:19-cv-00212-MW-MAF
                    )
                    )
MARK S. INCH, *et al.*,  )
                    )
      Defendants.   )
_____

**ORDER ENJOINING DEFENDANTS, THEIR OFFICERS, AGENTS AND EMPLOYEES FROM RETALIATING AGAINST AND IMPROPERLY COMMUNICATING WITH NAMED PLAINTIFFS AND PUTATIVE <u>CLASS MEMBERS</u>**

In this civil rights case challenging the use of isolation (also known as "confinement") in Florida prisons, Plaintiffs move for an order to protect Named Plaintiffs and putative class members from retaliation and improper communications. ECF No. 183. Chief Judge Mark Walker referred this motion to the undersigned, directed the undersigned to determine whether a hearing is appropriate, and ordered the undersigned to resolve the motion on an expedited basis. ECF No. 200.

Pursuant to the Chief Judge's Order, the undersigned has reviewed the Parties' briefing, has conducted a five-day evidentiary hearing with testimony from twenty-three witnesses, and has considered only the admissible evidence provided.

For the reasons set forth below, Plaintiffs' Motion for Protective Order is GRANTED.

## I. Factual and Procedural Background

Plaintiffs challenge Defendants' statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in small, cramped cells. ECF No. 13, ¶¶ 2, 59, 75. They allege that this policy and practice violate statutory prohibitions on disability discrimination and a constitutional ban on cruel and unusual punishments. ECF No. 13, ¶¶ 5, 7, 8, 54, 59, 75, 83, 151–60.

The parties have engaged in extensive and contested discovery. This includes three motions to compel, ECF Nos. 98, 121, 158, and three motions for protective orders, ECF Nos. 82, 94, and 96. The decision on the final motion for a protective order provided as follows: "Defendants, their employees, agents, and officers shall not retaliate against [Named] Plaintiff Hill for prosecuting this lawsuit and for communicating with counsel." *Id.* at 3.

During discovery, the parties agreed to a "Stipulation for Entry on Land for Inspection and Confidential and Privileged Client and Putative Class Member Interviews." ECF No. 157. After entering this agreement, Plaintiffs conducted

inspections at Florida State Prison (FSP) on September 15 and 16, 2020, Santa Rosa Correctional Institution and Annex (Santa Rosa) on October 13-15, 2020, and Lowell Correctional Institution and Annex on November 17 and 18, 2020. Plaintiffs have conducted additional inspections not at issue here.

During these inspections, Plaintiffs' counsel discovered that Defendants had engaged in retaliation and improper communications with putative class members. ECF No. 183. Because of this discovery, Plaintiffs moved for an order to protect Named Plaintiffs and putative class members. The undersigned held an evidentiary hearing on this motion from January 11 to January 15, 2021. Twenty-three witnesses testified and the following factual findings reflect these witnesses' uncontested testimony:

During and after these inspections, the putative class members faced threats of violence for speaking with the Plaintiffs' legal team. An officer told Nicholas Cruz before a meeting with Plaintiffs' team, "Well, as long as you act right, we won't put you on your head." Another officer told Jhonny Milo that he would "get jumped on" if he spoke with Plaintiffs' team. A lieutenant told Lewis Johnson, "if [you] say anything to these people . . . possibly [your] other arm can be broken too." After the inspection, an officer told Mr. Johnson's cellmate that he would receive gain time if he attacked Mr. Johnson. A sergeant told Dylicia Gresham that he was going to make her "time as hard as possible because [she] had told on him."

That same sergeant made Ms. Gresham decide between eating lunch and speaking with Plaintiffs' counsel.

The putative class members also received direct orders not to participate in the inspections. An officer told Jessica McDaniel that she "was not going to talk to" Plaintiffs' team and that she "better sit down." A sergeant told Curley Williams, "you shouldn't really . . . conversate with these people" inspecting the prison.

