**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**Tallahassee Division**

| | | |
|---|---|---|
| HARVARD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:19-cv-00212-MW-MAF |
| | ) | |
| | ) | |
| MARK S. INCH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | | |

## <u>PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO PROTECTIVE ORDER</u>

## TABLE OF CONTENTS

I.    **Introduction** _____ **4**

II.   **Procedural History** _____ **5**

III.  **Legal Standard** _____ **7**

IV.   **Argument** _____ **8**

    A.   Section 636(b)(1)(A) Allows the Magistrate Judge to Enter this Order. 10

    B.   Rule 26(c) Permits the Order's Prohibition on Retaliation. _____ 12

        1.   Plaintiffs have Standing Under Rule 26(c) to Protect Putative Class Members and Potential Witnesses from Retaliation. _____ 13

        2.   The Court May Protect Putative Class Members and Potential Witnesses from Retaliation Under Rule 26(c). _____ 15

        3.   The Order Sets Forth the Good Cause Justifying its Prohibition on Retaliation. _____ 17

        4.   The Magistrate Judge Adequately Articulated the Reasons for the Order. _____ 25

    C.   The Court Has the Inherent Authority to Enter this Order's Prohibition on Retaliation. _____ 26

    D.   Rule 23(d) Authorizes the Order's Prohibition on Retaliation. _____ 31

        1.   The Prohibition on Retaliation Satisfies the Heightened First Amendment Standard. _____ 32

        2.   The Prohibition on Retaliation Satisfies the Inherently-Conducive-to-Duress Standard. _____ 37

    E.   The Separation of Powers Doctrine Allows the Court to Protect Parties and Witnesses from Retaliation. _____ 37

    F.   The Order's Prohibition on Retaliation is Not a Prior Restraint on Speech. _____ 38

    G.   The Order's Prohibition on Retaliation is Consistent with the PLRA's Requirements. _____ 39

    H.   The Order's Prohibition on Retaliation Does not Impermissibly Rewrite the Inspection Stipulation. _____ 40

    I.   The Order's Prohibition on Retaliation is Adequately Clear. _____ 40

V.    **Defendants' Objections to the Court's Factual Findings Are Meritless. 42**

VI.   **Plaintiffs Contest Defendants' Renewed Hearing Objections. _____ 43**

VII.  **Conclusion** _____ **43**

I.   **Introduction**

Based on an alarming pattern of retaliation, Plaintiffs moved to protect themselves and putative class members from further abuse as Plaintiffs gather evidence regarding their claims for class certification and trial. ECF No. 183. The Magistrate Judge conducted a five-day evidentiary hearing, heard testimony from twenty-three witnesses, and reviewed numerous declarations and documents submitted by the parties. Based on this evidence, the Magistrate Judge made credibility determinations and findings of fact, and concluded that Defendants had engaged in ongoing retaliation against putative class members for participating in this litigation.

Specifically, the Court found that "[t]his record establishes that retaliation, harassment, and threats of retaliation continued" and that "[s]uch behavior raises substantial concern for the fairness and integrity of this litigation." ECF No. 240 at 43. As a result, the Court barred "[r]etaliation and threats of retaliation of any kind relating to an inmate's participation in the ongoing discovery and/or civil litigation." *Id.* at 52. The Court also issued specific guidelines to protect against retaliation and perceived threats of retaliation during Rule 34 prison inspections. *Id.* at 45-52. Defendants contest every aspect of the Order.

Plaintiffs understand that Defendants intend to appeal any order enumerating guidelines for prison inspections, which will likely result in a stay of inspections; a

stay will make it difficult for Plaintiffs to timely prosecute their case and obtain desperately needed relief. To promote efficiency and protect the ability to timely proceed with this litigation, Plaintiffs defend only the following portion of the Order's remedies: "Retaliation and threats of retaliation of any kind relating to an inmate's participation in the ongoing discovery and/or civil litigation will not be tolerated." *Id.* at 52. Plaintiffs do not oppose modification of the Order to remove the guidelines specific to inspections. However, the Order's overarching prohibition of retaliation related to this litigation is critical to protecting Florida's incarcerated population and the prosecution of this case, will not interfere with prison operations or inspections, and must therefore stand.[1] As set forth below, this Court's referral of the issue to the Magistrate Judge was proper, and the Court's Order barring retaliation based on the Court's evidentiary findings is authorized under Rule 26, its inherent authority, and Rule 23.

## II.   **Procedural History**

Plaintiffs brought this case on behalf of thousands of people suffering in isolation in Florida's prisons. ECF No. 13. For over a year, the parties have gathered facts through a highly contested discovery process. This includes three

---

[1] Indeed, Defendants' staff continue to retaliate against putative class members who attempt to provide relevant evidence in this case to Plaintiffs' counsel. Plaintiffs have notified Defendants of this additional conduct since the evidentiary hearing and are attempting to meet and confer on this issue.

motions to compel, ECF Nos. 107, 149, and 65, and six motions for protective orders, ECF Nos. 38, 49, 67, 68, 84, 183. Two of these motions for protective orders are relevant here.

First, on December 20, 2019, Plaintiffs moved to protect Plaintiff Johnny Hill from retaliation after an officer called him a snitch and assaulted him because of his participation in this case. ECF No. 68 at 2-3. The Court entered an order directing: "Defendants, their employees, agents, and officers shall not retaliate against Plaintiff Hill for prosecuting this lawsuit and for communicating with counsel." ECF No. 96 at 3.

Second, on November 23, 2020, Plaintiffs moved to protect all named Plaintiffs and putative class members from retaliation and other unlawful actions that interfered with the fair adjudication of the case. ECF No. 183. This Court referred that motion to the Magistrate Judge on December 15, 2020, ECF No. 200. The Magistrate Judge held a five-day evidentiary hearing from January 11 to January 15, 2021, ECF No. 218, and issued an Order on February 8, 2021, ECF No. 240. On February 22, 2021, Defendants filed a Motion for Relief From, and Objections to, the Magistrate Judge's Order and Incorporated Memorandum of Law, ECF No. 254, which they amended the next day. ECF No. 256.

III.   **Legal Standard**

The "clearly erroneous or contrary to law" standard applies to the Court's review of this discovery-related Order. Plaintiffs moved for a protective order to safeguard their ability to gather facts during discovery and ensure the fair adjudication of this case. ECF No. 183 at 15. The Court was authorized to refer this matter to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(A), permitting "[a] judge [to] designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief" and other dispositive motions. *See Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1018 (5th Cir. 1981) ("[D]iscovery issues are by definition pretrial matters.").[2]

When a party objects to a nondispositive order by a magistrate judge, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). *See also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the [nondispositive] order within 14 days after being served with a copy.").

