UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| JAC'QUANN (ADMIRE) HARVARD; JEREMIAH HILL; JUAN ESPINOSA; JEROME BURGESS (a/k/a SHAM'LA GOD ALLAH); JAMES W. KENDRICK, JR.; JOHNNY HILL; AMY FERGUSON and TRACEY DEAN; on behalf of themselves and all others similarly situated, | Case No.: 4:19-cv-00212-MW-MAF |
| Plaintiffs | |
| v. | |
| MARK INCH, in his official capacity as Secretary of the Florida Department of Corrections, and FLORIDA DEPARTMENT OF CORRECTIONS, an Agency of the State of Florida, | |
| Defendants. | |

**PLAINTIFFS' MOTION FOR
CIVIL CONTEMPT AND FOR SANCTIONS FOR WITNESS
INTERFERENCE WITH INCORPORATED MEMORANDUM OF LAW**

I.   **INTRODUCTION**

Defendants and their agents continue to interfere with Plaintiffs' ability to

prosecute their case through ongoing—and escalating—retaliation and threats

against Named Plaintiffs and putative class member witnesses.  Defendants have also failed to take *any* action to prevent further retaliation and intimidation since the Magistrate Judge found, after a five-day evidentiary hearing in January 2021, that FDC staff retaliated against and threatened putative class members.  *See* ECF No. 279 at 2; ECF No. 240 at 40-44.  Plaintiffs' counsel has repeatedly notified Defendants of alarming reports of assaults, threats of physical harm, and harassment of Named Plaintiffs and witnesses, and sought related documents and evidence.  Yet, Defendants simply dismiss all such complaints by Named Plaintiffs and putative class members as "unsubstantiated"—even those included in the findings of fact by the Magistrate Judge.

As the Court has observed, "Defendants control every aspect of their lives, from food to sanitation," ECF No. 279 at 9, making putative class members especially vulnerable to retaliation and intimidation.  Given the retaliatory conduct the Court has already found occurred and another uptick in reports of retaliation and intimidation by Named Plaintiffs and witnesses, court intervention is crucial to preserve their safety and ability to participate in this action.  Indeed, the law authorizes sanctions precisely to stop retaliatory and bad faith litigation tactics before they reach the point of successfully obstructing litigation—or, in this particular case, where Defendants have such power over class members—causing even graver harm to Plaintiffs and witnesses.  *See, e.g., Eagle Hosp. Physicians, LLC*

2

*v. SRG Consulting, Inc.,* 561 F.3d 1298, 1306–07 (11th Cir. 2009) (upholding dismissal as sanction for party's ongoing interception of privileged communications); *Quiroz v. Superior Bldg. Maint., Inc.*, No. 06-21594-CIV, 2008 WL 3540599, at *9 (S.D. Fla. Aug. 12, 2008) (dismissing Plaintiff's complaint with prejudice upon a finding of bad faith where Plaintiff attempted to bribe three witnesses).

Because Defendants have made clear that they will not take any action to stop this retaliation and interference in the absence of further Court orders, Plaintiffs hereby move that the Court: 1) find Defendants in contempt of the Court's January 28, 2020 protective order regarding Mr. Hill and sanction Defendants accordingly; and 2) sanction Defendants for engaging in bad faith misconduct that interferes with fair and just litigation of this case.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Defendants' Retaliation Against Named Plaintiff Johnny Hill

On December 20, 2019, Named Plaintiff Johnny Hill moved for a protective order based on Defendants' employees' brutal physical assault, violent threats, and verbal harassment against him for participating in this lawsuit.  ECF No. 68.  On January 28, 2021, the Court found Mr. Hill's "serious allegations of retaliation against Defendants" credible.  ECF No. 96 at 3.  The Court entered a protective order prohibiting Defendants, their employees, agents, and officers from retaliating against

Mr. Hill for prosecuting this lawsuit and for communicating with counsel "so that this Court may properly achieve the ends of justice entrusted to it." *Id.*

Despite the Court's Order, Defendants and their employees are engaged in an escalating course of retaliatory conduct against Mr. Hill, including violent physical assaults. When Mr. Hill returned to his housing unit after Defendants took his deposition at Suwannee Correctional Institution, Officer Pope-Jones asked him why he had been deposed. Johnny Hill Declaration ("Hill Decl.") at ¶4. Mr. Hill felt uncomfortable telling Officer Pope-Jones that it was for this lawsuit (a case against FDC) because of his prior experience of retaliation, and said it was for his criminal case. *Id.* On January 16, 2021, Officer Pope-Jones entered Mr. Hill's cell while Mr. Hill was alone inside, in violation of FDC policy and procedure, and hit him in the stomach hard enough to knock the wind out of him. *Id.* at ¶6; *see also* ██████ ████████████ Officer Pope-Jones called Mr. Hill a liar for saying that the deposition had been about Mr. Hill's criminal case when it was for a lawsuit against FDC. *Id.* Officer Pope-Jones then hit Mr. Hill in the stomach a second time, this time with his radio, and threatened Mr. Hill to keep his mouth shut. *Id.* Mr. Hill submitted a grievance about this incident. *Id.* at ¶7. He also sought medical

_____

█ ███████████████████████████████████████████ ██████████

█ ███████████████████████████████████████ ████████

███████████████████████████████████████████

attention, and the nurse accused him of lying about Officer Pope-Jones and the assault. *Id.* at ¶9-10.

