UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; JEREMIAH HILL;
JUAN ESPINOSA; JEROME
BURGESS (a/k/a SHAM'LA GOD
ALLAH); JAMES W. KENDRICK,
JR.; JOHNNY HILL; and AMY
FERGUSON; and TRACEY DEAN
on behalf of themselves and all
others similarly situated,

       Plaintiffs,

vs.                       CASE NO.:  4:19-cv-00212-MW-MAF

MARK INCH, in his official
capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

       Defendants.

_____/

## DEFENDANT MARK INCH'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendant Mark Inch, in his official capacity as Secretary of the Florida Department of Corrections, requests the Court enter partial summary judgment on the First Cause of Action of the Third Amended Complaint for Plaintiffs' claims that the Florida Department of Corrections' ("FDC" or the "Department") written

policies on restrictive housing violate the Eighth and Fourteenth Amendments to the U.S. Constitution.

First, this claim fails because Plaintiffs are making a facial challenge to these written policies and yet cannot demonstrate that "no set of circumstances exist" under which these policies would be constitutionally valid.

Second, as to the Youth and Serious Mental Illness ("SMI") subclasses, Plaintiffs claim that those groups of inmates should never be confined in restrictive housing and therefore their claims are improperly being made under 42 U.S.C. Section 1983.

## I.   INTRODUCTION AND BACKGROUND

This case is about whether the Department's policies regarding restrictive housing are constitutional under the Eighth Amendment. With a 100+ page complaint, Plaintiffs make various allegations challenging prison conditions generally and summarize that such "policies and practices" violate the Eighth and Fourteenth Amendments to the U.S. Constitution. *See* [D.E. 309, First Cause of Action]. Yet, at its core, the Third Amended Complaint challenges "FDC's isolation policies and practices," which is defined as either being in-cell for 22 hours or more a day or being confined in statuses defined by the Florida Administrative Code, i.e. Administrative Confinement (AC, Rule 33-602.220), Disciplinary Confinement (DC, Rule 33-602.222), Close Management (CM, Rule

33-601.800), or Maximum Management (MM, Rule 33-601.820). [D.E. 309, ¶¶ 7, 81, 89]. Hereinafter, these four statuses will be referred to as "restrictive housing" and the Florida Administrative Code provisions will be referred to as the "Confinement Policies."

As became apparent with the filing of their Motion for Class Certification, Plaintiffs are essentially challenging the Confinement Policies *as written* and argue that such policies constitute cruel and unusual punishment no matter the length of confinement or penological justification for any particular inmate. *See* [D.E. 311; *see also* Pl. Harvard's Supp. Rsp. to Defs.' Ints., No. 12(b) (the "implementation of the policies, *as written*, results in constitutional and statutory violations") (emphasis added), attached as **Exhibit F**]. However, Plaintiffs' facial challenge must fail because Plaintiffs cannot meet their burden of proving the Confinement Policies can never be applied in a constitutional manner.

It is true that the Third Amended Complaint and Motion for Class Certification fold in allegations regarding individual cell conditions experienced by "some" inmates and "practices"[1] that only a portion of putative class member

---

[1] Plaintiffs allege that "in practice" the Department does not even follow its own written policies, which also subjects people to a substantial risk of harm. *See, e.g.* [D.E. 309 at ¶ 88 ("But despite FDC's written policies, in practice it determines restrictions by staffing availability, housing location, whether someone is in more than one type of isolation at the same time, and other arbitrary reasons. . . . And even if FDC followed its own written policies, which it frequently does not, the paltry amount of 'privileges' and out-of-cell time in these written policies does not

declarants and Plaintiffs have attested to occurring – however, at bottom, Plaintiffs admit that "FDC regulates all aspects of isolation through centralized policies, including the Florida Administrative Code, technical manuals, post orders, and healthcare procedures." [D.E. 311 at p 6]. Thus, allegations regarding rodents, plumbing issues, and sexual harassment serve as mere background to the essential claim in this case – whether the Confinement Policies violate the Eighth Amendment because these policies subject people to a substantial risk of serious psychological and physiological harm. [D.E. 309 at ¶ 81].

### a. The History of This Case Demonstrates Plaintiffs' Position to be That They Are Making a Facial Challenge

Early in this case, Defendants did not understand Plaintiffs to be making a facial challenge and filed a Motion to Transfer Venue, arguing that Plaintiffs' claims were dependent upon the circumstances of the individual Plaintiffs, who at the time resided in the Middle District of Florida. [D.E. 26]. This effort was met with strong opposition by Plaintiffs who argued their case was not "limited to a series of 'individual acts' affecting only these seven Plaintiffs, this class action challenges Defendants' statewide policy and practice[.]" [D.E. 36 at 2]. Plaintiffs further argued that such "statewide policy and practice, promulgated and enforced

---

prevent the substantial harm caused by isolation."); *see also* Ex. F., Int. No. 12(b) ("FDC frequently fails to follow these policies, adding to the constitutional and statutory violations.")].

in Tallahassee, exposes *all* persons in isolation to a substantial risk . . . in violation of the Eighth Amendment." *Id.* Plaintiffs stated: "[t]hus, the basic assumption underlying Defendants' motion – *that this case centers on what happened to these individual Plaintiffs – is simply incorrect*." [*Id.* at 2-3 (emphasis added)].

