IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD, et al.,

    Plaintiffs,

v.                                       Case No. 4:19-cv-212-AW-MAF

MARK INCH, Secretary of Florida
Department of Corrections, et al.,

    Defendants.

_____/

### ORDER GRANTING MOTION FOR RULE 35 EXAMINATIONS

This lawsuit challenges the Florida Department of Corrections' use of solitary confinement. Defendants moved for an order permitting mental health examinations of seven named plaintiffs.[1] ECF No. 280. The proposed examination conditions are outlined in an attachment to the motion. ECF No. 280-2. Plaintiffs oppose these exams and contend that there is no good cause or genuine controversy to warrant them. ECF No. 287. Additionally, Plaintiffs seek to limit the exams if they are permitted. *Id.* at 14-19.

---

[1] Defendants' motion requested an examination of Amy Ferguson, ECF No. 280 at 1, but her claims have been dismissed, ECF No. 333. Since Ferguson is no longer a party, this order does not apply to her.

1

**I.   STANDARD**

"On a motion for good cause," Federal Rule of Civil Procedure 35 allows a court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1), (a)(2)(A). The moving party must demonstrate that both the in-controversy and good-cause requirements are met. *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964). And "[m]ental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule." *Id.* at 121. Finally, an order requiring an exam "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B).

**II.   ANALYSIS**

**A.   "In Controversy"**

Plaintiffs' mental condition is not "in controversy" merely because it is relevant to the case. Rather, the mental condition must be "really and genuinely in controversy." *Schlagenhauf*, 379 U.S. at 118. To find that a mental condition is in controversy, district courts generally look for a claim of emotional distress accompanied by "an allegation of specific mental or psychiatric injury or disorder"; "a claim of unusually severe emotional distress"; "plaintiff's offer of expert testimony to support a claim of emotional distress"; or "any allegation of present,

2

ongoing, or permanent mental injury or disorder." *Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs*, 315 F.R.D. 612, 614 (N.D. Fla. 2016) (marks and citation omitted). This list, though, is not exhaustive. *Id.* at 615.

Here, Plaintiffs have alleged present, ongoing, or permanent mental injuries, and their claim of deliberate indifference involves an allegation of unusually severe emotional distress. *See, e.g.*, ECF No. 309 ¶ 15 ("In isolation, Ms. Harvard suffered from ongoing severe mental health symptoms, including hallucinations, delusions, and suicidality."); ¶ 21 ("As a result of the severe deprivations of exercise, mental stimulation, and normal social contact in isolation, J.H. has no release for his adolescent energy and his mental health deteriorates."); ¶ 27 ("Mr. Espinosa is afraid of dying of cancer and the lack of in-cell activities left little else to think about while locked in a tiny cell. He often thought about suicide in isolation. His depression and mood swings worsened in isolation, prompting Defendants to increase his psychiatric medications but otherwise providing no meaningful mental health services."); ¶ 39 ("When Defendants isolated Mr. Kendrick in June 2018, they determined he had no mental health symptoms. But after months of suffering deprivations of basic human needs in isolation, he has become anxious and depressed and has contemplated suicide. . . . [H]is depression continues to worsen in isolation."); ¶ 41 ("Mr. Hill is legally blind and suffers from severe mental health symptoms including hallucinations and suicidality."); ¶ 45 ("Throughout his decade

in isolation, Mr. Hill has experienced severe symptoms arising from his deteriorating mental health. He has harmed himself by cutting his arms and neck and attempting to hang himself multiple times. After years in isolation, Mr. Hill swallowed a razor blade, which resulted in an esophageal tear and required medical treatment."); ¶ 55 ("FDC has diagnosed Ms. Dean with borderline personality disorder, post-traumatic stress disorder (PTSD) and bipolar disorder. While in isolation, she has experienced anxiety, depression, panic attacks, manic episodes, auditory and visual hallucinations, insomnia, and suicidality."); ¶ 58 ("While in isolation, Ms. Dean has engaged in self-harm by frequently cutting herself and attempting suicide at least three times in her isolation cell. . . . [H]er symptoms became so severe that FDC was forced to hospitalize her until the present date."); ¶ 68 ("The most widely documented consequences of isolation are its psychological effects. . . . The psychological effects include anxiety, depression, insomnia, confusion, withdrawal, emotional flatness, cognitive disturbances, hallucinations, paranoia, psychosis, and suicidality."); ¶ 80 ("[Isolation] is a form of psychological torture, inflicts psychological and physical pain, and exposes everyone to a substantial risk of serious harm.").

In addition, Plaintiffs will offer expert testimony to support their claims of emotional harm. And their expert acknowledged that "evaluation of this risk of harm to a sample of individuals who have experienced restrictive housing such as the

named plaintiffs is essential for [her] to formulate [her] opinion." ECF No. 287-2 ¶ 7. It is reasonable that Defendants' expert needs to perform an evaluation to form his opinion in response.

