UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; JEREMIAH HILL;
JUAN ESPINOSA; JEROME
BURGESS (a/k/a SHAM'LA GOD
ALLAH); JAMES W. KENDRICK,
JR.; JOHNNY HILL; and TRACEY
DEAN on behalf of themselves and all
others similarly situated,

      Plaintiffs,

vs.                                   CASE NO.: 4:19-cv-00212-MW-CAS

RICKY DIXON, in his official
Capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

      Defendants.
_____/

**DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER AS
TO THE DEPOSITIONS OF SECRETARY RICKY DIXON, FORMER
SECRETARY JULIE JONES AND HEALTH SERVICES DIRECTOR
THOMAS REIMERS AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 26(c), Defendants, Ricky Dixon, in his official capacity as

Secretary of the Florida Department of Corrections, and the Florida Department of

Corrections ("FDC" or "the Department"), hereby file this Motion for Protective

Order seeking to protect Secretary Ricky Dixon, former Secretary Julie Jones and

Health Services Director Thomas Reimers from being deposed in this case, *see* Notices of Taking Deposition, attached as composite **Exhibit A**.

There is no basis for Plaintiffs to depose the Secretary of the Department, its former Secretary who served from 2015-2019, or its Health Services Director. In circumstances such as these, the three high-ranking officials should not be subject to deposition, over objection, unless and until Plaintiffs have exhausted other discovery and can demonstrate that the agency heads are uniquely able to provide relevant information that cannot be obtained from other sources. Plaintiffs are unable to make such a showing and the Court should prevent Plaintiffs from taking their depositions.

In further support of this Motion, Defendants state:

## Background

1. Plaintiffs challenge the Department's use of restrictive housing, claiming it violates the Eighth Amendment to the U.S. Constitution as well as the Americans with Disabilities Act and Rehabilitation Act. Plaintiffs seek injunctive relief preventing the Department from "continuing the unlawful acts, conditions, and practices described in [their] Complaint." [D.E. 309, p. 101].

2. In an effort to support their wide-ranging claims, Plaintiffs have sought discovery into nearly all aspects of prison life in the Florida Department of Corrections. They have served 818 requests for production, 69 interrogatories, and

711 requests for admission. They have inspected 15 prison facilities. They have requested records for over 701 inmates. And, in response to this discovery, Defendants have produced over 2.7 million pages of documents.

3. In addition, Plaintiffs have served two Rule 30(b)(6) Notices of Taking Deposition, comprising 117 areas of inquiry. Pursuant to those Notices, Defendants produced 12 separate witnesses to serve as corporate representatives. Those depositions lasted over 60 hours. In addition to the corporate representative depositions, Plaintiffs also deposed 6 fact witnesses. Each of those depositions lasted most of the day.

4. Now, unsatisfied with the discovery to date, Plaintiffs request the depositions of various high-ranking officials simply on the belief that they may have additional relevant knowledge of the issues in this case.

5. Plaintiffs have not and cannot demonstrate that these high ranking officials possess unique knowledge that cannot be gathered (or has not already been gathered) from less burdensome sources. As such, this Court should grant this motion and protect Secretary Dixon, Former Secretary Jones, and Director Reimers from the depositions requested.

**Legal Standard**

6. Rule 26(c) of the Federal Rules of Civil Procedure allows a party from whom discovery is sought to move for a protective order, which may be granted

upon a showing of good cause. *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020). Under the "good cause" standard, the Court must balance the competing interests of the parties, and has broad discretion in determining whether a protective order is warranted. *Id.* Good cause exists here to prevent Plaintiffs from taking these depositions because as high-ranking individuals, the aforementioned witnesses are subject to unique protections.

7. "[C]ourts have held that depositions of high-ranking officials are disfavored." *League of Women Voters of Fla., Inc.*, No.: 4:21-CV-186-MW-MAF, 2021 WL 4962109, at *1 (N.D. Fla. Oct. 19, 2021) (citing *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (explaining that "[t]he reason for requiring exigency before allowing the testimony of high officials is obvious. High ranking government officials have greater duties and time constraints than other witnesses.")).

