IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD, et al.,

      **Plaintiffs,**

v.                                                                    Case No. 4:19-cv-212-AW-MAF

RICKY DIXON, Secretary of Florida
Department of Corrections, et al.,

      **Defendants.**

_____/

## ORDER DENYING MOTION FOR CLASS CERTIFICATION AND DENYING AS MOOT MOTIONS TO STRIKE

Plaintiffs challenge the Florida Department of Corrections' use of solitary confinement, and they seek class certification. The Secretary and the Department (collectively "FDC") have moved to strike certain expert declarations related to the class-certification motion. FDC has also moved to strike evidence attached to Plaintiffs' reply—or alternatively for leave to file a surreply. This order denies all three motions.

## I.     CLASS CERTIFICATION

Plaintiffs seek to certify one primary class and three subclasses. The primary class would include all FDC inmates "who are, or will be in the future, in Administrative Confinement, Disciplinary Confinement, Close Management, Maximum Management or any substantially equivalent restrictive housing unit used by FDC where people are locked in their cells, alone or with a cellmate, for 22 hours

1

or more per day." ECF No. 309 ¶¶ 169, 176, 183, 190. The subclasses are for (1) youth (those under 21); (2) those who meet FDC's definition of serious mental illness; and (3) those with disabilities under the ADA or RA.

Parties seeking class certification must show Rule 23(a)'s prerequisites—numerosity, commonality, typicality, and adequacy—and they must satisfy one of Rule 23(b)'s alternatives. Plaintiffs here proceed under Rule 23(b)(2), so they must show that FDC "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"The party seeking class certification has a burden of *proof*, not a burden of pleading." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016). And if doubts remain about whether Plaintiffs have carried their burden, class certification must be denied. *Id.*

Although the parties dispute much, neither side has requested an evidentiary hearing, and I have concluded that none is necessary. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1099 (11th Cir. 1996) (hearing is discretionary); *Lewis ex. rel. Lewis v. Heckler*, 752 F.2d 555, 557 (11th Cir. 1985) ("That the court did not hold an evidentiary hearing on class certification is inconsequential, since it is clear that the requirements of Rule 23 are not met here."). After carefully reviewing the papers, I

2

now deny class certification because Plaintiffs have not demonstrated that they have satisfied Rule 23.

## A.   Plaintiffs Have Not Met Their Burden Under Rule 23(b)(2)

The primary reason Plaintiffs cannot succeed is that they have not specified the injunctive relief they seek. They propose a Rule 23(b)(2) class, ECF No. 311 at 54-56, which is available "only when a single injunction or declaratory judgment would provide relief to each member of the class," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also* Fed. R. Civ. P. 23(b)(2) (requiring a showing "that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole"). It is Plaintiffs' "burden to 'affirmatively demonstrate' that class certification [is] appropriate under Rule 23(b)(2)," *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, 763 F.3d 1280, 1291 (11th Cir. 2014) (quoting *Wal-Mart Stores*), and Plaintiffs cannot show that injunctive relief "is appropriate respecting the class as a whole" without explaining what that relief is.

In *Lakeland Regional Medical Center*, the Eleventh Circuit affirmed denial of Rule 23(b)(2) class certification for this very reason. There, the plaintiff "never identified exactly what injunctive or declaratory relief it was seeking." *Lakeland*, 763 F.3d at 1291; *see also M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 845 (5th Cir. 2012) (holding that with Rule 23(b)(2), "the injunctive relief sought must be specific"). It was appropriate to deny class certification because, without sufficient

detail, the district court could not assess whether the injunctive or declaratory relief sought "could provide relief to each member of the class." *Lakeland*, 763 F.3d at 1291.

