**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**Tallahassee Division**

| | |
|---|---|
| _____ ) | |
| JAC'QUANN (ADMIRE) ) | |
| HARVARD, et al., ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No.: 4:19-cv-00212-AW-MAF |
| ) | |
| RICKY DIXON, et al., ) | |
| ) | |
| *Defendants*. ) | |
| _____ ) | |

**PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL**
**PURSUANT TO FED. R. CIV. P. 41(a)(2)**

## I.   INTRODUCTION

Plaintiffs filed this civil rights case as a putative class action seeking systemic injunctive relief for the thousands of people subjected to intolerably harsh and damaging conditions in the Florida Department of Corrections' (FDC) solitary confinement units.  Following denial of class certification, they now move for voluntary dismissal without prejudice under Rule 41(a)(2).  Such dismissal is proper because it will not result in legal prejudice to Defendants.

Defendants oppose voluntary dismissal unless it is conditioned on Plaintiffs' payment of all or some portion of their attorney's fees and costs, including at least

1

5.2 million dollars purportedly claimed in attorney's fees.  However, an award of such fees and costs is not justified in this civil rights case where Plaintiffs' claims and conduct have not been frivolous, vexatious, or without foundation.  Indeed, the Court's numerous orders over the three-year course of this litigation demonstrate the reasonableness of Plaintiffs' pursuit of their claims, including, for example, the Court's denial of Defendants' motion to dismiss, and motion for summary judgment, and grant of multiple of Plaintiffs' motions to compel discovery.  Defendants' demand of this exorbitant amount from incarcerated civil rights plaintiffs as a condition for dismissal in the absence of any improper or bad faith conduct is unsupported by existing law, gratuitously punitive, impermissibly chilling to civil rights litigants, and should be rejected.

Accordingly, the Court should grant Plaintiffs' motion for voluntary dismissal without prejudice and without conditioning dismissal on payment of Defendants' fees and costs.

## II.    PROCEDURAL HISTORY

Plaintiffs filed this case as a putative class action for systemic injunctive and declaratory relief on May 8, 2019, alleging that Defendants' use of solitary confinement violates the Eighth Amendment, Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act.  ECF 1.  Since the outset of this complex case, both parties have vigorously litigated their positions, with the Court

finding in Plaintiffs' favor in numerous merits, procedural, and discovery-based disputes.

On August 6, 2019, Defendants filed a motion to transfer venue to the Middle District, and a dispositive motion to dismiss all claims based on alleged violations of Rule 8(a)(2); lack of standing; improper joinder; failure to exhaust administrative remedies; and failure to state claims upon which relief will be granted.  ECF 26, 28. The Court denied the motion to transfer on October 11, 2019.  ECF 52.  The Court also denied Defendants' motion to dismiss in full on October 24, 2019.  ECF 54.

Discovery opened on July 29, 2019.  ECF 24.  Plaintiffs served discovery requests as well as noticing requests for inspection of FDC solitary confinement units.  As the parties negotiated the terms of the inspections, and because of the COVID-19 pandemic beginning in early 2020, Plaintiffs focused on document discovery until inspections could begin.  Plaintiffs filed three motions to compel Defendants' responses to requests for documents and interrogatories.  ECF 65, 107, 149.  The Court granted each of these motions in full or in part.  ECF 98, 121, 158. With respect to electronic discovery, the parties engaged in an ongoing and interactive meet and confer process over the course of nearly three years to negotiate the scope and extent of Plaintiffs' requests and Defendants' responses.

Plaintiffs began inspecting FDC solitary confinement units with their experts in September 2020.  After Plaintiffs inspected eight prisons, Defendants moved for

a protective order requesting that the Court either 1) prohibit further inspections; or 2) limit Plaintiffs to four full inspections, three "tour-only" inspections, and no others unless necessary based on Defendants' response to Plaintiffs' class certification motion. ECF 312 at 3, 19. In response, Plaintiffs offered to reduce the number of additional and full inspections to seven. ECF 320 at 23. The Court denied Defendants' motion and ordered Defendants to conduct the seven additional and full inspections proposed by Plaintiffs. ECF 358 at 1, 6. Plaintiffs' experts relied on the information they obtained during the fifteen inspections to support their class certification and merits opinions. *See, e.g.,* ECF 430-1 at 5-6; 430-2 at 3; 431-1 at 11; 431-2 at 4-5; 431-5 at 8-9; 431-6 at 4-8; 431-9 at 9-12; 431-12 at 9-11; 431-13 at 3.