Other putative class members received implied orders not to speak with Plaintiffs' team. An officer told Mindy Lethco she was "pushing it" as she left the room where she was speaking with Plaintiffs' team and an Assistant Warden shook his head at Derrick Grantley as he spoke to Plaintiffs' team. Moreover, officers called putative class members Dylicia Gresham and Jhonny Milo "snitches" after speaking with Plaintiffs' counsel.

Defendants' agents made misleading representations about Plaintiffs' counsel to the putative class members. An officer told John Gilday that Plaintiffs' lawyers were "trying to line their pockets" and "not trying to look out for none of the inmates." A sergeant told Curley Williams that Plaintiffs' counsel was "really against y'all."

Finally, officers interfered with Plaintiffs' counsel's attorney client relationship with the putative class members by asking Nicholas Cruz and John

4

Gilday details about their legal visits, by refusing to close the door for Odell Lee's legal call, and by saying "time" throughout Curley Williams's legal visit.

## II. Discussion

In the brief submitted in support of their motion for a protective order, Plaintiffs cite cases that relied on three standards to issue orders like the one sought here: Federal Rule of Civil Procedure 23(d), Federal Rule of Civil Procedure 26(c), and the Court's inherent power. Under any of these three standards, the uncontested facts provided during the evidentiary hearing justify a protective order.

### A.   Federal Rule of Civil Procedure 23(d)

Rule 23(d) empowers the Court to issue orders to protect class members, impose conditions on the representative parties, and deal with similar procedural matters. Fed. R. Civ. P. 23(d)(1). This power includes the authority to restrict actions and communications between the parties. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). This power, however, has its limits. As the Supreme Court has held, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.*

"In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy First Amendment concerns if it is

grounded in good cause and issued with a 'heightened sensitivity' for first amendment concerns." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985). In determining whether good cause exists, courts consider four factors: (1) "the severity and the likelihood of the perceived harm"; (2) "the precision with which the order is drawn"; (3) "the availability of a less onerous alternative"; and (4) "the duration of the order." *Id.* at 1206.

In cases where the challenged speech is "inherently conducive to overreaching and duress," such as oral solicitations, "it is unnecessary for a trial court to issue particularized findings of abusive conduct." *Id.*

Courts in this Circuit have regularly exercised this power when the conduct "coerce[s] prospective class members into excluding themselves from the litigation," misleads putative class members, or "undermine[s] cooperation with or confidence in class counsel." *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003) (listing cases) (internal citations and footnotes omitted).

For instance, in *Kleiner v. First National Bank of Atlanta¸* the Eleventh Circuit affirmed a district court's decision to prevent the class opponent, a bank, from encouraging potential class members to exclude themselves from the case even though the bank did not use any arm twisting. 751 F.2d at 1196.

6

Similarly, in *Jones v. Jeld-Wen, Inc.*, a case involving defective storm windows, then-Magistrate Judge Rosenbaum found that a protective order was appropriate because the Defendant implied in a letter to putative class members that (1) the class action had delayed the window repair and that (2) putative class members would receive superior service if they opted out of the class action. 250 F.R.D. 554, 562-564 (S.D. Fla. 2008).

In *Ojeda-Sanchez v. Bland Farms*, a wage-and-hour case, the court found that a protective order was appropriate because Plaintiffs had provided affidavits, contested by Defendants, that the employer had verbally told three employees that (1) they would lose the case, (2) that they could not return to work, and (3) that their counsel would steal their identities. 600 F. Supp. 2d 1373, 1376–77 (S.D. Ga. 2009).

In *Beck v. Boce Group, L.C.*, another wage-and-hour case, the court granted a motion for a protective order and injunction because "Defendants sought to coerce the Plaintiffs into abandoning their claims, by asking them to sign releases, disparaging Plaintiffs' attorneys and interrogating Plaintiffs about their claims." No. 04-20683, ECF 79-1 at 4, 39-43 (S.D. Fla. July 28, 2004).