---

[2] Cases decided by the former Fifth Circuit prior to October 1, 1981, are binding precedent within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Courts in the Eleventh Circuit have regularly reviewed protective orders that concern discovery applying the "clearly erroneous or contrary to law" standard. *See, e.g.*, *Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, No. 3:13-CV-306-J-34JRK, 2015 WL 5897628, at *1 (M.D. Fla. Oct. 7, 2015) (reviewing protective order under "clearly erroneous or contrary to law" standard because the "Motion for a Protective Order does not dispose of a claim or defense of any party."). Because this Order similarly decides a nondispositive, pretrial motion for a protective order, the "clearly erroneous or contrary to law" standard applies.

## IV.   **Argument**

The Order at issue contains an overarching prohibition on retaliation during discovery and numerous guidelines addressing specific issues that have arisen during Rule 34 inspections. Plaintiffs understand that an order specifically governing the conduct of future prison inspections will likely result in an appeal and a possible stay of inspections, thus foreclosing one key source of Plaintiffs' discovery. In the interests of promoting efficiency and protecting the ability to timely proceed with this litigation, Plaintiffs defend only the following portion of the Order's remedies: "Retaliation and threats of retaliation of any kind relating to an inmate's participation in the ongoing discovery and/or civil litigation will not be tolerated." ECF No. 240 at 52. This provision addresses the crux of the matter:

Defendants' retaliatory conduct interferes with Plaintiffs' ability to gather evidence to support their claims.

Critically, Defendants' conduct does not occur just during inspections. It also occurs, *inter alia*, as Plaintiffs' counsel attempt to later communicate with potential trial witnesses they identified during inspections, or in connection with depositions of Plaintiffs. Plaintiffs believe that the Order's prohibition of retaliation during discovery and litigation will enable the inspections to proceed under the parties' current stipulation. And because the general prohibition of retaliation will not interfere with prison operations, the inspections should continue in full force.

Below, Plaintiffs make the following five arguments in defense of this Order: First, Section 636(b)(1)(A) allows the Magistrate Judge to enter this Order; second, the Magistrate Judge's factual findings support the Order's prohibition on retaliation pursuant to Rule 26(c), its inherent power, and Rule 23(d); third, the separation of powers doctrine, the First Amendment and the Prison Litigation Reform Act (PLRA) do not prohibit the Order's anti-retaliation provision; fourth, the Order's prohibition on retaliation does not impermissibly rewrite the inspection stipulation; and fifth, the Order's prohibition on retaliation is adequately clear.

## A.  Section 636(b)(1)(A) Allows the Magistrate Judge to Enter this Order.

Defendants first claim that the Magistrate Judge lacked the authority to enter the Order because it imposes "a statewide injunction." ECF No. 256 at 6. Preliminarily, the Court should decline to consider this argument because Defendants failed to raise it when this Court referred the matter to the Magistrate Judge, during the evidentiary hearing or related briefing in front of the Magistrate Judge, or at any point in between. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

Plaintiffs explicitly requested a prohibition on retaliation in their Motion. ECF No.183 at 15. If Defendants believed the Magistrate Judge did not have the authority to determine this matter because the requested relief would constitute an injunction, they should have objected when the Court referred this matter to the Magistrate Judge—or, at least at some point between this Court's referral and the Magistrate Judge's order almost three months later. But instead of objecting at any point, Defendants participated in the hearing. Only after the parties and Court expended considerable time and expense on a five-day evidentiary hearing and the Magistrate Judge ruled against Defendants did they object for the first time to the Magistrate Judge's authority to grant the requested relief. *Cf. K-Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 914 (1st Cir 1989) ("A party cannot lay back,

10

acquiesce in the merger of a preliminary hearing with a permanent one, and then protest the procedure for the first time after the case is decided adversely to it.").

Even if the Court finds Defendants have not forfeited their argument about the authority of the Magistrate Judge to decide this motion, they have not demonstrated that the overarching retaliation provision in the protective order is injunctive relief within the meaning of 28 U.S.C. § 636(b)(1)(A). The Order's prohibition of retaliation is not an injunction because it is directed only at retaliation for participating in this case, not the underlying relief Plaintiffs seek in the litigation as set forth in their Complaint, ECF No. 240 at 52. *See United States v. Kaley*, 579 F.3d 1246, 1252 (11th Cir. 2009) (An injunction is "directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by the complaint in more than temporary fashion." (citing 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3922, at 65 (2d. ed. 1996))).

The only cases Defendants cite in support of their claim that the Order is not a pre-trial order within the meaning of 28 U.S.C. § 636(b)(1)(A) are non-binding cases analyzing whether orders issued pursuant to Rule 23(d) may be considered injunctive for the purposes of determining whether interlocutory appellate review was appropriate. They offer no authority tying consideration of the nature of injunctive relief for purposes of interlocutory appellate jurisdiction to the definition

of injunctive relief for purposes of determining a Magistrate Judge's authority under 28 U.S.C. § 636(b)(1)(A).

Here, the Magistrate Judge relied primarily on Rule 26(c) in issuing the protective order. Defendants do not offer any definition of "injunctive relief" in their Objections, but, by their logic, *any* discovery-related order issued by a Magistrate Judge under Rule 26(c) would qualify as an "injunction" because it orders or prohibits action by a party. That would plainly defeat one of the primary purposes of 28 U.S.C. § 636(b)(1)(A).

Finally, if this Court were concerned that the prohibition on retaliation exceeded the Magistrate Judge's authority under 28 U.S.C. § 636(b)(1)(A), the Court could consider the Magistrate Judge's Order to be a report and recommendation under 28 U.S.C. § 636(b)(1)(B). This Court could then issue its own order prohibiting retaliation against putative class members for participating in this litigation based on the findings of fact and recommendations by the Magistrate Judge.

### B.  Rule 26(c) Permits the Order's Prohibition on Retaliation.

Defendants next claim that the Magistrate Judge erroneously applied Rule 26(c). ECF No. 256 at 7. Specifically, they argue (1) "Plaintiffs Do Not Have Standing Under Rule 26(c) to Seek the Protections Imposed by the Order," *id.* at 9; (2) "Rule 26 Is Not Applicable to Informal Interviews," *id.* at 7-9; (3) "The Order

12

Fails to Articulate Good Cause," *id.* at 10-22; and (4) "Relief Goes Beyond That Allowed By Rule 26," *id.* at 22-23. None of these arguments is persuasive.

### 1. Plaintiffs have Standing Under Rule 26(c) to Protect Putative Class Members and Potential Witnesses from Retaliation.

Defendants argue that Plaintiffs lack standing under Rule 26(c) to seek protections on behalf of non-parties. This directly conflicts with the language of the Rule. Rule 26(c) allows Plaintiffs to seek protection from Defendants' retaliatory conduct when it threatens Plaintiffs' discovery. "A *party* or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." Fed. R. Civ. P. 26(c)(1) (emphasis added).