As part of the meet and confer process regarding this retaliation against Mr. Hill, Defendants informed Plaintiffs that they had found Mr. Hill's allegation "unsubstantiated," but that Officer Pope-Jones violated FDC policy for entering Mr. Hill's cell alone. Defendants claimed that Officer Pope-Jones was purportedly reassigned out of Mr. Hill's dorm and ordered not to have contact with him. However, on Mr. Hill's way to a legal call on April 15, 2021, he passed Officer Pope-Jones, who said words to the effect of "I left for a minute but I'm back and I'll be down there to see you." Hill Decl. at ¶12.

On the following day, April 16, 2021, Mr. Hill was walking back to his cell after a shower and waiting in front of his cell door for it to be opened. Hill Decl. at ¶13; ███████████████ There was reportedly a disturbance elsewhere in the unit and officers ordered people to the ground. Exhibit 6 at 3, 5, 7; Hill Decl. at ¶13. Mr. Hill, who is legally blind, was not aware that the order included him. Hill Decl. at ¶13. When officers approached Mr. Hill, he asked if they were talking to him and then immediately got on the ground. *Id.*; ██████████████ Officers then handcuffed him behind his back, and began escorting him, without the blind cane he

---

█ ████████████████████████████████████
███████████████████████████████

uses to assist him, through the dayroom.  Hill Decl. at ¶13-14; █████████████

After a few steps, Mr. Hill slipped and fell to the floor, face down on his stomach.

Hill Decl. at ¶14; ███████████  Ex. 5 at 1.  The officers positioned themselves

on top of Mr. Hill and held him down with one officer's knee on Mr. Hill's back and

another officer choking him with his hand around the back of Mr. Hill's neck.  Hill

Decl. at ¶14; ███████████.  One of the officers told Mr. Hill that this was for

the grievances he had been writing and whispered in his ear "This is how the n*****

George Floyd died."  Hill Decl. at ¶14.  The officers then lifted Mr. Hill to his feet

and took him out of the dayroom to the sallyport of the entrance to the dorm.  *Id.* at

¶¶14-15; ███████████

In the sallyport, the same group of officers who had held Mr. Hill down on

the dayroom floor unlocked a holding cell, and then several of them went into the

cell with Mr. Hill, who was still handcuffed behind his back.  Hill Decl. at ¶¶15-16;

███████████; Ex. 6 at 3, 5, 7.  Inside the holding cell, the officers proceeded to

hit, kick, and punch Mr. Hill.  Hill Decl. at ¶16.  Before they left, one of them said,

"this is for Pope-Jones."  *Id.* ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████

However, the written reports later completed by the officers alter the order of events.  The incident report signed by Officer Ferguson and dated April 16, 2021 states:

> Officer Sapp and I were placing Inmate Hill into the holding cell when Inmate Hill became physically resistant necessitating reactionary use of force.  During the use of force inmate Hill kicked me in the lower leg.  Inmate Hill's actions necessitated the utilization of reactionary physical force to prevent further battery.

Ex. 5 at 3.

The use of force reports by Officers Ferguson and Sapp, and Sergeant Rathel, all of whom were also involved in handcuffing Mr. Hill and holding him down on the dayroom floor, further revise the order of events and add new details.  These reports, written in identical language (including errors suggestive of cutting and pasting), state:

> [W]hile attempting to place Inmate Hill into the holding cell on the bench, Inmate Hill stood to his feet and became belligerent and yelling.  Officer Ferguson attempted Crisis Intervention Techniques which was [sic] proven successful.  Once Officer Ferguson turned and exited the holding cell, Inmate Hill charged and attempted to exit the holding cell.  Due to Inmate Hill [sic] actions, Officer Ferguson and

myself forced Inmate Hill chest first to the floor and utilized our bodyweight to control Inmate Hill [sic] extremities until additional staff arrived.   Once on the ground Inmate Hill began thrashing his bodyweight and struck Officer Ferguson, we maintained control of Inmate Hill's extremities.

Ex. 6 at 3 (Sapp report); *see id.* at 5 (Ferguson report) & 7 (Rathel report).

Defendants also produced four additional use of force reports, respectively signed by a Captain, a Lieutenant, and two officers, which all contain the identical statements:

I heard an ICS call from Sergeant Dillon Rathel due to a reactionary physical force in E-Dormitory vestibule involving Inmate Hill, Johnny DC#J33728.   Once present in the vestibule I witnessed Officer Tyler Sapp and Officer Jason Ferguson maintain control of Inmate Hill's extremities by utilizing their bodyweight to pin Inmate Hill to the floor of the holding cell.   Once additional staff arrived the holding cell door was secured, and Inmate Hill became compliant with all commands and force ceased.

Ex. 6 at 9, 11, 13, 15.

Defendants found Mr. Hill guilty of two Disciplinary Reports for the events of April 16, 2021: one for disobeying an order, described as Officer Sapp's order in the dormitory dayroom to Mr. Hill "to lay chest first on the ground several times to which inmate Hill did not comply," Ex. 8 at 1; and a second for battery on a correctional officer, described as Mr. Hill's actions in which he "began to thrash his bodyweight and struck Officer Ferguson on the right shin." *Id.* at 3.  The "Statement of Facts" for the Disciplinary Report signed by Officer Ferguson states, "I was involved in a reactionary physical use involving Inmate Hill, Johnny DC#733728

and Officer T. Sapp.  While pinning Inmate Hill to the holding cell floor to gain

compliance and wait for additional staff to arrive, Inmate Hill began thrashing his

bodyweight and struck me on the right shin." *Id.* at 9.