This Court, in denying Defendants' Motion to Transfer Venue, agreed and found that "[t]his case is about statewide policies and practices related to isolation promulgated and enforced by Defendants in Tallahassee." [D.E. 52 at 1]. The Court further noted that:

> [c]ontrary to Defendants' assertion that this case is about "individual acts," Plaintiffs' claims arise primarily from the policy and practice of isolation promulgated in Tallahassee. *The fact that Plaintiffs allege specific facts showing implementation of the policy and practice of isolation* does not convert Plaintiffs' theory of the case from a statewide policy and practice of isolation to individual acts of isolation.

[D.E. 52 at 2 (emphasis added)].

Defendants also moved to dismiss the First Amended Complaint. [D.E. 28] In response, Plaintiffs argued that when Defendants "dissect[ed] Plaintiffs' claims into discrete incidents" they "confuse 'allegations' with 'claims' for relief." [D.E. 42 at 15-16]. They argued: "Plaintiffs *claims* are that Defendants violate their constitutional and statutory rights through Defendants' statewide isolation policy and practice. The number of times, for example, that Plaintiff J.H. was taken to an exercise cage, or the number of hours Plaintiff Meddler received education

5

services, are factual allegations illustrating deprivations of basic human needs, not stand-alone claims for relief." [*Id.* at 16]. Further, "this case does not rest on specific events or practices". [*Id.*]

The Court, in denying Defendants' Motion to Dismiss, again found the Plaintiffs' "claims do not arise from the specific instances of isolation. . . . Plaintiffs' claims do not rest on specific types of isolation at specific prisons but, instead, rest on the cumulative effects of the statewide policies and practices of isolation that subject all persons to the same substantial risk of serious harm, to which Defendants have been deliberately indifferent." [D.E 54 at 15 (internal citation omitted); *see also* 17 (finding Defendants' argument "that each Plaintiff's claims are separate because each Plaintiff has unique circumstances surrounding their isolation" to "misunderstand[ ] Plaintiffs' claims" because the "claims arise out of the policies and practices related to isolation promulgated in Tallahassee.")].

On May 28, 2021, Plaintiffs filed their Motion for Class Certification. With that Motion, Plaintiffs repeat that "FDC regulates all aspects of isolation through centralized policies, including the Florida Administrative Code, technical manuals, post orders, and healthcare procedures." [D.E. 311 at 6; *see also* 32 ("FDC regulates the conditions of isolation through its centralized policies for operations in AC, DC, CM, and MM that apply across all prisons."); 34 ("None of these conditions and deprivations common to FDC's isolation units throughout the

6

system are in dispute *because FDC's written policies expressly require them*.")
(emphasis added)].

Aside from commentary about disciplinary decisions and length of time in restrictive housing, which this Court has found is not a part of this case, *see* D.E. 54 at 18 -- Plaintiffs' Motion for Class Certification focuses on the alleged "common" policy and practice of "isolating people in filthy, 60-to-80 square feet cells [ ] for 22 to 24 hours a day, and depriving them of normal human contact, minimal levels of exercise, and environmental stimulation for months or years at a time." [D.E. 311 at 2].

In their "Statement of Facts" in support of these "deprivations," Plaintiffs list a variety of policies based on the Florida Administrative Code. *See* [D.E. 311 at 8-14.][2]   For example, Plaintiffs claim that "FDC denies people in all types of

_____

[2] In Section B of the Motion for Class Certification, Plaintiffs also make claims regarding the size of "most" cells, the fact that "some" cells do not have windows and for those that do have windows they are "often" covered or frosted. Plaintiffs also claim that "many" cells are grimy and infested with rats and cockroaches, and that "many" cells have plumbing in disrepair. [D.E. 311 at 8-9]. It is clear from the terms used that Plaintiffs do not even contend these conditions are common. Nevertheless, these allegations appear to be "factual allegations illustrating deprivations of basic human needs, not stand-alone claims for relief." In fact, the new claims regarding hygiene are not mentioned in the Third Amended Complaint or Plaintiffs' responses to interrogatories – thus there is currently no Eighth Amendment claim being made related to hygiene. *See Wilson v. Seiter,* 501 U.S. 294, 296 (1991) (finding "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for

isolation normal human contact" and then cite to various sub-parts of the Confinement Policies concerning phone, visitation, and dayroom privileges. [D.E. 311 at 9-10]. Plaintiffs also complain about the policies limiting showers, outdoor recreation, property, books, periodicals, job assignments, and programming – policies which are all contained in the Confinement Policies. And, they complain about various security procedures, such as restraints, cell searches, and property restriction – again all of which are covered by the Confinement Policies.