Plaintiffs argue that the named Plaintiffs' individual mental conditions are not in controversy because "[t]he primary controversy in this systemic challenge is whether Defendants are deliberately indifferent to a substantial risk of serious harm to everyone in isolation." ECF No. 299 at 6. This is unpersuasive. Plaintiffs have cited nothing to suggest that mental condition must be the *primary* controversy. As discussed above, Plaintiffs' claims involve allegations of unusually severe emotional distress and present and ongoing mental injuries. Therefore, Plaintiffs' mental conditions are in controversy within the meaning of Rule 35. These mental conditions clearly exceed the "merely relevant" threshold even if they fall short of being the primary controversy.

**B.     "Good Cause"**

Rule 35's good-cause requirement is separate from its in-controversy requirement, but the two inquiries are "necessarily related." *Schlagenhauf*, 379 U.S. at 119. The court examines both relevance and need to determine whether the movant has shown good cause. *Pearson v. Norfolk-S. Ry. Co.*, 178 F.R.D. 580, 582 (M.D. Ala. 1998). Relevance was discussed above, so "[t]he question is whether there is a need for the information which the examination may reveal." *Id.; see also*

5

*Brennan v. Thomas*, 780 F. App'x 813, 819 (11th Cir. 2019) (upholding finding of no good cause where movant didn't show that the examination sought "would add anything to the information already available to him."). Both "[t]he ability of the movant to obtain the desired information by other means" and whether plaintiff intends to offer expert testimony to prove their claims are relevant to need. *Schlagenhauf,* 379 U.S. at 118 (1964); *see also Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 392 (S.D. Tex. 2013) ("courts have continually looked to whether the plaintiff has retained his own experts, and whether he intends to prove his claims through their testimony at trial, as relevant to a finding of 'good cause.'" (citations omitted)).

Defendants argue that Plaintiffs' mental health records and deposition testimony cannot serve as a substitute for a clinical interview. ECF No. 296 at 3-6. Dr. Saathoff, Defendants' expert, stated both that he has "reviewed the relevant mental health and medical records of the named plaintiffs in this case" (ECF No. 296-1 ¶ 6) and that this review "is not sufficient on its own, to assess the impact of restrictive housing on [named plaintiffs]" (*id.* ¶ 16). Similarly, he stated that "relying on the named plaintiffs' deposition testimony is insufficient," and he noted that "the goals of the two processes are different." *Id.* ¶¶ 18, 19. Finally, Dr. Saathoff stated that "the American Academy of Psychiatry and Law Practice Guideline for the Forensic Assessment states that if [his] assessment is based only upon a records

review without an interview, this limitation must be indicated in any report [he] compile[s]." *Id.* ¶ 17.

Defendants have demonstrated good cause. Plaintiffs' expert intends to offer opinions related to "the risk of harm to prisoners in FDC restrictive housing." ECF No. 287-2 ¶ 6. And she has interviewed Plaintiffs for this purpose. *Id.* Defendants intend to offer expert testimony in response to Plaintiffs' expert testimony. And Defendants' expert intends to opine on the "effects restrictive housing has on [named plaintiffs'] mental health statuses." ECF No. 296-1 ¶ 12. Defendants' expert considers a clinical exam an important part of forming his opinions and preparing an expert report. And he does not view evidence from other sources to be an adequate substitute for this exam. *Id* ¶¶ 12-16. In short, Defendants have shown that they have a need for the information to be obtained by Dr. Saathoff's clinical examination and that this information cannot be obtained by other means.[2]

## III. EXAMINATION CONDITIONS & SCOPE

Plaintiffs request that (1) the exams be limited to two hours; (2) that a paralegal from Plaintiffs' team sit outside the examination room to observe; and (3) that the scope of the exams be limited.

---

[2] That Plaintiffs' expert does not consider psychiatric evaluations necessary in forming her opinions, does not change the analysis. Defendants' expert should not be precluded from accessing information he views as necessary to form his opinion simply because Plaintiffs' expert disagrees.

## A. Timing

Plaintiffs request that the exams be limited to two hours. ECF No. 287 at 15. Plaintiffs contend that the exams should not be seven hours because this is essentially "the equivalent of a second deposition of each of the named Plaintiffs under the veil of a Rule 35 examination." *Id.* And Plaintiffs' expert stated that "taking hours and hours seems excessive and unnecessary to elicit the information that is already contained in the medical/mental health and correctional records." ECF No. 287-2 ¶ 9.

On the other hand, Defendants request that seven hours be allotted for the exams, which they contend is reasonable. ECF No. 280 at 22. Defendants' expert stated that

> developing this rapport takes time, often at least a few hours, and it is difficult to state in advance how long these examinations will last. However, I believe seven hours with each individual will be a sufficient amount of time to obtain the necessary information. Clinical examinations that I have conducted in other cases have required up to 14 hours.