8. "Courts have generally restricted parties from deposing high-ranking officials because (by virtue of their position) they 'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'" *Brown & Branch Banking & Tr. Co.*, No. 13–81192–CIV, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014) (quoting *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)); *see also United States v. Morgan*, 313 U.S. 409, 422 (1941); *Celorio v.*

*Google Inc.*, No. 1:11-CV-79-SPM-GRJ, 2012 WL 12861605, at *1 (N.D. Fla. Nov. 19, 2012).

9.  "The rationale [behind prohibiting apex depositions] is that 'high-ranking' officials could be burdened unduly if they were required to submit to a deposition in the multitude of civil actions that some government agencies and businesses face." *Odom*, 337 F.R.D. at 363. "For high-ranking government officials, the time consumed by depositions necessarily cannot be devoted to important governmental responsibilities." *Id.*

### Secretary Dixon, Former Secretary Jones and Director Reimers are "High-Ranking" Officials[1]

10.  Secretary Dixon is indisputably a high-ranking government official qualifying for apex protection. *See Davis ex rel. J.D.D. v. Carroll*, No. 8:16-CV-0998-T-35MAP, 2017 WL 11151858, at *2 (M.D. Fla. July 24, 2017) ("Secretary Carroll, as the head of Florida's DCF, is indisputably a high-ranking government official").

11.  Former Secretary Jones also qualifies for apex protections as a high-ranking official. Secretary Jones was the Secretary of the Florida Department of Corrections from 2015-2019. The fact that she is not the current Secretary is of

---

[1] It is Defendants' understanding that Plaintiffs only challenge Director Reimers' status as a high-ranking official, but that they are not challenging Secretary Dixon's and former Secretary Jones' status as high-ranking officials. Defendants reserve the right to submit declarations on behalf of Secretary Dixon and former Secretary Jones if the Court so requires.

little import to this inquiry. *See Palmisano v. Paragon 28, Inc.*, 2021 WL 1686948, at *3 (S.D. Fla. Apr. 7, 2021) (finding former CEO's "deposition . . . is subject to the apex doctrine"); *see also Plaintiff 1 v. Washington County School Board*, No. 5:07-CV-194-RS-EMT, 2008 WL 11462924, at *3 (N.D. Fla. February 15, 2008) (applying apex doctrine to DJJ Secretary/former FDC Secretary); *Cruz v. Green*, No. 18-60995-CIV, 2019 WL 5208913, at *3 (S.D. Fla. Feb. 7, 2019) (applying apex doctrine to former sheriff).[2]

12.     Director Reimers also qualifies as a high-ranking official subject to apex protection. Namely, Director Reimers until recently reported directly to the Secretary and now reports to the Deputy Secretary, oversees employees (151.5 full-time equivalents) in the central and regional offices, and is the director of one of FDC's four primary service divisions. *See* Reimers Decl., attached as **Exhibit B**.

13.     OHS oversees the delivery of health care services to inmates in Florida's correctional institutions. *Id*. Director Reimers' statewide responsibilities are outlined in section 945.6034, Florida Statutes. *Id*. Specifically, he is responsible for developing a comprehensive health care delivery system and promulgating all department health care standards. *Id*.[3] Such health care standards include, but are not limited to, rules relating to the management structure of the health care system

---

[2] Former Secretary Jones qualifies for further apex protection given her current position as Deputy CFO of the State of Florida.
[3] The former title of Director Reimers' position was "Assistant Secretary for Health Services." *See* Reimers Decl.

and the provision of health care services to inmates, health care policies, health care plans, quality management systems and procedures, health service bulletins, and treatment protocols. *Id*.

14.  FDC's Annual Budget for FY 20-21 was over $2.7 billion, with health services accounting for almost 21% of the budget.[4] The Department contracts with Centurion of Florida, LLC ("Centurion") to provide comprehensive medical, mental health and dental services statewide. *See* Reimers Decl. The contract with Centurion totals approximately $421 million per year. *Id*.