Here, despite FDC's response highlighting the issue, Plaintiffs still declined to provide detail—presumably because they cannot. *Cf. Lakeland*, 763 F.3d at 1291 ("In the twenty-two months between the time the Medical Center filed its complaint and the time it moved for class certification, Astellas tried unsuccessfully to pin the Medical Center down as to exactly what declaratory and injunctive relief it was seeking."). Instead, they say they have provided sufficient detail because "their motion and expert declarations identify the policies, practices, and omissions that must be changed to remediate the impermissible risk of harm." ECF No. 370 at 32. But this is not enough to satisfy Rule 23(b)(2), much less meet Rule 65's specificity requirement. *Cf. Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 (7th Cir. 2011) (finding Rule 23(b)(2) not satisfied in part because requested relief was "far too general to satisfy Rule 65(d)"); *Shook v. Bd. of Cnty. Comm'rs*, 543 F.3d 597, 605 (10th Cir. 2008) ("At the class certification stage, the injunctive relief sought must be described in reasonably particular detail such that the court can at

4

least conceive of an injunction that would satisfy Rule 65(d)'s requirements, as well as the requirements of Rule 23(b)(2)." (cleaned up)).[1]

It is likewise no answer to argue that "in the simplest terms," Plaintiffs "seek to change the unconstitutional conditions in FDC restrictive housing." ECF No. 370 at 32. It is settled that "'obey the law' injunctions are unenforceable." *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dept. of Health & Rehab. Servs.*, 225 F.3d 1208, 1222 (11th Cir. 2000), so Plaintiffs must seek something more specific than an order requiring that FDC do better. *Cf. Yates v. Collier*, 868 F.3d 354, 368 (5th Cir. 2017) ("While Plaintiffs requested that the district court 'enjoin Defendants to maintain a safe indoor apparent temperature' (which admittedly offers little content), they also identified specific relief in 'reasonable detail' that would fit this standard: 'maintaining a heat index of 88 degrees or lower.'"). The bottom line is that Plaintiffs are short on specifics. And by looking to FDC to provide the details—*see* ECF No. 370 at 32 (arguing that "[t]o some degree, given the legal deference due to prison

---

[1] Plaintiffs cite *Parsons v. Ryan*, in which a Ninth Circuit panel required less specificity than *Shook* described. ECF No. 370 at 31 (citing 754 F.3d 657, 689 n.35 (9th Cir. 2014)). As FDC notes, there are reasons to find the Ninth Circuit's nonbinding decision unpersuasive. But even that decision recognized the need to identify "the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law." *Parsons*, 754 F.3d at 689 n.35.

administrators, it is up to Defendants to decide how to effect these changes")—Plaintiffs effectively concede they cannot specify the injunctive relief sought.

Plaintiffs' inability to specify the injunctive relief sought necessarily means they have not shown a single injunction would benefit all class (or subclass) members. Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a different injunction." *Wal-Mart Stores*, 564 U.S. at 360. And Plaintiffs cannot sidestep this rule by requesting an injunction so broad that it technically covers the entire class but that would compel different conduct as to each class member. This does not comply with Rule 23(b)(2)'s requirement for relief "appropriate respecting the class as a whole."

Finally, setting aside Plaintiffs' inability to identify the relief sought, Plaintiffs have not met Rule 23(b)(2)'s requirement that they identify the FDC's actions or inactions that "apply generally to the class." This is so for reasons similar to those discussed below.

In the end, Plaintiffs have not demonstrated compliance with Rule 23(b)(2). This requires me to deny their class-certification motion. But as discussed next, there are additional, independent reasons to deny certification.

**B.    Plaintiffs Have Not Shown Commonality or Typicality**

A class action requires "questions of law or fact common to the class" (commonality) and "claims or defenses of the representative parties [that] are typical

of the claims or defenses of the class" (typicality). Fed. R. Civ. P. 23(a). Both commonality and typicality relate to "whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

To show commonality, Plaintiffs must show that their claims "depend upon a common contention" all class members share. *Wal-Mart Stores*, 564 U.S. at 350. That common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is *central to the validity* of each one of the claims in one stroke." *Id.* (emphasis added). In contrast to individual questions, "[c]ommon questions are ones where the same evidence will suffice for each member." *Brown*, 817 F.3d at 1234 (marks and citation omitted). And while Plaintiffs need not show that common questions predominate (a single common question is sufficient), they cannot just point to artificial common questions. *Wal-Mart Stores*, 564 U.S. at 359.[2] Instead,

---

[2] In *Wal-Mart Stores*, the Supreme Court gave examples of artificial common questions: "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?" 564 U.S. at 349. Plaintiffs here point to "whether the cumulative impact of the deprivations and conditions in isolation subject all class members, regardless of their individual risk factors, to a substantial risk of serious harm" and "the common question of whether FDC's policies and practices result in the systemic denial of equal access to programs, services, and activities."). ECF No. 311 at 38, 47.

they must show common questions tied to the legal theories underlying the claims. This is because "[a]ny competently crafted class complaint literally raises common 'questions.' What matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Brown*, 817 F.3d at 1238 (cleaned up) (quoting *Wal-Mart Stores,* 564 U.S. at 349-50).