Plaintiffs began taking depositions in February 2021. Toward the end of discovery, Plaintiffs sought to depose current Secretary Dixon and former Secretary Jones because they had "direct, personal, and extensive involvement in and control over FDC's decisions … concerning the use of solitary confinement and the conditions of such confinement." ECF 394 at 2. Defendants moved for a protective order to prohibit these depositions. ECF 383. While the District Court ultimately granted Defendants' motion (ECF 400 at 6), the Magistrate Judge's initial ruling denying the motion demonstrates Plaintiffs' reasonableness and good faith basis in seeking these depositions. ECF 395 at 18, 23.

Throughout the discovery period, Defendants interfered with Plaintiffs' ability to prosecute their case through threats and retaliation against Named Plaintiffs and putative class member witnesses.  In January 2020, the Court issued a protective order based on Plaintiff Johnny Hill's "serious allegations of retaliation" and Defendants' failure "to preserve the video that would either substantiate [his] claim or refute it."  ECF 96 at 2-3.  In February 2021, after a five-day evidentiary hearing, the Magistrate Judge found that FDC staff retaliated against and threatened putative class members.  ECF 240 at 40-44.  The Magistrate Judge further issued a protective order prohibiting future retaliation and setting forth specific security procedure guidelines for future inspections.  *Id.* at 45-53.  Defendants objected to the protective order, arguing, *inter alia,* that the guidelines violated the separation of powers doctrine and the Prison Litigation Reform Act.  ECF 254 at 3.  Based on their understanding that Defendants intended to appeal any order enumerating guidelines for prison inspections, and not wanting to delay future inspections and the prosecution of their case, Plaintiffs defended only the portion of the Order prohibiting retaliation.  ECF 264 at 4-5.  While crediting the Magistrate Judge's retaliation findings, the Court vacated the Magistrate Judge's order on April 7, 2021, determining that without the inspection guidelines, the order would simply amount to "a directive to obey the law."  ECF 279 at 2-6.  The Court suggested that Plaintiffs file a motion for sanctions if Defendants' retaliatory conduct continued.  *Id.* at 8.

Defendants continued to retaliate against Named Plaintiffs and putative class witnesses during the discovery period, and Plaintiffs filed a motion for civil contempt and sanctions on June 15, 2021.  ECF 319.  However, soon thereafter, the assigned District Court judge recused himself from this case (ECF 336), and over a year passed after Plaintiffs filed their motion.   At an August 3, 2022 status conference, Plaintiffs explained that the risk of retaliation had since abated because: 1) the denial of class certification eliminated the need for putative class witnesses to testify at trial; 2) discovery had closed and Plaintiffs' counsel and experts no longer needed to gather information from putative class witnesses; 3) Defendants had transferred some of the Named Plaintiffs and witnesses out of solitary confinement or away from the staff who had threatened or retaliated against them; and 4) Defendants had terminated some of the employees involved in the retaliatory conduct.  The Court then denied Plaintiffs' motion without prejudice.  ECF 425.

Before the close of discovery, on September 10, 2021, Defendants filed a motion for partial summary judgment based on the theory that Plaintiffs were making a "facial challenge" to written policies and "cannot demonstrate that 'no set of circumstances exist' under which these policies would be constitutionally valid." ECF 343 at 2.  Defendants also argued that the subclass claims were "improperly being made under 42 U.S.C. Section 1983." *Id.*  The Court denied Defendants' motion because Plaintiffs did not "challenge the facial validity of any particular

regulation," and they properly challenged the "constitutionality of the conditions Plaintiffs face while in isolation" under Section 1983. ECF 423 at 3, 6. Discovery closed on June 30, 2022 (ECF 360 at 2), and Defendants did not file another motion for summary judgment.

The Court denied class certification on July 25, 2022 (ECF 419), and thereafter, Plaintiffs began preparing for trial on their individual claims for relief, while also exploring other potential avenues for resolving the case, including settlement, mediation, and voluntary dismissal. Plaintiffs made a settlement demand, and offered to engage in another mediation, but Defendants refused both. Defendants also stated they would oppose voluntary dismissal without prejudice unless it was conditioned on Plaintiffs' payment of costs, including 5.2 million dollars in attorney's fees.