**B.    Federal Rule of Civil Procedure 26(c)(1)**

Under Federal Rule of Civil Procedure 26(c)(1), "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment,

7

oppression, or undue burden or expense." It also allows courts to "specify[] terms, including time and place . . . for the disclosure or discovery" or "designate[] the persons who may be present while the discovery is conducted." *Id.*

To issue a protective order under Rule 26(c), the court must only find that there is "good cause" to issue it. *Id.* Good cause requires "a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).[1]

Courts have used this rule to issue protective orders. For example, in *Titre v. Platinum Partners LLC*, a wage-and-hour case, plaintiffs' counsel successfully moved under Rule 26(c) for a protective order after the defendants contacted two collective action members and threatened them and their employers. No. 08-61254-CIV, 2008 WL 11331817, at *2 (S.D. Fla. Oct. 1, 2008).

**C.     Inherent Authority**

Finally, "it has long been understood that [c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)

---

[1] It is unclear whether this good cause standard differs from the good cause standard identified above in *Kleiner* because *In re Alexander Grant & Co. Litig.* cites *Kleiner* but describes it as a "different context." *In re Alexander Grant & Co. Litig.*, 820 F.2d at 356. Regardless, good cause exists under both standards.

(internal quotation marks omitted). This "inherent power extends to a full range of litigation abuses." *Id.* at 46.

This Court has already exercised this power in this case. Indeed, Judge Walker found it prudent to order that Defendants "shall not retaliate against" a Named Plaintiff after Defendants challenged the Named Plaintiff's allegations of retaliation with a video of a different incarcerated person that a declarant inaccurately described to the Court. ECF No. 96 at 3.

### D. Application

Even under the most exacting of these three standards, a protective order is necessary here because the specific acts of retaliation, interference, and misrepresentation are more severe than those at issue in *Kleiner*, *Jones*, *Ojeda-Sanchez*, *Titre* and *Beck*. In those cases, the class opponents attempted to undermine the class with threats of economic loss. Here, the class opponents created a serious risk of undermining cooperation with and confidence in class counsel through orders, insults, misrepresentations, and threats of violence. Defendants received the names of many of the officers responsible for these actions more than a month before the hearing. Yet at the hearing, Defendants did not call these officers as witnesses. Additionally, Plaintiffs summarized this evidence at the closing and described it as uncontested, but Defendants, in their closing, did not question this assertion.

Instead, in their response, opening, and closing, Defendants raised five arguments that the courts in this circuit have already rejected.

First, the class opponents' intention is not at issue. In *Jones v. Jeld-Wen*, for example, then-Magistrate Judge Rosenbaum found that, "[A]lthough the Court does not find that [Defendant] intended to interfere with the class action through its communication or for its conduct to be abusive, the Court, nonetheless, recognizes that, as a practical matter, the communication may, in fact, have the effect of interfering with the integrity of the class action." *Jones*, 250 F.R.D. at 562. This means that for the purposes of issuing a protective order, an action may be coercive, even if the officer did not know about the case or intend to discourage the putative class member from participating in it.

Second, mere threats justify a protective order. As the Eleventh Circuit found in *Kleiner*, "the absence of explicit proof or findings of harm or injury is immaterial and the trial court is empowered to enter prophylactic orders designed to prevent harm before it happens." 751 F.2d at 1206 (internal quotations and citations omitted). This means that the witnesses' continued cooperation with the case is irrelevant. The fact that the retaliatory behavior did not succeed does not deprive the Court of the power to issue a protective order.

Third, and relatedly, because the potential effect—not intention—drives the analysis, courts consider the challenged conduct in the context of the relationship

between the putative class members and the class opponents. For instance, in *Kleiner*, the Eleventh Circuit wrote, "[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." 751 F.2d at 1202. And, in *Ojeda-Sanchez*, the court held that, "there is a past as well as a potential future employment relationship between the parties which increases the risk that communications between them will have a coercive effect." 600 F. Supp. 2d at 1379–80. Because class opponents exercise near total control over the putative class members' lives in the prison context, acts with little power in the free world, such as name-calling, can amount to coercive acts in prison. *Cf. Jones v. St. Lawrence*, No. CV408-095, 2008 WL 5142396, at *5 (S.D. Ga. Dec. 5, 2008) ("Numerous courts-including the Eleventh Circuit-have recognized that inciting other inmates to harm a prisoner, such as by labeling the prisoner a 'snitch' or informant, has the potential for great harm and may constitute a violation of the Eighth Amendment.").