Plaintiffs seek a protective order not just to protect putative class members and witnesses, but to ensure *Plaintiffs'* ability to gather facts. Defendants' actions to discourage witnesses from providing information harms *Plaintiffs'* interests in adequately presenting this case. As a result, Rule 26(c) provides an avenue for relief.[3]

---

[3] Defendants assert that Plaintiffs "recognized . . . in their Motion" that they can only obtain relief on behalf of non-parties "based on their status as putative class members under Rule 23(d)." ECF No. 256 at 9. Again, this misunderstands Plaintiffs' motion seeking relief to protect their own discovery interests. It is also wrong because Plaintiffs cited *Titre* as precedent for the relief sought. ECF No. 183 at 12. In that case, the plaintiffs moved under Rule 26(c), *Titre v. Platinum Partners LLC*, No. 08-61254-CIV, ECF No. 18 (S.D. Fla. Sept. 5, 2008), and the court

Courts have routinely granted plaintiffs' requests under Rule 26(c) to bar defendants from retaliating against or silencing other people. In *Titre v. Platinum Partners LLC*, the court granted plaintiffs' motion to bar defendants from retaliating against "current or putative plaintiffs and their employers in this action." No. 08-61254-CIV, 2008 WL 11331817, at *2 (S.D. Fla. Oct. 1, 2008). In *Acosta v. Five Star Automatic Fire Protection, LLC*, the court partially granted the Secretary of Labor's motion to protect past and current employees from retaliation. No. EP-16-CV-282-PRM, 2017 WL 10604137, at *5 (W.D. Tex. May 30, 2017). And, in *Harris v. Acme Universal, Inc.*, the court granted the Secretary of Labor's motion to protect witnesses from retaliation. No. CV 12-00008, 2014 WL 3907107, at *4 (D. Guam Aug. 11, 2014).

Defendants contest this point by citing *Refoule v. Ellis*, 74 F. Supp. 336, 343 (N.D. Ga. 1947). This is a preliminary injunction case decided by the Northern District of Georgia in 1947 and it lacks any reference to protective orders, let alone the current version of Rule 26. *Id.* Additionally, Defendants cite *Renuen Corp. v. Lameira*, No. 6:14-CV-1754-ORL, 2015 WL 1815698, at *1 (M.D. Fla. Apr. 22, 2015) and *Adamson-James v. Florida Department of Corrections*, No. 6:11-CV-628-ORL-35TB, 2013 WL 1703541, at *2 (M.D. Fla. Mar. 22, 2013). Both cases

---

specifically noted in its order, the "Court does not seek to restrain Defendants' speech pursuant to Rule 23(d)." *Titre*, No. 08-61254-CIV, 2008 WL 11331817, at *2 n.2.

rely solely on *Refoule* to deny protective orders. In *Reneun*, the defendants seeking the protective order argued only that it was necessary to conceal non-parties' identities because the plaintiffs were threatening them with bodily harm. *Reunen*, 2015 WL 1815698 at *1. They did not allege that plaintiffs' conduct threatened the fair adjudication of defendants' case until after the court had already denied their request for a protective order. *Id.* at *2. Similarly, in *Adamson-James,* the brief analysis focused only on potential retaliation against witnesses with no consideration of how such conduct could burden the plaintiff's discovery. As a result, these cases are inapposite because they center on the rights of witnesses to be free from retaliation as opposed to Plaintiffs' ability to prosecute their case, which Plaintiffs have consistently argued is at issue here.

### 2. The Court May Protect Putative Class Members and Potential Witnesses from Retaliation Under Rule 26(c).

Defendants argue that courts may not rely on Rule 26 to protect people from retaliation in "informal interviews," or in any other setting outside of "six main forms of discovery." ECF No. 256 at 7-9. This argument incorrectly interprets Rule 26(c). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Pursuant to that Rule, "The court may, for good cause, issue an order to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This includes the power to "specify[] terms" of discovery. *Id.*

Contrary to Defendants' claims, courts around the country, including in this Circuit, have recognized that they may rely on this Rule to protect people from retaliation during discovery generally. *See, e.g.*, *Titre*, No. 08-61254-CIV, 2008 WL 11331817, at *2 (granting a protective order after the defendants contacted two collective action members and threatened them and their employers); *Goninan v. Wash. Dep't of Corr.*, No. 3:1-7CV-05714-BHS-JRC, 2018 WL 4630205, at *2 (W.D. Wash. Sept. 26, 2018) (observing that Rule 26(c) allows courts to "to protect a party or potential party from intimidation or retaliation").

Defendants do not distinguish this authority, nor can they. Instead, they simply cite three out-of-circuit district court cases to again assert that this is not a discovery-related order. These cases are neither controlling nor persuasive. In *Davis v. Abercrombie*—the most similar to the instant case—the court found that "[b]ased on Plaintiffs' representations in the instant Motion, they are not seeking relief in response to, or in anticipation of, a request for discovery." No. CIV. 11-00144 LEK-BM, 2014 WL 7366685, at *2 (D. Haw. Dec. 24, 2014). However, the *Davis* court also specifically noted that if plaintiffs' counsel continued to have problems with being able to access their incarcerated clients, "it arguably may affect their ability to prepare for trial," and they could "request a discovery

conference with the magistrate judge," suggesting that this would indeed be a discovery-related issue the magistrate judge could address. *Id.* at *4, n.5. Here, Plaintiffs have connected their motion for a protective order to issues of retaliation during the discovery process that interfere with Rule 34 inspections as well as their ability to access putative class members and other witnesses.

Finally, to the extent that the retaliation prohibition reaches both discovery and non-discovery related participation in the litigation, it is allowed under a combination of the Court's authority under Rule 26(c) and the Court's inherent authority, as cited by the Magistrate Judge.[4]

### 3. The Order Sets Forth the Good Cause Justifying its Prohibition on Retaliation.

Defendants next claim that the Order fails to articulate good cause, as required by Rule 26(c). ECF No. 256 at 10-22. Defendants are wrong.

"Federal Rule of Civil Procedure 26(c) allows a court to issue a protective order upon a finding of good cause." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1249 (11th Cir. 2020). "Good cause" "generally signifies a sound basis or legitimate need to take judicial action." *Id.* at 1251.

---

[4] The Court also has the authority to issue the Order under the All Writs Act, 28 U.S.C. § 1651. *See, e.g.*, *Ben David v. Travisono*, 495 F.2d 562, 564-65 (1st Cir. 1974) (analyzing and upholding a protective order under the All Writs Act against prison guards who were beating prisoner plaintiffs in retaliation for filing a class action lawsuit).

The Eleventh Circuit instructs district courts to consider, among other things, "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order." *Id.* Courts must also "engage in the 'balancing of interests' under Rule 26(c)." *Id.*

Defendants do not walk through these four factors. Instead, they argue that (a) a finding of "actual overt retaliation" did not justify good cause, ECF No. 256 at 11-16; (b) "Reasonable Perception of Retaliation is Not Good Cause," *id.* at 17-18; (c) "No Balancing of Interests Occurred," *id.* at 18-19; (d) "No Good Cause Articulated for Expanding Order Beyond Inspections," *id.* at 19; and (e) "No Good Cause Articulated for Protection Regarding Future Inspections," *id.* at 19-22. As set forth below, Plaintiffs meet each of the four good-cause factors and the interests tip in their favor. Plaintiffs also address each of Defendants' arguments related to good cause below.