Mr. Hill immediately grieved the officers' April 16, 2021 actions.  Hill Decl.

at ¶19.  Officers Ferguson and Sapp submitted Incident Reports regarding Mr. Hill's

allegations containing the identical statements:

> Inmate Hill alleges that on April 16, 2021 Officer
> [Ferguson/Sapp] and I conducted ourselves in an unprofessional
> manner by using profanity, choking him after he had slipped and fell
> [to/on] the floor, placing our knee on his back after he had slipped and
> fell on the floor and "jumping him in the Holding Cell." I carry myself
> in a professional manner at all times, so therefore at no time during this
> incident did I utilize profanity towards Inmate Hill, nor did I place my
> knee on Inmate Hill's back, nor did I choke Inmate Hill, nor did I
> "jump" Inmate Hill in the Holding Cell.

Ex. 7 at 1& 3.

None of the officers' reports explain why Officers Ferguson and Sapp entered

the sallyport holding cell with Mr. Hill and remained inside with him, rather than

securing Mr. Hill by having him walk into the holding cell and shutting the door

behind him, ██████████████████████████████████████████████████

██████████████████████████████████████████████████. Defendants

did not charge Mr. Hill with any Disciplinary Reports for allegedly "standing up

from the bench" in the holding cell, for becoming "belligerent and yelling," or for

"charging and attempting to exit the holding cell"—███████████████████



*Id.*   Despite these inconsistencies, Defendants rejected Mr. Hill's grievance as unsubstantiated.  Hill Decl. ¶19 & Ex. D.

On April 17, 2021, the day after this use of force incident, Mr. Hill asked an officer to charge his tablet.[4]  Hill Decl. at ¶20.  However, he did not receive his tablet back, and when he asked the officer why his tablet had not been returned, the officer told Mr. Hill that he owed Pope-Jones, and that he owed Pope-Jones more than his tablet.  *Id.*   The next day, April 18, Officer Pope-Jones was in Mr. Hill's dorm, despite the purported no-contact order, and, as he passed Mr. Hill's cell, said words to the effect of "I told you I was back" and "I got you bitch."  *Id.* at ¶21.  Mr. Hill grieved Officer Pope-Jones's April 18, 2021 statements to him.  *Id.*   Between April 17 and 19, 2021, Mr. Hill had repeated issues with his meals—ranging from getting

---

[4] The only people in isolation allowed to have tablets are those in Close Management 3. They must rely on officers to charge their tablets for them.

a soaking wet meal, to an officer spitting tobacco into his food tray, to getting no food at all.  *Id.* at ¶22.

In Mr. Hill's subsequent Close Management review, the Institutional Classification Team used the April 16, 2021 incident to take adverse action against him, not only retaining him in isolation but also transferring him to a more restrictive level of Close Management.  Ex. 9.

Plaintiffs' counsel alerted Defendants to Mr. Hill's reports of retaliation and requested relevant video and documents from Defendants.  Defendants informed Plaintiffs that Mr. Hill's allegations were unsubstantiated, and no further action would be taken other than to put the directive for Officer Pope-Jones to stay away from Mr. Hill in writing.  Plaintiffs' counsel continued to meet and confer with Defendants, requesting depositions of Officer Pope-Jones and the officers involved in the April 16, 2021 incident, as well as additional documentary evidence related to these incidents.

However, as counsel were negotiating these depositions, Mr. Hill reported that on the night of May 25 or 26, 2021, two officers woke him up and told him he had a medical callout.  Hill Decl. at ¶24.  The officers then put side restraints and a waist chain on Mr. Hill and brought him to the nurse's station in the wing, but there were no medical staff.  *Id*.  One officer pushed Mr. Hill, who tripped, and then both

officers punched and kicked Mr. Hill while he was on the floor. *Id.* The attack stopped only when a Sergeant came into the room. *Id.*

### B. Defendants' Retaliation Against Other Named Plaintiffs and Witnesses

On November 23, 2020, Plaintiffs moved for a protective order after Defendants' employees attacked, harassed, and threatened putative class members before, during, and after Plaintiffs' Rule 34 facility inspections. ECF No. 183. The Court referred the matter to the Magistrate Judge, who held a five-day evidentiary hearing in January 2021 that included testimony from 23 witnesses, as well as submission of numerous exhibits. ECF No. 279 at 1-2. "Based on the evidence and the witnesses' testimony, the Magistrate Judge made credibility determinations" and detailed findings of fact, including finding "that there was 'actual overt retaliation by prison officials, as well as threats of retaliation.'" ECF No. 279 at 2. The Magistrate Judge found that putative class member witnesses provided credible testimony that officers had retaliated and intimidated them by, *inter alia*, interrogating them about communications with Plaintiffs' counsel, prohibiting or discouraging them from speaking to counsel, threatening them about disclosing any information during Plaintiffs' inspections, insinuating or making them fear they would be given disciplinary reports for communicating with counsel or filing grievances, placing them on property restriction after speaking with counsel, calling

them snitches, denying them food or giving them "air trays"[5] or otherwise altered meals, and refusing to flush toilets in cells controlled by staff.  ECF No. 240 at 4-15 & 42-43.   Additionally, the Magistrate Judge found that grievances alleging retaliation "are stopped within the institution and do not proceed to outside investigation."  *Id*. at 42.  Because "credible testimony was presented that revealed retaliation exists and is feared," *id*. at 42, and because the record established that Defendants had failed to adequately act to prevent retaliation, the Magistrate Judge entered a protective order on February 8, 2021.  *Id*. at 42-44.