In addition to claims that these "common" written policies provide the basis for their Eighth Amendment claim, Plaintiffs also seek to certify several "practices" which are in effect claims that FDC *sometimes* does not follow its own written policies. *See* [D.E. 311 at 9 ("in practice, FDC frequently suspends all visits and phone calls"), 10 ("people in CM II and III do not consistently receive the few hours of dayroom afforded under FDC policies."), 11 ("in practice, most people do not receive even this meager amount [of exercise provided under the Rule]."), 12 ("in practice, staff conduct these searches . . . with no privacy, and sometimes while officers laugh and sexually harass them."), 12 ("in practice, staff

example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

– at the direction of leadership – use cell searches to 'wreak havoc' like a 'hurricane' any time a person leaves their cell"), 14 ("FDC systematically denies people in isolation even the scant programs and services permitted under FDC's written policies"), 14 ("FDC's admittedly dangerous levels of understaffing result in the failure to provide people in isolation with services including recreation, dayroom, phone calls, and security checks."), 15 ("FDC pressures people in isolation to refuse showers, recreation, dayroom, and healthcare appointments to avoid repercussions")].

Despite these "practice" claims, Plaintiffs' position in this litigation has been clear. They are challenging the *written* policies promulgated and enforced in Tallahassee. Thus, Defendant Inch seeks partial summary judgment on the First Cause of Action to the extent that claim is based on the written Confinement Policies of the Department.[3] Plaintiffs are making a facial challenge to these policies and yet cannot demonstrate that no set of circumstances exist whereby these policies would not be considered constitutional.

---

[3] To the extent Plaintiffs' claim is based on the Department's failure to follow the policies promulgated and enforced in Tallahassee (i.e. the Confinement Policies), it is not clear how those claims remain in this case based on Plaintiffs' position in repeated filings or how such institution- and officer-specific conduct can be certified. Nevertheless, to the extent this claim is being made, Defendant does not seek summary judgment on that claim

### b. Plaintiffs' Eighth Amendment Claims on Behalf of the Youth and SMI Subclasses

In addition to the claim on behalf of the main class, Plaintiffs also bring Eighth Amendment claims on behalf of three subclasses: a Youth subclass, a Serious Mental Illness ("SMI") subclass, and a Physical Disability Subclass. *See* [D.E. 309].[4] With the Youth and SMI subclass claims, Plaintiffs seek an order prohibiting the Department from ever placing these inmates in restrictive housing (in effect requiring the Department to release from restrictive housing all inmates within those subclasses).

For example, Plaintiffs allege: "[t]he substantial risk of serious harm Defendants' isolation policies and practices cause the Youth and SMI subclasses is so heightened that there is no viable remedy to address this constitutional violation while maintaining them in isolation as currently used by FDC." [*Id.* at ¶ 199].

And, with their Motion for Class Certification, Plaintiffs argue that "[a]n additional common question for each of the Youth and SMI Subclasses is whether their risk from the cumulative impact of the deprivations and conditions is so high, given their respective vulnerabilities, that FDC should exclude them from isolation." [D.E. 311 at 38; *see also* D.E. 311-9 at ¶ 86 ("As I have noted, the prison system's *failure to exclude* mentally ill prisoners form these units places

---

[4] Defendant contends that the claims on behalf of all three subclasses, including the Physical Disability subclass, fail the *Salerno* test.

them at an unreasonable risk of grave harm"); D.E. 311-10 at ¶ 23-24 (" . . . FDC procedures and practices *do not exclude* prisoners with serious mental illness from placement and continued stay in restrictive housing."); D.E. 311-12 ¶ 39 ("As supported by the studies and literature about the psychological harms of isolation, especially for youths, this group *should not be subject to isolation* because of the risk of harm to their continuing physiological, emotional, and social development.") (emphasis added)].

Because Plaintiffs seek an order prohibiting the Department from placing members of the Youth and SMI subclasses in restrictive housing, Defendant Inch seeks partial summary judgment on the First Cause of Action as it relates to those claims because those claims should have been brought as a writ of habeas corpus, not a Section 1983 claim.

## II.   UNDISPUTED FACTS

There are six levels of restrictive housing. Those levels of housing are governed by the Florida Administrative Code. *See* Fla. Admin. Code, Rules 33-602.220 (AC), 33-602.222 (DC), 33-601.800 (CMI, CMII, CM III), and 33-601.820 (MM) (hereinafter the "Confinement Policies"). Those Code provisions are attached as **Exhibits A-D**, respectively.