ECF No. 280-5 ¶ 15. He also stated that "having the full seven hours for each examination, although [he] may not need that much time with every inmate, will assist [him] in preparing [his] ultimate report." ECF No. 296-1 ¶ 21.

Plaintiffs have not shown that seven hours is unreasonable. Notably, Plaintiffs' expert does not contend that psychological examinations cannot or should not last seven hours—or that she has never conducted an exam that long. Plaintiffs'

8

expert simply concludes that the amount of time "seems excessive and unnecessary." ECF No. 287-2 ¶9. This is not enough to find that seven hours is unreasonable. This is particularly so considering Defendants' expert's statements to the contrary.

Dr. Saathoff may conduct psychological exams that last up to seven hours with the understanding that "[f]ood, water, restroom, and comfort breaks will be given as needed" (ECF No. 280-4 at 8) and the examination will conclude early if Dr. Saathoff is able to "complete the interview more quickly" (ECF No. 296-1 ¶ 21).

### B. Presence of Observer

Plaintiffs argue that "[t]here are special circumstances in this case that justify the presence of a paralegal outside of the examination room during the examinations." ECF No. 287 at 18. Further, Plaintiffs contend that an audio recording of the examination is insufficient because it "will not capture what happens as named Plaintiffs are brought into the examination room, how they are restrained, whether they receive food and water, and what happens as they leave the room." *Id.* at 19. Defendants argue that the presence of a paralegal is unnecessary and has the potential to impact the reliability of the exams. ECF No. 296 at 10-12.

Defendants' expert expressed concern about Plaintiffs' observer request. ECF No. 296-1 ¶¶ 22-29. For example, Dr. Saathoff takes issue with the request because it "deviates from the procedures [he is] familiar with," has the potential to be distracting or disruptive, "will give the inmate a sense he needs to be protected from

[Dr. Saathoff] somehow," and "may give the individual the perception that what is being said can be heard by the outside paralegal." *Id.* Plaintiffs ague that "[i]f anything, the presence of a representative from Plaintiffs' legal team is more likely to reduce a named Plaintiff['s] anxiety related to the exam and make the process go more smoothly." ECF No. 299 at 12. But they provide no basis or expert testimony to support this conclusion. Plaintiffs state that

> [t]he paralegal will not interject legal objections to the line of questioning or otherwise interfere with the examination. The paralegal can be positioned outside the examination room, out of Plaintiffs' view, to observe the interactions between Plaintiffs and officer(s) present. Plaintiffs' counsel will ensure that each named Plaintiff understands why a paralegal is present and the limitations of their role.

*Id.* at 13. Although this suggestion seems to address many of Dr. Saathoff's concerns, it does not address his concerns about the paralegal's presence altering the named Plaintiffs' perception of his trustworthiness or being distracting during breaks. ECF No. 296-1 ¶¶ 27-29. In contrast, Dr. Saathoff has addressed Plaintiffs' concerns by stating that "the level of restraints the individuals are being held in, and how the individuals are brought into and out of the room" will be included in his report and "[i]t would violate [his] ethical duty as a practitioner to allow these individuals to be treated inhumanely while [he is] examining them." *Id.* at 23-24.[3]

---

[3] Plaintiffs also argue that Dr. Saathoff "may not understand the meaning of communications or actions by prison staff that Plaintiffs would interpret as a threat." ECF No. 299 at 12. But it is not clear why a paralegal from Plaintiffs' team would be better situated to understand coded communications between prisoners and staff.

10

As Plaintiffs acknowledge, the issue of who may attend a Rule 35 examination is left to my discretion. ECF No. 287 at 17 (citing *Goggins v. State Farm Mut. Aut. Ins. Co.*, 2011 WL 1660609, *2 (M.D. Fla. May 3, 2011)). The examinations will be captured via audio recording. And Dr. Saathoff has an ethical duty to prevent inhumane treatment during his examinations. Considering the safeguards that already exist, the risk that the presence of a third-party observer will disrupt or impact the reliability of the exam is not outweighed by any special circumstance in this case. The request to have a third-party observer at the examination is denied.

**C.    Scope**

The parties also have remaining disputes about the scope of the exam. These disputes include the breadth of Defendants' proposed topic list, whether questions about named Plaintiffs' disciplinary reports should be asked, and whether all tests to be performed should be disclosed in advance. The parties must promptly confer about these remaining disputes in light of the rest of this order. No later than 14 days from today's date, the parties must file a joint notice indicating the results of their conferral and the proposed scope of the exam (and whether it is agreed). If there is disagreement, the notice must set out each side's position on each disputed issue. The court will modify its order as appropriate based on the joint filing.

SO ORDERED on October 22, 2021.

s/ *Allen Winsor*
United States District Judge

11