15.  Courts have granted motions to protect officials similarly situated to Director Reimers from being deposed. *See, e.g.*, *Skytruck Co., LLC v. Sikorsky Aircraft Corp.*, 2011 WL 13141023, at *2 (M.D. Fla. May 11, 2011) (granting motion to protect CFO from being deposed). Director Reimers, per FDC's organizational structure, is akin to a CFO. *See* Reimers Decl. He oversees the agency's health services, reporting directly to the Secretary and/or Deputy Secretary. As such, this Court should find he qualifies as high-ranking.

**Plaintiffs Have Not Met Their Burden to Seek These Apex Depositions**

16.  Once an official shows he or she is "high-ranking," the party seeking the apex deposition must show that: "(1) deposing the official is necessary to obtain

---

[4] *See* FDC's Annual Report FY 20-21, at pg. 41, http://www.dc.state.fl.us/pub/annual/2021/FDC_AR2020-21.pdf (last visited March 21, 2022).

7

relevant, 'first-hand' information; (2) the information possessed by the official is important to the case; (3) the deposition would not significantly interfere with the ability of the official to perform his government duties or reasonable accommodations could ameliorate such interference; and (4) the evidence sought is not reasonably available through less-burdensome means or alternative sources." *Odom*, 337 F.R.D. at 365.

17. In a meet and confer e-mail, Plaintiffs explained their justification for these depositions by stating:

> Plaintiffs disagree that the apex doctrine prohibits them from deposing Former Secretary Jones, Secretary Dixon, and Mr. Reimers.
>
> Beginning in 2015 or 2016, then-Secretary Julie Jones acknowledged the risk of harm from restrictive housing and represented to the Legislature that it was necessary to reduce its use. ECF No. 346-3 at 175. In the years that followed, Julie Jones, Ricky Dixon, and Thomas Reimers authored, reviewed, and discussed numerous emails and documents, and attended meetings, regarding possible policy changes and alternatives to FDC's use of restrictive housing. The Court has already ruled that discovery regarding these policy reforms, or lack thereof, is highly relevant to Plaintiffs' deliberate indifference claims. ECF No. 98 at 8-9. The direct personal knowledge of and involvement by Ms. Jones, Mr. Dixon, and Mr. Reimers in policy formulation and issues central to the case demonstrates good cause to depose them. *See, e.g., League of Women Voters of Fla., Inc.*, 2021 WL 4962109, at *1 (permitting the deposition of an election supervisor because she had personal knowledge about important issues to case); *Kimberly Regenesis, LLC v. Lee Cty.*, No. 2:19-CV-538-SPC-NPM, 2021 WL

5285093, at *5–6 (M.D. Fla. Sept. 29, 2021) (permitting the deposition of city commissioners because they had personal knowledge of relevant issues), *modified*, No. 2:19-CV-538-SPC-NPM, 2021 WL 5028204 (M.D. Fla. Oct. 29, 2021); *Woolfolk v. Columbia Cty., Fla.*, No. 3:07-cv-137-J-25TEM, 2008 WL 11433240, *2 (M.D. Fla. Feb. 22, 2008) (allowing deposition of sheriff because he was a named defendant and had direct knowledge of the facts and policies pertaining to the particular case).

In depositions of several FDC officials, including 30b6 witnesses, Plaintiffs have attempted to explore FDC's rationale for determining it was necessary to develop alternatives and reduce its use of restrictive housing, as well as its rationale for implementing certain policy recommendations and rejecting others. In response, these witnesses repeatedly claimed either they did not know or merely "it was the right thing to do." Their inability or unwillingness to provide relevant testimony is further good cause for deposing Ms. Jones, Mr. Dixon, and Mr. Reimers, especially given their direct involvement in the issue.

### **Relevance, Alone, Is Not Enough**

18. Plaintiffs' first argument as to why these apex depositions should move forward is that Secretary Dixon, Former Secretary Jones, and Director Reimers have knowledge and/or were involved in policy formation and "issues central to this case." That is not enough to command these depositions of high-ranking officials.