For typicality, "[a] class representative must possess the same interest and suffer the same injury as the class members." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The inquiry focuses on the similarity of legal issues and theories; precise factual identity is not necessary. *See Piazza*, 273 F.3d at 1351. But when "plaintiffs assert[] broad claims on behalf of a broad class, they [are] required to identify representative plaintiffs who shared those broad claims." *Cooper v. S. Co.*, 390 F.3d 695, 715 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006).

The focus with commonality and typicality is slightly different: commonality looks at "the group characteristics of the class as a whole," while typicality looks at "the individual characteristics of the named plaintiff in relation to the class." *Piazza*, 273 F.3d at 1346. But "proof of each [requirement] also tends to merge," *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996) (cleaned up), so I will discuss them together.

8

i.      *Eighth Amendment Claims*

Plaintiffs' Eighth Amendment Claims address FDC's wide-ranging policies, practices, and procedures relating to isolation units, along with conditions in those units. The challenge relates to all isolation levels at all institutions. According to Plaintiffs, their claims satisfy commonality "because FDC's systemic isolation policies and practices subject all people in isolation to the same substantial risk of serious harm." ECF No. 311 at 31-32. They further contend that because of the "same baseline risk of serious harm" the fact that "individuals in isolation may in fact suffer different degrees of health consequences" doesn't undermine commonality. *Id.* at 41.

The problem is that Plaintiffs have not presented evidence that all (or even most) class members face the same conditions or combination of interrelated conditions. A finding that Plaintiffs share a common threshold risk, divorced from shared conditions that *cause* that risk, will not resolve an issue central to the Eighth Amendment claim. (This assumes that one could even quantify a risk level without reference to specific conditions.) And even if all class members shared "baseline risk," that would not mean the class representatives' claims are typical of others' claims. For example, an inmate exposed to conditions A, B, and C for X days does not have the same claim as an inmate exposed to conditions D, E, and F for Y days.

9

Although courts do not resolve the merits at the class-certification stage, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013), they can—and should—look to the merits to the extent the Rule 23 analysis "overlap[s] with the merits of the plaintiff's underlying claim." *Wal-Mart Stores*, 564 U.S. at 351. Accordingly, I will discuss what Plaintiffs would need to demonstrate to succeed on an Eighth Amendment claim based on risk to future health. Doing so confirms that Plaintiffs have not demonstrated commonality or typicality.

A prisoner's treatment and conditions of confinement are subject to Eighth Amendment scrutiny. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Here, Plaintiffs challenge a combination of conditions and policies. *See e.g.*, ECF No. 370 at 9 ("Plaintiffs challenge the *totality* of the interrelated conditions common to all restrictive housing units."). It is true that certain conditions can be considered together when analyzing a single claim, if they are interrelated "parts of a 'seamless web.'" *Chandler v. Crosby*, 379 F.3d 1278, 1294 (11th Cir. 2004) (quoting *Wilson v. Seiter*, 501 U.S. 294, 305 (1991)) (considering summer temperatures, high humidity, and inadequate ventilation in combination). However, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 305.

10

Establishing that a condition (or interrelated combination of conditions) violates the Eighth Amendment requires showing both objective seriousness and deliberate indifference. "First, under the 'objective component,' a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment." *Chandler*, 379 F.3d at 1289 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). To be sufficiently serious, the condition must be "extreme." *Hudson*, 503 U.S. at 9.

An inmate can challenge an extreme condition even before it causes harm. *See Helling*, 509 U.S. at 33 ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition."). Plaintiffs' claims here are about future harm, so the issue is the constitutional permissibility of the *condition* itself and whether "it is contrary to current standards of decency" to expose inmates to the condition and the risks it poses. *Id.* at 35.

Second, a prisoner must show deliberate indifference. *See Helling*, 509 U.S. at 35-37. "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994)). Like the objective showing, the subjective showing focuses on the conditions the inmate faces—not a free-floating concept of risk—and requires that

11

the defendant be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and [that] he [] also draw[s] the inference." *Farmer*, 511 U.S. at 837. In other words, FDC would have to be aware of the *conditions* that expose an inmate to a substantial risk and conclude that those *conditions* pose a substantial risk.