As Plaintiffs proceeded, they closely examined the possible injunctive relief available for each Named Plaintiff in the context of the Court's class certification decision, particularly for Plaintiffs Harvard, Burgess, Espinosa, Kendrick, and Jeremiah Hill, who are no longer in solitary confinement. The Court's analysis in denying class certification, as well as existing case law within the Eleventh Circuit, suggested that these Plaintiffs could not seek meaningful injunctive relief without certainty as to whether they would be returned to Restrictive Housing, and under what specific conditions, including which prison, cell or unit, and duration. ECF

438 at 4-5. Plaintiffs believed this raised a question of mootness for which they were obligated to notify the Court, and they did so promptly. ECF 432. During the case management conference on September 21, 2022, the Court indicated it did not necessarily believe there is a mootness issue that needs to be addressed at this stage in the proceedings for the five individuals who are no longer in solitary confinement.

After careful consideration of the Court's denial of class certification, which left individual Plaintiffs unable to achieve their goal of systemic, statewide injunctive relief, Plaintiffs Harvard, Burgess, Espinosa, Kenrick, Dean, Jeremiah Hill, and Johnny Hill move for voluntary dismissal under Rule 41(a)(2) with no conditioning of fees and costs.

## III.   ARGUMENT

### A. Rule 41(a)(2) Standard

Rule 41(a)(2) permits a plaintiff, with the approval of the court, to dismiss an action "at any time." *McCants v. Ford Motor Co.,* 781 F.2d 855, 856 (11th Cir. 1986); Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."). The dismissal is without prejudice unless otherwise specified by the court. *Pontenberg v. Boston Scientific Corp.,* 252 F.3d 1253, 1255 (11th Cir. 2001).

"[I]n determining whether to allow a voluntary dismissal under Rule 41(a)(2)," the court considers the defendant's interests through a two-step analysis.

*See Arias v. Cameron*, 776 F.3d 1262, 1268-69 (11ᵗʰ Cir. 2015).  The first question is whether "the defendant will suffer clear legal prejudice other than the mere prospect of a second lawsuit."  *Id.* at 1268 (citing *Pontenburg*, 252. F. 3d at 1255).  The second question is whether it is "appropriate" to impose "curative conditions" to protect the defendants.  *McCants*, 781 F.2d at 856-57.

In analyzing the first question, the Eleventh Circuit has narrowly defined "legal prejudice" as whether the defendant would "lose any substantial right by the dismissal."  *Pontenberg*, 252 F.3d at 1255–56 (citing *Durham v. Florida East Coast Ry. Co.,* 385 F.2d 366, 368 (5th Cir.1967)[1]).  In the absence of any such prejudice, the dismissal should be granted.  *Arias*, 776 F.3d at 1268.  While the Eleventh Circuit has not defined precisely what constitutes "legal prejudice," it has identified numerous circumstances that do not constitute such prejudice.  For example, there is no legal prejudice where "the plaintiff may obtain some tactical advantage over the defendant in future litigation."  *McCants*, 781 F.2d at 857 (citing *Durham,* 385 F.2d at 368).  There is also no legal prejudice where voluntary dismissal would cause the defendant to lose a statute-of-limitation defense (*McCants*, 781 F.2d at 858-59; *Arias*, 776 F.3d at 1274-75); would cause the defendant to lose a defense of contributory negligence (*Durham*, 385 F.2d at 368–69); would result in the loss of

---

[1] Fifth Circuit decisions made prior to September 30, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. Prichard*, 661 F.2d 1206, 1207-08 (11th Cir. 1981).

the defendant's preferred forum (*Goodwin v. Reynolds*, 757 F.3d 1216, 1222 (11th Cir. 2014)); where there is a motion for summary judgment pending (*Pontenberg,* 252 F.3d at 1259); or even on the eve of trial (*Durham*, 385 F.2d at 368-69). Generally, the Eleventh Circuit has regularly found no legal prejudice and granted voluntary dismissal where the plaintiff has not exhibited bad faith.  *See Durham*, 385 F.2d at 368-69; *Pontenberg*, 252 F.3d at 1259-60; *McCants*, 781 F.2d at 859; *Arias*, 776 F.3d at 1272-73; *Goodwin*, 757 F.3d at 1222; *U.S. v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1299-1301 (11th Cir. 2019).