Fourth, isolated incidents may justify a class-wide protective order. For example, in *Titre v. Platinum Partners LLC*, the court issued a nation-wide protective order just based on two complaints of class member harassment in a collective action involving hundreds of putative class members. *Titre*, 2008 WL 11331817, at *2. *See also Titre v. Platinum Partners LLC*, No. 08-61254-CIV, ECF No. 21, 2-5 (S.D. Fla. Sept. 8, 2008) (motion describing the putative class as

11

including hundreds of members in multiple states). Similarly, in *Ojeda-Sanchez*, the court prohibited defendants from discussing the lawsuit with plaintiffs and potential plaintiffs, even though there was no evidence of improper communications with the potential plaintiffs and, "[o]f the seven named plaintiffs, there is only evidence that defendants contacted three of them." 600 F. Supp. 2d at 1378.

Fifth, a writing is not required. Indeed, spoken communications may be more coercive than written threats. As the Eleventh Circuit noted in *Kleiner*, "[I]n-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decisionmaking; there is no opportunity for intervention or counter-education." 751 F.2d at 1206.

Sixth, "The fact that the class has yet to be certified does not prevent the Court from issuing a protective order limiting communications with putative class members to protect the integrity of the litigation." *Ojeda-Sanchez*, 600 F. Supp. 2d at 1381.

The record is clear, specific, and uncontested: Defendants' orders, insults, misrepresentations and threats of violence created a severe risk of undermining cooperation with and confidence in class counsel. As a result, there is a great need

to limit Defendants' retaliatory actions and improper communications until judgment in this action. The relief that Plaintiffs seek does not appear to interfere with Defendants' rights because Defendants do not claim a First Amendment interest in the challenged conduct and because, according to their brief, Florida law already imposes the restrictions that Plaintiffs seek. ECF No. 199, 3. Because this order does not impose additional legal constraints on Defendants, and instead, only allows Plaintiffs to raise these concerns with the undersigned when Defendants impede Plaintiffs' ability to prosecute this case, it is the least onerous and most narrowly drawn order possible.

Defendants also argue that no protective order is necessary because they complied with the terms of the inspection stipulation that governed the inspection of the prison facilities. This argument misses the mark because the basis for Plaintiffs' motion is not violations of terms of the stipulation.

Finally, the Court will not be flooded with complaints of retaliation. Plaintiffs must first report alleged retaliatory behavior to Defendants to provide them a chance to investigate, and preserve and produce video evidence, and then the parties will have the chance to negotiate a solution.

Accordingly, it is Ordered:

1. Plaintiffs' Motion for Protective Order, ECF No. 183, is GRANTED.

2. Defendants, their employees, agents, and officers shall not retaliate against, chill, or harass the Named Plaintiffs and putative class because they participate in this case or communicate with Plaintiffs' legal team or experts.

3. Defendants, their employees, agents, and officers shall not communicate with the Named Plaintiffs or putative class members about Plaintiffs' legal team, experts, or this case unless necessary or otherwise agreed upon by the parties. Necessary communication includes logistical questions about legal calls, legal visits, and grievances where the incarcerated person raises the claims at issue in this case.

4. Defendants, their employees, agents, and officers shall ensure that the class members receive confidential legal calls and visits with Plaintiffs' counsel and their experts.

5. Defendants, their employees, agents, and officers shall, within 14 days of receiving a report from Plaintiffs' counsel of an alleged violation of this order, respond with records and video related to the allegations to allow Plaintiffs' counsel to determine whether to bring the alleged violations to the Court's attention.

DONE AND ORDERED on January ___, 2021.

_____
MARTIN A. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

15