### a. The Magistrate Judge Found that Defendants' Retaliation Creates a Severe and Likely Harm.

The Order reflects good cause to enter the anti-retaliation provision because Defendants' conduct threatened Plaintiffs' discovery. *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91-92 (11th Cir. 1989) (finding good cause based on a fear of "intimidation or other outside forces that could interfere with the free flow of information").

18

In issuing the protective order, the Magistrate Judge wrote that the "record establishes that retaliation, harassment, and threats of retaliation continued" and that "[s]uch behavior raises substantial concern for the fairness and integrity of this litigation if prison officials are intimidating and threatening potential plaintiff prisoners or, at the least, prisoners who may be called to testify as witnesses." ECF No. 240 at 43. The following testimony of retaliation, harassment, and threats of retaliation, which the Magistrate Judge described in the Order, show a severe and likely harm:[5]

- Officers made violent threats to Johnny Milo and Lewis Johnson during inspections for speaking with Plaintiffs' team. ECF No. 240 at 6, 11 (citing ECF No. 229 at 46; ECF No. 230 at 155, 157).

- An officer threatened Nicholas Cruz when the officer escorted him to a legal visit one month after an inspection. ECF No. 240 at 11 (citing ECF No. 229 at 10).

---

[5] Defendants consider only the testimony that the Magistrate Judge explicitly enumerated as "credible." ECF No. 256 at 14-16. They do not cite any case for the proposition that a judge must use the magic words "I regard this testimony as credible" to consider it. The Magistrate Judge made clear which testimony he found problematic, *see, e.g.*, ECF No. 240 at 27-28, 29, 32, 33-34, 36, and Defendants do not account for the majority of the remaining testimony which the Magistrate Judge did not categorize as untrustworthy.

- An officer threatened Marcus Broadnax because he was communicating with Plaintiffs' counsel through legal mail. ECF No. 240 at 10-11 (citing ECF No. 230 at 189).

- They called Mr. Milo, Dylicia Gresham, and Mr. Broadnax "snitches," "a word serious 'enough to get you killed,'" in the days and weeks after inspections while they had ongoing communications with Plaintiffs' counsel. ECF No. 240 at 6, 8 (citing ECF No. 230 at 87, 162-163, 186-188).

- They ordered, either explicitly or implicitly, Jessica McDaniel, Mindy Lethco, and Derrick Grantley not to speak to Plaintiffs' legal team during inspections. ECF No. 240 at 6-7, 8 (citing ECF No. 229 at 126, 101-102; ECF No. 230 at 117-118).

- They denied people basic human necessities, like food, showers, clothes, and toilet access during and after the inspections for speaking with Plaintiffs' counsel. ECF No. 240 at 6, 10, and 12 (citing ECF No. 230 at 83, 106, 165, 167-168, 184, 189-190, 192).

- Odell Lee and Ms. Gresham were unable to complete confidential legal calls with Plaintiffs' counsel in the weeks after inspections because officers refused to close the door to the interview room and stood nearby. ECF No. 240 at 7-8 (citing ECF No. 229 at 87, 91-92).

20

- Officers made misrepresentations to John Gilday about Plaintiffs' counsel as he communicated with Plaintiffs' counsel in the weeks after inspections. ECF No. 240 at 4-5 (citing ECF No. 229 at 180-181, 199-200).

- They questioned Mr. Gilday on his way to meet with Plaintiffs' counsel during an inspection. ECF No. 240 at 4 (citing ECF No. 229 at 175-176, 179-180).

- They also questioned Mr. Gilday, Mr. Cruz, and Mr. Broadnax about their conversations with Plaintiffs' counsel in legal calls after inspections. ECF No. 240 at 4-5, 10 (citing ECF No. 229 at 12, 180-181; ECF No. 230 at 189-190).

Even though these facts plainly show retaliation, Defendants claim that none of them, even when considered together, qualify as a severe or likely harm based on an "actual overt retaliation" standard they import from a number of First Amendment cases. ECF No. 256 at11-15. But none of these cases reference protective orders and Defendants do not explain why this standard would apply to the determination of whether a protective order is appropriate. In fact, when courts have protected putative class members or witnesses from retaliation under Rule 26(c), they have not performed the proposed First Amendment analysis. *Titre*, No. 08-61254-CIV, 2008 WL 11331817, at *2; *Acosta*, No. EP-16-CV-282-PRM, 2017

WL 10604137, at *5; *Harris*, No. CV 12-00008, 2014 WL 3907107, at *4. As a result, this argument is unpersuasive.

### b.  The Anti-Retaliation Provision is Sufficiently Narrow.

The anti-retaliation provision is narrowly drawn to protect the integrity of Plaintiffs' fact-gathering. It acknowledges that Defendants' conduct is not limited solely to inspections and fashions a remedy to ensure that putative class members may participate in "ongoing discovery and/or civil litigation." ECF No. 240 at 52. By prohibiting retaliation, the Order "merely reinforce[s] [FDC's] principles and specifically advise[s] the inmate/witnesses that their right to participate in the process should be protected." ECF No. 240 at 42. And in only protecting incarcerated people, it applies to a narrower class of people than other Rule 26 anti-retaliation protective orders. *See, e.g.*, *Titre*, No. 08-61254-CIV, 2008 WL 11331817, at *2 ("Defendants are barred from engaging, directly or indirectly, in any intimidating, threatening, or harassing conduct or communications toward any of the current or putative plaintiffs and their employers in this action").

Defendants miss the point entirely by arguing that the Order is too broad because (1) it applies to conduct in future Rule 34 inspections and (2) it regulates acts outside of Rule 34 inspections entirely. They support their first argument by citing a First Amendment case, *Martinez v. City of Opa-Locka*, 971 F.2d 708 (11th Cir. 1992), which does not concern a protective order or any pretrial matters.

22

Defendants then assume, without explanation, that this standard applies here. ECF No. 256 at 19-22. For the second argument, Defendants assert, again without explanation, "[i]f this truly was a Motion for Protective Order filed under Rule 26(c), then the dispute concerns discovery and the Order should have been limited to the scope of the physical Rule 34 inspections." *Id.* at 19. This disregards that Plaintiffs must gather facts from putative class members outside of the limited access they have during inspections to develop their claims and potential witnesses for trial. Indeed, this motion has always concerned more than just the conduct during the inspections—it is about preventing retaliation against class members at all times. This Court has the authority to cover the full scope of Defendants' retaliatory conduct, whether it be discovery or non-discovery related, through a combination of Rule 26(c) and its inherent authority as needed.