On April 7, 2021, the Court vacated the protective order, explaining that "a protective order prohibiting retaliation or threats of retaliation is nothing more than a directive to obey the law," and was therefore unnecessary to protect Plaintiffs' rights.  ECF No. 279 at 6.  The Court observed that "a showing of retaliation or threats of retaliation would be akin to witness tampering," and "[i]f Plaintiffs can show that Defendants' employees are retaliating or threatening to retaliate against inmates who are participating in this lawsuit, either as potential fact witnesses or potential class members, they may be entitled to sanctions against Defendants under this Court's inherent authority."  *Id*. at 7-8.  Importantly, the Court did not reject the Magistrate Judge's factual findings of retaliation, stating that "the Magistrate Judge issued a lengthy and thoughtful order. . . .  dedicat[ing] roughly 33 pages to the

---

[5] An "air tray" is an empty food tray or bag.

relevant facts." *Id.* at 2.  However, Defendants' position as expressed during meet and confers with Plaintiffs' counsel appears to be that these extensive findings of fact by the Magistrate Judge have no effect, and Defendants consider *all* of the allegations underlying these findings of fact to be "unsubstantiated."  Indeed, Defendants report that they have taken *no* actions since the Magistrate Judge's order to address retaliation and threats of retaliation against Named Plaintiffs and witnesses, including declining to take any corrective action with respect to any of the involved officers.

Named Plaintiffs and witnesses who testified at the evidentiary hearing continue to report retaliation and intimidation by Defendants' employees.  These incidents of retaliation and intimidation—which reflect only those Named Plaintiffs and witnesses still willing to risk publicly reporting in the face of this dangerous and retaliatory environment[6]—include:

<u>Dylicia Gresham</u>

Putative class member Dylicia Gresham testified in the January evidentiary hearing that officers had listened to attorney-client communications, and, as a result of her participation in the case, called her a "snitch" and served her "air trays," and

---

[6] As the Magistrate Judge concluded, "The actions described [in the evidentiary hearing], and feared, would reasonably deter most people; all but the toughest or most stubborn among us would refuse to be involved in an endeavor which is likely to cause greater harm than the potential good promised."  ECF No. 240 at 44.

a sergeant told her that he was going to make her "time as hard as possible" because she "had told on him." ECF No. 240 at 7-8, 12-15. The Magistrate Judge found that Ms. Gresham "gave credible testimony." *Id*. at 12. On May 14, 2021, an affidavit from Ms. Gresham, dated March 15, 2021, was filed with the Court in which Ms. Gresham reported that, since she testified about retaliation, Defendants' employees have slammed her to the ground, failed to provide medical care, threatened further violence, insulted and harassed her, and denied her meals, often making statements specifically linking these actions to Mr. Gresham's participation in the lawsuit. ECF No. 300. Ms. Gresham stated:

> Lt. Carrier threatened me and told me that when we write officers up for misconduct they get promoted instead of punished and he said if I keep writing grievances or crying about the mistreatment to the lawyers that I would not be the first mysterious death in D.O.C. I took this to mean that he would kill me if I kept complaining, which is the purpose of this letter or declaration, because I am now in fear of my life or great bodily harm and I desperately feel like an emergency exists where me and many other inmates who are active in this court case are in imminent risk of general harm or even death.

*Id*. at 4. On May 25, 2021, Plaintiffs' counsel sent a letter to the FDC Office of the Inspector General regarding this retaliation and have not received any response. Ex. 10.

Tracey Dean

Tracey Dean was recently added as a Named Plaintiff in this case. ECF Nos. 306 & 309. Around May 22, 2021, an officer called Ms. Dean a "snitch" in front of

other officers and prisoners, and then made a statement to the effect that Ms. Dean was "involved in that lawsuit over at Lowell" and that she was going to "report everything over here."   Dean Decl. at ¶3.   The same officer has also refused to provide Ms. Dean meals, several times stating something like, "I'm not feeding that one."   *Id.*

<u>James Kendrick</u>

On April 16, 2021, officers escorting Named Plaintiff James Kendrick to his cell after an insulin injection threw Mr. Kendrick to the ground, knelt on him, and punched him.   Kendrick Decl. at ¶2.   Later that day, a sergeant came to Mr. Kendrick's cell and told him that he could tell his attorneys about the incident with the officers but that he would not be able to prove it because the cameras in that dorm hallway do not work.   *Id.* at ¶3; ███████████████   Mr. Kendrick filed a grievance about this incident.   Kendrick Decl. at ¶3.   ████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

─────────────────────

█ ██████████████████████████████████

███

██████████████████████████████████████████   ████████████████

████████   ████████████████████████

In Mr. Kendrick's subsequent Close Management review, the Institutional Classification Team used the April 16, 2021 incident to continue him on Close Management II for another six months.  Ex. 15; Kendrick Decl. ¶4.

Derrick Grantley

Putative class member Derrick Grantley is a witness who provided testimony regarding retaliation in the January evidentiary hearing.  His testimony included that he believed Defendants retained him on Close Management in retaliation for his participation in this case rather than releasing him to General Population as recommended by his classification officer and members of the Institutional Classification Team.  *See* ECF No. 240 at 8-9 & 15.  In March 2021, Mr. Grantley was finally released from Close Management III to General Population after 21 years in confinement.  Derrick Grantley Decl. at ¶1.  However, on May 20, 2021, two days after Mr. Grantley had a legal call with Plaintiffs' counsel, four sergeants rushed into the classroom where Mr. Grantley was taking his GED exam, handcuffed him, and put him in Administrative Confinement (AC).  *Id*. at ¶ 3.  As of June 8, 2021, Mr.