In addition, to the provisions of the Confinement Policies, health services for inmates in restrictive housing are governed by Procedure 403.003, which is attached as **Exhibit E**.

### III.   **MEMORANDUM OF LAW**

#### A. **Standard of Review**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

When a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner. *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007).

#### B. **Plaintiffs Bring a Facial Challenge to the FDC Policies and Procedures Concerning Restrictive Housing**

Plaintiffs bring a facial challenge to the Confinement Policies as they challenge the "policies promulgated and enforced by the Defendants in Tallahassee" not as they apply to them, but in *all* applications to *all* inmates. *See, e.g.* [D.E. 290 at 7 ("Plaintiffs seek injunctive relief to remedy a systemic risk of harm *to all persons in isolation*. This risk of harm stems primarily not from each class member's individual experience of isolation or mental health harms, but, rather, from the conditions and cumulative deprivations imposed by FDC in its

isolation units and the baseline risk of harm created for *any person subjected to it.*") (emphasis added)].

"A facial challenge is an attack on a law itself as opposed to a particular application." *City of Los Angeles v. Patel,* 576 U.S. 409, 415 (2015); *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000) ("A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself."). By contrast, where "plaintiffs seek to vindicate their own rights, the challenge is as-applied." *Jacobs v. The Fla. Bar,* 50 F.3d 901, 906 (11th Cir. 1995); *see also Ross v. Duggan,* 402 F.3d 575, 583 (6th Cir. 2004) ("in an as-applied challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. Therefore, the constitutional inquiry in an as-applied challenge is limited to the plaintiff's particular situation.")

The Supreme Court in *Doe v. Reed,* 561 U.S. 186, 194 (2010) recognized that in determining whether a constitutional challenge is facial or as-applied, "[t]he label is not what matters. The important point is that plaintiffs' claim and the relief that would follow [ ] reach beyond the particular circumstances of these plaintiffs." If so, then the plaintiffs "must [ ] satisfy our standards for a facial challenge to the extent of that reach." *Id.*

For example, in *Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 857 (11th Cir. 2013), a union brought a Section 1983 claim against the Florida governor challenging the constitutionality of an executive order that directed all state agencies to provide for mandatory drug testing for all "prospective new hires" and random drug testing for all existing employees. Despite recognition from the plaintiff that the executive order had some constitutional applications, the district court entered an order essentially striking down the executive order and enjoining its implementation as to all current employees. On appeal, the dispute centered on whether the relief granted was facial or as-applied. *Id.* at 862. The Eleventh Circuit found the district court granted facial relief because the relief was not limited only to the unconstitutional applications of the executive order, but rather covered *all* applications. *Id.* at 864. Because the relief granted by the district court "had enough characteristics of facial relief," the court found that it must meet *Salerno's* rigorous standard. *Id.* at 865; *see also Maxi-Taxi of Fla., Inc. v. Lee County Port Authority,* 883-84 (11th Cir. 2008) (finding allegations of complaint challenging "rules and regulations" did not allege that the defendant unequally applied a facially neutral regulation, rather that such regulations on their face violated the constitution); *see also United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 914 (10th Cir. 2016) (discussing the distinction between facial and as-applied challenges).

As Plaintiffs have repeatedly stated in this case, they are not challenging "individual acts" or what happened to the seven named Plaintiffs, instead they are challenging the "statewide policy and practice, promulgated and enforced in Tallahassee [which] exposes all persons in isolation to substantial risk." [D.E. 36 at 2-3]. The relief sought here reaches beyond the particular circumstances of the named Plaintiffs because Plaintiffs' position is that the Confinement Policies violate the Eighth Amendment in *all* applications. Further, the relief sought is not limited in application, but rather would apply to *all* inmates who are or will be in AC, DC, CM, or MM, no matter the duration in confinement or penological justification for their placement in restrictive housing. There is no carve-out for those inmates who only spend a day or two in confinement. There is likewise no carve-out for those inmates whose behavior even Plaintiffs would agree justifies their placement in confinement.[5] The relief sought by Plaintiffs asks this Court to declare the Confinement Policies unconstitutional, even when applied to an inmate who spends a single day in confinement after murdering a correctional officer. There is no attempt to limit the relief to the particular circumstances of the Plaintiffs or to the applications for which they deem unconstitutional. It is their

---

[5] In fact, Plaintiffs have stipulated that that the conduct underlying the charges in various disciplinary reports may be taken as true, for the purposes of this lawsuit. [D.E. 75].

position that *all* applications of the Confinement Polices as to all inmates violate the Eighth Amendment. *See* [Rsp. To Int. No. 12, **Ex. F**].