19. Plaintiffs must make "a showing beyond mere relevance" before they can take these depositions. *See League of Women Voters*, 2021 WL 4962109, at *1.

9

If mere relevance were the standard, agency heads would be subject to deposition anytime a lawsuit is filed regarding an agency's policy or practice. *See United States v. Morgan*, 313 U.S. 409, 422 (1941). That is not the case.

20. In *Morgan*, the Court stated that in an effort to preserve the integrity of the administrative process, the Secretary of Labor should not have been asked to testify. *Id*. The D.C. Circuit relied on *Morgan* for its holding that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Secy. of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985). In *In re United States*, 985 F.2d 510, 512 (11th Cir. 1992), the Eleventh Circuit agreed with this general rule and held that the Commissioner of the U.S. Food and Drug Administration (FDA) was a high-ranking government official who could not be called to testify about the reasons for taking official action absent a showing of extraordinary circumstances. *See also In re Office of Inspector Gen*., 933 F.2d 276, 278 (5th Cir. 1991) (agreeing with the holding in *Simplex* and cautioning the district court to "remain mindful of the fact that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted.").

21. Here, no extraordinary circumstances exist to support Plaintiffs' depositions of any of these high ranking officials. Knowledge and involvement in policy decisions is not enough. *See Morgan*, 313 U.S. at 422.

22. And, based on the meet and confer efforts, Plaintiffs do not seek a discrete set of information from these witnesses. Rather, they seek a do-over on their corporate representative depositions by questioning these witnesses on "issues central to this case." As this Court knows, Plaintiffs believe all aspects of prison life for an inmate in restrictive housing is an "issue central to this case." *See* [D.E. 309, 311]. As such, these witnesses will automatically have *some* relevant information concerning the general and broad topics of "restrictive housing" in the Florida Department of Corrections. However, simply because a high-ranking official has knowledge of official policy does not warrant such an exceptional deposition.

23. In addition and specific to Former Secretary Jones, the relevance of her deposition is even more attenuated. Former Secretary Jones was Secretary from 2015 through 2019. Information she may have about "restrictive housing" in the Florida Department of Corrections during that time period bears little relevance to the issues in this case which seeks injunctive relief.

24. Finally, Plaintiffs proffer that testimony from these high ranking officials is needed to establish the Department's knowledge of this "risk of harm," i.e., its deliberate indifference. But, according to Plaintiffs, Defendants are aware (or should be aware) of the various authorities "demonstrating that isolation subjects people to a substantial risk of harm" and the correctional standards that

allegedly run counter to Department policy. *See* [D.E. 309 at ¶¶ 130-133]. It is not clear why the deposition of a high-ranking fact witness is needed in order to establish knowledge on the part of *the Department* when Plaintiffs' position is that this knowledge is well-established. There is no knowledge unique to any of these witnesses that is "necessary" to establish this element.

25. There has been no showing these witnesses possess unique knowledge that has not or could not be gathered from an alternative and less burdensome source. Plaintiffs have not met their burden.

### Alternative Sources of Discovery

26. Furthermore, as discussed, Plaintiffs do not seek information on a discrete set of topics unique to these three witnesses. Instead, Plaintiffs seek testimony as to why the *Department* enacted (or failed to enact) certain policy changes related to restrictive housing. Yet, if the Plaintiffs wanted to know why the *Department* enacted certain policies and did not enact others, it should have posed those questions to the *Department's* corporate representatives.

27. For example, Director Reimers does not have unique knowledge about the Department's policies and procedures concerning restrictive housing as they relate to health issues. *See* Reimers Decl. This is because bureau chiefs oversee each health services discipline (medical, nursing, pharmacy, mental health, dental, and administration). *Id*. Here, Plaintiffs have already deposed the chief of nursing

12

(Paula Foskey) and the former chief of mental health (Dean Aufderheide), who appeared as corporate representatives for the Department. Plaintiffs have also deposed the present interim chief of mental health (Tammy Lander) as a fact witness. There is no reason Plaintiffs could not have asked these witnesses all their questions regarding restrictive housing policies and procedures as they relate to health issues.