In sum, to prevail Plaintiffs must first show that they were exposed to an objectively serious condition (or interrelated combination of conditions). They must then demonstrate deliberate indifference with respect to the *same* condition or conditions.

Here, Plaintiffs acknowledge that the prospective class members don't all face the same conditions. For example, Plaintiffs acknowledge differences in the cells. ECF No. 311 at 9-10 (explaining that "*most* cells" are less 80 square feet, "*some* cells have no windows," cells with windows are "*often* covered or frosted over," "*many* cells grimy and infested with rats and cockroaches," and "*many* cells" have plumbing issues. (emphasis added)). By Plaintiffs' own admission, then, class members face different conditions or different combinations of conditions.

The seriousness of the condition (or conditions) Plaintiffs challenge will also inevitably vary based on the extent of exposure and the length of time an inmate is exposed. *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets

constitutional standards."); *Helling*, 509 U.S. at 35 ("With respect to the objective factor, [plaintiff] must show that he himself is being exposed to unreasonably high levels of ETS."); *Chandler*, 379 F.3d at 1295 ("Severity and duration do not necessarily form a perfect sliding scale, but our analysis should be informed by a consideration of both factors.").

Similarly, Plaintiffs contend that FDC denies all prospective class members "normal human contact," regardless of their isolation levels. ECF No. 311 at 10. But Plaintiffs never define "normal human contact," and they acknowledge that the number of phone calls, visits, and dayroom time allowed differs depending on the assigned isolation level. *Id.* The amount of contact allowed during visits is different too. *Id.* at 11. The claims will thus require a determination that the level of human contact—alone or in combination with the other conditions at issue—is objectively serious enough to offend "current standards of decency." *Helling*, 509 U.S. at 35. And because the conditions vary across the class, that determination will vary across the class. A class member allowed no phone calls or visits for months, for example, does not have the same claim as one allowed one call and one contact visit per week.

Plaintiffs' arguments about environmental stimulation, regular exercise, and "unnecessarily punitive security measures" suffer the same problems. Again, they describe varying conditions and inconsistent practices. *See* ECF No. 311 at 11-12 (describing different levels of access to job assignments, rehabilitative

programming, radios, and tablets—all under the umbrella of denial of "environmental stimulation"); *id.* at 12 (class members are allowed either six hours per week, three hours per week, or two hours per week of exercise); *id.* at 13 (describing property restriction as one extreme security measure used in isolation); *but see* ECF No. 356-10 (Kendrick Depo) at 198:25-199:2 (explaining that he has never been on property restriction while in isolation level CM1 or CM2); ECF No. 356-9 (Jeremiah Hill Depo.) at 208:3-8 (same).

In short, the objective seriousness cannot be evaluated for everyone in one stroke. Because "the same evidence will [not] suffice for each member" there isn't a common question here, and Plaintiffs cannot show their claims are typical of others'. *Brown*, 817 F.3d at 1234 (marks and citation omitted).

Plaintiffs counter that notwithstanding any variations in their particular circumstances, all prospective class members share some "baseline risk" and have an interest in remedying the "core conditions" (a term Plaintiffs leave undefined). The problem is that even assuming everyone shares some "baseline risk," not everyone faces that risk from the same circumstances. Showing the same "baseline risk," then, does not  show that there are common questions capable of yielding

common answers. Class certification is not for different questions that might yield the same answer.[3]

Plaintiffs have not shown commonality or typicality as to their Eighth Amendment claims.

*ii.   ADA and Rehabilitation Act Claims*

Plaintiffs have not shown commonality or typicality as to their ADA or Rehabilitation Act claims either. For starters, they have not described these claims with any clarity, so it is unclear which questions of law and fact will even be relevant. Plaintiffs certainly have not shown common questions capable of driving resolution of these claims. Nor have they demonstrated that the class representatives have suffered the same injury as the class.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

---

[3] As discussed above in connection with the (b)(2) requirements, if the conduct (or conditions) giving rise to the claim are different—even if they all lead to a serious risk—then an appropriate injunction must provide different relief to different class members. Consider, for example, one inmate receiving deficient medical care and another inmate exposed to inmate violence. A court might ultimately determine that both faced an objectively serious risk of harm, but it could not do so by evaluating the claims collectively. And it could not remedy the harm with a single injunction.

discrimination by any such entity." 42 U.S.C. § 12132.[4] A "qualified individual with a disability" is someone who has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment" and "who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. §§ 12102, 12131.