For the second question, to determine whether curative conditions are "appropriate," courts balance the "relevant equities" to ensure a just result between the parties.  *McCants*, 781 F.2d at 857.  At the court's discretion it may, but is not required, to condition the voluntary dismissal on the payment of costs, including attorney's fees. *See* 9C Charles Alan Wright & Arthur R. Miller**,** Fed. Prac. & Proc. Civ. § 2366 (4th ed. 2022) (collecting cases, and noting that "in many cases" courts deny such costs and fees).

While neither the Supreme Court nor the Eleventh Circuit has set forth a particular test for conditioning voluntary dismissal on payment of costs in civil rights cases, the Supreme Court has set forth a standard for awarding attorney's fees against civil rights plaintiffs in another context.  In *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, the Supreme Court held that, while prevailing plaintiffs

in civil rights actions should be "awarded attorney's fees in all but special circumstances," prevailing defendants should not be awarded attorney's fees in civil rights cases unless "a court finds that [a plaintiff's] claim was frivolous, unreasonable, or groundless or that the plaintiff continued to litigate after it clearly became so," or "if a plaintiff is found to have brought or continued such a claim in *bad faith*."   434 U.S. 412, 417, 422-423 (1978) (emphasis in original) (denying attorney's fees in Title VII case because the plaintiff's claim was not "unreasonable or meritless"); *see also Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980) (holding that the *Christiansburg* standard for prevailing party fees applies to 42 U.S.C. § 1983 cases); *Bruce v. City of Gainesville, Ga.,* 177 F.3d 949, 951-52 (11th Cir. 1999) (holding that the *Christiansburg* standard for prevailing party fees applies to ADA cases).

The Supreme Court determined that the dual standard for awarding attorney's fees to prevailing parties in civil rights cases is appropriate because:

> [T]he plaintiff is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority.  Second, when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law. … [T]hese policy considerations which support the award of fees to a prevailing plaintiff are not present in the case of a prevailing defendant.  A successful defendant seeking counsel fees under § 706(k) must rely on quite different equitable considerations.

*Christiansburg*, 434 U.S. at 418-19 (internal punctuation and citations omitted); *see also Bruce,* 177 F.3d at 951 ("[T]he reasons for assigning attorney's fees under Title VII apply equally to attorney's fees under the ADA.").

11

District courts in the Eleventh Circuit have applied the *Christiansburg* standard to determine whether plaintiffs should be required to pay defendants' fees and costs as a condition for voluntary dismissal without prejudice under Rule 41(a)(2). *See, e.g., Russell-Brown v. Jerry, II*, 270 F.R.D. 654, 661 (N.D. Fla. 2010) (conditioning voluntary dismissal of Title VII case on fees and costs when plaintiff had engaged in "vexatious conduct and impermissible forum shopping"); *Young v. Roy's Rest.,* No. 6:06-cv-178-Orl-19JGG, 2007 WL 914047, at *3 (M.D. Fla. Mar. 22, 2007) (affirming the conditioning of voluntary dismissal of Title VII case on the payment of  fees and costs limited to a motion to remand where the plaintiff had admittedly engaged in "gamesmanship"); *see also Less v. Berkshire Hous. Ser.*, No. 00-30033-MAP, 2000 WL 1615740, at *7 (D. Mass. Sept. 8, 2000) ("At bottom, Plaintiff had the right to seek injunctive relief and did so in good faith.  Despite his lack of success and despite some possible procedural errors, he should not be penalized with the payment of Defendant's attorneys' fees and costs."); *Blackburn v. City of Columbus, Ohio*, 60 F.R.D. 197, 198-199 (S.D. Ohio 1973) (finding no abuse of discretion in failing to condition voluntary dismissal on payment of fees when the plaintiff made a "*bona fide* effort to seek redress" under 42 U.S.C. § 1981 and did not act unreasonably or vexatiously) (emphasis in original).  As set forth below, consistent with the same policy considerations, this Court also should apply the

*Christiansburg* standard here to grant Plaintiffs' motion for voluntary dismissal without conditioning such dismissal on payment of Defendants' fees and costs.