### c.  The Order is the Least Onerous One Possible.

The Order's simple prohibition on retaliation is the least onerous order possible, considering the risk of harm that these putative class members and potential witnesses face for participating in this litigation. It does not place any additional burden on Defendants. As Defendants wrote in their response to Plaintiffs' motion, "[T]here are already Florida regulations and laws in place that prohibit these kinds of actions." ECF No. 199 at 3. Indeed, they need not do

anything to comply with it beyond what their policies already require. They must only stop retaliating against people for participating in this case.

### d.  The Order Lasts a Reasonable Duration.

The Order lasts a reasonable duration because it only protects people's "participation in the ongoing discovery and/or civil litigation." ECF No. 240 at 52. *Cf McCarthy*, 876 F.2d at 90-92 (affirming a protective order that "prevent[ed] the parties from using any confidential information obtained during discovery except as part of the litigation"). It does not, as Defendants claim, have an "indeterminate duration." ECF No. 256 at 19. Instead, it extends only to what is necessary to ensure the fair adjudication of this case through trial. ECF No. 240 at 52.

### e.  The Interests Weigh in Plaintiffs' Favor.

The Order correctly determined that the interests weigh in Plaintiffs' favor. Plaintiffs have an interest in prohibiting retaliation because of their "substantial concern for the fairness and integrity of this litigation if prison officials are intimidating and threatening potential plaintiff prisoners or, at the least, prisoners who may be called to testify as witnesses." *Id.* at 43. Defendants have failed to identify any legitimate interest in retaliating against people for participating in this case. And, in fact, their policies already prohibit this challenged conduct. ECF No. 199 at 3. The scale tips in Plaintiffs' favor.

### 4.  The Magistrate Judge Adequately Articulated the Reasons for the Order.

Defendants argue that the Order fails to sufficiently explain its justification. ECF No. 256 at 10. This argument is not persuasive.

"A district court must articulate its reasons for granting a protective order sufficient for appellate review." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987). This is not a heavy lift—the standard can be met with just one statement explaining the basis for the order. *See, e.g.*, *McCarthy*, 876 F.2d at 91–92 (finding that the following statement satisfied this standard: "[t]he fear of adverse publicity, intimidation or other outside forces that could interfere with the free flow of information, most of which would not be admissible during the actual litigation stages of [the] case.").

Here, the Magistrate Judge far exceeded what is required for appellate review. After conducting a five-day hearing, the Magistrate Judge wrote a 53-page opinion to explain his decision. ECF No. 240. In 33 pages of his Order, he summarized and weighed the testimony of over 20 witnesses. ECF No. 240 at 4-37. In the other 15 pages, he explained the legal basis. Specifically, the Court held that (1) "This record establishes that retaliation, harassment, and threats of retaliation continued"; (2) "Such behavior raises substantial concern for the fairness and integrity of this litigation if prison officials are intimidating and threatening potential plaintiff prisoners or, at the least, prisoners who may be

25

called to testify as witnesses"; and (3) "Plaintiffs have sufficiently shown the need for issuance of another protective order, and the motion is granted." *Id.* at 43-44. This detailed factfinding and legal analysis provides sufficient information for this Court's review.

### C.  The Court Has the Inherent Authority to Enter this Order's Prohibition on Retaliation.

Defendants argue that the "The Inherent Authority of the Court Does Not Allow for the Order Entered." ECF No. 256 at 23. The opposite is true: The Magistrate Judge properly exercised the Court's inherent power to ensure the fair adjudication of this case. "[I]t has long been understood that [c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This "inherent power extends to a full range of litigation abuses." *Id.* at 46.

At least three Circuits have "recognize[d] that a court has the inherent power to protect witnesses," even if it means incarcerating the intimidator. *Wheeler v. United States*, 640 F.2d 1116, 1123 (9th Cir. 1981); *United States v. Wind*, 527 F.2d 672, 675 (6th Cir. 1975) ("We are satisfied that courts have the inherent power to confine the defendant in order to protect future witnesses at the pretrial stage as well as during trial."); *United States v. Gilbert*, 425 F.2d 490, 491–92 (D.C. Cir. 1969) ("We are satisfied that courts have the inherent power to confine

26

the defendant in order to protect future witnesses at the pretrial stage as well as during trial.").

If a trial court has the inherent power to protect its witnesses and if, in exercising this power, it may incarcerate someone, it also has the power to prohibit Defendants from threating or retaliating against Plaintiffs' witnesses. *See, e.g.*, *Shultz v. Nat'l Mar. Union of Am.*, No. 66 CIV. 4519, 1969 WL 4735, at *1 (S.D.N.Y. Oct. 7, 1969) (ordering a union to admit someone to a convention because "[t]he court concludes that it has inherent power to protect witnesses appearing in this court in any proceeding against reprisals visited upon them by parties to an action").

Defendants make five arguments to challenge this conclusion. None is persuasive.

First, Defendants claim that the Court lacked the authority to enter the Order because the "Order does not address any problem or need confronting the Court's fair administration of justice." ECF No. 256 at 25. But the Court specifically held that "[t]his record establishes that retaliation, harassment, and threats of retaliation continued" and that "[s]uch behavior raises substantial concern for the fairness and integrity of this litigation." ECF No. 240 at 43. To reach this conclusion, the Court described how officers threatened, insulted, ordered, and denied people basic

human needs in a way that risked undermining the fair administration of justice. *Id.* at 4-11.

Second, Defendants take the position that people in isolation have no relevant testimony. They argue, "if the concern raised by Plaintiffs' Motion was fact-gathering, then it is not clear why these cell-front interviews and confidential interviews bear any relevance to the case at hand." ECF No. 256 at 26. But these witnesses experience isolation firsthand and provide valuable evidence to Plaintiffs' counsel and experts about the harms of the challenged practice. In any event, Defendants have forfeited this challenge to the witnesses' relevancy because they have already agreed to a Rule 34 inspection stipulation created to gather facts from these witnesses. ECF No. 157.

Third, Defendants call Plaintiffs' motion "disingenuous" because Plaintiffs have continued with inspections, despite the absence of an enforceable protective order. ECF No. 256 at 27. Nothing requires Plaintiffs to show that Defendants have completely blocked them from gathering any facts, and this type of retaliatory conduct cannot remain unchecked. Plaintiffs brought this case on behalf of thousands of people suffering from inhumane and discriminatory conditions. ECF No. 13. Plaintiffs do not claim that Defendants have completely foreclosed them from gathering any information during inspections, and they cannot afford to stall this type of discovery during the many months it may take for Defendants to

exhaust all challenges to this Order. Defendants' argument amounts to claiming that retaliation does not exist unless it works flawlessly. There is no legal basis for this claim.