---

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

Grantley had been in AC for over two weeks without receiving a disciplinary report or any explanation for his removal from General Population. *Id*. at ¶ 4.

<u>Jyrone Lumpkin</u>

Family members of a witness who testified at the January hearing reached out to Plaintiffs' counsel after the family was contacted by another putative class member, Jerome Lumpkin, who expressed concern about Defendants' treatment of their family member.  Plaintiffs' counsel scheduled a legal call with Mr. Lumpkin for June 8, 2021.  On June 8, while waiting in classification for his legal call, Mr. Lumpkin requested to use the bathroom and was told by an officer that if he used the bathroom, he would be refusing his legal call.[11]  Lumpkin Decl. at ¶3.  Mr. Lumpkin objected, and officers then escorted him back to the dorm, saying he refused the call. *Id.*  They also took the bagged lunch Mr. Lumpkin had been carrying (because he would be out of the dorm for lunch due to the legal call), threw it on the ground, and made comments Mr. Lumpkin understood as trying to provoke him.  *Id*. at ¶¶ 3-4. When he told the officers that he would tell his lawyers this information, the officer said words to the effect of, "well, tell your lawyer she can suck my dick while I

---

[11] Defendants have repeatedly employed the witness interference strategy of forcing putative class members to choose between basic needs and accessing legal counsel.  *See* ECF No. 240 at 13-14 & 42-43; *see also* Exhibit 2 to Plaintiffs' Response and Memorandum of Law in Opposition to Defendants' Motion to Limit Rule 34 Inspections at PLS 0007790-91.

smoke my cigar because she's not going to be able to do nothing to help you." *Id*.
at ¶4.

### C. Plaintiffs' Efforts to Meet and Confer

In addition to the prior meet and confer efforts regarding retaliation against
Mr. Hill, on June 4, 2021, after receiving a surge of retaliation and interference
reports, Plaintiffs' counsel sent a letter to Defendants describing the incidents,
requesting preservation and production of relevant documents and video footage,
and providing notice of this motion.  The parties met and conferred on June 8, 2021,
and Plaintiffs explained their position that, because of the late May assault on Mr.
Hill and additional reports from other named Plaintiffs and witnesses, Defendants
needed to take prompt action to prevent further retaliation.  Defendants denied that
they had retaliated against Mr. Hill, and accused Plaintiffs' counsel of coaching
individuals to say they experienced retaliation.  Defendants claimed they needed a
longer period to investigate the other allegations, but doubted that any had merit
because of Defendants' conclusion that all Plaintiffs' prior allegations of retaliation
and intimidation (inclusive of those the Magistrate Judge found to have occurred)
have been unsubstantiated.

Mr. Hill's and other Named Plaintiffs' and witnesses' reports of retaliation
and intimidation by Defendants' agents and employees—and Defendants' failure to
take any action to stop these unlawful actions—present an urgent situation requiring

judicial intervention to preserve the safety of Named Plaintiffs and witnesses and Plaintiffs' ability to gather evidence to prosecute their case.

## III.   MEMORANDUM OF LAW

### A. Defendants are in Contempt of the Court's January 28, 2020 Protective Order Regarding Johnny Hill and the Court Should Sanction Them Accordingly

In its January 28, 2020 protective order, the Court warned Defendants that it would hold them in contempt if they retaliated against Mr. Hill for prosecuting this lawsuit and for communicating with counsel.  ECF No. 96.  The Court should now sanction Defendants for continuing to retaliate against Mr. Hill in contempt of the Order.

### 1.  Sanctions are Warranted Where Clear and Convincing Evidence Shows Violation of a Protective Order

District courts have inherent power to enforce compliance with their lawful orders through civil contempt.  *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (citing *Shillitani v. United States,* 384 U.S. 364, 370 (1966)).  The petitioning party in a civil contempt proceeding "bears the burden of establishing by 'clear and convincing' proof that the underlying order was violated."  *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990).  This party must demonstrate that "1) the allegedly violated order was valid and lawful; 2) the order was clear, definite, and unambiguous; and 3) the alleged violator had the ability to comply with the order."  *McGregor v. Chierico*, 206 F.3d

1378, 1383 (11th Cir. 2000).  Once the moving party makes this showing, the burden shifts to the opposing party to produce evidence explaining their noncompliance at a show cause hearing.  *Citronelle-Mobile*, 943 F.2d at 1301; *Loc. Access, LLC v. Peerless Network, Inc.*, No. 617CV236ORL78EJK, 2021 WL 1819230, at *8 (M.D. Fla. Jan. 6, 2021).  "At such a hearing, the alleged contemnor is 'allowed to show either that he did not violate the court order or that he was excused from complying.'" *Loc. Access*, 2021 WL 1819230, at *8 (citing *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990)).  Excuse from compliance may be supported "only by showing that [defendants] have made 'in good faith all reasonable efforts to comply.'" *Citronelle-Mobile*, 943 F.2d at 1301 (citing *United States v. Ryan,* 402 U.S. 530, 534 (1971)).  Importantly, "the focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue."  *Howard Johnson Co.*, 892 F.2d at 1516.