As such, Plaintiffs seek relief that goes beyond their particular circumstances and therefore make a facial challenge to the Confinement Policies.

### C. Plaintiffs' Facial Challenge to the Confinement Policies Fails as a Matter of Law

The general rule for evaluating facial challenges is that the challenger of the policy "must establish that no set of circumstances exists under which the [policy] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); s*ee also Frandsen*, 212 F.3d at 1235 (stating that "no set of circumstances" is the general rule for evaluating facial challenges in the Eleventh Circuit); *United States v. Ruggiero,* 791 F.3d 1281, 1285 (11th Cir. 2015) (same). "The fact that [a policy] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid...." *Salerno*, 481 U.S. at 745. This heavy burden makes such an attack "the most difficult challenge to mount successfully against an enactment." *Id*.

"Facial challenges [ ] run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Washington State Grange v. Washington State Rep. Party,* 552 U.S. 442, 450

(2008) (internal quotations omitted). Facial challenges also "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. [The Court] must keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Id.* at 451 (internal quotations omitted).

Plaintiffs cannot maintain a facial challenge to the Confinement Policies because they cannot demonstrate that there are "no set of circumstances" whereby the Confinement Policies could be constitutionally applied. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1313 (11th Cir. 2009) ("mere possibility of a constitutional application is enough to defeat a facial challenge"); *Williams v. Pryor*, 240 F.3d 944, 954-55 (11th Cir. 2011) (because statute barring sale of adult toys could be constitutionally applied to minors, facial challenge failed); *Wenzel v. Bankhead,* 351 F. Supp. 2d 1316, 1322 (N.D. Fla. 2004) (because, under a blanket testing policy, "at least some [agency] employees" could be tested in compliance with the Fourth Amendment, facial challenge to drug-testing policy failed).

### a.  *The Eighth Amendment Standard*

In prison litigation, the Eighth Amendment is violated when the defendant "is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Swain v. Junior,* 961 F.3d 1276, 1285 (11th Cir. 2020) (quoting *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)). To establish a deliberate-

indifference claim, a plaintiff must make both an objective and subjective showing. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the objective component, the plaintiff must demonstrate "a substantial risk of serious harm." *Id.* Under the subjective component, the plaintiff must prove "the defendants' deliberate indifference" to that risk of harm by making three sub-showings: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Id.* (quoting *Lane,* 835 F.3d at 1308).

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." *Swain,* 961 F.3d at 1285. "A plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'" *Id.* (quoting *Farmer,* 511 U.S at 834.). Even where "prison officials . . . actually knew of a substantial risk to inmate health or safety," they may nonetheless "be found free from liability if they responded reasonably to the risk" and "even if the harm ultimately was not averted." *Id.* (quoting *Farmer,* 511 U.S at 844).

### b. The Confinement Policies are Constitutional as Written

The Eleventh Circuit is clear that that "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." *Sheley v. Dugger,* 833 F.2d 1420, 1428-29 (11th Cir. 1987) (finding "[b]ecause Sheley apparently has adequate food, clothing, and sanitation, the conditions of his confinement in CM do not *on their face* violate the Eighth

Amendment) (emphasis added). For this reason alone, Plaintiffs' facial challenge to the Confinement Policies fails and partial summary judgment should be entered in Defendant's favor.

### i. Plaintiffs Ignore the Length of Confinement

In addition, Plaintiffs' facial challenge to the Confinement Policies fails because Plaintiffs have placed no durational limit to their challenge. As the Supreme Court has recognized: "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. [Conditions] . . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney,* 437 U.S. 678 (1978); *see also Sheley,* 833 F.2d at 1429 ("[i]n reviewing the Eighth Amendment claims of prisoners confined in segregation, federal courts of appeals have recognized that the length of time in isolation is a factor which must be considered.").

Yet, length of time is not a factor in Plaintiffs' claims. Despite allegations of "months" and "years" in restrictive housing, Plaintiffs' challenge to the Confinement Policies is not based on any specific time in restrictive housing – they do not claim, for example, that the conditions of confinement in FDC prisons violates the Eighth Amendment after 30 days in restrictive housing. Instead, their claims rest on the notion that one day in confinement is too much under the Eighth Amendment. *See, e.g.* [D.E. 309, ¶ 169 ("Plaintiffs seek to represent a class

consisting of all people in the custody of [FDC] who are, or will be in the future, in [AC, DC, CM, MM] or any substantially equivalent restrictive housing unit used by FDC where people are locked in their cells, alone or with a cellmate, 22 hours or more per day.")].