28. In truth, Plaintiffs have asked these questions, repeatedly. In addition to written discovery and document production, Plaintiffs have posed questions related to the restrictive housing policies to nearly every witness who has testified. Apparently frustrated with the responses they have received, they continue to seek duplicative discovery hoping to get a better answer. But, dissatisfaction with responses such as "it was the right thing to do" does not warrant the "extraordinary circumstances" needed to conduct these depositions.

29. If Plaintiffs failed to ask a question regarding Department policy to the Department's corporate representative, this failure does not warrant a second-bite at the apple by harassing these high ranking officials.

30. Plaintiffs should not be allowed to ask these three high-ranking officials endless questions on such a broad topic as restrictive housing policies. Plaintiffs have failed to establish that the information sought is unavailable through other sources of discovery.

13

**The Burden on the High Ranking Officials**

31. Finally, if these depositions are allowed to move forward, this would impose a heavy burden on these witnesses.

32. As Plaintiffs put it, they want to explore "numerous emails and documents, [and] meetings, regarding possible policy changes and alternatives to FDC's use of restrictive housing." They also want to question these witnesses about "policy formation and issues central to this case." Based on the breadth of these topics and Plaintiffs' counsel's history during depositions, it is reasonable to assume that each deposition will take a full day.

33. Yet, preparing for and attending an all-day deposition would significantly interfere with the ability of the officials to perform their government duties.

34. In weighing the burden that would be placed upon Secretary Dixon, the Court should consider the enormous breadth and scope of his duties relative to the size and complexity of an agency like the Department. *See Plaintiff 1*, 2008 WL 11462924, at *4 (granting protective order and stating, "in his current capacity as Secretary of the DOC, Mr. McNeil is responsible for the administration of the third largest state prison system in the country with a budget of $2.3 billion, almost 94,000 incarcerated inmates, approximately 153,000 offenders on some type of community supervision, and 137 statewide facilities . . . Furthermore, the court

finds that Mr. McNeil is particularly vulnerable at the present time, having just assumed his duties with the DOC on February 8, 2008").[5] Mr. Dixon was appointed Secretary in November 2021; previously he served as Deputy Secretary responsible for the overall operation of the agency.[6] As Florida's largest state agency, FDC employs 24,000 staff.[7] Accordingly, the important duties and extreme time constraints Secretary Dixon faces in his role are exactly the type of circumstances that the apex doctrine is meant to protect.

35. In her position as Florida's Deputy CFO over Law enforcement, former Secretary Jones is responsible for divisions encompassing sworn law enforcement, including Investigative and Forensic Services, Public Assistance Fraud and Workers' Compensation, which all work to prosecute insurance fraud.[8] The Department of Financial Services is made up of 13 divisions, several

---

[5] Today, FDC is still the third largest state prison system in the country with a budget of $2.7 billion, approximately 80,000 inmates incarcerated and nearly 145,000 offenders on active community supervision (probation). The Department has 143 facilities statewide, including 50 correctional institutions, seven private partner facilities, 16 annexes, 33 work camps, three re-entry centers, 12 FDC operated work release centers, 18 private work release centers, two road prisons, one forestry camp and one basic training camp. *See* http://www.dc.state.fl.us/about.html (last visited March 18, 2022).

[6] http://www.dc.state.fl.us/secretary.html (last visited March 18, 2022). Mr. Dixon clearly was also a high-ranking official protected by the apex doctrine in his previous role as Deputy Secretary.

[7] http://www.dc.state.fl.us/secretary.html (last visited March 18, 2022).

[8] https://www.myfloridacfo.com/sitePages/newsroom/pressRelease.aspx?ID=5749 (last visited March 18, 2022); https://www.myfloridacfo.com/division/COS/ (last visited March 18, 2022).

specialized offices and 2,000 employees.[9] Thus, former Secretary Jones, both in her former and current roles, qualifies for protection under the apex doctrine.