A successful plaintiff must show (1) he is a qualified individual with a disability; (2) he was either discriminated against or denied participation in (or denied benefits of) services, programs, or activities; and (3) that the act was by reason of his disability. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (quoting *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)). Courts have also recognized claims based on a failure to provide reasonable accommodation. *See Bircoll*, 480 F.3d at 1081-82 (citing 28 C.F.R. § 35.130(b)(7)); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005); *cf. also Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (noting that Title II "requires only

---

[4] The Rehabilitation Act also requires federal funding, *see* 29 U.S.C. § 794(a), which is undisputed here. Otherwise, the claims are essentially the same, *see Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) ("Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases . . . ."), so I will discuss both claims together and refer to them collectively as ADA claims.

'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service.").[5]

A failure-to-accommodate claim requires a showing: (1) that the plaintiff meets the essential eligibility requirements for participation or receipt of benefits, *see Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999); (2) that the public entity had notice that the plaintiff's disability limits his ability to participate or receive benefits, *Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1197 (10th Cir. 2007); and (3) that the accommodation is reasonable, *see Bircoll*, 480 F.3d at 1082.

---

[5] As the Eleventh Circuit noted in *Bircoll*, it is Title II's implementing regulations that supply the reasonable-accommodation concept—unlike in Titles I & III, which include statutory language addressing failure to accommodate. *See Bircoll*, 480 F.3d at 1082 n.13. These regulations are "entitled to controlling weight unless they are procedurally flawed, substantively arbitrary and capricious, or plainly contradict the statute." *Shotz v. City of Plantation*, 344 F.3d 1161, 1179 (11th Cir. 2003). Still, there is no private right of action to challenge violations of these regulations where the requirement challenged exceeds the scope of the statute itself. *See Alexander v. Sandoval*, 532 U.S. 275, 292 (2001). So, while the regulations may inform what it means to exclude by reason of disability or to discriminate, Plaintiffs cannot bring a bare claim that FDC does not comply with Title II's implementing regulations unconnected to a violation of Title II itself. In other words, there is no claim where the common question is simply "do FDC's policies comply with 28 C.F.R. Part 35?" *Cf. Iverson v. City of Boston*, 452 F.3d 94, 100 (1st Cir. 2006) (holding that a Title II regulation requiring a transition plan was not privately enforceable); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 914 (6th Cir. 2004) (same).

Again, Plaintiffs' ADA claims are unclear. Contending that their claims are not about which "specific modifications must be provided to which specific individuals in isolation," ECF No. 311 at 46, Plaintiffs phrase the inquiry in terms of whether FDC has a system that *ensures* accommodations. *See* ECF No. 311 at 43 ("FDC discriminates against people with disabilities by failing to provide systems that consistently provide equal access to programs, services, and activities in isolation."); *id*. at 44 ("FDC's failure to implement a system to ensure reasonable modifications of isolation policies and practices so that people with disabilities can access even the minimal programs, activities, and services in isolation impacts all proposed subclass members similarly."); *id*. at 46 ("[T]his case calls for FDC to implement a system-wide policy and procedure for ensuring that people with disabilities in restrictive housing are assessed for and provided necessary accommodations."); *id*. at 47 ("FDC also fails to provide an effective mechanism for requesting and obtaining reasonable modifications or accommodations in isolation."); *id*. at 49 ("[A]s a matter of policy and procedure, FDC does not make any such modifications to their isolation policies and procedures for people with serious mental illness.").

But despite Plaintiffs' characterization, the claim ultimately still relies on a failure-to-accommodate theory.[6] It still comes down to the same core questions: (1) was the inmate eligible?; (2) was the inmate excluded or denied?; and (3) would a reasonable accommodation have prevented that? No class member's claim would hinge on whether FDC had an adequate system for addressing accommodations; instead, each claim will hinge on whether that inmate should have been accommodated, and whether they were.[7] *Cf. McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1143-44 (11th Cir. 2014) (holding ADA plaintiffs "can recover only if they are personally excluded, denied benefits, or discriminated against on the basis of their disability"). Therefore, any common questions about the

---

[6] To the extent Plaintiffs intended to rely on some other theory for their ADA claim, their class-certification motion does not describe it. They necessarily did not demonstrate compliance with Rule 23 as to any unarticulated theory.