### B.    Dismissal Will Not Result in Legal Prejudice to Defendants.

Under the applicable Rule 41(a)(2) standard, none of the factors that courts consider to determine legal prejudice are present here.  There are no dispositive motions pending, there is no trial date, and the parties have not begun pre-trial preparations.  *See e.g., Pontenberg*, 252 F.3d at 1256 (no legal prejudice despite pending summary judgment motion); *Durham*, 385 F.2d at 368 (no legal prejudice despite three years of litigation and the failure by plaintiff's attorney "to appear for a pre-trial conference without good excuse").  Nor have Plaintiffs acted in bad faith. *See U.S.*, 929 F.3d at 1301 (affirming voluntary dismissal because "[t]he district court found that nothing in [the plaintiff's] conduct evinced bad faith").  Thus, there is no question that the Court should grant voluntary dismissal without prejudice.[2]

### C. Dismissal in this Civil Rights Action Should Not be Conditioned Upon Plaintiffs Paying Defendants' Fees and Costs.

Voluntary dismissal of this civil rights action should not be conditioned on the payment of Defendants' attorney's fees and costs because, consistent with the *Christiansburg* standard, Plaintiffs have diligently litigated their claims reasonably,

---

[2] Defendants have not contended in the meet and confer process that they oppose voluntary dismissal based on a theory of legal prejudice.  Rather, they have represented that their position is that voluntary dismissal must be conditioned on the payment of fees and costs.

without vexation, and in good faith. The Court's rejection of Defendants' motion to dismiss and motion for summary judgment reflect the non-frivolous nature of Plaintiffs' claims. In the absence of any frivolity or improper conduct, it would not only be unprecedented,[3] but also inequitable, unjust, and inappropriate to impose fees and costs against these incarcerated civil rights plaintiffs merely because they wish to dismiss their individual claims after denial of class certification.

The same policy considerations the Supreme Court relied on in *Christiansburg* for determining whether to award attorney's fees to prevailing parties are equally applicable in the context of Rule 41(a)(2) voluntary dismissals by civil rights plaintiffs, especially those who are incarcerated. In *Christiansburg*, the Supreme Court observed that "[t]o take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." 434 U.S. at 422.

_____

[3] While Defendants have cited a variety of non-civil rights cases in which dismissal was conditioned on plaintiffs' payment of fees and costs, ECF 437 at 10-11, Plaintiffs are aware of no civil rights cases in which a court has conditioned voluntary dismissal on the payment of attorney's fees and costs unless the plaintiffs acted unreasonably, vexatiously, or in bad faith. Defendants cited to one civil rights case, *McGregor v. Bd. of Comm'rs of Palm Beach Cnty.*, for the proposition that "it is common to condition dismissal on the payment of the defendant's costs." ECF 437 at 10, quoting *McGregor*, 956 F.2d 1017, 1020 (11th Cir. 1999). But in that case, the court did not condition the voluntary dismissal on the payment of fees and costs. *McGregor*, 956 F.2d at 1021 ("Though it is common to condition dismissal on the payment of the defendant's costs, *that was never an express condition in this case*") (emphasis added). Instead, the court granted attorney's fees and costs under Rule 11 and 42 U.S.C. § 1988 because the plaintiff's claim "had no basis in law or fact." *Id.* at 1022.

Similarly, incarcerated civil rights plaintiffs nearly always litigate their claims *pro se* or with representation by non-profit organizations, solo practitioners, or pro bono counsel.  Conditioning voluntary dismissal of civil rights actions on the payment of fees and costs without any evidence of frivolity, unreasonableness, or groundlessness would substantially increase the risk inherent in this type of litigation, discourage counsel from taking these cases, and chill plaintiffs from filing complaints, regardless of whether their claims have merit.  As a result, many plaintiffs whose claims are substantial enough to warrant full consideration by the courts will either not bring lawsuits or will so restrict their claims as to render enforcement of civil rights statutes ineffective.  *See Bruce*, 177 F.3d at 952 (recognizing Congress's intent to incentivize plaintiffs with limited means to act as "private attorneys general" to enforce civil rights statutes "against defendants with more resources").  Defendants can point to no conduct in this case that supports imposing such a potential chilling effect on valid and good faith civil rights claims.[4]

---

[4] It also runs counter to the principles of judicial economy and efficiency to discourage civil rights plaintiffs from voluntarily dismissing and force them to proceed to trial in order to get the benefit of the *Christiansburg* standard for assessing attorney's fees.  *See Fernandez v. Southside Hosp.*, 593 F. Supp. 840, 844-45 (E.D.N.Y. 1984) ("[T]o allow defendants liberally to recover attorneys' fees [as a condition for voluntarily dismissal without prejudice] would do much to chill and inhibit the commencement of future civil rights actions and might, we fear, cause plaintiffs to continue lawsuits improvidently commenced in Federal Court, often at the behest of counsel, for fear of bearing their adversary's costs.").