Fourth, Defendants argue that the Court lacks the inherent power to protect potential witnesses because other provisions of law also provide relief. ECF No. 256 at 27-28.[6] Defendants have pointed to no statutory text, let alone congressional intent, that supports the proposition that, in creating these alleged alternatives, Congress abrogated the courts' inherent power. Moreover, the Supreme Court has already rejected the idea that a statutory remedy's mere existence voids the courts' inherent power. *See, e.g.*, *Chambers*, 501 U.S. at 42–43 (denying the argument that "28 U.S.C. § 1927 and the various sanctioning provisions in the Federal Rules of Civil Procedure reflect a legislative intent to displace the inherent power.").

Finally, Defendants assert that the Court lacks the power to protect incarcerated witnesses because "this Order now implants this Court as a super-warden, subjecting this Court to a parallel review proceeding of all grievance,

---

[6] Defendants write, "There is a passing mention that the purported conduct threatens Plaintiffs' 'fact gathering,' but the remainder of Plaintiffs' legal argument focuses on a series of cases analyzed under Rule 23(d)." ECF No. 256 at 25. But Plaintiffs cite *Titre*, ECF No. 183 at 12, decided under Rule 26(c), that expressly stated it was not "restrain[ing] Defendants' speech pursuant to Rule 23(d)." *Titre*, No. 08-61254-CIV, 2008 WL 11331817, at *2 n. 2. Plaintiffs also cite the Court's order protecting Plaintiff Johnny Hill. ECF No. 183 at 11. The Court issued that order pursuant to its inherent equitable power. ECF No. 96 at 2-3.

affronts, and complaints that an inmate may have simply because the inmate 'perceives' it as retaliation." ECF No. 256 at 29. This argument should be rejected because there is no evidence that this Order will create a tidal wave of unsubstantiated complaints inundating this Court as Defendants suggest.

To support their argument, Defendants latch on to the Magistrate Judge's pragmatic description of the complete control Defendants exercise over every aspect of the lives of people in isolation and, how, in this punitive atmosphere, they perceive conduct that would otherwise be benign as retaliatory. *Id.* This is especially true when Defendants have in fact engaged in actual and repeated retaliation against them. But this contextualization does not set a standard for a violation of the Order. Of course, putative class members must prove something more than a cough or a frown to show a violation.

The history of this case so far belies Defendants' argument. In a case with seven named plaintiffs and over 10,000 putative class members in prison, Plaintiffs have filed *two* motions for protective orders due to retaliation. The Court substantiated Plaintiff Johnny Hill's retaliation allegations by partially granting the first motion, ECF No. 96, and then made factual findings of several more egregious retaliation allegations against the putative class in response to Plaintiffs' second motion, ECF No. 240 at 4-11. Plaintiffs' counsel has served as an effective buffer between any unsubstantiated complaints from the putative class and this

Court and there is no reason to believe they will not continue to do so. And even if they do not, this Court is well-equipped to manage frivolous complaints, so the remote threat of such complaints in this case is not cause to deny Plaintiffs relief in the face of Defendants' conduct.

### D.  Rule 23(d) Authorizes the Order's Prohibition on Retaliation.

Defendants argue that the Order fails to meet the Rule 23(d) standard. ECF No. 256 at 30-36. This is incorrect.

Although the Magistrate Judge did not base his Order on Rule 23(d) explicitly, the Court had the authority to do so, and made specific factual findings, summarized above in Section III.B.3.a, that satisfy this standard.

Class actions present "opportunities for abuse as well as problems for courts and counsel in the management of cases." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). As a result, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.*

Courts in class action cases can "(A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;" "(B) require--to protect class members and fairly conduct the action--giving appropriate notice to some or all class members;" and "(E) deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1). This Rule concerns

exactly what is at issue here, "the fair and efficient conduct of the action," and this Rule lists only "*some* of the orders which may be appropriate." Fed. R. Civ. P. 23 advisory cmte's note (1996 amend.) (emphasis added).

Rule 23(d) permits an order regulating conduct between parties and potential class members. *Gulf Oil Co.*, 452 U.S. at 101-02. In the Eleventh Circuit, there are two standards for these types of Rule 23(d) orders. *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985). Under either standard for Rule 23(d) orders, the Magistrate Judge's factual findings justify the prohibition on retaliation.

### 1. The Prohibition on Retaliation Satisfies the Heightened First Amendment Standard.

In *Gulf Oil Co. v. Bernard*, the Supreme Court held that because an order made it potentially more difficult for the parties to vindicate their rights, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." 452 U.S. 89, 101 (1981). In *Kleiner*, the Eleventh Circuit interpreted this *Gulf Oil* standard through a First Amendment lens and held, "In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy First Amendment concerns if it is grounded in good cause and issued with a 'heightened sensitivity' for first amendment concerns." *Kleiner*, 751 F.2d at 1205. In determining whether good cause exists, courts consider the same four

factors as they do for Rule 26 and that, for the reasons described above, Plaintiffs have satisfied. *Id.* at 1206.

As an initial matter, this heightened First Amendment *Gulf Oil* standard does not apply here. Defendants have not identified any legitimate First Amendment interest in the prohibited speech, namely retaliation or threats of retaliation. Even if they had identified this protected speech, and even if this heightened standard applied, the Order would suffice for the reasons provided above in the discussion about the Order's validity under Federal Rule of Civil Procedure 26(c).

Assuming *arguendo* that a heightened First Amendment standard applies, Defendants make several arguments for why the Order fails to meet it. None is persuasive.

Defendants provide no authority for their argument that Rule 23(d) empowers courts only to regulate speech. ECF No. 256 at 33. It is illogical to read Rule 23(d) as allowing courts to bar class opponents from making threats but not carrying out those threats.

Next, Defendants claim that the Order is not carefully drawn to limit speech as narrowly as possible because "it limits truthful and non-misleading communications concerning the inspections, the interviews, the experts, the interviewers, and the claims in this case." ECF No. 256 at 33-34. This argument is

moot because Plaintiffs do not defend any of the guidelines identified by the Order for the inspections on pages 45 through 51.

Third, Defendants claim that "there is no clear record before this Court justifying such an order." ECF No. 256 at 34. But, as explained above, the record contains uncontested evidence that Defendants, among other things, threatened, insulted, and ordered putative class members not to speak with Plaintiffs' legal team. ECF No. 240 at 4-8, 10-12.

Fourth, Defendants assert that the Order is erroneous because the "Magistrate [Judge] made no findings that the conduct alleged by these inmates was caused by their participation in this lawsuit." ECF No. 256 at 35. This is wrong because, as the Order noted, Mr. Milo, Mr. Cruz, and Mr. Johnson all testified that FDC threatened to harm them if they spoke to Plaintiffs' team. ECF No. 240 at 6, 11. Similarly, Mr. Broadnax and Mr. Milo both testified that Defendants called them "snitches" after they had spoken to Plaintiffs' team. *Id.* at 6, 8.