A court may impose both coercive and compensatory sanctions for violation of an order. *Citronelle-Mobile*, 943 F.2d at 1304.  When devising sanctions to ensure compliance, the Court should consider "the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id*.  Appropriate sanctions may

include a coercive daily fine, a compensatory fine, coercive incarceration, and attorneys' fees and costs.  *Id.*

### 2. This Court Should Sanction Defendants For Their Ongoing Retaliation Against Johnny Hill in Violation of the Protective Order

In January 2020, based on Mr. Hill's reports that Defendants had assaulted, threatened, and harassed him for participating in this case, the Court issued a protective order prohibiting Defendants, their employees, agents, and officers from retaliating against Mr. Hill for prosecuting this lawsuit and communicating with counsel.  ECF No. 96.  As described in detail above, despite the Court's protective order, Defendants' employees have continued and escalated their retaliatory attacks on Mr. Hill.

Defendants' ongoing violation of the Court's January 28, 2020 protective order for Mr. Hill constitutes sanctionable contempt.  The Order is clear, definite, and unambiguous: it specifically prohibits Defendants, their employees, agents, and officers, from retaliating against Mr. Hill for prosecuting this lawsuit and communicating with Plaintiffs' counsel.  ECF No. 96.  Defendants did not challenge the Order as invalid or unlawful, and it remains in effect.

Defendants cannot contest that they have had sufficient ability and time to comply with the January 28, 2020 protective order.  Yet, in the last year-and-a-half, besides a purported brief removal of Officer Pope-Jones from Mr. Hill's unit, which

does not appear to have been properly implemented, Defendants have not pointed to any other action they have taken regarding retaliation against Mr. Hill. Despite the Court finding it "necessary" and "prudent" to issue a protective order based on Mr. Hill's allegations of retaliation, ECF No. 96 at 3, Defendants maintain that all of Mr. Hill's allegations are unsubstantiated. The evidence, including Mr. Hill's declarations in support of the December 2019 motion for a protective order, his declaration in support of the instant motion, Mr. Hill's contemporaneously-filed grievances of each incident, video footage corroborating his chronology of events, the unreliability of the involved officers' statements "justifying" their use of force— and even Defendants' own purported (and unenforced) shift of Officer Pope-Jones off Mr. Hill's unit—demonstrates otherwise.

Despite having clear notice and the ability and time to comply with the Court's order to stop Defendants' agents and employees from retaliating against Mr. Hill, Defendants have continued to permit officers to repeatedly target him for violence and retribution. Accordingly, Plaintiffs request that the Court hold Defendants in contempt of its protective order for Mr. Hill, and order Defendants to: 1) transfer him to another facility where he has not previously reported retaliation from participating in this case; 2) provide him another Close Management Review hearing where the retaliatory incidents of April 16, 2021, are not used to retain him in

confinement; 3) pay a fine that the Court finds sufficient and just; and 4) pay the attorney's fees and costs Plaintiffs incurred in bringing this Motion.

### B. Defendants Have Engaged in Litigation Misconduct Warranting Sanctions

#### 1. Witness Tampering Demonstrates Sanctionable Bad Faith Conduct Pursuant to the Court's Inherent Authority

In addition to continued retaliation against Mr. Hill, Defendants' employees have also perpetrated a campaign of retaliation and intimidation against other Named Plaintiffs and witnesses. The Magistrate Judge found credible testimony "that revealed retaliation exists and is feared," ECF No. 240 at 42, and reports of similar incidents have again escalated in recent months, as described above.[12] This conduct constitutes witness tampering, interferes with Plaintiffs' ability to prosecute their case, and should be sanctioned by the Court pursuant to its inherent power to address litigation misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991); *see also* ECF No. 279 at 6-7 (summarizing courts' inherent power to manage their affairs and impose sanctions). "[D]istrict courts have broad discretion to determine whether to impose sanctions and the nature or amount of those sanctions" when it finds a party acted in bad faith, including where a party delays or disrupts litigation or hampers the enforcement of a court order. *Peer v. Lewis,* 606 F.3d 1306, 1316 (11th

---

[12] Plaintiffs also incorporate by reference the evidence of witness obstruction submitted in Exhibits 1 and 2 in support of Plaintiffs' Response and Memorandum of Law in Opposition to Defendants' Motion to Limit Rule 34 Inspections, and described in Section E of that document.

Cir. 2010); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *see also* ECF No. 279 at 6-7.

Although the protective order issued by the Magistrate Judge was ultimately vacated by the Court, the underlying findings of fact in that Order and the Court's April 7, 2021 Order gave Defendants clear and unambiguous notice about their employees' retaliatory conduct and the risk that Defendants would be sanctioned if they continued this pattern.  Defendants' failure to take corrective action with respect to any of the retaliation the Magistrate Judge found to have occurred, or to take any action at all to prevent further retaliation, as well as Defendants' employees' actual retaliation in the ensuing time period, demonstrate bad faith.

Additionally, as described below, Defendants' employees' conduct also demonstrates bad faith because it constitutes witness tampering and interference under three federal statutes.  Although "the Court's authority to issue sanctions ... is not predicated upon a determination of criminal guilt of violating of these statutes but instead upon the Court's inherent power," courts presiding over civil proceedings often use standards set forth in these statutes as guidelines in evaluating claims of bad faith litigation conduct.  *In re Brican Am. LLC Equip. Lease Litig.*, 977 F.Supp.2d 1287, 1292 (2013); *see generally Govender,* 2014 WL 12625086, at *1.