Thus, the inquiry for this Court is whether Plaintiffs can demonstrate that there are "no set of circumstances" where the Confinement Policies can be constitutionally applied even for a single day. As described in those Policies, inmates in restrictive housing have a bed, toilet, running water, food, clothing, and hygiene materials. *See* **Exs. A-D**. Staff from health services visit the inmate on a daily basis. *Id.* And, the inmate is monitored every 30 minutes by a correctional officer. *Id.* Thus, it cannot be said that the conditions under which an inmate is subjected for a single day in restrictive housing subjects an inmate to a "substantial risk of serious harm." *See Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) (an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety is needed for an Eighth Amendment violation).

In fact, this issue has already been analyzed in *Osterback v. McDonough,* 549 F. Supp. 2d 1337 (M.D. Fla. 2008), where the court found the policies regarding close management in Florida could be constitutionally applied. In *Osterback,* the court certified a class of CM inmates. The Department served, and

Plaintiffs accepted, a Revised Offer of Judgment (ROJ). The court entered an order on the ROJ, finding that it met or exceeded that which would have been ordered by the Court if plaintiffs prevailed at trial on the merits. *Id.* at 1341. Following a hearing on a Motion to Terminate the Injunction under the Prison Litigation Reform Act, the court made findings regarding several factors relevant to this case. The court found CM inmates are housed in units that are suited for extended confinement; they have adequate opportunities to communicate with each other; they have adequate access to the day-room and reading materials, telephones, radios and television; they have adequate opportunities to exercise; they have adequate access to educational opportunities; and, they have adequate opportunities to make canteen purchases and engage in visitation. *Id.* at 1362-63. As such, the court terminated the injunctive relief contained in the ROJ finding there was no ongoing constitutional violation.

Thus, following *Osterback* it cannot be said that the same conditions are now unconstitutional in *all* applications, even when imposed for a single day, when a district court has previously determined that they met constitutional muster. As the *Osterback* decision shows, there cannot be "no set of circumstances" where the Confinement Policies are found constitutional because one district court has already made this determination.

The *Osterback* court is not alone in finding conditions of confinement in "restrictive housing" or "solitary confinement" constitutional. *See, e.g. Hutto v. Finney*, 437 U.S. 678, 686, (1978) (affirming district court decision which determined that the confinement of two prisoners in a single cell on a restricted diet for 30 days did not violate the Eighth Amendment); *Anthony v. Warden*, 823 F. App'x 703, 708–09 (11th Cir. 2020) (finding six-month term in administrative segregation does not offend the Eighth Amendment); *Dorrough v. Hogan*, 563 F.2d 1259 (5th Cir. 1977) (class action challenging the conditions of confinement in segregation unit, specifically restrictions on light and air, hot temperatures, complaints about meals, exercise, education and work programs, and visitation did not amount to cruel and unusual punishment); *Alfred v. Bryant,* 378 F. App'x 977, 980 (11th Cir. 2010) (finding conditions of confinement alleged – sleeping on floor, inadequate medical care, and unsanitary food service – did not rise to the level of an Eight Amendment violation); *Hernandez v. Fla. Dep't of Corr.,* 281 F. App'x 862, 866 (11th Cir. 2008) (affirming dismissal and finding that routine deprivation of lunch for five days a week for five months, exposure to a cold cell because of a broken window, and verbal abuse by officers was insufficient to state an Eighth Amendment claim); *Novak v. Beto,* 453 F.2d 661, 665 (5th Cir. 1971) (no Eighth Amendment violation when prisoner in solitary confinement was fed 2 slices of bread per day, unlimited water, and a full meal every 3 days, and that restrictive

diet did not extend beyond 15 days); *Stewart v. Crawford,* 452 F. App'x 693 (8th

Cir. 2011) (inmate did not show he was denied adequate exercise in segregation –

he was allowed out of his cell for three hours per week and could exercise in cell);

*Rahman X v. Morgan,* 300 F.3d 970, 974 (8th Cir. 2002) (affirming denial of Eighth

Amendment claim, finding deprivations in segregation cell for 26 months were not

"sufficiently serious," including only being allowed out of cell for recreation for

three hours a week and inability to watch television in his cell).

> ii.  Plaintiffs Ignore the Penological Justification for Confinement

Further, Plaintiffs' facial challenge to the Confinement Policies fails because

their claims, and the relief sought, are not limited to those inmates for which

placement in restrictive housing or the restrictions imposed would not be

penologically justified. *See, e.g.* [D.E. 309 at ¶¶ 150-156]. Despite claims that

some inmates are placed in restrictive housing for improper reasons, the relief

sought is not limited to only those inmates who were improperly placed in

restrictive housing but in fact includes inmates for whose behavior even Plaintiffs

would agree justifies placement in restrictive housing for even a single day. *See*