36. As for Director Reimers, his declaration makes clear that in addition to his regular duties -- during the time he has overseen the Department's ongoing response to the world-wide COVID pandemic -- the responsibilities and time constraints attendant to his role as Director have greatly increased. *See* Reimers Decl. Accordingly, preparing for and attending an all-day deposition in this extremely complex case would significantly interfere with his ability to perform his daily duties. *Id*.

37. Thus, Defendants have demonstrated good cause and respectfully ask this Court to grant the protective order preventing Plaintiffs from deposing Secretary Dixon, former Secretary Jones and Director Reimers.

WHEREFORE, Defendants respectfully request that this Court enter an order under Federal Rule of Civil Procedure 26(c) preventing the depositions of Secretary Ricky Dixon, former Secretary Julie Jones and Health Services Director Thomas Reimers and award such other relief as this Court deems appropriate.

---

[9] https://myfloridacfo.com/about/about-dfs# (last visited March 18, 2022).

## CERTIFICATE OF WORD COUNT

I certify that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 3,558 words, excluding the parts exempted by said Local Rule.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

I CERTIFY that I personally communicated with opposing counsel by telephone on March 9, 2022, and through multiple emails regarding the relief sought herein. Plaintiffs' counsel oppose the motion.

Dated March 23, 2022                    Respectfully submitted,

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
             sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
JEFFREY J. GROSHOLZ, ESQUIRE
Florida Bar No. 1018568
RUMBERGER, KIRK & CALDWELL

         Post Office Box 10507
         Tallahassee, Florida  32302-2507
         Telephone:  (850) 222-6550
         Telecopier:  (850) 222-8783
         E-mail:   nsmith@rumberger.com
             jgrosholz@rumberger.com

         and

         JOSHUA D. LERNER, ESQUIRE
         Florida Bar No.:  0455067
         RUMBERGER, KIRK & CALDWELL
         Brickell City Tower, Suite 3000
         80 Southwest 8th Street
         Miami, Florida 33130-3037
         Telephone:  (305) 358-5577
         Telecopier:  (305) 371-7580
         E-mail:  jlerner@rumberger.com

        **Attorneys for Defendants,**
         **Ricky Dixon and Florida**
         **Department of Corrections**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 23, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Leonard J. Laurenceau at leo.laurenceau@splcenter.org; Kelly Jean Knapp at Kelly.knapp@splcenter.org; Krista Dolan at Krista.dolan@splcenter.org; Dante Pasquale Trevisani at dtrevisani@floridajusticeinstitute.org; Laura Anne Ferro at lferro@floridajusticeinstitute.org and mllosa@floridajusticeinstitute.org; Marcel A. Lilavois, Jr., at mlilavois@floridajusticeinstitute.org; Kara Sheli Wallis at

kwallis@floridajusticeinstitute.org; Andrea Costello at andrea@floridalegal.org; Christopher M. Jones at Christopher@floridalegal.org; Rachel M. Ortiz at rachel.ortiz@floridalegal.org; Alexis Alvarez at alexis.alvarez@floridalegal.org; Rebecca R. Klonel at rebecca.klonel@floridalegal.org; and Lori Rifkin at lrifkin@rifkinlawoffice.com.

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133
Email: dgerber@rumberger.com
        sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
JEFFREY J. GROSHOLZ, ESQUIRE
Florida Bar No. 1018568
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida 32302-2507
Telephone: (850) 222-6550
Telecopier: (850) 222-8783
E-mail: nsmith@rumberger.com
        jgrosholz@rumberger.com

and

JOSHUA D. LERNER, ESQUIRE
Florida Bar No.:  0455067
RUMBERGER, KIRK & CALDWELL
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130-3037
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580
E-mail:  jlerner@rumberger.com

**Attorneys for Defendants,**
 **Ricky Dixon and Florida**
 **Department of Corrections**

16441837.v1