[7] Even in Title I, where courts have assumed employers have an affirmative obligation to engage in an interactive process about accommodations, failure to meet that obligation is not cognizable unless the plaintiff can identify a reasonable accommodation. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) ("Even assuming an employer has an affirmative obligation . . . to engage in the interactive process . . . , where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant."); *Frazier-White v. Gee*, 818 F.3d 1249, 1257-58 (11th Cir. 2016) ("Plaintiff has failed to identify any reasonable accommodation . . . . Consequently, there is no basis for imposing liability on Defendant for failing to engage in an 'interactive process' to identify accommodations.").

adequacy of FDC's systems would not drive the resolution of any class member's ADA claim.

First, Plaintiffs have not specified which services they have been denied or which programs or activities they have been excluded from. And they seem to acknowledge that class members have experienced different denials or exclusions— without even providing evidence (or even arguing) that certain subclasses share a common exclusion. They do not contend that all class (or subclass) members have the same disability or the same limits on their ability to receive services or participate in programs. *See* ECF No. 311 at 5 (seeking certification of subclasses of "[a]ll people with serious mental illness" and "all qualified individuals with physical disabilities"); *see also* ECF No. 311 at 28 (describing differences between named Plaintiffs).

Next, the fact that one inmate meets the eligibility criteria for a given program or activity does not resolve whether all class members do.[8] Plus, an inmate could

---

[8] This is the case even if Plaintiffs are correct that an individual inquiry into whether they have a disability that substantially limits one or more major life activities is unnecessary because of the subclass definition, ECF No. 370 at 19, and because "FDC identifies and tracks people in their custody who qualify as having a disability as defined under the Americans with Disabilities Act (ADA)," ECF No. 311 at 20. *But see Hoffer v. Inch*, 382 F. Supp. 3d 1288, 1298 (N.D. Fla. 2019) ("Because Plaintiffs assert their ADA claim as a class, and because an ADA claim requires an individualized inquiry, this Court must decertify the class as to Plaintiffs' ADA claim."), *rev'd on other grounds*, 973 F.3d 1263 (11th Cir. 2020).

meet the eligibility criteria for some of the denied programs and not others. So even if all class members were excluded from the same program, each class member's eligibility for that program would remain an open question.

Finally, even if all class members shared the same exclusion or denial, an accommodation might be reasonable for some but not others. Indeed, Plaintiffs do not contend that every class member should have the same accommodation—they instead point to various, wide-ranging accommodations that they say FDC should provide. That only highlights the fact that the reasonableness determination cannot be made for everyone in one stroke. *See Bircoll*, 480 F.3d at 1085-86 ("The reasonable-modification inquiry in Title II-ADA cases is a highly fact-specific inquiry" that "must be decided case-by-case based on numerous factors." (marks and citation omitted)).

Put simply, Plaintiffs have not provided any "glue" to hold these fact- and context-specific claims together. *Cf. Wal-Mart Stores*, 564 U.S. at 352 ("Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.").

## II.   MOTIONS TO STRIKE

FDC moved to strike the five expert declarations plaintiffs submitted to support class certification. ECF No. 357. FDC argues that the declarations don't

satisfy *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). But because I need not look to any expert testimony (from either side) to deny class certification, I need not make a *Daubert* determination here. FDC's motion to strike the expert declarations (ECF No. 357) is therefore DENIED as moot.

FDC's motion to strike evidence or, alternatively, for leave to surreply, is likewise DENIED as moot.

### III.   CONCLUSION

The Class Certification Motion (ECF No. 311) is DENIED. The Motions to Strike (ECF Nos. 357 & 372) are DENIED as moot.

The court will separately address the pending motion for partial summary judgment in an order to issue shortly.

The clerk will set a telephonic status conference. The parties should be prepared to discuss the procedures for resolving the Motion for Sanctions (ECF No. 319) and also scheduling matters.

SO ORDERED on July 25, 2022.

s/ *Allen Winsor*_____
United States District Judge