Plaintiffs, who are "completely dependent on housing line staff for nearly every aspect of their lives," ECF 240 at 42, bravely came forward to redress constitutional and statutory violations against thousands of people in Defendants' custody.  They persevered even when facing retaliation and threats of retaliation substantiated by this Court through a five-day evidentiary hearing.  ECF 240 at 43-44 ("The [retaliatory] actions described, and feared, would reasonably deter most people; all but the toughest or most stubborn among us would refuse to be involved in an endeavor which is likely to cause greater harm than the potential good promised.").  They demonstrated their claims were grounded in law and fact by surviving Defendants' motion to dismiss and motion for partial summary judgment, and by prevailing initially and/or ultimately in several discovery disputes.  ECF 54 (denial of motion to dismiss); ECF 423 (denial of summary judgment); ECF 58, 98, 121, 158, 358, 395 (discovery disputes initially or finally decided in Plaintiffs' favor).  When changes in factual circumstances and the denial of class certification eliminated the need to proceed with their Motion for Civil Contempt and Sanctions (ECF No. 319), Plaintiffs accordingly notified the Court to avoid further expenditure of judicial time and resources.

Now, upon the denial of class certification, and before the Court sets a trial date and the parties spend substantial time and resources preparing for trial, Plaintiffs move in good faith to voluntarily dismiss their claims.  Given Congress's intent to

promote the rigorous enforcement of its civil rights statutes through "private attorneys general … against defendants with more resources," *Bruce*, 177 F.3d at 952, the equitable considerations in this case weigh against penalizing Plaintiffs with fees and costs simply because they no longer want to proceed with trial after losing the ability to bring the systemic reforms that motivated them to file this case.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs request dismissal without conditioning of the payment of Defendants' fees and costs.   In the event this Court imposes conditions that Plaintiffs believe too onerous or burdensome, Plaintiffs reserve their right to withdraw their motion to consider other options, including refiling to request dismissal with prejudice.   *See Yoffe v. Keller Indus.*, 582 F.2d 982, 983 (5th Cir. 1978) (plaintiff "is entitled as of right to withdraw his motion for voluntary dismissal"); *see also Akhdary v. Blackbird Tech., Inc.* Case No. 8:07-cv-395-T-24 TBM, 2007 WL 3171317, at *1 (Oct. 29, 2007) (allowing plaintiff to withdraw his motion to dismiss his non-civil rights case without prejudice after the court ordered payment of fees and costs, and then granting plaintiff's subsequent motion for dismissal with prejudice without conditions).

Dated: September 30, 2022          Respectfully Submitted,


                                   s/ Kelly Knapp
                                   Kelly Knapp

Fla. Bar No. 1011018
Krista Dolan
Fla. Bar No. 1012147
Southern Poverty Law Center
2 South Biscayne Boulevard
Miami, FL 33131
Telephone: (786) 457-7310
kelly.knapp@splcenter.org
krista.dolan@splcenter.org

Dante P. Trevisani
Fla. Bar No. 72912
Kara S. Wallis
Fla. Bar No. 1028563
Florida Justice Institute, Inc.
P.O. BOX 370747
Miami, FL 33137
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
kwallis@floridajusticeinstitute.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Rebecca Klonel
Fla. Bar No. 1028003
Maite Garcia
Fla. Bar No. 99770
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332
andrea@floridalegal.org
christopher@floridalegal.org
rebecca.klonel@floridalegal.org
maite.garcia@floridalegal.org

Lori Rifkin*
CA Bar No. 244081

18

Rifkin Law Office
3630 High St. #18917
Oakland, CA
Telephone: (510) 414-4132
lrifkin@rifkinlawoffice.com

*Admitted Pro hac vice*

**Attorneys for Plaintiffs**


## Certificate of Local Rule 7.1(B) Conference

In accordance with N.D. Fla. Local Rule 7.1(B) and (C), the undersigned counsel certifies that Plaintiffs' Counsel, Kelly Knapp, and Defendants' counsel, Nicole Smith, have conferred about the relief sought in this motion.

## Certificate of Word Limit

The undersigned counsel certifies compliance with the word count limitations set forth in Local Rule 7.1(F). This memorandum contains 4,079 words.

/s/ Kelly Knapp
Kelly Knapp
Fla. Bar No. 1011018