This record distinguishes this case from those cited by Defendants. After a five-day, twenty-three-witness hearing and a 53-page opinion, the record here is not "undeveloped." *Whitmire v. Monat Glob. Corp.*, No. 18-20636-CIV, 2018 WL 2021355, at *2 (S.D. Fla. Apr. 6, 2018). Moreover, because of the evidence summarized above, it is inaccurate to say that "there is no indication that this

34

alleged intimidation or retaliation was related specifically to" what the "Plaintiffs here challenge." *Alequin v. Darden Restaurants, Inc.*, No. 12-61742-CIV, 2013 WL 3939373, at *11 (S.D. Fla. July 12, 2013).

Fifth, Defendants assert the Order is flawed because "there is no finding that the complained-of conduct threatens the proper functioning of the litigation" and because the putative class members "have not been dissuaded from communicating with Plaintiffs' counsel and have no plans to exclude themselves from this litigation." ECF No. 256 at 35-36. Defendants have not cited any legal authority for an argument that only effective retaliation justifies a protective order. Indeed, this would create an impossible burden because Plaintiffs only learn of retaliation from witnesses who persevered despite Defendants' threats. Regardless, the Order provides that the "retaliation, harassment, and threats of retaliation" in the record "raise[] substantial concern for the fairness and integrity of this litigation." ECF No. 240 at 43.

Sixth, Defendants argue that the Order is clearly erroneous and contrary to law because "the Order fails to reference a single case cited by Plaintiffs in their Motion, except for *Gulf Oil*, supporting the relief ordered" and because "none of the cases cited by Plaintiffs allowed for the relief requested or ordered here." ECF No. 256 at 36. Nothing requires the Court to cite the cases Plaintiffs included in their brief. The leading Supreme Court case on this matter is sufficient. In any

event, for the reasons provided in this Response, Plaintiffs' Proposed Order, ECF No. 238-1, and their Motion, ECF No. 183, the cases Plaintiffs cite support the Court's prohibition on retaliation.

Finally, Defendants argue that the Court lacked the authority to grant Plaintiffs' protective order under Rule 23 because the putative class members did not grieve these abuses. This is incorrect because Plaintiffs' motion for a protective order is not an "action" requiring exhaustion under 42 U.S.C. § 1997e as there was no "filing [of] a complaint with the court" alleging retaliation. Fed. R. Civ. P. 3. Even if exhaustion were required, Plaintiff Johnny Hill vicariously exhausted for the putative class by exhausting his own grievance regarding retaliation related to participating in this case. ECF No. 68 at 3; *Davis v. Inch*, Case No. 3:17-cv-820-J-34PDB, 2019 WL 1400465, at *9 (N.D. Fla. 2019) (finding that one named plaintiff's exhaustion of the grievance process satisfied the PLRA exhaustion requirement for the putative class).

Further, Defendants have not identified a legitimate First Amendment interest in retaliating or threatening to retaliate against Plaintiffs. As a result, it was not clearly erroneous or contrary to law for the Court to prohibit "[r]etaliation and threats of retaliation of any kind relating to an inmate's participation in the ongoing discovery and/or civil litigation." ECF No. 240 at 52.

### 2. The Prohibition on Retaliation Satisfies the Inherently-Conducive-to-Duress Standard.

In cases where the challenged speech is "inherently conducive to overreaching and duress," such as oral solicitations, "it is unnecessary for a trial court to issue particularized findings of abusive conduct." *Kleiner*, 751 F.2d at 1206. "Under such circumstances, the absence of explicit proof or findings of harm or injury is immaterial, and the trial court is empowered to enter prophylactic orders designed to prevent harm before it happens." *Id.* (internal quotation marks and citations omitted). Defendants do not address this "inherently-conducive-to-duress" standard. However, the Order's prohibition on retaliation also meets that standard. Here, Defendants' orders, insults, misrepresentations and threats of violence are more abusive than an employer's campaign to discourage potential class members from participating in a case. *Id.*. The Order's anti-retaliation provision should also be upheld on this basis.

### E. The Separation of Powers Doctrine Allows the Court to Protect Parties and Witnesses from Retaliation.

Defendants argue that the Order is clearly erroneous and contrary to law because it "oversteps this Court's authority and dictates the security measures that must be in place during these inspections, without regard for the implications of such order on the safety and security of the facilities." ECF No. 256 at 36-40. This

argument is only directed to the Order's guidelines for Rule 34 inspections. ECF No. 240 at 45-52. This argument misses the mark.

As an initial matter, Defendants' arguments are moot because Plaintiffs have focused their requested relief to the general prohibition on retaliation that does not specifically involve prison operations. *Dixie Electric Co-op. v. Citizens of State of the Alabama*, 789 F.2d 852, 857 (11th Cir. 1986) ("federal courts are constrained by the Constitution to decide only live cases and controversies"). On the merits of this argument, they are incorrect. An incarcerated person "does not surrender his constitutional rights at the prison gates." *United States v.* Mills, 704 F.2d 1553, 1560 (11th Cir. 1983). Courts—not prisons—are the final arbiters of the law.

### F. The Order's Prohibition on Retaliation is Not a Prior Restraint on Speech.

Defendants argue the "Order is clearly erroneous and contrary to law because it is an unconstitutional prior restraint on speech." ECF No. 256 at 40-41. Defendants did not raise this argument in response to Plaintiffs' motion requesting a prohibition on retaliation and so waived it. *See Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001).

If this Court considers it, Defendants' argument is meritless. They incorrectly assert that the Order "is strikingly similar to the order at issue in *Gulf Oil*" and that the Court did not make a "finding that a compelling interest justified

its imposition." ECF No. 256. at 41. But *Gulf Oil* banned "communications,"

which is no longer at issue here. 452 U.S. at 94–95.

Regarding retaliation, Defendants have not identified a free-speech interest

in retaliation against people because of their participation in this case. There is

none. Rather, the Court found that the compelling reason to issue the Order is a

"substantial concern for the fairness and integrity of this litigation if prison

officials are intimidating and threatening potential plaintiff prisoners or, at the

least, prisoners who may be called to testify as witnesses." ECF No. 240 at 43.

### G. The Order's Prohibition on Retaliation is Consistent with the PLRA's Requirements.

Defendants argue that the Order violates the PLRA. ECF No. 256 at 42-34.

This argument lacks support. Before entering "prospective relief," "a temporary

restraining order" or "preliminary injunctive relief," courts must, under the PLRA,

make particular findings, including that a party violated a "federal right." 18

U.S.C. § 3626(a)(1)-(2). The PLRA defines relief as "all relief in any form that

may be granted or approved by the court" and prospective relief as "all relief other

than compensatory monetary damages." 18 U.S.C. § 3626(g)(7), (9). It does not

reference protective orders, nondispositive motions, pretrial matters, or other

orders entered without the finding that a party violated a federal right, nor does it

apply to these orders. *See, e.g.*, *In re Arizona*, 528 F.3d 652, 658 (9th Cir. 2008)

(finding that an order did not fall within the PLRA because "the district court

appears to have issued the order in connection with the district court's customary pretrial management prerogatives"). Reading the PLRA to cover protective orders, nondispositive motions, and other pretrial matters would sweep all of discovery into its ambit. In the absence of any textual clues, Congress could not have intended this because Congress "does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 468 (2001).