### a.  Witness Tampering Under 18 U.S.C. § 1512

Defendants' retaliatory and intimidating conduct constitutes witness tampering, which is a federal crime under 18 U.S.C. § 1512. This statute prohibits, *inter alia*, the use, threat to use, or attempt to use physical force, intimidation, threat, corrupt persuasion, or misleading conduct toward another person with the intent to influence, delay, or prevent their testimony in an official proceeding, or to cause or induce them to withhold testimony from an official proceeding.[13] Additionally,

---

[13] The complete definitions of witness tampering as enumerated in 18 U.S.C. § 1512(a) and (b) are as follows:

18 U.S.C. § 1512(a)(2)(A) defines witness tampering as the use, threat to use, or attempt to use physical force against another person with intent to "influence, delay, or prevent the testimony of any person in an official proceeding."

18 U.S.C. § 1512(a)(2)(B) defines witness tampering as the use, threat to use, or attempt to use physical force against another person with intent to cause or induce any person to:
(i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
(ii) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
(iii) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
(iv) be absent from an official proceeding to which such person has been summoned by legal process.

18 U.S.C. § 1512(b)(1) defines witness tampering as the knowing or attempted use of intimidation, threat, corrupt persuasion, or misleading conduct toward another person with intent to "influence, delay, or prevent the testimony of any person in an official proceeding."

18 U.S.C. § 1512(b)(2) defines witness tampering as the knowing or attempted use of intimidation, threat, corrupt persuasion, or misleading conduct toward another person with intent to:
(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

under 18 U.S.C. § 1512(d), witness tampering is defined as intentional harassment of another person thereby hindering, delaying, preventing, or dissuading any person from attending or testifying in an official proceeding must be proved. "'[H]arassment'" means a serious act or course of conduct directed at a specific person that causes substantial emotional distress in such a person and serves no legitimate purpose." 18 U.S.C. § 1514(d)(1)(B).

Since the January evidentiary hearing, Defendants' employees have physically assaulted at least two Named Plaintiffs and one witness in connection with their participation in this case, harassed and intimidated Named Plaintiffs and putative class members verbally and by denying them meals, threatened them with additional physical assault and denial of meals, mail, property, and privileges, and misled Plaintiffs' counsel to believe that witnesses refused legal calls. *See supra*, Section II. These actions meet the definitions of witness tampering under 18 U.S.C. § 1512 and show Defendants' bad faith.

### b. Witness Tampering Under 18 U.S.C. § 1513(b)

Defendants' retaliatory conduct against Named Plaintiffs and witnesses for participating in this case through declarations and hearing and deposition testimony, also constitutes witness tampering under 18 U.S.C. § 1513(b). This statute prohibits

---

(D) be absent from an official proceeding to which such person has been summoned by legal process.

a person from knowingly engaging in any conduct causing bodily injury to another person or damaging the tangible property of another person, or threatening to do so, "with intent to retaliate against any person for the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding."   18 U.S.C. § 1513(b). Intent to retaliate against a witness under § 1513 can be demonstrated by circumstantial evidence.  *See United States v. Tapia*, 59 F.3d 1137, 1141 (11th Cir. 1995) (intent to retaliate was reasonably inferred when defendant confirmed informant's identity prior to attacking him and testified that did not like snitches).

After Ms. Gresham testified at the January 2021 evidentiary hearing, Defendants' employees physically assaulted Ms. Gresham and called her a "snitch." ECF No. 300 at 2.  A captain and a lieutenant then refused her medical attention because she had "told on Sgt. Manners to the Court."  *Id*.  Following Mr. Grantley's testimony at the January 2021 evidentiary hearing and a subsequent legal call with his attorney in connection with submission of a declaration in support of class certification, Defendants seized Mr. Grantley and transferred him from General Population to Administrative Confinement.  Grantley Decl. at ¶3-4.  Officer Pope-Jones physically assaulted Mr. Hill after he sat for a deposition in this case.  Hill Decl. at ¶6.  During the recent time period in which Ms. Dean joined the instant

litigation as a Named Plaintiff, an officer called her a snitch in front of other officers and prisoners, subjecting her to a risk of a physical harm.  Dean Decl. at ¶3-5.

In each instance, Defendants' employees caused bodily injury or threatened to do so after Named Plaintiffs and witnesses gave testimony, spoke to Plaintiffs' counsel for purposes of compiling a declaration, or joined the instant litigation as a Named Plaintiff.   In doing so, they violated 18 U.S.C. § 1513(b) and further exhibited bad faith conduct.

### c. Interference with Due Administration of Justice Under 18 U.S.C. § 1503

Defendants' employees' above-described actions in the form of physical assaults, threats, intimidation, and harassment of putative class members also violate 18 U.S.C. § 1503 and further demonstrate bad faith litigation conduct.  *See United States v. Thomas*, 916 F.2d 647, 650 n.3 (11th Cir. 1990) (noting that 18 U.S.C. § 1503 is "a catch-all provision that generally prohibits conduct that interferes with the due administration of justice").  This statute prohibits anyone from influencing, obstructing, impending, or endeavoring to influence, obstruct, or impede, the due administration of justice through corrupt persuasion, threats, or use of force.  *See* 18 U.S.C. § 1503.  While specific intent to impede the administration of justice must be demonstrated under § 1503, the act does not need to in fact be successful in influencing, obstructing, or impeding the due administration of justice for § 1503 to apply.  *See United States v. Johnson*, 713 F.2d 654, 661 (11th Cir. 1983); *United*

*States v. Aguilar*, 515 U.S. 593, 599 (1995) (concluding an "endeavor" suffices). Defendants' employees' have attempted to obstruct the instant civil rights lawsuit using violent, threatening, and harassing tactics in violation of 18 U.S.C. § 1503.