[D.E. 309 ¶ 151 (recognizing there are a "few people" who pose an ongoing

security threat)]. Yet, Plaintiffs' challenge to the Confinement Policies seeks

wholesale change to those policies with no consideration for the individual

justifications for imposing such restrictions, even for one day. At a minimum,

Plaintiffs' claims challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

Plaintiffs cannot show that there is no penological purpose to placing *any* inmate in restrictive housing or imposing the conditions and restrictions under the Confinement Policies on *any* inmate. For example, in *Bass v. Perrin,* 170 F.3d 1312, 1315 (11th Cir. 1999), two CM inmates had their outdoor recreation time suspended for several years and challenged this suspension under the Eighth Amendment. The Eleventh Circuit found that while restriction on outdoor exercise certainly involves the "infliction of pain," this pain could not be said to be unnecessary – i.e., "totally without penological justification" because of the safety and security threat posed by the two plaintiffs. *Id.* at 1316. The court noted that both plaintiffs were incarcerated for violent crimes, and since incarceration both plaintiffs had continued to engage in violent behavior, including murder, and both plaintiffs attempted to escape during outdoor recreation time. *Id.* The Eleventh Circuit concluded that under these circumstances the "complete denial to the plaintiffs of outdoor exercise, although harsh, did not violate the Eighth Amendment." *Id.* at 1317.

Thus, the Eleventh Circuit has previously determined that restrictions on out-of-cell time can be constitutionally applied to at least two inmates in close

management based on penological justification. Other conditions of confinement have likewise met constitutional muster in the face of penological justification. *See Stallworth v. Wilkins,* 802 F. App'x 435, 443-44 (11th Cir. 2020) (allegations that inmate was placed on administrative confinement and denied outdoor recreation for six weeks failed to state an Eighth Amendment claim because of penological justification); *O'Connor v. Kelley*, 644 F. App'x 928, 932 (11th Cir. 2016) (decision to place inmate on "strip-cell" status (i.e. property restriction) for weeks did not violate the Eighth Amendment); *Woodson v. Whitehead,* 673 F. App'x 931, 932-33 (11th Cir. 2016) (affirming dismissal of complaint challenging placement on property restriction); *Turner v. Warden, GDCP,* 650 F. App'x 695, 701-02 (11th Cir. 2016) (affirming summary judgment on claim based on "strip cell" status); *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) (affirming summary judgment challenging strip cell status for three months because defendant was justified in imposing those conditions); *Harris v. Ostrout,* 65 F.3d 912, 916 (11th Cir. 1995) (affirming summary judgment on claim challenging policy that inmates in close management be searched before they leave their cells and noting that "appellant produced nothing to rebut the presumption of reasonableness which we must attach to such prison security regulations."); *Ortiz v. Secretary for Dept. of Corrections*, 156 F. App'x 132, 133 (11th Cir. 2005) ("Visitation privileges are a matter subject to the discretion of prison officials."); *Block v. Rutherford,* 468 U.S.

576, 589 (1984) (finding prohibition of contact visits was reasonably related to legitimate governmental objectives).

### iii.   The Department is Not Wanton

Plaintiffs cannot demonstrate that there are "no set of circumstances" where the Confinement Policies could be constitutionally applied because they cannot establish the Confinement Policies are "wanton" – i.e. the "deliberate indifference to a substantial risk of serious harm to a prisoner." For example, in *Bass,* the Eleventh Circuit found the Department was not "wanton" because evidence showed that the Department took various steps to ensure the plaintiffs were not harmed as a result of their conditions of confinement, including daily cell-front medical evaluations, weekly mental health evaluations, and a booklet providing methods for in-cell exercise. 179 F.3d at 1317.

As was the case in 1999, the current Confinement Policies also require daily cell-front medical evaluations and monitoring by mental health. **Exs. A-E**. Thus, it cannot be said that the Department is "wanton" or "deliberately indifferent" to *all* inmates in restrictive housing.

* * *

In sum, Plaintiffs' request for an expansive judicial pronouncement about the FDC's policies and procedures regarding restrictive housing is the precisely the kind of ruling that federal courts, cognizant of their carefully delineated role in the

system of separated powers, are supposed to avoid. To succeed on their facial attack, Plaintiffs must demonstrate that there is no conceivable manner in which the Confinement Policies can be enforced consistent with the Eighth Amendment. Plaintiffs cannot meet this "extreme burden" and partial summary judgment should be entered in Defendant Inch's favor.