Even if the PLRA did apply, the anti-retaliation provision meets the requirements because it is narrowly drawn to address Defendants' retaliatory conduct, it extends no further than necessary to address such conduct, and it is the least intrusive means to correct Defendants' interference in Plaintiffs' fact gathering process.

### H. The Order's Prohibition on Retaliation Does not Impermissibly Rewrite the Inspection Stipulation.

Defendants claim that the Order impermissibly rewrites the inspection stipulation. ECF No. 256 at 43-44. This argument only applies to the Order's guidelines for Rule 34 inspections, ECF No. 240 at 45-51, and is moot for the reasons provided above.

### I. The Order's Prohibition on Retaliation is Adequately Clear.

Defendants claim the anti-retaliation provision is so vague they "cannot know what conduct would risk contempt and thus no court can enforce it." ECF No. 256 at 45. If true, then Defendants have no way of enforcing their own

February 13, 2020 memorandum to all staff prohibiting "retaliation of any kind" against "any inmate who brings a lawsuit or communicates with counsel." ECF No. 240 at 41. In truth, though, the Court's Order similarly prohibiting "retaliation and threats of retaliation of any kind relating to an inmate's participation in the ongoing discovery and/or civil litigation," ECF No. 240 at 52, is sufficiently clear.

Courts in the Eleventh Circuit have regularly issued similar orders. For example, more than a year ago, this Court ordered that "Defendants, their employees, agents, and officers shall not retaliate against Plaintiff Hill for prosecuting this lawsuit and for communicating with counsel." ECF No. 96 at 3; *see also Titre*, No. 08-61254-CIV, 2008 WL 11331817 at *2 (barring Defendants from "intimidating, threatening, or harassing" current or putative plaintiffs). Defendants have never claimed that the protective order for Plaintiff Hill was unclear.

The Order's specificity on what conduct is prohibited ("retaliation"), who can invoke the order ("inmates"), and the type of speech it protects ("participation in the ongoing discovery and/or civil litigation") distinguishes it from the imprecise "obey the law" orders that Defendants cite. The Order here unambiguously notifies Defendants that if, for example, they continue to call putative class members snitches, threaten to assault them, or deny them food and

water for participating in this case, they will be in violation of the Order. The prohibited conduct is clear.

The authority that Defendants rely on also does not apply because in those cases, the courts issued injunctions under Federal Rule of Civil Procedure 65(d) which was not a basis for the Court's decision. Defendants have not cited any cases that apply this standard to orders issued under Rule 23, Rule 26, or its inherent power. Their argument fails.

## V. Defendants' Objections to the Court's Factual Findings Are Meritless.

As explained above, the proper standard of review is well established: "clearly erroneous or contrary to law." If the Court disagrees and relies on a de novo standard of review that Defendants incorrectly assert, Plaintiffs contest Defendants' attack on the Magistrate Judge's credibility findings and their assertion that he failed to consider facts they deem important. Neither argument is persuasive or legally supported.

Defendants object to Magistrate Judge's credibility determinations. ECF No. 256 at 45-53. But "[o]ne of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses." *Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir. 1980). The Magistrate Judge heard and observed the live testimony of 23 witnesses during the evidentiary hearing in this

42

case. ECF No. 240 at 4. Defendants attack the credibility determinations for only five of these witnesses, and omit that much of Plaintiffs' witnesses' testimony was uncontested. ECF No. 283-1 at 3-5. In any event, "a district court must rehear the disputed testimony before rejecting a magistrate judge's credibility determinations." *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001).

Also, Defendants contest Magistrate Judge's findings of fact because the Order does not contain a specific reference to facts that Defendants regard as important. But Defendants cite no law for the propositions that either these facts are determinative or that the Magistrate Judge should have included them in the Order.

## VI.   **Plaintiffs Contest Defendants' Renewed Hearing Objections.**

Defendants renew the objections that they made during the hearing. ECF No. 254 at 53-54. Plaintiffs contest these objections for the reasons provided during the hearing. They were properly overruled for the reasons provided during the hearing.

## VII.   **Conclusion**

Plaintiffs, people incarcerated in parking-spot-sized cells for 22 hours a day, brought this case to protect themselves and others from disability discrimination and unconstitutional punishment. Through their fact-gathering, Plaintiffs discovered that Defendants' agents had threatened, insulted, ordered, and denied people basic human needs in a way that risked undermining the fair administration

of justice in this case. Based on these facts, they moved for a protective order and the Court correctly found that it had ample authority to grant the motion. Now, Defendants argue that the Court erred and that it must merely watch, powerless, as retaliation continues. This cannot be true.

For the foregoing reasons, Plaintiffs contest only Defendants' Objections to the Order's factfinding, analysis, and prohibition on "[r]etaliation and threats of retaliation of any kind relating to an inmate's participation in the ongoing discovery and/or civil litigation." ECF No. 240 at 52. Plaintiffs do not defend the guidelines for inspections. *Id.* at 45-51.

## CERTIFICATE WORD COUNT

Undersigned counsel, pursuant to Local Rule 7.1(F), certifies the preceding Response to Objections contain 9,867 words.

Date: March 12, 2021                 Respectfully Submitted,

                                     *s/ Sam Thypin-Bermeo*
                                     Sam Thypin-Bermeo
                                     Fla. Bar No. 1019777
                                     Dante P. Trevisani
                                     Fla. Bar No. 72912
                                     Laura A. Ferro
                                     Fla. Bar No. 1015841
                                     Marcel A. Lilavois Jr.
                                     Fla. Bar No. 1016175
                                     Kara Wallis (admitted pro hac vice)
                                     Florida Justice Institute, Inc.
                                     100 SE 2nd St., Ste 3750

Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-
bermeo@floridajusticeinstitute.org
mlilavois@floridajusticeinstitute.org
kwallis@floridajusticeinstitute.org

Kelly Knapp
Fla. Bar No. 1011018
Leonard J. Laurenceau J.
Fla. Bar No. 106987
Southern Poverty Law Center
2 South Biscayne Boulevard
Miami, FL 33131
Telephone: (786) 347-2056
kelly.knapp@splcenter.org
leo.laurenceau@splcenter.org

Lori Rifkin (admitted pro hac vice)
Rifkin Law Office
3630 HIGH STREET #18917
OAKLAND, CA 94619
510-414-4132
Email: lrifkin@rifkinlawoffice.com

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer M. Painter
Fla. Bar No. 110966
Aimee Lim
Fla. Bar. No. 116209
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801

45

Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
aimee@floridalegal.org
jennifer.painter@floridalegal.org

**Attorneys for Plaintiffs**