### C. The Court Should Sanction Defendants to Preserve the Integrity of this Litigation and Deter Future Misconduct

Defendants' ongoing intimidation, harassment, and assaults of Named Plaintiffs and witnesses constitutes witness tampering and litigation interference that fundamentally undermines the ability of the federal court to administer justice in this litigation.  Defendants' failure to take corrective action to stop this retaliation demonstrates the necessity of judicial intervention through sanctions to preserve the integrity of the federal litigation process.

Courts have "the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  *Chambers*, 501 U.S. at 44-45. "Sanctions under the Court's inherent authority may include monetary penalties, adverse inferences, and the striking of claims or defenses," among others.  *Sprint Sols., Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290, 1295 (S.D. Fla. 2015); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005).  The findings of fact by the Magistrate Judge and the evidence offered by Plaintiffs clearly demonstrate Defendants' bad faith litigation conduct, including serious and ongoing intimidation and retaliation against Named Plaintiffs, witnesses, and putative class members.

Such conduct warrants sanctions because it interferes with Plaintiffs' ability to litigate their case and the Court's ability to fairly assess relevant evidence.

In order to balance the scales and deter future such conduct, Plaintiffs request that the Court impose the following types of sanctions against Defendants: drawing adverse and permissive evidentiary inferences, requiring Defendants to submit a plan to the Court for how they will address, remediate, and deter retaliation against putative class members, and ordering Defendants to pay a fine as well as attorneys' fees and costs associated with bringing this motion.

Specifically, based on the Magistrate Judge's findings, Defendants' subsequent failure to take any remedial action, and the evidence offered by Plaintiffs of ongoing and recent retaliation and intimidation, the Court should presume that testimony offered in this case by putative class members is credible and reliable. Accordingly, the Court should presume that the declarations offered by 8 Named Plaintiffs and 30 putative class members in support of class certification, including four of the six individuals highlighted in this motion, are truthful and accurate. The Court should also draw the adverse inference against Defendants that additional putative class members would testify similarly if not for Defendants' dissuasive conduct, as reflected by Defendants' successful intimidation and interference with Ms. Gresham's participation in the case, described *supra*. *See Great American Insurance Co. v. Horab*, 309 F.2d 262, 264 (8th Cir. 1962) (stating that in a civil

case, evidence that a litigant, or his agent, has attempted to influence or suppress a witness is receivable as an admission or as an indication of the litigant's consciousness that his case is weak or unfounded or that his claim is false or fraudulent, and that, specifically, an attempt to persuade a witness not to testify is admissible against the party responsible for that attempt).

The Court should further order Defendants to submit a plan to the Court for how they will address, remediate, and deter retaliation against putative class members by their employees, agents, and officers.  Such an order is an appropriate sanction for the ongoing course of misconduct and also accords necessary deference to prison officials.  As part of this remediation, Defendants should be required to provide new Close Management reviews to Mr. Hill, Mr. Kendrick, and any other Named Plaintiffs or witnesses who have been continued, upgraded, or placed in restrictive housing settings based on the retaliatory incidents described above or the January evidentiary hearing.

Because Defendants failed to take any action to curb retaliation and intimidation despite clear and unambiguous notice of the retaliation and threats against putative class members reflected in the Magistrate Judge's factual determinations, the Court should also order Defendants to pay a fine in an amount that the Court finds appropriate to deter retaliatory conduct in the future, and order Defendants to pay Plaintiffs' attorneys' fees and costs incurred in bringing this

Motion, including any evidentiary hearing. *See Chambers*, 501 U.S. at 45-46 (holding that a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons) (citing *Alyeska Pipeline service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs request the Court hold Defendants in contempt of its January 28, 2020 protective order and sanction Defendants for their ongoing course of litigation misconduct including witness retaliation and interference.

Dated:  June 15, 2021                     Respectfully submitted,

*s/ Lori Rifkin*
Lori Rifkin*
CA Bar No. 244081
Rifkin Law Office
3630 High St. #18917
Oakland, CA
Telephone: (510) 414-4132
lrifkin@rifkinlawoffice.com

Kelly Knapp
Fla. Bar No. 1011018
Leonard L. Laurenceau
Fla. Bar No. 106987
Marta Jaszczolt
Fla. Bar No. 119537
Southern Poverty Law Center
2 South Biscayne Blvd.
Miami, FL 33137
Telephone: (786) 457-7310
kelly.knapp@splcenter.org

leo.laurenceau@splcenter.org
marta.jaszczolt@splcenter.org

Krista Dolan
Fla. Bar No. 1012147
Southern Poverty Law Center
106 E. College Ave., #1010
Tallahassee, FL 32301
Telephone: (850) 688-3908
Krista.dolan@splcenter.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Marcel A. Lilavois, Jr.
Fla. Bar No. 1016175
Kara Wallis
Fla. Bar No. 1028563
Florida Justice Institute, Inc.
PO BOX 370747
Miami, FL 33137
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-bermeo@floridajustice.org
kwallis@floridajusticeinstitute.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Rachel Ortiz
Fla. Bar No. 83842
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332

andrea@floridalegal.org
christopher@floridalegal.org
rachel.ortiz@floridalegal.org

\* *Admitted Pro hac vice*
**Attorneys for Plaintiffs**

<u>**Certificate of Word Limit**</u>

Pursuant to N.D. Local Rule 7.1(F), the undersigned counsel hereby certifies that this motion contains 7,807 words.

*s/ Lori Rifkin*
Lori Rifkin

35