### D. Plaintiffs' Eighth Amendment Claim on Behalf of the Youth and SMI Subclasses Fails as a Matter of Law

Plaintiffs seek to exclude the Youth and SMI subclasses from restrictive housing. *See* [D.E. 309 at ¶ 199; D.E. 311 at 38]. However, this type of relief is only available pursuant to a writ for habeas corpus, not under 42 U.S.C. § 1983. *See Banks v. Jones,* 232 So. 3d 963, 966 (Fla. 2017) ("[W]e hold that a petition for habeas corpus remains the correct mechanism by which to challenge a reassignment [to close management]"); *Hartley v. Ellis,* No. 8:09-CV-465-T-23TBM, 2012 WL 4378013, at *1 (M.D. Fla. Sept. 25, 2012) ("habeas corpus is the proper means for challenging Hartley's disciplinary confinement") (citing *Krist v. Ricketts,* 504 F.2d 887, 887-88 (5th Cir. 1974)); *Nelson v. Campbell,* 541 U.S. 637, 643 (2004) ("§ 1983 must yield to the more specific federal habeas statute, with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence."); *Hutcherson v. Riley,* 468 F.3d 750, 754 (11th Cir. 2006) ("[I]f a claim

can be raised in a federal habeas petition, that same claim cannot be raised in a separate § 1983 civil rights action.").

Here, the Plaintiffs are challenging the fact of confinement for the Youth and SMI subclasses, asserting that inmates within those subclasses should be excluded from *any* restrictive housing regardless of the conditions. In the Eleventh Circuit, such claims are not permitted under 42 U.S.C. § 1983 and should be brought, instead, via a petition for habeas corpus relief. *See Krist,* 504 F.2d at 887-88 ("release from administrative segregation . . . falls into the category of fact or duration of . . . physical imprisonment."); *Streeter v. Hopper,* 618 F.2d 1178 (5th Cir. 1980) (in dicta, court recognized that a claim "seeking release from the imposition of administrative segregation without due process. . . would be appropriately treated as a habeas corpus petition."); *Medberry v. Crosby*, 351 F.3d 1049, 1053 (11th Cir. 2003) (challenge to disciplinary confinement treated as habeas corpus petition); *Daker v. Warden*, 805 F. App'x 648, 650 (11th Cir. 2020) (acknowledging that a habeas corpus claim is actionable where a prisoner is placed in disciplinary segregation.).

As a result, Defendant Inch is entitled to partial summary judgment on the claims made under the First Cause of Action on behalf of the Youth and SMI subclasses.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant Mark Inch, requests partial summary judgment on the First Cause of Action in the Third Amended Complaint for (1) claims made based on FDC's written confinement policies and (2) the Youth and SMI subclasses.

## <u>CERTIFICATE OF WORD COUNT</u>

I certify that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 6,527 words, excluding the parts exempted by said Local Rule.

Respectfully submitted,

*/ s / Samantha Duke*
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
            sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE

Florida Bar No. 0017056
JEFFREY J. GROSHOLZ, ESQUIRE
Florida Bar No. 1018568
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:        nsmith@rumberger.com

and

JOSHUA D. LERNER, ESQUIRE
Florida Bar No.:  0455067
RUMBERGER, KIRK & CALDWELL
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130-3037
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580
E-mail:  jlerner@rumberger.com
Attorneys for Defendants,
 Mark Inch and Florida
 Department of Corrections

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 10, 2021, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to the following:   Leonard J. Laurenceau at

leo.laurenceau@splcenter.org;  Kelly Jean Knapp at  Kelly.knapp@splcenter.org;

Marta    Jaszczolt    at    marta.jaszczolt@splcenter.org;    Krista    Dolan    at

Krista.dolan@splcenter.org;        Dante        Pasquale        Trevisani        at

dtrevisani@floridajusticeinstitute.org;        Laura        Anne        Ferro        at

lferro@floridajusticeinstitute.org   and   mllosa@floridajusticeinstitute.org;   Sam

Thypin-Bermeo at sthypin-bermeo@floridajusticeinstitute.org; Marcel A. Lilavois,

Jr.,     at     mlilavois@floridajusticeinstitute.org;     Kara     Sheli     Wallis     at

kwallis@floridajusticeinstitute.org;  Andrea  Costello  at  andrea@floridalegal.org;

Christopher   M.   Jones   at   Christopher@floridalegal.org;   cjones@filsinc.org;

fils@filsinc.org; Rachel M. Ortiz at rachel.ortiz@floridalegal.org; Alexis Alvarez

at     alexis.alvarez@floridalegal.org;     Rebecca     R.     Klonel     at

rebecca.klonel@floridalegal.org; and Lori Rifkin at lrifkin@rifkinlawoffice.com.

/ s / *Samantha Duke*
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
          sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
JEFFREY J. GROSHOLZ, ESQUIRE
Florida Bar No. 1018568
RUMBERGER, KIRK & CALDWELL

Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:        nsmith@rumberger.com

and

JOSHUA D. LERNER, ESQUIRE
Florida Bar No.:  0455067
RUMBERGER, KIRK & CALDWELL
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130-3037
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580
E-mail:  jlerner@rumberger.com
Attorneys for Defendants,
  Mark Inch and Florida
  Department of Corrections

15622116.v1